**ORIGINAL**

Debra K. Wallet, Esquire,
    Attorney for Plaintiff

James K. Thomas, II, Esquire
Paul J. Dellasega, Esquire
    Attorneys for Defendant County and Individuals
A. Taylor Williams, Esquire,
    Attorney for Defendant Court

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA E. VARNER,<br>    Plaintiff | |
| v. | CIVIL ACTION<br>NO: 1:CV 01-0725 |
| COMMONWEALTH OF PENNSYLVANIA,<br>NINTH JUDICIAL DISTRICT,<br>CUMBERLAND COUNTY, | |
| and | JURY TRIAL DEMANDED |
| CUMBERLAND COUNTY | |
| and | |
| S. GARETH GRAHAM, individually | Judge Yvette Kane |
| and | |
| JOSEPH OSENKARSKI, individually,<br>    Defendants | |

FILED
HARRISBURG
SEP 21 2001
MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

## JOINT CASE MANAGEMENT PLAN

Having complied with the meet-and-confer requirements set forth in the local rules by meeting in person on September 12, the parties hereby submit the following Joint Case Management Plan.

1.  **Principal Issues**

    1.10 Separately for each party, please give a summary statement:

    **By Plaintiff**:

    Plaintiff Barbara Varner, a Probation Officer, sues her employers, Cumberland County and the local county court, for sexual harassment, sex discrimination, and retaliation. Her immediate supervisor, S. Gareth Graham, made sexual overtures to Varner which she rebuffed. Graham then engaged in repeated and overt sexual harassment. Graham's supervisor, Joseph Osenkarski, refused to take action to stop the harassment when Varner complained to him. Repeated complaints, including many in writing, to the County and the Court were unsuccessful in stopping the harassment. Osenkarski himself engaged in inappropriate sexual comments in Varner's presence. As a result of her sex, Varner has been given less desirable assignments and works under less favorable terms and conditions of employment. She is the victim of a hostile work environment.
    After Varner complained to the County's Director of Human Resources about threats of physical harm to Varner, an investigation occurred. The Court and County refused to implement the recommendations for remedial action. Instead, Varner became the victim of retaliation. She was restricted from areas of the Courthouse and she was denied the position of Program Director of the Cumberland County Appointed Special Advocate (CASA) program unless she agreed to withdraw her charges of discrimination.

    **By Defendant County and Individuals**:

    The Plaintiff, Barbara Varner, was hired by Cumberland County as a Caseworker in Children and Youth Services on or about 12/4/89. On 2/7/95 she was transferred to the Probation Department as a probation officer. She alleges that on or about 11/20/96 and continuing thereafter she has been sexually harassed by Gary Graham and Joseph Osenkarski, her supervisors at the time she transferred to the Probation Department.
    Gary Graham first met the Plaintiff on 2/7/90 while she was employed with Children and Youth Services. At that time he was a probation officer. They were both involved in working the same case. There was a quick mutual attraction between Varner and Graham. For two years they would meet privately, there would be kissing and fondling, but no sex.
    At this point in time Graham had been married for seventeen years. In the early 1990s his marriage was faltering. When he met Varner she was living with the man she would ultimately marry, Lee Varner.
    Graham and Varner first had sex on 2/14/92. Their sexual relationships continued on approximately a weekly basis through November 1993.
    On November 25, 1993, Varner married Lee Varner. Varner and Graham had sex almost immediately after Varner returned from her honeymoon. Thereafter their consensual sexual relationship continued but on a less frequent basis, averaging about one sexual encounter per month.

2

Graham will testify that they had numerous sexual encounters over the lunch hour. They would sometimes each take the afternoon off for the purpose of sexual encounters. They spent some evenings together when Varner's husband was away on business. It is understood that Mr. Varner traveled extensively.

Graham will testify that on 5/26/93 he and Varner checked into a hotel for the purpose of having sex. Varner paid for the hotel with a credit card. To date, Graham has been unsuccessful in his efforts to obtain a copy of that credit card slip.

