# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARBARA E. VARNER,                    :
         Plaintiff              :
                                :
     v.                            :     CIVIL ACTION
                                :     NO: 1:CV 01-0725
COMMONWEALTH OF PENNSYLVANIA, :
NINTH JUDICIAL DISTRICT,              :
CUMBERLAND COUNTY;                    :     JURY TRIAL DEMANDED
CUMBERLAND COUNTY; S. GARETH          :
GRAHAM, individually; and JOSEPH      :     Judge Yvette Kane
OSENKARSKI, individually,             :
         Defendants             :

**FILED**
HARRISBURG, PA
APR 25 2003
MARY E. D'ANDREA, CLERK
Per _____

---

## DOCUMENTS IN SUPPORT OF PLAINTIFF'S
## MOTION TO COMPEL PRODUCTION OF DOCUMENTS
## AND DEPOSITION OF DAVID W. DELUCE

---

Debra K. Wallet, Esquire
24 N. 32nd Street
Camp Hill, PA  17011
I.D. #23989
(717) 737-1300
Attorney for Plaintiff

# TABLE OF CONTENTS

Exhibit A          Plaintiff's First Request for Production of Documents to Defendant
                   Cumberland County

                   Plaintiff's First Request for Production of Documents to Court
                   Defendant


Exhibit B          October 29, 2002 Response of County to Plaintiff's First Request for
                   Production of Documents


Exhibit C          Response of Court Defendant to Plaintiff's First Request for Production
                   of Documents


Exhibit D          Excerpts from the February 25, 2003 Deposition of Hon. Harold E.
                   Sheely


Exhibit E          July 11, 1997 Memorandum from Hon. Harold E. Sheely


Exhibit F          Excerpts from the April 4, 2003 Deposition of Hon. George E. Hoffer

*EXH A*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARBARA E. VARNER,                          :
            Plaintiff              :
                            :
          v.                     :   CIVIL ACTION
                            :   NO: 1:CV 01-0725
COMMONWEALTH OF PENNSYLVANIA, :
NINTH JUDICIAL DISTRICT,             :
CUMBERLAND COUNTY;                   :   JURY TRIAL DEMANDED
CUMBERLAND COUNTY; S. GARETH  :
GRAHAM, individually; and JOSEPH     :   Judge Yvette Kane
OSENKARSKI, individually,            :
            Defendants             :

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CUMBERLAND COUNTY

TO:   James K. Thomas, Esq.
       Paul J. Dellasega, Esq.
       THOMAS, THOMAS & HAFER, LLP

       Pursuant to F.R.C.P. No. 34, the Plaintiff, Barbara E. Varner, by her attorney, Debra

K. Wallet, Esquire, requests that you produce copies of the following documents, at the offices

of Debra K. Wallet, Esq., within thirty (30) days of service of this Request:

# INSTRUCTIONS

If you object to the production of any document on the grounds that the attorney-client, attorney work-product or any other privilege is applicable thereto, you shall, with respect to that document:

    a.    State its date:

    b.    Identify its author:

    c.    Identify each person who prepared or participated in the preparation of the document:

    d.    Identify each person who received it:

    e.    Identify each person from whom the document was received;

    f.    State the present location of the document and all copies thereof;

    g.    Identify each person who has ever had possession, custody or control of it or a copy thereof; and

    h.    Provide sufficient information concerning the document and the circumstances thereof to explain the claim of privilege and to permit the adjudication of the propriety of that claim.

As referred to herein, "Document" includes the original and any copy of any written,

recorded, transcribed, punched, taped, filmed or graphic matter, however produced or

reproduced, including, but not limited to, any detail sheet, work sheet, correspondence, letter,

memorandum, including any memorandum, notation or report of a meeting or telephone or

other conversation, diary, calendar, telegram, report, note, draft or working paper in the

2

possession, custody or control of defendants or their counsel, or known by defendants or

anyone acting on their behalf to exist.

## DOCUMENTS REQUESTED

1.      All organizational charts in existence since 1996 which depict Plaintiff's position.  (Please identify the date each chart was prepared.)

2.      All documents submitted in or about March, 2000 to the National Court Appointed Special Advocate Association [hereinafter CASA].

3.      All draft documents, working papers, and recommendations authored by any employee of the County relating in any way to the CASA application submitted in or about June, 2000.

4.       All documents relating to the hiring of the CASA Director in the summer of 2000, including the job description, application of the successful candidate, interview notes, and any postings for the job.

5.      All documents relating to contacts by Barbara Varner with Daniel Hartnett or his successors as County Personnel or Human Relations Director regarding Gary Graham or Graham's wife, Joe Osenkarsky, or Varner's working conditions.

6.      All documents describing or otherwise relating to any efforts by the County to investigate or remedy Varner's complaints of sexual harassment and/or sex discrimination.

7.      A copy of the investigative report given to Judge Harold E. Sheeley in or about July, 1997 concerning the investigation of Varner's allegations of sexual harassment and sex discrimination.

8.      A copy of all interview notes or other documents which constitute the investigation of Varner's allegations of sexual harassment and sex discrimination.

9.      Personnel File of Joseph Osenkarski.

10.     Personnel File of Gary Graham.

11.     All Travel Expense sheets for probation officers Barbara Varner, Debra Green, Dennis Drachbar, Sam Miller, and Gary Graham for the period between June 1, 1996 and December 31, 1997.

12.     All Daily Logs for probation officers Barbara Varner, Debra Green, Dennis Drachbar, Sam Miller, and Gary Graham for the period between June 1, 1996 and December 31, 1997.

13.     All seniority lists for probation officers from 1995 to the present.

14.     A copy of any rules or regulations relating to the seniority of probation officers from 1985 to the present, including the seniority policy issued April, 1985.

15.     Any documents identified in Defendant's Answers to Plaintiff's First Set of Interrogatories to Defendant or used to substantiate the answers contained therein.

Respectfully submitted,


_Debra K. Wallet_
Debra K. Wallet, Esquire
24 North 32nd Street
Camp Hill, PA  17011
(717) 737-1300
I.D. No. 23989
Attorney for Barbara E. Varner

4

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA E. VARNER, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO: 1:CV 01-0725 |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| NINTH JUDICIAL DISTRICT, | : | |
| CUMBERLAND COUNTY; | : | JURY TRIAL DEMANDED |
| CUMBERLAND COUNTY; S. GARETH | : | |
| GRAHAM, individually; and JOSEPH | : | Judge Yvette Kane |
| OSENKARSKI, individually, | : | |
| Defendants | : | |

## CERTIFICATE OF SERVICE

I, Debra K. Wallet, Esq., hereby certify that on July 3, 2002, I served a true

and correct copy of the **PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF**

**DOCUMENTS TO DEFENDANT CUMBERLAND COUNTY** by personal delivery to the

offices of:

James K. Thomas, II, Esq.
Paul J. Dellasega, Esq.
THOMAS, THOMAS & HAFER, LLP
305 North Front St., 6th Floor
P.O. Box 999
Harrisburg, PA  17108

