

# ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA E. VARNER, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO: 1:CV 01-0725 |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| NINTH JUDICIAL DISTRICT, | : | |
| CUMBERLAND COUNTY; | : | JURY TRIAL DEMANDED |
| CUMBERLAND COUNTY; S. GARETH | : | |
| GRAHAM, individually; and JOSEPH | : | Judge Yvette Kane |
| OSENKARSKI, individually, | : | |
| Defendants | : | |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
TO COMPEL PRODUCTION OF DOCUMENTS AND
TO COMPEL THE DEPOSITION OF DAVID W. DELUCE**

<u>Procedural History</u>

Plaintiff commenced this action on April 26, 2001 by filing a complaint under Title VII and the Pennsylvania Human Relations Act. All defendants filed motions to dismiss the complaint by July 5, 2001, which motions were decided by this Court on September 30, 2002.

On December 3, 2002, the Court issued a Scheduling Order providing, *inter alia*, that discovery shall be completed by April 30, 2003 and that any dispositive motions, as well as supporting briefs, be filed on or before June 18, 2003. The Order also provided that the case be listed for trial in October, 2003.

The parties have conducted extensive written discovery and have taken nearly twenty depositions to date.  Prior to the close of discovery, on April 25, 2003, Varner filed a motion to compel discovery of a copy of the investigative report given to Judge Harold E. Sheely in or about July, 1997 concerning the investigation of Varner's allegations of sexual harassment and sex discrimination, as well as a copy of all interview notes or other documents which constitute the investigation of Varner's allegations of sexual harassment and sex discrimination, and to compel the deposition of David W. DeLuce.  The plaintiff believes that she cannot complete discovery until she has received a ruling on the pending discovery motion. Coincident to the filing of this motion, Varner filed a joint motion to extend discovery by sixty days beyond the ruling on this motion.

This brief is filed in support of her motion.[1]

Statement of Facts

Plaintiff Barbara Varner, a Probation Officer, sues Cumberland County and the local county court plus the two supervisory individuals involved for sexual harassment, sex discrimination, and retaliation.  Varner's immediate supervisor, S. Gareth Graham, made sexual overtures to Varner which she rebuffed.  Graham then engaged in repeated and overt sexual harassment.  Graham's supervisor, Joseph Osenkarski, refused to take action to stop the

_____

[1] Because of the rather curious way in which these issues have arisen in this case, Plaintiff is required to assume some of the arguments which will be used by the Defendants to protect the materials from discovery. After the Defendants have clarified the nature of their objections, Plaintiff will address those precise arguments in her reply brief.

2

harassment when Varner complained to him.  Osenkarski himself engaged in inappropriate sexual comments in Varner's presence.  Varner's complaints to the County and the Court, including many in writing, were unsuccessful in stopping the harassment.

After Varner complained to Daniel Hartnett, the County's Director of Human Resources, about threats of physical harm to Varner, an investigation occurred.  David W. DeLuce, a member of the law firm engaged as the county solicitor, conducted this investigation by interviewing witnesses.  A recommendation was made to then President Judge Sheely, but the Court refused to implement the DeLuce recommendations for remedial action.

On July 3, 2002, Plaintiff requested that both the Court and County Defendants produce "a copy of the investigative report given to Judge Harold E. Sheely in or about July, 1997 concerning the investigation of Varner's allegations of sexual harassment and sex discrimination." [hereinafter referred to as the DeLuce Report].  [A copy of the relevant pages of this discovery are contained in the separately bound Documents in Support of Plaintiff's Motion to Compel Production of Documents and Deposition of David W. DeLuce as Exhibit A.]  In the same request, Plaintiff asked both defendants to produce "a copy of all interview notes or other documents which constitute the investigation of Varner's allegations of sexual harassment and sex discrimination." [Exhibit A].  For unrelated reasons, discovery was stayed for a considerable period of time.

On October 29, 2002, the County defendant objected to the requested production on the basis of attorney client privilege, confidentiality, and work product.  [A copy of the relevant pages of this discovery are contained in the separately bound Documents in Support of

3

Plaintiff's Motion to Compel Production of Documents and Deposition of David W. DeLuce as Exhibit B.]