In June 1994, Graham and Varner each took an afternoon off and went to Atlantic City. They went by bus. On the bus they met a coworker, Carol Snoke, who was present with her husband, Wayne Snoke. The Snokes will confirm that Graham and Varner traveled together to Atlantic City. At that time, the Snokes were unaware there was an affair taking place. Graham told them that he was going to visit relatives and Varner indicated that her husband was out of town and that she was simply going down to Atlantic City to gamble.

Graham and Varner's sexual relationship was continuing when Varner was hired into the Probation Department on 2/2/95. Graham was influential in the decision to bring Varner into the Probation Department. Prior to recommending Varner for hire, Graham admitted a total of twenty-three business trips with Varner during her tenure at Children and Youth Services.

Graham became a Supervisor and the defacto head of the Probation Department on 9/10/96. Graham will testify that when he became the Supervisor he had concerns about the impropriety of his ongoing relationship with Varner in view of his supervisory status.

Graham will testify that he did not have sex again with the Plaintiff except for the date of 10/21/96 while he and Varner were both at a conference in State College.

At this conference, Varner called Graham at 5:00 a.m. to have sex. Graham's roommate heard the call. Later that morning he and Varner did have sex in her room. Varner became mad at Graham because he was not spending enough time with her and left the conference early as a consequence.

Graham subsequently ended the affair. There was no verbal altercation. Graham simply stopped calling Varner.

It is Graham's theory of the case that Varner's complaints of sexual harassment are based upon her anger of his termination of their affair.

Varner denies that a consensual affair existed. Varner has acknowledged that if such a relationship had been existed it would be totally inappropriate and that there would be no reason for this lawsuit.

As a member of the Probation Department Graham reports to the President Judge of the Cumberland County Court of Common Pleas. The President Judge has the final authority for the hiring, firing and disciplining of members of the Probation Department. Prior to the implementation of Pennsylvania's Unified Court System members of the Probation Department were County employees. By custom and practice the County continues to provide some of the functions of an employer. For example, it may assist the Court in interviewing applicants. It provides to local court employees a copy of its personnel handbook and gives the local Court of Common Pleas employees access to the County's sexual harassment policy.

The County, however, cannot effectively recommend the discipline or termination of any employee accused of sexual harassment and that prerogative lies solely with the Court.

3

Accordingly, it is the County's contention that it is not the employer of either Defendants Graham or Osenkarski and the County should be dismissed from this action on that basis.

Both Defendants Graham and Osenkarski deny the Plaintiff's allegations regarding sexual harassment.

Neither the County nor the individual defendants retaliated against Varner because of her complaints of sexual harassment. The County did extend a settlement offer to the Plaintiff and made efforts with the Court to provide to the Plaintiff a job she desired for which she was not the most qualified person. The Plaintiff declined the settlement offer and the County's efforts to see her placed in the new position as Director of the Casa Program ended. The Court conducted its own interview process for potential applicants for the Casa Program position and ultimately that position was offered to the interviewee the Court deemed most qualified for the position. The County, therefore, did not retaliate against Varner because she asserted claims of sexual harassment.

### By Defendant Court

This is a sexual harassment case that turns on whether the Plaintiff had a consensual affair with her alleged harasser. A sexual harassment policy was in place, however, despite Plaintiff's assertions, she did not follow that policy. She did not file an immediate complaint under the policy to give her employer an opportunity to quickly stop the alleged harassment. Moreover, when Plaintiff did file a complaint under the policy, an investigation ensued. During that investigation, information came to light indicating that Plaintiff had a consensual affair with Defendant Graham. Nonetheless, Defendant Graham was suspended, demoted and transferred out of Ms. Graham's department. Plaintiff was not retaliated against. To the contrary, Plaintiff was offered the CASA job in a good faith attempt to settle her claims.