John Gerard Devlin, Esquire
JOHN GERARD DEVLIN & ASSOCIATES, P.C.
100 Pine Street, Suite 260
Harrisburg, PA  17101

And by regular first class mail, postage prepaid, addressed as follows:


A. Taylor Williams, Esquire
Administrative Office of Pennsylvania Courts
1515 Market Street, Suite 1414
Philadelphia, PA  19102


Barbara A. O'Connell, Esquire
SWEENEY & SHEEHAN
1515 Market Street, 15th Floor
Philadelphia, PA  19102-1983


_Debra K. Wallet_
Debra K. Wallet, Esquire
24 North 32nd Street
Camp Hill, PA  17011
(717) 737-1300
I.D. No. 23989
Attorney for Barbara E. Varner

A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA E. VARNER, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO: 1:CV 01-0725 |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| NINTH JUDICIAL DISTRICT, | : | |
| CUMBERLAND COUNTY; | : | JURY TRIAL DEMANDED |
| CUMBERLAND COUNTY; S. GARETH | : | |
| GRAHAM, individually; and JOSEPH | : | Judge Yvette Kane |
| OSENKARSKI, individually, | : | |
| Defendants | : | |

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO COURT DEFENDANT

TO:   A. Taylor Williams, Esquire

Pursuant to F.R.C.P. No. 34, the Plaintiff, Barbara E. Varner, by her attorney, Debra

K. Wallet, Esquire, requests that you produce copies of the following documents, at the offices

of Debra K. Wallet, Esq., within thirty (30) days of service of this Request:

## INSTRUCTIONS

If you object to the production of any document on the grounds that the attorney-client,
attorney work-product or any other privilege is applicable thereto, you shall, with respect to
that document:

   a.      State its date:

b.      Identify its author:

c.      Identify each person who prepared or participated in the preparation of the document:

d.      Identify each person who received it:

e.      Identify each person from whom the document was received;

f.      State the present location of the document and all copies thereof;

g.      Identify each person who has ever had possession, custody or control of it or a copy thereof; and

h.      Provide sufficient information concerning the document and the circumstances thereof to explain the claim of privilege and to permit the adjudication of the propriety of that claim.

As referred to herein, "Document" includes the original and any copy of any written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced, including, but not limited to, any detail sheet, work sheet, correspondence, letter, memorandum, including any memorandum, notation or report of a meeting or telephone or other conversation, diary, calendar, telegram, report, note, draft or working paper in the possession, custody or control of defendants or their counsel, or known by defendants or anyone acting on their behalf to exist.

# DOCUMENTS REQUESTED

1.    All organizational charts in existence since 1996 which depict Plaintiff's position.  (Please identify the date each chart was prepared.)

2.    All documents submitted in or about March, 2000 to the National Court Appointed Special Advocate Association [hereinafter CASA].

3.    All draft documents, working papers, and recommendations authored by any employee of the Court Defendant relating in any way to the CASA application submitted in or about June, 2000.

4.    All documents relating to the hiring of the CASA Director in the summer of 2000, including the job description, application of the successful candidate, interview notes, and any postings for the job.

5.    All documents describing or otherwise relating to any efforts by the Court Defendant to investigate or remedy Varner's complaints of sexual harassment and/or sex discrimination.

6.    A copy of the investigative report given to Judge Harold E. Sheeley in or about July, 1997 concerning the investigation of Varner's allegations of sexual harassment and sex discrimination.

7.    A copy of all interview notes or other documents which constitute the investigation of Varner's allegations of sexual harassment and sex discrimination by the Court Defendant.

8.    Personnel File of Joseph Osenkarski.

9.    Personnel File of Gary Graham.

10.    All Travel Expense sheets for probation officers Barbara Varner, Debra Green, Dennis Drachbar, Sam Miller, and Gary Graham for the period between June 1, 1996 and December 31, 1997.

11.    All Daily Logs for probation officers Barbara Varner, Debra Green, Dennis Drachbar, Sam Miller, and Gary Graham for the period between June 1, 1996 and December 31, 1997.

12.    All seniority lists for probation officers from 1995 to the present.

13.    A copy of any rules or regulations relating to the seniority of probation officers from 1985 to the present, including the seniority policy issued April, 1985.

14.    A copy of the memo dated on or about April 6, 1998 from Dan Hartnett to Judge Hoffer requesting that the Judge not follow through with the promotion of Bill Brandt over Barbara Varner.

15.    Any documents identified in Defendant's Answers to Plaintiff's First Set of Interrogatories to Court Defendant or used to substantiate the answers contained therein.


Respectfully submitted,


Debra K. Wallet, Esquire
24 North 32nd Street
Camp Hill, PA  17011
(717) 737-1300
I.D. No. 23989
Attorney for Barbara E. Varner

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA E. VARNER, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO: 1:CV 01-0725 |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| NINTH JUDICIAL DISTRICT, | : | |
| CUMBERLAND COUNTY; | : | JURY TRIAL DEMANDED |
| CUMBERLAND COUNTY; S. GARETH | : | |
| GRAHAM, individually; and JOSEPH | : | Judge Yvette Kane |
| OSENKARSKI, individually, | : | |
| Defendants | : | |

## CERTIFICATE OF SERVICE

I, Debra K. Wallet, Esq., hereby certify that on July 3, 2002, I served a true

and correct copy of the **PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF**

**DOCUMENTS TO COURT DEFENDANT** by personal delivery to the offices of:

James K. Thomas, II, Esq.
Paul J. Dellasega, Esq.
THOMAS, THOMAS & HAFER, LLP
305 North Front St., 6th Floor
P.O. Box 999
Harrisburg, PA  17108

John Gerard Devlin, Esquire
JOHN GERARD DEVLIN & ASSOCIATES, P.C.
100 Pine Street, Suite 260
Harrisburg, PA  17101

And by regular first class mail, postage prepaid, addressed as follows:

A. Taylor Williams, Esquire
Administrative Office of Pennsylvania Courts
1515 Market Street, Suite 1414
Philadelphia, PA  19102

Barbara A. O'Connell, Esquire
SWEENEY & SHEEHAN
1515 Market Street, 15th Floor
Philadelphia, PA  19102-1983

Debra K. Wallet, Esquire
24 North 32nd Street
Camp Hill, PA  17011
(717) 737-1300
I.D. No. 23989
Attorney for Barbara E. Varner

OCT 3 0 2002

**B**

# THOMAS, THOMAS & HAFER LLP
### ATTORNEYS AT LAW



www.tthlaw.com

305 North Front Street, P.O. Box 999, Harrisburg, PA 17108
Phone: (717) 237-7100   Fax: (717) 237-7105

*Paul J. Dellasega*
*(717)255-7602*
*pjd@tthlaw.com*

October 29, 2002

Debra K. Wallet, Esquire
24 North 32nd Street
Camp Hill, PA 17011

> **RE:   *Barbara E. Varner v. Commonwealth of Pennsylvania,***
> ***Ninth Judicial District, Cumberland County, et al.***
> ***No.: 1:CV 01-0725***
> ***Our file No.: 610-81525***

Dear Debbie:

We have located all of the County's files regarding their investigation into the Varner matter. The files are marked Varner/Graham I, II and III.