On November 18, 2002, the Court Defendant objected to the production requests on the basis that the DeLuce Report is "privileged and confidential in accordance with the objection previously asserted by Cumberland County." [Exhibit C.]

During depositions of the two Judges and other probation officer witnesses, counsel for the County and the Court Defendant instructed these witnesses not to answer any questions about the DeLuce investigation. [See, for example, Documents in Support, Exhibits D and F].

Statement of Questions Involved

1.      May the County and the Court assert attorney-client privilege to protect the very investigation which they use as a Faragher-Ellerth defense or has the use of that defense constituted a waiver?

2.      Has the County's sharing of the DeLuce Report with non-clients (the Judges) constituted a waiver of the attorney-client privilege?

3.      May the County and the Court assert attorney-client privilege when the attorney acted in a human resources/investigative capacity rather than as an attorney?

4.      May the County and the Court assert the attorney work product doctrine to protect the investigation from discovery?

5.      Is Varner entitled to take the deposition of David W. DeLuce, an attorney who investigated the allegations of sexual harassment and discrimination?

4

Argument

> **A.   THE COUNTY AND THE COURT MAY NOT ASSERT ATTORNEY-CLIENT PRIVILEGE TO PROTECT THE VERY INVESTIGATION WHICH THEY USE AS A <u>FARAGHER-ELLERTH</u> DEFENSE.**

Employers have a legal obligation to investigate complaints of sexual harassment. <u>Meritor Savings Bank v. Vinson,</u> 477 U.S. 57, 72-73 (1986).   In determining employer liability, the United States Supreme Court, as well as EEOC regulations, examine the employer's response to sexual harassment complaints.  <u>Burlington Industries, Inc v. Ellerth,</u> 524 U.S. 742, 765 (1998); <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 806 (1998); 29 C.F.R. § 1605.1 l(f).   As a defense to a sexual harassment complaint, employers may contest liability by showing that (1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.  <u>Ellerth</u>, 524 U.S. at 765; <u>Faragher</u>, 524 U.S. at 807.

Both the County and the Court defendants have asserted the <u>Faragher-Ellerth</u> defense. [See recitation in Motion, ¶¶ 5, 6].  The DeLuce Report unquestionably provided much of the information on which both Judges Hoffer and Sheely based their responses to Varner's allegations.  At the time Judge Sheely was deciding whether or not to act on Varner's allegations of sexual harassment, he specifically referenced the information which he obtained from the DeLuce Report in his memorandum of July 11, 1997:  "I have read the detailed report submitted by the County solicitor concerning the investigation on matters involving the

5

above two parties [Varner, Graham]." In addition, Judge Sheely stated that "I do find disturbing from the report [DeLuce Report] the bad language used by Mr. Graham in some conversations with Ms. Varner." [A copy of this July 11, 1997 Memorandum is contained in the separately bound Documents in Support of Plaintiff's Motion to Compel Production of Documents and Deposition of David W. DeLuce as Exhibit E.]

Judge Hoffer also relied upon the information from the DeLuce Report. During the April 4, 2003 deposition of Judge George Hoffer, the Judge stated that he examined and made reference to the DeLuce Report [Exhibit F, Hoffer Depos, pp. 7-8; 13; 62-63; 68-71], that he "drew upon the DeLuce Report" [Hoffer Depos, p. 69], that he did not hire or assign anyone to investigate the allegations that were made by Mr. Varner against Mr. Graham except examining the DeLuce Report [Hoffer Depos, p. 7-8], and that he knew nothing about Varner's allegations against Osenkarski "except what was contained in the report." [Hoffer Depos, p. 26-27]. Judge Hoffer also testified that he based his decision, in part, on the contents of the DeLuce Report and that he made up his mind about what to do with Graham based upon "the report and the interviews with the various PO's I talked to." [Hoffer Depos, pp. 77-78]. [All references are contained in Exhibit F].

The Third Circuit Court of Appeals has enumerated the following elements as the test for the attorney-client privilege: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client, (b)

without the presence of strangers, (c) for the purpose of securing primarily either (i) an opinion

on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the

purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not

waived by the client. In re Grand Jury Investigation, 599 F.2d 1224, 1235 (3d Cir. 1979).