The principal *factual* issues that the parties *dispute* are:

1.11 Whether Graham and Varner had a consensual sexual affair.
1.12 Whether Varner was sexually harassed by her immediate supervisor, S. Gareth Graham.
1.13 Whether the County and the Court acted to remedy the harassment by the immediate supervisor.
1.14 Whether the County and the Court discriminated against Varner because of her sex, female.
1.15 Whether the County and the Court retaliated against Varner because of her claims of sexual discrimination and harassment.

*agree* upon are:

1.16 Varner was first employed by the County in December, 1989.
1.17 Graham and Osenkarski were Varner's Supervisors when she became employed by the Probation Department.
1.18 The County has more than 500 employees.

1.19 The Court has fewer than 100 employees.
1.20 Varner continues to be an employee of the Probation Department, which has now been split into two divisions, adult probation and juvenile probation. Varner is a member of the juvenile probation division.
1.21 Varner has sustained no wage loss as a consequence of the alleged sexual harassment.

1.30 The principal *legal* issues that the parties *dispute* are:

1.31 Whether Varner's claims are timely.
1.32 Whether the County is the joint employer of Varner together with the Supreme Court of Pennsylvania.
1.33 Whether the County is immune from suit pursuant to the 11th Amendment to the United States Constitution.
1.34 Availability of punitive damages under Title VII.
1.35 Entitlement of the Defendants to judicial immunity from suit.
1.36 Whether the Court is insulated from liability because it investigated Varner's allegations of harassment promptly and took appropriate corrective action.
1.37 Whether Varner's allegations are severe or pervasive enough to constitute harassment or retaliation.
1.38 Liability of the individual defendants under the PHRA.
1.39 Whether Plaintiff was discriminated against because of her sex in violation of Title VII of the Civil Rights Act of 1964 and the PHRA.
1.40 Whether Plaintiff is a victim of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and the PHRA.
1.41 Whether Varner's allegations had any tangible or intangible impact on terms and conditions of Varner's employment.
1.42 Whether Plaintiff was subjected to retaliation for complaints of sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and the PHRA.
1.43 What should be the remedy for Varner's claims.

*agree* upon are:   None.


1.50 Unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:

The issue of subject matter jurisdiction based upon timely filing at the EEOC.

1.60 Parties that have not yet been served:

None.

5

1.70 Additional parties that:

Plaintiff intends to join: None.

Defendants intends to join: None.

1.80 Additional claims that:

Plaintiff intends to add: None.

Defendants intends to add: None.

2.0 **Alternative Dispute Resolution ("ADR")**

2.10 Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use:

ADR procedure - none yet assigned.

Date ADR to be commenced:     N/A
Date ADR to be completed:     N/A

2.20 If the parties have been unable to agree on an ADR procedure, but one or more parties believes that the case is appropriate for such a procedure, identify the party or parties that recommended ADR and the specific ADR process recommended:

The parties are doubtful that ADR will be helpful at this point.

2.30 If all parties share the view that no ADR procedure should be used in this case, set forth the basis for that view.

The parties' respective view of liability does not lend itself to a compromise before some discovery has been done.

3.0 **Consent to Jurisdiction by a Magistrate Judge**

Indicate whether all parties agree, pursuant to 28 U.S.C. §636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit.

All parties agree to jurisdiction by a magistrate judge of this court:     ____yes
                                                                           X  no

If parties agree to proceed before a magistrate judge, please indicate below which location is desired for the proceedings:

\_\_\_\_\_ Scranton

\_\_\_\_\_ Wilkes-Barre

\_\_\_\_\_ Harrisburg

**4.0**   **Disclosures**

4.101   Identities disclosed by Plaintiff

| | Name | Title/Position |
|---|---|---|
| 4.102 | Barbara E. Varner | Probation Officer |
| 4.103 | S. Gareth Graham | Probation Officer |
| 4.104 | Joseph Osenkarski | Chief, Probation Services |
| 4.105 | Daniel Hartnett | Former County Director of HR |
| 4.106 | Hon. George Hoffer | President Judge |
| 4.107 | Hon. Harold Sheeley | Former President Judge |
| 4.108 | Hon. Edward Guido | Judge |
| 4.109 | Lee Morand, M.S. | Psychologist |