This letter will outline those portions of the file that have been removed or redacted. The remainder of each file is being produced for you with this letter.

## VARNER/GRAHAM I

1.   Correspondence from David W. DeLuce, Esquire to Judge Hoffer dated 8/16/98 (attorney/client privilege).

2.   Correspondence from DeLuce to Judge Hoffer dated 8/27/98.

3.   Correspondence from DeLuce to Dan Hartnett dated 7/25/97.

4.   Correspondence from DeLuce to Hartnett dated 7/21/97.

5.   Correspondence from Horace Johnson, Esquire to Hartnett dated 6/26/97.

6.   "Confidential Attorney Impressions Not For Discovery" memorandum from DeLuce to Johnson dated 6/4/97 (attorney/client privilege and work product).

---

Lehigh Valley Office: 3400 Bath Pike, Suite 201, Bethlehem, PA 18017 ♦ Phone: (610) 868-1675 ♦ Fax: (610) 868-1702

Debra K. Wallett, Esquire
Page 2
October 29, 2002

## VARNER/GRAHAM II

7.  Correspondence from Monken to James K. Thomas, Esquire dated 8/23/99.

8.  Correspondence from DeLuce to Thomas dated 8/5/99.

9.  Correspondence from Thomas to DeLuce dated 7/28/99.

10. Correspondence from DeLuce to Monken dated 7/23/99.

11. Correspondence from DeLuce to Monken dated 6/4/99.

12. Internal Memorandum prepared by DeLuce dated 6/9/99 (both privilege and work product).

13. Correspondence from Thomas to Harkins dated 5/11/99.

14. Correspondence from Thomas to Holmes dated 5/11/99.

15. Correspondence from DeLuce to Monken dated 5/13/99.

16. Correspondence from DeLuce to Dellasega dated 5/7/99.

17. Correspondence from Thomas to Hoffer dated 4/30/99.

18. Internal Memorandum prepared by Monken dated 5/10/99 relating to meetings with counsel and Judge Hoffer.

19. Correspondence from DeLuce to Hoffer dated 7/13/98.

20. Correspondence from Monken to DeLuce dated 3/11/99.

21. Correspondence from Johnson to Hartnett dated 6/26/97 (privilege and work product).

22. Correspondence from DeLuce to Monken dated 3/4/99.

23. Correspondence from DeLuce to Thomas dated 3/2/99.

24. Correspondence from DeLuce to Dellasega dated 2/26/99.

25. Correspondence from Thomas to Harkins dated 2/26/99.

26. Correspondence from Dellasega to DeLuce dated 2/16/99.

Debra K. Wallett, Esquire
Page 3
October 29, 2002

27.     Correspondence from DeLuce to Monken dated 2/4/99.

28.     Correspondence from Dellasega to DeLuce dated 2/3/99.

29.     Correspondence from DeLuce to Holmes dated 1/27/99.

30.     Correspondence from DeLuce to Dellasega dated 1/26/99.

31.     Correspondence from DeLuce to Monken dated 1/13/99.

32.     Correspondence from Dellasega to DeLuce dated 1/7/99.

33.     Correspondence from DeLuce to Monken dated 12/23/98.

34.     Correspondence from DeLuce to Monken dated 12/15/98.

35.     Correspondence from DeLuce to Holmes dated 12/4/98.

36.     Correspondence from DeLuce to Monken dated 12/1/98.

37.     Correspondence from Monken to DeLuce dated 11/23/98.

38.     Correspondence from Monken to DeLuce dated 11/10/98.

39.     Correspondence from DeLuce to Hoffer dated 10/21/98.

40.     Correspondence from Monken to DeLuce dated 10/20/98.

## VARNER/GRAHAM III

41.     Correspondence from Dellasega to Monken dated 1/4/01.

42.     Correspondence from Monken to Dellasega dated 7/18/00.

43.     Correspondence from Monken to Dellasega dated 10/3/00.

44.     Internal Monken Memorandum dated 9/11/00 relating to conversations with Dellasega.

45.     Correspondence from Monken to Thomas dated 7/24/00.

46.     Correspondence from Dellasega to Monken dated 7/18/00.

47.     Monken Internal Memorandum dated 7/12/00 and 7/13/00 relating to conversations with Thomas.

48.     Correspondence from Monken to Dellasega dated 7/14/00.

49.     Correspondence from Dellasega to Monken dated 7/13/00.

50.     Internal Monken Memorandum dated 6/21/00 relating to conversation with Ward, Thomas and Dellasega.

51.     Correspondence from Monken to Dellasega dated 6/16/00.

52.     Internal Monken Memorandum dated 4/26/00 relating to conversation with Thomas.

53.     Internal Monken Memorandum dated 3/14/00 relating to conversation with Dellasega.

54.     Correspondence from DeLuce to Monken dated 3/3/00.

55.     Correspondence from Dellasega to Monken dated 2/21/00.

56.     Correspondence from Dellasega to Holmes dated 2/18/00.

57.     Correspondence from Monken to Dellasega dated 2/8/00.

58.     Correspondence from Thomas to Plummer dated 1/28/00.

Very truly yours,

**THOMAS, THOMAS & HAFER, LLP**

By:

Paul J. Dellasega

PJD/slh
Enclosures
cc:     Barbara O'Connell, Esquire (w/enc.)
        A. Taylor Williams, Esquire (w/enc.)
        David J. MacMain, Esquire (w/enc.)
        James K. Thomas, Esquire
        Peter Zangardi, St. Paul

NOV 1 9 2002

C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARBARA E. VARNER,                          :
                *Plaintiff*          :          CIVIL ACTION
                                    :          NO. 1:CV 01-0725
       v.                               :

COMMONWEALTH OF PENNSYLVANIA,              :          JURY TRIAL DEMANDED
NINTHE JUDICIAL DISTRICT, CUMBERLAND :
COUNTY; S. GARETH GRAHAM, individually;    :          JUDGE YVETTE KANE
and JOSEPH OSENKARSKI, individually,       :
                                      :
               *Defendants.*     :

## RESPONSE OF COURT DEFENDANT TO PLAINTIFF'S
## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

    1.      All organizational charts in existence since 1996 are attached.

    2.      Court Defendant did not submit any documents to CASA, the grant was submitted by the County of Cumberland.

    3.      No documents relating to the CASA application are in the possession of Court Defendant.

    4.      No notes were kept.  Applications and resumes were returned to the Cumberland County Personnel Office.

    5.      Documents relating to efforts by the Court Defendant to investigate or remedy Varner's complaints of sexual harassment and/or sex discrimination are attached.