The facts elicited at deposition establish that neither of the Judges considered Mr.

DeLuce to be his attorney.   [Exhibit D - Sheely Depos, p. 9 ; Exhibit F - Hoffer Depos, p.

14].   When the Court Defendant asserts the attorney-client privilege, the assertion must fail

based upon In re Grand Jury Investigation, supra, because the two judges did not seek "to

become a client" of DeLuce, the communication was not made with DeLuce "acting as a

lawyer," and the communication between the two Judges and DeLuce was not "for the purpose

of securing primarily either (1) an opinion on law or (ii) legal services or (iii) assistance in

some legal proceeding."   Varner contends that the Court cannot assert attorney-client

privilege at all with regard to the DeLuce investigation report, the underlying interviews, or

the communications between DeLuce and the judges.

With regard to the County Defendants,  DeLuce was not acting as a lawyer but rather

as a fact-finder or investigator.  He was not functioning as a lawyer.  No charge of

discrimination had been filed with any administrative agency and certainly no lawsuit had been

filed in the summer of 1997.  Therefore, the attorney-client privilege cannot apply because

DeLuce was simply a lawyer acting as an investigator.

In Payton v. New Jersey Turnpike Authority, 148 N.J. 524, 691 A.2d 321(1997), a

female public employee brought an action against her employer and two of her supervisors for

sexual harassment under New Jersey law. The court held "that materials relating to a sexual harassment investigation are generally discoverable." The court reasoned that the efficacy of an employer's remedial program is highly relevant to both an employee's sexual harassment claim against an employer and the employer's defense to liability. Id. at 537. The court further reasoned that courts should evaluate not only the final outcome of an employer's response but also the entire process of the response, including its timeliness. Id. at 538- 539.  When the defendant raised the evidentiary privileges of attorney-client privilege and work-product, the court held that documents resulting from investigations conducted by in-house counsel still might be discoverable depending on the attorney's role in the investigation. Id. at 550- 551.

The court further explained that a fine line exists between an attorney who provides legal services or advice to an organization and one who performs essentially nonlegal duties. An attorney who is not providing legal services or legal advice does not qualify as a "lawyer" for purposes of privilege. Id. at 550-551.

In the alternative, Plaintiff contends that the assertion of the affirmative defenses constitutes a waiver of the privilege. Both of the non-individual defendants have raised the Faragher-Ellerth defenses. In McGrath v. Nashua County Health Care Corp., 204 F.R.D. 240 (E.D.N.Y. 2001), the court held that an outside counsel's unfinished report of a sexual harassment investigation, her notes, and any sections of her report which were deleted or redacted were discoverable. McGrath alleged that the former chairman of the Nassau Health Care Corporation ("NHCC") sexually harassed her and that the NHCC negligently permitted the chairman to continue to harass her by not terminating him. Id. at 241. When McGrath

8

reported the harassment, the NHCC investigated her claim through its outside counsel. Id. at 242.  Following counsel's investigation, the alleged harasser was removed from his position as chairman, but remained a member of the board.  Plaintiff sought production of the various documents pertaining to NHCC's internal investigation.

The McGrath court noted that the attorney-client privilege may be waived where a party affirmatively relies on a privileged communication to advance a legal position.  Under the fairness doctrine, parties waive the attorney-client privilege by asserting a claim that in fairness requires examination of otherwise protected communications. Id.  The court reasoned that under both the attorney-client privilege and the work product doctrine, fairness dictates that an employer cannot invoke the "Faragher-Ellerth" affirmative defense, and not allow the plaintiff to assess the full measure of the investigation and the documents relating to the investigation. Id. at 246.