4.151   Identities disclosed by Defendants

| | | |
|---|---|---|
| 4.152 | Chris Miller | Personnel Director |
| 4.153 | Dan Hartnett | Former Personnel Director |
| 4.154 | Dan Monken | Former Personnel Director |
| 4.155 | John Ward | County Clerk |

4.200   Separately for each party, describe by *categories* the documents that have been disclosed or produced through formal discovery, indicating which categories relate (even if not exclusively) to damages:

4.201   Categories of documents disclosed by Plaintiff:

   4.202   Correspondence/memoranda relating to claims of harassment.
   4.203   Documents subpoenaed from EEOC.
   4.204   County Employee Handbook.

4.251   Categories of documents disclosed by Defendant:

    4.252   Plaintiff's personnel file (may relate to damages).
    4.253   Information concerning the posting and filling of the CASA job. (damages)
    4.251   Personnel file for Joseph Osenkarski.
    4.252   Personnel file for Gary Graham.

4.300   *Additional Documents Disclosures*: Separately for each party, describe each additional category of documents that will be disclosed without imposing on other counsel the burden of serving a formal request for production of documents:

    4.301   Additional categories of documents Plaintiff will disclose:

        Some formal discovery is contemplated which may be resolved informally.

    4.351   Additional categories of documents Defendant will disclose:

        Some formal discovery is contemplated which may be resolved informally.

**4.400   Separately for each party who claims an entitlement to damages or an offset, set forth the computation of the damages or of the offset:**

    4.401   Plaintiff's calculation of damages:

| | |
|---|---|
| Compensatory Damages | Unreimbursed psychological treatment |
| Punitive Damages | Up to the Cap |
| Attorneys' Fees | Uncalculated at this time |

    4.402   Defendants' calculation of offset: Not applicable.

    4.403   Counterclaimant/third party claimant's calculation of damages:

        None.

**5.0  Motions**

| Nature of Motion | Moving Party | Anticipated Filing Date |
| --- | --- | --- |
| Motions to Dismiss | County and Indiv.; Court | Pending |
| Motion to Dismiss re: timeliness | All Defendants | October 31, 01 |
| Motions for Summary Judgment on the merits (tentative) | Both Defendants | 30 days after end of discovery |

**6.0  Discovery**

6.100  Briefly describe any discovery that has been completed or is in progress:

By Plaintiff:    Three days of depositions scheduled.

By Defendants:   None

6.200  Describe any *discovery* that all *parties agree* should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it:

Exchange of Interrogatories, Requests for Production of Documents, Requests for Admission

Depositions of any witnesses whose identities have been disclosed. The Parties may also seek discovery from third-parties who may have material information such as the former Director of Human Resources and now-retired Judge Harold Sheeley.

6.300  Describe any *discovery* that one or more parties want(s) to conduct but *to which another party objects*, indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:

None.

6.400  Identify any *subject area limitations on discovery* that one or more parties would like imposed, at the first stage of or throughout the litigation:

9

Cumberland County contends the correspondence between counsel for the Court and counsel for the County is privileged inasmuch as these Defendants are alleged to be joint employers.

Cumberland County alleges that memorandums of fact and law relating to the Complaints asserted by Varner are covered by attorney/client and work product privileges and do not have to be disclosed.

6.500 For each of the following discovery tools, *recommend the per-party or per-side limitation* (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing:

    6.501 Depositions (excluding experts) to be taken by:

        Plaintiff: not more than 15; Defendants: approx 12 for each.