    6.      Objection.  The requested document is privileged and confidential in accordance with the objection previously asserted by Cumberland County.

    7.      Documents relating to Varner's allegations of sexual harassment and sex discrimination are attached.

8.    The personnel file of Joseph Osenkarski is kept by the County.

9.    The personnel file of Gary Graham is kept by the County.

10.    All travel expense sheets for probation officers Barbara Varner, Debra Green, Dennis Drachbar, Sam Miller and Gary Graham for the period between June 1, 1996 and December 31, 1997 are attached.

11.    All Daily Logs for probation officers Barbara Varner, Debra Green, Dennis Drachbar, Sam Miller and Gary Graham for the period between June 1, 1996 and December 31, 1997 are attached.

12.    All seniority lists for probation officers from 1995 to the present are attached.

13.    See response to number 12, above.  The seniority policy issued April, 1985 is attached.

14.    A copy of the memo dated on or about April 6, 1998 from Dan Hartnett to Judge Hoffer requesting that the Judge not follow through with the promotion of Bill Brandt over Barbara Varner is attached.

15.    Documents Identified in Defendant's Answers to Plaintiff's First Set of Interrogatories to Court Defendant or used to substantiate the answers contained therein are attached.

A. TAYLOR WILLILAMS, ESQUIRE
Attorney I.D. No. 33149
Administrative Office of PA Courts
1515 Market Street
Suite 1414
Philadelphia, PA 19102-1921
215-560-6300

2

D

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

. . . . . . . . . . . . . . . . .

BARBARA E. VARNER,                .
     Plaintiff,                .   CIVIL ACTION
                        .   NO. 1:CV 01-0725
     vs.                          .

COMMONWEALTH OF PENNSYLVANIA,     .   (JUDGE YVETTE KANE)
NINTH JUDICIAL DISTRICT,          .
CUMBERLAND COUNTY; CUMBERLAND     .
COUNTY; S. GARETH GRAHAM,         .
individually, and JOSEPH          .
OSENKARSKI, individually,         .
     Defendants.                  .

. . . . . . . . . . . . . . . . .

|             |   |                                              |
|-------------|---|----------------------------------------------|
| Deposition of: | | **HON. HAROLD E. SHEELY**                 |
| Taken by    | : | Defendant Cumberland County                  |
| Date        | : | February 25, 2003, 10:10 a.m.                |
| Before      | : | Emily Clark, RMR, Reporter-Notary            |
| Place       | : | Administrative Offices of                    |
|             |   | Pennsylvania Courts                          |
|             |   | 5035 Ritter Road, Suite 700                  |
|             |   | Mechanicsburg, Pennsylvania                  |

APPEARANCES:

    DEBRA K. WALLET, ESQUIRE
        For - Plaintiff

    ADMINISTRATIVE OFFICE OF PENNSYLVANIA COURTS
    BY:  A. TAYLOR WILLIAMS, ESQUIRE
        For - Defendant Commonwealth of Pennsylvania
            Ninth Judicial District, Cumberland County

    THOMAS, THOMAS & HAFER
    BY:  JAMES K. THOMAS, II, ESQUIRE
        PAUL J. DELLASEGA, ESQUIRE
        For - Defendant Cumberland County

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

COPY

APPEARANCES (continued):

      MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
      BY:  DAVID J. MacMAIN, ESQUIRE
          For - Defendant S. Gareth Graham

      SWEENEY & SHEEHAN, P.C.
      BY:  PAUL LANCASTER ADAMS, ESQUIRE
          For - Defendant Joseph L. Osenkarski


ALSO PRESENT:

      MS. BARBARA VARNER

      MR. S. GARETH GRAHAM

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

1      Q.      Would you tell me, sir, when did you first learn

2  that Barbara Varner had made some allegations of sexual

3  harassment?

4      A.      You mean timewise?  Probably somewhere around

5  June or early July of 1997, somewhere in that area, I

6  believe.

7      Q.      And how did you learn it?

8      A.      I learned it, one of the county solicitors had

9  made a call to my office wanting an appointment to see me,

10 and it was Mr. Deluce.  And he did come in and see me.  And

11 that was the first that I ever heard anything about these

12 problems between Mrs. Varner and Mr. Graham.

13     Q.      Prior to that time, Mr. Osenkarski had not

14 brought this matter to your attention?

15     A.      Not to my knowledge, no.  I never knew anything

16 about it.

17     Q.      Now, when Mr. Deluce called you to make an

18 appointment, did he tell you the purpose of his appointment?

19     A.      I don't believe he did.

20     Q.      And when you met with him, was it just the two of

21 you?

22     A.      Yes.

23     Q.      What did he tell you, sir?

24             MR. THOMAS:  Objection.  This is obviously

25 complicated a little bit.  We do continue to assert the

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

1   attorney-client privilege with respect to Mr. Deluce, who was

2   a county solicitor.  We would object to any questions asking

3   what the nature of the conversation was between counsel for

4   the county and the Court in this circumstance.  It's a little

5   bit awkward because normally I would instruct the witness not

6   to answer the question, although in the circumstances of this

7   case I don't technically represent the judge.

8               MS. WILLIAMS:  I join in the objection, and when

9   there is a question that infringes on the privilege I will

10  direct the deponent not to answer.

11  BY MS. WALLET:

12      Q.      Did you understand my question, sir?

13      A.      I understood the question but I understand I'm

14  not supposed to answer it; is that correct?

15              MS. WILLIAMS:  Would you repeat the question?

16  BY MS. WALLET:

17      Q.      What did Mr. Deluce tell you?

18      A.      Am I supposed to answer that?

19              MR. THOMAS:  Can we have one minute, Deb?

20              MS. WALLET:  Sure.

21              (Recess taken from 10:16 until 10:20 a.m.)

22              MS. WALLET:  I believe when we broke I had asked

23  my question and we were waiting for whether or not you would

24  instruct the witness not to answer the question.

25              MS. WILLIAMS:  I am going to instruct the witness

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

1  not to answer the questions involving Mr. Deluce and the

2  conversation he had with him.  And that's a continuing

3  objection as to any questions that go to conversations Judge

4  Sheely might have had with Mr. Deluce.

5           MS. WALLET:  And the basis of your objection is

6  attorney-client privilege?

7           MS. WILLIAMS:  It is attorney-client privilege.

8           MS. WALLET:  Any other basis?

9           MS. WILLIAMS:  No.

10          MR. THOMAS:  And we obviously join in the

11  objection.

12  BY MS. WALLET:

13     Q.     Judge Sheely, did you consider Mr. Deluce to be

14  your attorney?

15     A.     No.  I know he was of a firm that represented the

16  county.

17     Q.     Describe for me the relationship between

18  probation officers who were employed by the court system and

19  the county employees.

20     A.     At the time I became president judge in '83, at

21  that time the president judge handled all the dependence and

22  delinquency juvenile cases.  Since I handled all them, I had

23  occasion on a weekly basis to see probation officers when

24  they brought either defendant juveniles or delinquent

25  juveniles into court.  So I did see all of them, you know,

1  these allegations?