In Worthington v. Endee, 177 F.R.D. 113 (N.D.N.Y. 1998), a New York court held that the defendant's assertion of the affirmative defense of remedial action placed the entire investigatory report at issue.  Only a redacted investigative report had been produced.  Plaintiff sought to obtain the entire report and to take a deposition of the individual hired to perform the investigation, including the notes, but the defendant asserted the attorney-client privilege and work product doctrine.   The court held that "without allowing discovery of the entire report and the notes from the investigation, the defendants' protections under the attorney-client privilege and the work product doctrine are simultaneously used as a shield and a sword." Id. at 118.  By placing the investigation at issue, the defendants had waived the privilege and the

9

court ordered the defendant to produce the complete report and notes of the investigation. It also permitted the attorney who performed the investigation to be deposed. Id. at 118.

**B.      THE COUNTY'S SHARING OF THE DELUCE REPORT WITH NON-CLIENTS CONSTITUTED A WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE.**

Any attorney-client privilege running between DeLuce and the County Defendant has been waived when facts and opinions were shared with Judges Hoffer and Sheely, individuals who were not DeLuce's clients. The depositions of Judges Hoffer and Sheely confirm that neither Judge considered DeLuce to be his attorney. The DeLuce report was shared with both of them.

A part of the Third Circuit's test set forth in In re Grand Jury Investigation, supra, is that the communication be made "without the presence of strangers." Here, the allegedly privileged communication, a written report, was shared with the two judges, strangers to DeLuce's alleged client, the County. In addition, it is believed that DeLuce met with both Judges and may have shared additional information which he had gathered in the investigation. This is precisely why Varner seeks to depose DeLuce. Efforts to obtain these facts from the judges have been unsuccessful because the judges were instructed not to answer any questions posed to them about the DeLuce Report or the discussions between DeLuce and the judges.

10

### C. THE COUNTY AND THE COURT MAY NOT ASSERT THE ATTORNEY-CLIENT PRIVILEGE WHEN THE ATTORNEY ACTED IN A HUMAN RESOURCES/INVESTIGATIVE CAPACITY RATHER THAN AS AN ATTORNEY.

The attorney-client privilege is only applicable when an attorney conducts an investigation for the purpose of preparing for litigation or providing legal advice. Payton, supra, at 551. If the purpose of the attorney's investigation was simply to enforce a defendant's anti-harassment policy or to comply with the legal duty to investigate and to remedy the allegations, then the privilege does not apply. The New Jersey Supreme Court in Payton ordered the lower court to conduct an in camera review of the documents and determine what the attorney's role was in the investigation. Id. at 554.

Here, the role of DeLuce was that of an investigator: to examine the Varner complaints, interview witnesses about those complaints, and reach some conclusions about what, if anything, should be done to remedy the employee's complaints. This is an investigative role, not the role of an attorney advising his client.

### D. THE COUNTY AND THE COURT MAY NOT USE THE ATTORNEY WORK PRODUCT DOCTRINE TO PROTECT THE INVESTIGATION FROM DISCOVERY.

Federal Rule of Evidence 501 addresses privilege. Generally speaking, federal law applies to privileges asserted on federal claims and state law applies to privileges relating to state law claims. Under federal law, an attorney's trial preparation thoughts and materials are

11

protected by the attorney work product doctrine.  Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947).

In Payton, supra, it was held that the same rules that apply to attorney-client privilege apply to the work product doctrine.  However, the court noted that the work product doctrine most likely did not protect the investigatory materials in Payton because the claimant's access during discovery to the same persons interviewed in connection with the employer's investigation would not provide the claimant with the same information learned by the employer during the investigation.  The plaintiff, in order to evaluate the defenses raised, needs to know exactly what the employer knew and when it knew it.  Id. at 554-555.

In Harding v. Dana Transport, Inc., 914 F. Supp. 1084, 1099 (D.C. N.J. 1996), the Court specifically addressed the application of the work product doctrine to an employer's attempt to protect an attorney's investigation in a sexual discrimination action:

> . . . this court finds that Dana has impliedly waived the protection provided by the work product doctrine. Dana attempts to defend employer liability under Title VII based in part upon its investigation of the plaintiffs' claims. [citation deleted].  Its investigation consists of Mr. Bowe's interviews and the reporting of Mr. Bowe's interviews to Dana's management. The fact that Mr. Bowe acted simultaneously as Dana's attorney does not change the significance of Dana's placing the investigation at issue by asserting the affirmative defense. Principles of fairness and consistency require that Dana produce all of the underlying documentation.  It would be fundamentally unfair for the plaintiffs to be required to meet an element of their prima facie case without sufficient information regarding the factual substance of that element. Justice requires that the plaintiffs be permitted to respond to the defenses asserted with a full spectrum of information.