    6.502 Interrogatories to be served by:

        Plaintiff:    no more than 100 on each Defendant
        Defendants:  100 for each Defendant

    6.503 Document production requests to be served by:

        Plaintiff:    no more than 35 on each Defendant
        Defendants:  35 for each Defendant

    6.504 Requests for admission to be served by:

        Plaintiff:    no more than 75 on each Defendant
        Defendants:  75 for each Defendant

6.600 All discovery commenced in time to be completed by:

    June 30, 2002

6.700 Reports from retained experts due:

    from Plaintiff:    June 30, 2002
    from Defendant:  unknown

6.800 Supplementations due: Not later than 30 days before trial

**7.0 Protective Order**

    7.1 Possible resolution of the privilege arguments (See 6.4 above).

10

    7.2    Summary of positions: not applicable.

**8.0    Certification of Settlement Authority (All parties shall complete the Certification)**

I hereby certify that the following individual(s) have settlement authority:

Plaintiff - Debra K. Wallet, Esq. in conjunction with Plaintiff,
Attorney for the Plaintiff
24 N. 32nd Street
Camp Hill, PA 17011
(717) 737-1300

Defendant Cumberland County – Peter Zangardi – (610) 409-9473

Defendant Court:

    Honorable George E. Hoffer, President Judge
    Court of Common Pleas, Ninth Judicial District
    One Courthouse Square
    Carlisle, PA 17013-3387
    717-240-6292

    Zygmont A. Pines, Esquire
    Court Administrator of Pennsylvania
    Administrative Office of Pennsylvania Courts
    Suite 1414
    1515 Market Street
    Philadelphia, PA 19102
    215-560-6300

    The Honorable John Flaherty
    Chief Justice of the Supreme Court of Pennsylvania
    c/o Administrative Office of Pennsylvania Courts
    Suite 1414
    1515 Market Street
    Philadelphia, PA 19102
    215-560-6300

**9.0    Scheduling**

    9.1    This case may be appropriate for trial in approximately: 15 months from April, 2001 (Standard Track)

    9.2    Suggested Date for Trial:    August, 2002

    9.3    Suggested Date for the final Pretrial Conference:  August, 2002

    9.4    Final date for joining additional parties:    Plaintiff:    none antic.
                                                                                                Defendant:   none antic.

    9.5    Final date for amending pleadings:    Plaintiff requests:    none antic.
                                                                            Defendant requests:   none antic.

    9.6    All potentially dispositive motions should be filed by:    May 30, 2002


**10.0**    **Other matters**

None.


**10.0**    **Identification of Lead Counsel**

**Plaintiff:**
Debra K. Wallet, Esq.
24 N. 32nd Street
Camp Hill, PA   17011
(717) 737-1300

**Cumberland County and individuals:**
James K. Thomas, II, Esq.
THOMAS, THOMAS & HAFER, LLP
305 North Front St., 6th Floor
P.O. Box 999
Harrisburg, PA   17108-0999
(717)255-7602

**Commonwealth of Pennsylvania, Ninth Judicial District:**

A. Taylor Williams, Esquire
Supreme Court of Pennsylvania; Administrative Office of Pennsylvania Courts
1525 Market Street, Suite 1414
Philadelphia, PA   19102
(215)560-6300

Respectfully submitted,

Dated: September 21, 2001

*Debra K. Wallet*
Debra K. Wallet, Esq.
I.D. #23989
24 N. 32nd Street
Camp Hill, PA 17011
(717) 737-1300
Attorney for Plaintiff

Dated: September 21, 2001

James K. Thomas, II, Esq.
I.D. #15613
Paul J. Dellasega, Esq.
I.D. #23146
THOMAS, THOMAS & HAFER, LLP
305 North Front St., 6th Floor
P.O. Box 999
Harrisburg, PA 17108
Attorney for Defendants, Cumberland County,
   Osenkarski and Graham

Dated: September 21, 2001

A. Taylor Williams, Esquire
I.D. #33149
Administrative Office of Pennsylvania Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
(215) 560-6300
Attorney for Defendant, Commonwealth of Pennsylvania,
   Ninth Judicial District