2      A.      No, I have no recollection of any such

3  conversation.

4      Q.      Sir, at any time did you hire anyone to

5  investigate the allegations that were made by Ms. Varner

6  against Mr. Graham?

7      A.      No.

8      Q.      Did you assign to anyone the responsibility to

9  investigate these complaints by Ms. Varner against

10  Mr. Graham?

11      A.      No.

12      Q.      Did you yourself engage in any investigation of

13  these allegations of sexual harassment by Ms. Varner against

14  Mr. Graham?

15          MR. THOMAS:  You mean other than the things he's

16  already testified to?

17          MS. WALLET:  Correct.

18          THE WITNESS:  In addition to those things?  No.

19  BY MS. WALLET:

20      Q.      Well, did you consider any of those things to be

21  the assignment of an investigation?

22      A.      No.  I thought it was no obligation on me to

23  investigate any further than the information I already had.

24      Q.      And the information was what you had gotten from

25  Mr. Deluce, what was told to you by Mr. Osenkarski, and what

1    had been told to you by Mr. Graham?

2        A.     I think that was basically it, yes.

3        Q.     Other than the discussion that's referenced in

4    the July 11, '97, memo, Sheely 1, this conversation with Dan

5    Hartnett, did you have other conversations with Mr. Hartnett

6    about this matter?

7        A.     I don't believe.

8        Q.     Would that include the period after July 11,

9    1997?

10        A.     I don't recall of any specific conversations I

11    had with Mr. Hartnett.  He got a copy of this memo.  I don't

12    recall any further ones, either conversations or memos.

13        Q.     Did you have any conversations with Mr. Deluce

14    after July 11, 1997?

15        A.     I don't believe.

16        Q.     Your memo says that you met with Mr. Graham on

17    July 9, 1997, when he came to your office.  Do you have any

18    reason to believe that that's not an accurate date?

19        A.     I don't.  I'm sure at that time I knew when July

20    9th was, I would assume it would have been accurate.

21        Q.     And was that the meeting that you described

22    earlier between you, Mr. Graham and Mrs. Graham?

23        A.     I don't -- I can't say that that was the date.  I

24    really don't remember.  It could have been.  I think that's

25    probably correct.

E



SHEELY
DEPOSITION
EXHIBIT
#1

## COMMONWEALTH OF PENNSYLVANIA
### COURTHOUSE
1 COURTHOUSE SQUARE
CARLISLE, PA.
17013-3387

HAROLD E. SHEELY
PRESIDENT JUDGE

(717) 240-6290

July 11, 1997

TO:        John Ward, Chief Clerk
           David W. Deluce, Esquire

FROM:      The Honorable Harold E. Sheely, P.J. *HES*

SUBJECT:   Varner, Graham in Juvenile Probation

I have read the detailed report submitted by the County
solicitor concerning the investigation on matters involving the
above two parties.  I had planned to transfer Mr. Graham to Adult
Probation and previously told Dan Hartnett of this decision.
However, I have recently received information, that if true,
would nullify in my judgment any sexual harassment claim involved
in this relationship.  I do not wish to publicly reveal the
details of what I have been told at this time.

Ms. Varner and Mr. Graham were the best of friends for a
long time, since Ms. Varner transferred from Children's Services
to Probation.  Both have been excellent employees in their duties
as probation officers.  I believe with better supervision in the
Juvenile Probation Office, both parties can continue their good

work in the office, even though at this time, the personal relationship between them is not good. I will continue to have Sam Miller work with Ms. Varner on her work assignments until further notice.

I do find disturbing from the report the bad language used by Mr. Graham in some conversations with Ms. Varner. This involved using the "F" word and also loud and abusive language. This cannot be condoned. Mr. Graham is suspended three days without pay for the use of this language, the days being July 25, 26, and 27.

I cannot make a decision on all aspects of the report. I am not in a position to hold a hearing with witnesses under oath. I can and am now saying that on business matters in the office, any conduct between the two parties must be carried out in a respectful manner.

Unfortunately, from my standpoint, I never had the opportunity initially to meet with the two parties in my chambers and try to resolve the matter. I first heard about the allegations from the County solicitor after he had been designated to look into the case. I became aware that both parties had counsel and therefore I would not be justified in conducting any type of meeting with the parties.

I have never spoken to Ms. Varner about the allegations until today. I never spoke to Mr. Graham until Wednesday, July 9, 1997, when he came to my office, and he wanted to speak about some aspects of the case. I also spoke with Mr. Graham and his attorney on Thursday, July 10, 1997, at their request.

210008

Upon consideration, I have changed my mind about a transfer of Mr. Graham to Adult Probation, and as of now he will remain in his present position.  I direct his supervisor, Mr. Osenkarski, to pay better attention to matters taking place in the office.  I will take more severe action if conduct of any employee warrants it.


cc:  Daniel Hartnett

Debra Wallet, Esquire
For Ms. Varner

David Foster, Esquire
For Mr. Graham

Joseph Osenkarski
Chief of Probation - Juvenile Division

John Roller
Chief of Probation -  Adult Division

210009

F

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

. . . . . . . . . . . . . . . .
BARBARA E. VARNER,                  .
     Plaintiff,                   .    CIVIL ACTION
                       .    NO. 1:CV 01-0725
     vs.                          .

COMMONWEALTH OF PENNSYLVANIA,    . .  (JUDGE YVETTE KANE)
NINTH JUDICIAL DISTRICT,             .
CUMBERLAND COUNTY; CUMBERLAND        .
COUNTY; S. GARETH GRAHAM,            .
Individually, and JOSEPH             .
OSENKARSKI, individually,            .
     Defendants.                  .
. . . . . . . . . . . . . . . .


Deposition of:  HON. GEORGE E. HOFFER

Taken by      :  Defendant Cumberland County Court

Date          :  April 4, 2003, 1:46 p.m.