12

Varner contends that the Court cannot assert the work product doctrine because DeLuce was not the Court's attorney. Neither the County nor the Court should be permitted to protect the DeLuce investigation because there is substantial need for Varner to have access to what the County knew, what the Court knew, and how reasonable was their response to this information.

### E.    THE PLAINTIFF IS ENTITLED TO DEPOSE DELUCE.

Plaintiff has not noticed the deposition of David W. DeLuce, Esq. because it is believed that these same privileges would be asserted, that DeLuce would be prohibited from answering questions about his investigation, and that the deposition would be an exercise in futility without access to the written DeLuce Report and the supporting documentation.

The County Defendant initially noticed the deposition of County Human Resources Director Daniel Hartnett for Tuesday, April 30, 2003. That deposition was canceled by the County Defendant. Plaintiff has not rescheduled the deposition of Daniel Hartnett and cannot effectively conduct his deposition without the information contained in the DeLuce Report and the supporting documentation.

Plaintiff expects to question DeLuce about the documents he prepared, the method he used to investigate Varner's complaints, what complaints he actually investigated, and the information he obtained from witnesses. In Sealy v. Gruntal & Company, 1998 U.S. Dist. LEXIS 15654, 1998 WL 69257 (S.D.N.Y. 1998), the New York court considered and ordered

13

a limited deposition of the attorney who actually conducted the investigation of a sexual harassment complaint.

It is critical to the plaintiff to know what information DeLuce relayed to the judges. Otherwise, it is impossible for anyone to know the facts underlying the judges' actions or to determine whether the actions of the judges were reasonable. All of this information would then be used to depose Daniel Hartnett. It may also be necessary to ask additional questions of the Judges.


Conclusion

For all of the reasons set forth here, Varner is entitled to the production of the DeLuce Report and to the interview notes and other communications relating to the DeLuce Report. Varner is also entitled to depose DeLuce to supplement all of this information and to address matters not clear from the written materials.


Respectfully submitted,


Debra K. Wallet, Esquire
24 N. 32nd Street
Camp Hill, PA  17011
(717) 737-1300
I.D. #23989


14

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA E. VARNER, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO: 1:CV 01-0725 |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| NINTH JUDICIAL DISTRICT, | : | |
| CUMBERLAND COUNTY; | : | JURY TRIAL DEMANDED |
| CUMBERLAND COUNTY; S. GARETH | : | |
| GRAHAM, individually; and JOSEPH | : | Judge Yvette Kane |
| OSENKARSKI, individually, | : | |
| Defendants | : | |

## PROOF OF SERVICE

I, Debra K. Wallet, Esq., hereby certify that on May 9, 2003, I served a copy of the

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF**

**DOCUMENTS AND TO COMPEL THE DEPOSITION OF DAVID W. DELUCE** by first

class mail, postage prepaid, addressed to:

James K. Thomas, II, Esq.
Paul J. Dellasega, Esq.
THOMAS, THOMAS & HAFER, LLP
305 North Front St., 6th Floor
P.O. Box 999
Harrisburg, PA  17108
Attorney for Cumberland County  (and by electronic means)


A. Taylor Williams, Esq.
Administrative Office of Pennsylvania Courts
1515 Market Street, Suite 1414
Philadelphia, PA  19102
Attorney for Commonwealth of PA, Ninth Judicial District

David J. MacMain, Esq.
MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA  19109
Attorney for Defendant S. Gareth Graham

Paul Lancaster Adams, Esq.
SWEENEY & SHEEHAN
1515 Market Street, 15th Floor
Philadelphia, PA  19102-1983
Attorney for Defendant Joseph Osenkarski

Debra K. Wallet, Esquire
24 North 32nd Street
Camp Hill, PA  17011
(717) 737-1300
I.D. No. 23989
Attorney for Plaintiff Barbara E.
    Varner