Before        :  Emily Clark, RMR, Reporter-Notary

Place         :  Cumberland County Courthouse
                  One Courthouse Square
                  Carlisle, Pennsylvania


APPEARANCES:

     DEBRA K. WALLET, ESQUIRE
         For - Plaintiff

     ADMINISTRATIVE OFFICE OF PENNSYLVANIA COURTS
     BY:  A. TAYLOR WILLIAMS, ESQUIRE
         For - Defendant Commonwealth of Pennsylvania
             Ninth Judicial District, Cumberland County

     THOMAS, THOMAS & HAFER
     BY:  JAMES K. THOMAS, II, ESQUIRE
         PAUL J. DELLASEGA, ESQUIRE
         For - Defendant Cumberland County

```
 1    APPEARANCES (continued):

 2        MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
          BY:  L. KRISTEN BLANCHARD, ESQUIRE
 3             For - Defendant S. Gareth Graham

 4        SWEENEY & SHEEHAN, P.C.
          BY:  PAUL LANCASTER ADAMS, ESQUIRE
 5             For - Defendant Joseph L. Osenkarski

 6

     ALSO PRESENT:
 7
          MS. BARBARA E. VARNER
 8
          MR. S. GARETH GRAHAM
 9
          MR. JOSEPH L. OSENKARSKI
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    Q     Okay.  Do I have the year correct, 1998?

2    A.    '98.

3    Q     After you became president judge, what did you

4          understand the status of Ms. Varner's allegations to be

5          at that time?

6    A.    I think I knew she filed a Complaint with the EEOC.  Is

7          that the correct initials?

8    Q     Yes, sir.

9    A.    And I suppose that's the extent of it.

10   Q     After you became president judge, did you do anything to

11         investigate the allegations that Ms. Varner had made

12         against Mr. Graham?

13   A.    Yes, ma'am.

14   Q     What did you do?

15   A.    After I took over, I had reference to a report done by

16         the county.  I examined that report.

17   Q     What was your understanding of the role of the county

18         with regard to that report?

19   A.    I don't understand your question.

20   Q     Did you know whether the Court had designated someone to

21         investigate these allegations?

22   A.    The Court meaning myself or Judge Sheely?

23   Q     Either.

24   A.    I know I didn't, ma'am.  What Judge Sheely did is best

25         known to him.  I don't believe so.

Case 1-01-cv-00725-YK   Document 53   Filed 04/25/2003   Page 34 of 51

1  Q   Did you at any time, sir, hire an investigator to

2      investigate the allegations brought by Barbara Varner?

3  A.  No.

4  Q   Now, this report that you had referenced that was done

5      by the county, is that the report done by Mr. Deluce?

6  A.  Yes, ma'am.

7  Q   Are you aware of any other reports done by the county to

8      which you had access when you became president judge?

9  A.  No, ma'am.

10 Q   So you reviewed this report from David Deluce.  Did you

11     do anything else by way of your investigation?

12         MR. THOMAS:  When?

13 BY MS. WALLET:

14 Q   At that time when you became president judge.

15 A.  Over a period of time, did something, yes.

16 Q   Okay.

17 A.  It didn't all happen in one day.

18 Q   What did you do in response to the Deluce report?

19 A.  Well, I know I had certain of the officers up to talk to

20     them about the report.

21 Q   Who?

22 A.  I have a note somewhere.

23 Q   Well, we were given some notes that were provided to us

24     by your counsel, and some of these notes I'm not sure I

25     understand so I was going to ask you about them.  If you

1  Q   So sometime between January and mid March of 1998?  That

2      was a question, sir.

3  A.  Yes.

4  Q   Now, how did you arrive at the list that is contained on

5      page A of Deposition 1?

6  A.  I can't be sure, ma'am.

7  Q   Did someone suggest to you that you talk with these

8      people?  Or was that your idea?

9  A.  I doubt if anybody suggested it.  It would have been my

10     idea.  If anything, I got the names out of the report.

11  Q   Okay.

12  A.  That would have been the logical place for me to get

13     them.

14  Q   At that time did you meet with Barbara Varner?

15  A.  Her name's not on the list, so I didn't meet with her.

16  Q   Did you meet with Gary Graham?

17  A.  If his name's not on the list, I didn't meet with him.

18  Q   Why didn't you meet with Barbara Varner at that time?

19  A.  I don't understand your question, ma'am.  Why didn't I

20     meet with her?

21  Q   She was the one making the allegations.  Why didn't you

22     meet with her and ask her about those allegations?

23  A.  I met with people who I wanted to find out about what

24     they said in the report.

25  Q   Were there any statements from Ms. Varner in the report?

1    A.     I don't have any recollection about that.  I suppose so,

2           but I don't recollect.

3                 MR. THOMAS:  Once again, let me interpose the

4           objection to the report.  We'll interpose our objection

5           to that based on attorney-client privilege and attorney

6           work product.  And I've let you ask a couple of

7           questions about it without waiving that objection, but I

8           will object and instruct the witness not to answer

9           questions dealing with the content of the Deluce report.

10   BY MS. WALLET:

11   Q     Judge Hoffer, was David Deluce acting as your attorney

12          at the time?

13   A.    No, ma'am.  No, ma'am, absolutely not.

14                MR. THOMAS:  I would point out for the record at

15          that point that the plaintiff in this case has made an

16          allegation that this was joint employment, and

17          Mr. Deluce, of course, was employed by the county.  And

18          it's the plaintiff's allegations that contend that this

19          was a joint employment situation.

20   BY MS. WALLET:

21   Q     Do you know whether or not Mr. Graham had made some

22          statements that were contained in this report?

23                MR. THOMAS:  Again, I would object to asking this

24          witness questions about the content of that report and I

25          would instruct him not to answer.

1          THE WITNESS:  I don't recollect.

2          MS. WILLIAMS:  Your Honor, we're not going to

3      answer questions about the report specifically.  So

4      we'll wait for the next question.

5          THE WITNESS:  All right.

6  BY MS. WALLET:

7  Q    Do you consider Mr. Thomas to be your attorney today?

8  A.    Absolutely not.

9          MS. WILLIAMS:  I will state for the record that

10      because of the joint employment situation, we have

11      joined Mr. Thomas in the objection to the Deluce report,

12      and we have in the past instructed other witnesses not

13      to answer questions on that report and we're so doing

14      today.

15  BY MS. WALLET:

16  Q    I'm back to the list, sir.  Do I understand from what

17      you've testified to earlier that in or about the time

18      frame between January and March of 1998 you talked to

19      Bill Brandt, Debbie Green, Nick Barolet, Jenny Crum, is

20      it?

21  A.    Looks like C-R-U-M-B.

22  Q    C-R-U-M-B?

23  A.    That's what it looks like to me.

24  Q    Okay.  Mrs. Rose.  Anyone else?

25  A.    I just have no way to recollect anymore, ma'am.

1          made not to take any action.

2     Q    Did you have a reason?

3               MR. ADAMS:  Objection, asked and answered.

4               MS. WALLET:  Well, it's certainly been asked but I

5          don't think it's been answered.

6               THE WITNESS:  Did I have a reason to do what,

7          ma'am?

8     BY MS. WALLET:

9     Q    Not to take any disciplinary action against

10         Mr. Osenkarski.

11    A.   Are you asking me if I've stopped beating my wife?

12    Q    No, sir.

13              MS. WILLIAMS:  Can you rephrase the question to

14         make it more understandable?

15    BY MS. WALLET:

16    Q    Well, we know that you didn't take any disciplinary

17         action against Mr. Osenkarski.  Correct?

18    A.   Yes, ma'am.

19    Q    And I'm asking you, why was there no disciplinary action

20         taken against him?  Was it because you didn't think he

21         had done anything to warrant such action?

22    A.   What was the charge, ma'am?

23    Q    Well, there were a number of charges that Ms. Varner had

24         made against Mr. Osenkarski.  Were you aware of those at

25         the time?

Case 1:01-cv-00725-YK   Document 53   Filed 04/25/2003   Page 39 of 51

1    A.    Other than anything contained in the report, if

2          anything, that would have been it.

3    Q    So you relied on the information in the report for a

4          summary of the allegations of Ms. Varner?

5    A.    If there's anything in there, I suppose.

6    Q    Other than sending Mr. Graham to a position at the jail,

7          did you take any other disciplinary action against

8          Mr. Graham?

9    A.    We took his courthouse key away, if that's disciplinary

10         action.

11   Q    Why did you do that?

12   A.    He didn't have any access to the courthouse anymore, he

13         didn't work here.

14   Q    Any other disciplinary action against Gary Graham?

15   A.    None that I can recall, that I did.

16   Q    Was there a sexual harassment policy in place when you

17         came in as president judge in January, the first Monday

18         in January of '98?

19   A.    Any harassment policy would have been contained in the

20         county manual.

21   Q    Did you believe the probation officers to be bound by

22         that sexual harassment policy?

23   A.    Yes, ma'am.

24   Q    Did you at any time tell Ms. Varner that she had failed

25         to follow the sexual harassment policy that was in

1     with regard to the allegations that Ms. Varner had made

2     against Gary Graham?

3            MR. THOMAS:  You mean other than the earlier

4     testimony he gave?

5            MS. WALLET:  Correct.

6            THE WITNESS:  No.

7     BY MS. WALLET:

8     Q     Did you consider the matter to be closed at that time?

9            MR. ADAMS:  Objection as to form.  What do you mean

10    by closed?

11    BY MS. WALLET:

12    Q     Did you think it was done and over?

13    A.    Ma'am, I knew that an EEOC Complaint had been filed.  It

14          could have hardly been over.

15    Q     Did you believe that you had any further obligation to

16          investigate Ms. Varner's allegations?

17    A.    On my own?

18    Q     Yes, sir.

19    A.    I did not do that, ma'am.

20    Q     My question was:  Did you feel you had an obligation to

21          do anything further?

22    A.    On my own?  No.

23    Q     Yes, sir.

24    A.    No.

25    Q     Sir, what do you know about the use of seniority for

```
 1          the 24th of February, a couple week before you signed
 2          it.
 3               Was this action a result of your initiation and
 4          your meeting with Mr. Ward?  Or had Mr. Hartnett
 5          recommended this action to you?
 6     A.   What action?  Is this the demotion?
 7     Q    Yes, it is.
 8     A.   Hartnett didn't recommend anything to me except perhaps
 9          to fire Graham.
10     Q    Did he recommend that he be fired?
11     A.   I don't know.  It's a possibility, I don't -- I don't
12          have any recollection of that, ma'am.
13     Q    Did you consult with anyone before you made the decision
14          to transfer and demote Mr. Graham?
15     A.   About my decision?
16     Q    Yes, sir.
17     A.   No, ma'am.  Obviously, I consulted with --
18     Q    John Ward?
19     A.   -- John Ward.  But I had made my decision by that time.
20     Q    It was your decision and your decision alone?
21     A.   Yes, ma'am.
22     Q    When did you learn that there was, for lack of a better
23          word, some tension between Barbara Varner and Barbara
24          Graham?
25     A.   I suppose the beginning of '98 sometime.
```

1    A.    Any independent evidence?

2    Q    Yes, sir.

3    A.    I didn't even know the allegations were going on until I

4          took over as PJ, and I have no evidence.

5    Q    Did Judge Sheely tell you that he had taken care of

6          this?

7    A.    Are you asking me if he said those words?

8    Q    Or something to that effect.

9    A.    I don't remember his exact words, but I know that he

10         said a three-day suspension for Gary Graham.

11   Q    After you learned that the EEOC charge was pending, did

12         you take any action to try to resolve the matter?

13   A.    In what way?

14   Q    In any way.

15   A.    Well, I didn't have Ms. Varner and Mr. Graham into the

16         office to sit down and try to mediate something, if

17         that's what you're saying, absolutely not.  There was a

18         lawsuit filed, ma'am.  It's going to take its course.

19   Q    Did you have any knowledge at any time, sir, that

20         Mr. Osenkarski made reference to something called the

21         cunt club?

22   A.    If that was in the report of Deluce, yes.

23   Q    And if not?

24   A.    Well, I'm trying to recall now, and I don't have any

25         recollection.  Perhaps if you showed me something.  But

1          that's my answer.

2     Q     Is there, sir, at times, disputes between the county --

3               MS. WILLIAMS:  Could you repeat that?

4     BY MS. WALLET:

5     Q     Is there at times disputes between the county and your

6           office as to how probation officers should be treated

7           with regard to terms and conditions of employment?

8     A.    I still didn't hear that.  Is there a dispute between

9           myself and the county about what?

10    Q     About terms and conditions as they apply to probation

11          officers.

12              MS. WILLIAMS:  Did you hear the question, Judge?

13              THE WITNESS:  Yeah.

14              There's no dispute.  There might be arguments, but

15          I do the hiring and firing, ma'am.  I'm in charge of the

16          Probation Office.

17    BY MS. WALLET:

18    Q     Is there a dispute currently over whether or not a

19          probation officer is permitted to take time off with

20          pay?

21    A.    Oh, one of the boys had been in to see me, yeah, and I

22          guess he's fighting with Human Services.

23    Q     Someone made a request to you for some vacation time

24          which you approved, correct?

25    A.    Verbally, yeah.  I haven't done anything in writing.  I

1   Q   Would you have treated Mr. Graham differently if you

2      felt there had not been adultery and he had simply been

3      a pure sexual harasser?

4         MS. WALLET:  Objection to the form of the question.

5      I don't think that this witness ever admitted that he

6      considered this to have been an adulterous relationship.

7         THE WITNESS:  It is incorrect for a supervisor to

8      have any kind of affair with a person that he or she is

9      supervising.  Absolutely wrong, consensual or otherwise.

10     So what's your question?

11  BY MR. DELLASEGA:

12   Q   The reason that you just articulated the me, that it

13      is incorrect for a supervisor to engage in adultery with

14      an employee --

15   A.  Or any kind of relationship, sexual.

16   Q   Is that the reason why you demoted Mr. Graham in

17      addition to his management deficiencies?

18   A.  That was part of it.

19   Q   What was the --

20   A.  The relationship, yes.

21   Q   What was the other part of it, judge?

22   A.  I had lost my confidence in his ability to be a

23      supervisor.

24   Q   And when you say that, Judge, are you referring to his

25      management skills?

1   A.   Absolutely.

2   Q    Okay.  And did you learn about his management

3        deficiencies through these interviews you conducted that

4        are outlined in Exhibit 1?

5   A.   Through the report and through all the people that I

6        talked to, yes.

7   Q    Okay.  And when you considered what to do about this

8        case, Judge, did you rely on Mr. Deluce's opinions or

9        upon your own conclusions?

10  A.   Well, I drew upon Deluce's report, yes, verified to some

11       extent by my interviews with the various people.

12  Q    Did you use the Deluce report for the factual

13       information it contained or for Mr. Deluce's opinions

14       expressed in the report?

15       MS. WALLET:  Objection.  I'm going to note my

16       objection for the record.  I don't think you can lead

17       this witness.  There is no reason why you can conduct

18       this cross-examination.  He is simply a witness to be

19       deposed.

20       MR. DELLASEGA:  It's a discovery deposition.  I can

21       ask him any question I want to ascertain information.

22       Whether the question is admissible at trial may depend

23       on the form of the question, but there's no rule against

24       leading your own witness, if indeed, he is my own

25       witness.  And that is a contention in this case.

1          MS. WALLET:  And I'm objecting to the form of the

2     question.

3          MR. ADAMS:  I need to also add that the judge is

4     not only a witness but he's actually a party in the

5     litigation, which probably gives Mr. Dellasega a little

6     bit more leeway to ask any kind of question, the mere

7     fact that he's a party.

8          MS. WILLIAMS:  He's a representative of a party.

9          MR. ADAMS:  Thank you.

10          THE WITNESS:  Where are we?

11     BY MR. DELLASEGA:

12     Q    You still have to answer my question, Judge.

13          THE WITNESS:  Yes?

14          MS. WILLIAMS:  Yes.  Could you repeat the question,

15     Mr. Dellasega.

16     BY MR. DELLASEGA:

17     Q    Judge, when you decided what to do about this case did

18     you reach your own conclusions and act only on those

19     conclusions, or did you act also on the opinion of

20     others?

21     A.   I acted on the factual opinion of others in making up my

22     mind what the facts were.  Then I acted.

23     Q    You referred in one of the exhibits to Barbara Graham as

24     an innocent victim?

25     A.   That was in my meeting with Mrs. Varner.

1   Q   Why did you consider Barbara Graham an innocent victim?

2   A.   No matter what version is true, of Mrs. Varner's

3        statement and Gary Graham's statement, Mrs. Graham is in

4        the middle on it.  She loses any way it comes out.

5        Mrs. Varner agreed with me on that.

6   Q   When Mrs. Graham attempted to talk to you, do you

7        recall, did she appear distraught?

8   A.   She talked to me several times and usually she was

9        distraught, yes.  Mrs. Graham, you said?

10   Q   Mrs. Graham, yes.

11   A.   Yes.

12   Q   Did Mrs. Graham indicate to you that she felt

13        Mrs. Varner was a home wrecker?

14   A.   I don't remember those words.  She mostly wanted me to

15        hear the other side of it.

16   Q   Did she indicate any words that were similar to that?

17   A.   I have no recollection of anything like that.

18   Q   In your note you indicate Mrs. Varner did not oppose

19        your statement that Mrs. Graham was an innocent victim?

20   A.   Yes.  That's what I made a note of in my visit with her.

21   Q   As I understand, Judge, there is a salary board in this

22        county?

23   A.   There is.

24   Q   And when you were referring to votes, were you referring

25        to the votes of the salary board?

1          MS. BLANCHARD:  I have a couple questions.

2     BY MS. BLANCHARD:

3     Q     Judge, my name is Kristin Blanchard and I represent

4           Gary Graham.  I'll try to speak up, I know I'm all the

5           way down here at this end.

6                Did you talk to Gary Graham before you demoted him

7           about the reasons for the demotion?

8     A.    No, ma'am.

9     Q     Were you interested in hearing Gary Graham's version of

10          events prior to his demotion?

11    A.    No, ma'am.

12    Q     Why not?

13    A.    I made up my mind.

14    Q     Based upon what?

15    A.    The report and the interviews with the various POs that

16          I talked to.

17    Q     Did you have any information regarding what Gary

18          Graham's position on everything was?

19    A.    I may have had some in some fashion, I don't know.  But

20          I didn't ask him anything.

21    Q     Did it occur to you at that time that he may have had

22          something to say that would have changed your mind or

23          altered your decision to demote him?

24    A.    Well, ma'am, I know there was a lawsuit going, and I had

25          made up my mind, partially on the sexual allegations but

1        even more so on the office leadership.  So that was

2        history.

3    Q    And your decision that Gary -- strike that -- your loss

4        of confidence in Gary's ability to manage, I believe

5        those were your words, was based upon the contents of

6        the Deluce report?

7    A.   And my interviews with other people, other POs.

8           MS. BLANCHARD:  That's all I have.

9           MS. WILLIAMS:  Anybody else?

10          MS. WALLET:  I have one question.

11  BY MS. WALLET:

12    Q    Judge, can you hear me from here?

13    A.   Keep your voice up, ma'am.

14    Q    I will.  Since you took office in the first Monday in

15        January of 1998, have you promoted or approved the

16        promotion of any probation officers?

17    A.   Oh, I suppose I have.  I had to get a replacement for

18        Mr. Graham.  I've also fired one person.

19    Q    Okay.  Did you promote Sam Miller?

20    A.   I think I did.

21    Q    Did you promote Denny Drachbar?

22    A.   I think so, I'm not sure.

23    Q    Did you promote Debra Green?

24    A.   I don't remember anymore, ma'am.  I'd have to look at

25        the records.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA E. VARNER, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO: 1:CV 01-0725 |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| NINTH JUDICIAL DISTRICT, | : | |
| CUMBERLAND COUNTY; | : | JURY TRIAL DEMANDED |
| CUMBERLAND COUNTY; S. GARETH | : | |
| GRAHAM, individually; and JOSEPH | : | Judge Yvette Kane |
| OSENKARSKI, individually, | : | |
| Defendants | : | |

## PROOF OF SERVICE

I, Debra K. Wallet, Esq., hereby certify that on April 25, 2003, I served a copy of the

**DOCUMENTS IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**

**PRODUCTION OF DOCUMENTS DEPOSITION OF DAVID W. DELUCE** by first class

mail, postage prepaid, addressed to:

James K. Thomas, II, Esq.
Paul J. Dellasega, Esq.
THOMAS, THOMAS & HAFER, LLP
305 North Front St., 6th Floor
P.O. Box 999
Harrisburg, PA 17108
Attorney for Cumberland County

A. Taylor Williams, Esq.
Administrative Office of Pennsylvania Courts
1515 Market Street, Suite 1414
Philadelphia, PA  19102
Attorney for Commonwealth of PA, Ninth Judicial District

David J. MacMain, Esq.
MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA  19109
Attorney for Defendant S. Gareth Graham

Paul Lancaster Adams, Esq.
SWEENEY & SHEEHAN
1515 Market Street, 15th Floor
Philadelphia, PA  19102-1983
Attorney for Defendant Joseph Osenkarski

Debra K. Wallet, Esquire
24 North 32nd Street
Camp Hill, PA  17011
(717) 737-1300
I.D. No. 23989
Attorney for Plaintiff Barbara E.
Varner