IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA E. VARNER,<br>Plaintiff | : :  : | |
| v. | : : | CIVIL ACTION NO. 1:CV-01-725 |
| COMMONWEALTH OF PENNSYLVANIA,<br>NINTH JUDICIAL DISTRICT,<br>CUMBERLAND COUNTY, et al.,<br>Defendants | : : : : | (JUDGE KANE)<br><br>ELECTRONICALLY FILED |

BRIEF IN OPPOSITION TO PLAINTIFF'S
<u>MOTION TO COMPEL</u>

**I.      COUNTER-STATEMENT OF THE PROCEDURAL HISTORY**

Plaintiff commenced this action on April 26, 2001 by filing a complaint under Title VII and the Pennsylvania Human Relations Act. All defendants filed motions to dismiss the complaint; the Court ruled on these motions on September 30, 2002.

On December 3, 2002, the Court issued a Scheduling Order providing, *inter alia*, that discovery shall be completed by April 30, 2003 and that any dispositive motions, as well as supporting briefs, be filed on or before June 18, 2003. The Order also provided that the case be listed for trial in October 2003.

The parties have conducted extensive written discovery and have taken nearly twenty depositions to date. Prior to the close of discovery, on April 25, 2003, Varner filed a motion to compel discovery of a copy of the memorandum given to Judge Harold E. Sheely in or about July 1997 concerning the factual review and analysis of Varner's allegations of sexual

harassment and sex discrimination, as well as a copy of all interview notes or other documents related thereto, and to compel the deposition of David W. DeLuce.

## II.   COUNTER-STATEMENT OF FACTS

Plaintiff, Barbara Varner, sued Cumberland County ("County" or "Defendant County"), the Cumberland County Court of Common Pleas ("Defendant Court"), and two probation officers under the jurisdiction of the Court, S. Gareth Graham and Joseph Osenkarski, for sexual harassment, sexual discrimination, and retaliation.  Varner alleges that her immediate supervisor, Gary Graham, made sexual overtures which she rebuffed.  Varner alleges Graham then engaged in behavior which she thought was harassing.  She alleges that Graham's supervisor, Joe Osenkarski, did not act on Varner's complaints made to him and, further, that he also made inappropriate sexual comments in the workplace.

Varner's initial complaints were made to Dan Hartnett, the County's then Director of Human Resources.  The County engaged Horace Johnson, County Solicitor, who in turn requested David DeLuce, a member of his law firm specially appointed to handle employment matters for the County, to review the facts of the situation and provide guidance as to the nature of sexual harassment law and, ultimately, to provide advice to the County based upon his credibility determinations and analyses of the facts in relation to the law.

The evidence will show that DeLuce prepared a memorandum to Horace Johnson, the County Solicitor, which conveyed his impressions, opinions and conclusions regarding Varner's allegations.

The evidence will also show that this report was fatally flawed.  While DeLuce interviewed a number of witnesses, the two chief witnesses lied to him.  Gary Graham failed to disclose to DeLuce the existence of a 4 to 5 year consensual adulterous affair with his accuser,

Barbara Varner. Presumably, Graham prevented DeLuce from learning the truth in order to shield his wife and family from the consequences of this long-term adultery becoming public knowledge.

Varner, on the other hand, complained extensively to DeLuce about rude behavior on the part of Graham without ever divulging to DeLuce the existence of the affair, that the affair had been ended by Graham, and that there were bad feelings as a consequence of the end of the affair. If this case goes to trial, the County will, in fact, argue that what Varner experienced was not sexual harassment but was the ill feelings and harsh words that go along with the end of an illicit and salacious sexual fling that lasted almost half a decade. Because the negative consequences of the termination of an illicit sexual affair are generally not considered sexual harassment–the law does not favor adulterers–Varner's chances of success in this litigation are poor.

While Varner continues to deny the affair, she has been caught in a number of falsehoods which confirm the veracity of Graham's story. For example, Graham testified that Varner wanted him to engage in anal sex with her based upon an article she had read in Redbook magazine. At her deposition, Varner denied ever subscribing to Redbook magazine. Subpoenas issued by the County have, in fact, produced computer evidence that Varner did subscribe to Redbook magazine in 1992 thereby (a) confirming Graham's story and (b) showing Varner to be a liar.

Because of the foregoing facts, which were not known or revealed to DeLuce at the time he prepared his memorandum, the County does not consider DeLuce's memorandum to contain an accurate analysis of the facts in the case since it is based on falsehoods as to the critical element of the case, i.e., the half decade long adulterous fling.

Nonetheless, it is clear that in the early stage of this case before the adulterous fling became known to the authorities, the County did in fact recommend and request that the Court discharge Graham and Osenkarski. (The Court, which has the sole and exclusive power to hire/fire or discipline each probation officer, ultimately chose not to follow that recommendation after learning of the adulterous affair.) The County will argue that this recommendation satisfies its obligations under *Faragher* and *Ellerth*. The County will present this evidence through the testimony of Dan Hartnett, former Human Resources Director, and John Ward, former County Clerk. The identities of Hartnett and Ward have been disclosed in the County's Rule 26 Disclosures. Plaintiff never attempted to schedule the deposition of Ward. The County scheduled the deposition of Hartnett but subsequently canceled that deposition, and Plaintiff made no effort to reschedule it.

The County argues that, because it recommended to Defendant Court that Varner's two alleged sexual harassers be discharged, Varner has received from the County the maximum relief that it could possibly provide to Varner. However, that recommendation was a consequence of being based on the lies of two adulterers. Therefore, in view of the County's contention that DeLuce's memorandum is fatally inaccurate due to the unscrupulous falsehoods related to him by the two Court employees, the County no longer relies on the memorandum's accuracy and the memorandum should be protected from discovery.

**II.    COUNTER-STATEMENT OF QUESTIONS INVOLVED**

    **A.    WHETHER THE PLAINTIFF'S MOTION TO COMPEL MUST BE DENIED WHEN THE REPORT, INTERVIEW NOTES, AND OTHER DOCUMENTATION SOUGHT BY THE PLAINTIFF ARE PROTECTED BY THE ATTORNEY-CLIENT AND/OR WORK PRODUCT PRIVILEGES.**

    **B.    WHETHER THE PLAINTIFF'S MOTION TO COMPEL MUST BE DENIED WHEN THE DEFENDANT HAS NOT WAIVED THE ATTORNEY-CLIENT OR WORK PRODUCT PRIVILEGES.**

Suggested Answer for Each:  In the affirmative

**III.    ARGUMENT**

    **A.    PLAINTIFF'S MOTION TO COMPEL MUST BE DENIED BECAUSE THE DOCUMENTATION SOUGHT IS PROTECTED BY THE ATTORNEY-CLIENT AND/OR WORK PRODUCT PRIVILEGES**

The oldest common law privilege for confidential communications is the attorney-client privilege. *Peterson v. Wallace Computer Systems, Inc.*, 984 F. Supp. 821, 824 (D. Vt. 1997). The privilege protects confidential communications between a client and lawyer when legal advice has been sought from the lawyer in his capacity as such. *Long v. Anderson Univ.*, 204 F.R.D. 129 (S.D. Ind. 2001). The privilege promotes complete and frank communication between the attorney and client by allowing the client to safely seek representation of his interests and empowering the attorney to provide sound legal advice. *Waugh v. Pathmark Stores, Inc.*, 191 F.R.D. 427 (D. N.J. 2000); *Peterson*, 984 F. Supp. at 824  (each citing *Upjohn v. United States*, 449 U.S. 383, 389 (1981). The Third Circuit has held that the privilege applies where:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and the (4) privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3rd Cir. 1979) (quoting *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950).

Similarly, the work product doctrine shields from discovery documents prepared or collected by an attorney in anticipation of litigation. *In re Grand Jury*, 599 F.2d at 1228; *Peterson*, 984 F. Supp. at 826. The privilege exists to provide a "zone of privacy for strategic litigation planning" without intrusion from opposing counsel. *Peterson*, 984 F. Supp. at 826. Two types of work product exist: (1) fact work product and (2) core work product (attorney's mental impressions, conclusions, opinions, legal theories, etc.). *McGrath v. Nassau Co. Health Care Corp.*, 204 F.R.D. 240 (E.D. NY 2001). To overcome the privilege for fact work product, the party seeking production must demonstrate substantial need for the materials, and the inability, without undue hardship, of obtaining the materials from some other way. *Long*, 204 F.R.D. at 134; *McGrath*, 204 F.R.D. at 243. If the information can be obtained via interviews or depositions, the privilege is not overcome. *See*, *McIntyre v. Main Street and Main Inc.*, 2000 U.S. Dist. LEXIS 19617 (N.D. Ca. 2000). Core work product is afforded "special protection" because it is "the most sacrosanct of all forms of work product." *Krisa v. The Equitable Life Assurance Society*, 196 F.R.D. 254, 258 (M.D. Pa. 2000)(citations omitted); *In re Grand Jury*, 599 F.2d at 1231 (citing Fed.R.Civ.P. 26(b)(3). As such, it is "discoverable only in a 'rare situation.'" *In re Grand Jury*, 599 F.2d at 1231 (quoting *Hickman v. Taylor,* 329 U.S. 495, 513 (1947) Furthermore, the doctrine attaches to materials created prior to litigation actually commencing if the documents were created in expectation of litigation. *Id.* at 1229.

The documentation sought by Plaintiff is subject to the attorney-client privilege and/or the work product doctrine. Defendant County clearly utilized counsel in anticipation of litigation. After receiving a complaint from the Plaintiff regarding alleged sex harassment and discrimination, Defendant County asked the County Solicitor and its designee, David DeLuce, to advise it regarding its legal obligations with respect to the Plaintiff's allegations. Employment

matters had previously been handled through internal means; however, since from the allegations of Plaintiff's complaint it appeared most likely that Title VII litigation would ensue, it was deemed necessary to obtain advice from counsel. Furthermore, as evidenced by David DeLuce's affidavit attached hereto, Attorney DeLuce undertook the task with the understanding that he was to provide his superior, the County Solicitor, with his mental impressions, opinions and advice regarding the Plaintiff's allegations. In fact, DeLuce's memorandum, which contains his legal analysis and opinions regarding Plaintiff's claims, begins with the disclaimer "Confidential Attorney Impressions Not For Discovery." Moreover, at the time Mr. DeLuce prepared his memorandum, or within two weeks thereafter, Plaintiff did indeed file a complaint with the EEOC as anticipated.

In similar cases, various courts have deemed the attorney-client and/or work product doctrines exist when counsel was hired to advise a client regarding harassment and discrimination matters. *See, e.g.*, *McIntrye*, *supra*; *Robinson v. Time Warner, Inc.*, 187 F.R.D. 144 (S.D. NY 1999); *Boling v. First Utility District of Knox Co.*, 1998 U.S. Dist. LEXIS 21157 (E.D. Tenn. 1998). Even *Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084 (D. N.J. 1996), cited extensively by Plaintiff herein, concluded that the attorney-client privilege applied and, thus, the assertion that the attorney was acting as a factfinder rather than as an attorney was not persuasive. *Id*. at 1091 (finding investigation was in furtherance of the representation and clearly fell within the purview of attorney activity). Accordingly, the materials sought by Plaintiff fall within the ambit of the attorney-client privilege or the more inclusive work product doctrine.

**B.   PLAINTIFF'S MOTION TO COMPEL MUST BE DENIED BECAUSE THE DEFENDANT HAS NOT WAIVED THE ATTORNEY-CLIENT OR WORK PRODUCT PRIVILEGES.**

Plaintiff's claim that Defendant County has waived the attorney-client privilege by sharing DeLuce's memorandum with Judge Sheely is disingenuous at best.

If Defendant County has waived its attorney-client privilege by showing the memorandum to Judge Sheely, certain conclusions are inevitable. First among them is the fact that the privilege is only waived by sharing information covered by the privilege with an outside, separate and distinct party. If Defendants Court and County are joint employers, as implicitly asserted by Plaintiff, and therefore, effectively one entity for Title VII purposes, the privilege cannot be waived because the privileged information has not been shared with an outside party. Plaintiff has been less than straightforward with the Court in its argument with regard to its contention as to whether Defendant County is a joint employer with Defendant Court. On the one hand, it is clear that Plaintiff apparently seeks to raise that argument yet, on the other, it appears the Plaintiff is abandoning the argument since, if a joint employer relationship exists, the privilege was not breached by showing the memorandum to Judge Sheely.

This again leads to inevitable consequences. If Cumberland County is not a joint employer, it is not a party to the case. Each party in this case concedes that the right to hire/fire and discipline employees of the probation department is vested in the President Judge of the Court of Common Pleas. No dispute, therefore, exists as to the fact that the Defendant Court is the employer of both the Plaintiff and Defendants Graham and Osenkarski.

If Defendant County is not a joint employer then it is not an employer of Varner, Graham or Osenkarski. If it is not an employer, it must be dismissed from this action and, under that

circumstance, Defendant County would surely be hard pressed to deny that it waived the privilege when it shared the memorandum with Judge Sheely.

Plaintiff's Complaint asks not only for monetary damages but for injunctive relief as well. That particular relief is outlined in detail in the body of her Complaint. The alleged discriminatory conduct she wants enjoined would require:

1. The Plaintiff being awarded additional seniority time over and above what she already has. *See* Complaint, paragraph 20(d).

2. A change in the time when Plaintiff would be permitted to leave the office for juvenile commitment trips. *See* Complaint, paragraph 20(g).

3. A change in the work rules applicable to the Plaintiff. *See* Complaint, paragraph 20(h).

4. A change in the areas of the Courthouse where the Judge will permit the Plaintiff to travel. *See* Complaint, paragraph 32(v).

5. A change in her job position from probation officer to program director of the Cumberland County Court Appointed Special Advocate (CASA). *See* Complaint, paragraph 32(c).

Should the Court grant oral argument on this Motion or defer the matter to an magistrate for record testimony, it is respectfully submitted that Defendant Court would concede that this injunctive relief is entirely outside the ability of Defendant County to effectuate. The same, of course, is true for any decision to demote or discharge Graham or Osenkarski.

This issue is critical to not only the resolution of the Motion now before the Court but also to the ultimate disposition of whether the County will remain involved in this case. Therefore, oral argument or a hearing before the Magistrate Judge is necessary for Plaintiff's

counsel to finally clearly and openly state whether she claims entitlement to DeLuce's memorandum because privilege has been waived, or whether she concedes that Defendant County and Defendant Court are not joint employers. Whatever representation Plaintiff's counsel makes results in the likely disposition of this Motion, may avoid an extended motion for summary judgment and will streamline the remaining pre-trial processes of this action.

Right now, the Plaintiff wants to have her proverbial cake and eat it too, arguing joint employer out of one side of her mouth and single employer from the other.

Even Defendant Court appears to concede the absence of a joint employer relationship. This is confirmed by the deposition testimony of President Judges Sheely and Hoffer.

> Q. Judge Sheely, did you consider Mr. DeLuce to be your attorney?
> A. No. I know he was of a firm that represented the county.

Sheely Tr. at 9.

> Q. Judge Hoffer, was David DeLuce acting as your attorney at the time?
> A. No, ma'am. No, ma'am, absolutely not.

Hoffer Tr. at 14.

Under the circumstances of this case, the County may raise the affirmative defense provided for in *Faragher* and *Ellerth* without abandoning its entitlement to the attorney-client and work product privileges.

In *Faragher* and *Ellerth*, the United States Supreme Court held that, in defending sex harassment cases, employers may raise a defense to liability by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S.

775, 807 (1998). An employer does not automatically put privilege at issue by simply invoking the *Faragher-Ellerth* defense. *McGrath v. Nassau Co. Health Care Corp.*, 204 F.R.D. 240, 244 (E.D. NY 2001). This is because doing so, "would eviscerate both the attorney-client privilege and the work product doctrine." *Id*.

In *McIntyre*, *supra*, the defendant hired an outside law firm to conduct an investigation regarding the plaintiff's claims of sex harassment and race and sex discrimination. Plaintiff acknowledged that the attorney memoranda and interview notes, which contained mental impressions and theories, fell within the purview of the attorney-client privilege and/or the work product doctrine. Plaintiff contended, however, that the defendant forfeited the privilege through waiver—that the defendant waived the privilege protections by asserting an affirmative defense under *Faragher-Ellerth*. The court acknowledged the District Court of New Jersey's holding in *Harding*, *supra*, that a defendant cannot rely on an investigation by outside counsel as a defense, and at the same time shield the investigation from discovery. *McIntyre v. Main Street and Main Inc.*, 2000 U.S. Dist LEXIS 19617, *9 (N.D. Ca. 2000). The court found, however, that where a defendant will not rely on the investigation by outside counsel in defending the suit, the defendant has not waived the attorney-client or work product protection. *Id*.

Defendant County cannot and will not rely on DeLuce's memorandum because it is fatally flawed. The conclusions underlying the memorandum are defective due to the lies of two adulterous Court employees. These lies are already of record. Graham in his deposition testimony acknowledged withholding evidence of his adultery from DeLuce. Varner, on the other hand, although she has lied several times during her deposition about intimate matters that could be known only by someone with whom she was intimate, continues to deny what, in trial, will be obvious, i.e., the long-term adulterous affair engaged in by the parties.

This case, therefore, presents the unique situation where an attorney memorandum based on lies of adulterers produced, whether she was entitled to it or not, the remedy Plaintiff sought, i.e., the discharge of Graham and Osenkarski. That this remedy was not implemented is apparent for two reasons: (1) Defendant County had no authority to implement the recommendation; and (2) Defendant Court chose not to follow the recommendation after learning of the adulterous affair. The County can recommend all it wants, but since Defendant Court is the employer of the probation officers, Defendant Court has the sole and exclusive power to discipline or discharge those officers.

It is respectfully submitted that <u>no one in this case</u> disputes Defendant Court's sole power to discharge.

Therefore, in accordance with *McIntyre*, Defendant County asserts that it has not waived the attorney-client or work product privileges and, as such, the notes, opinions, impressions and memorandum of Attorney DeLuce are not discoverable.

Should the Court determine that some portion of DeLuce's work product is discoverable, the discoverable information should be limited strictly to factual statements from those persons interviewed without any indication as to Attorney DeLuce's impressions, legal theories, and advice. In addition to being part of the attorney-client privilege, these products of DeLuce's legal skill are core opinion work product and therefore are afforded special protection. *See*, *Krisa*, *supra*. This is particularly true because the Defendant County has already disavowed its intention to rely on the fatally flawed memorandum engendered by the lies of two adulterers.

To the extent the court would permit a deposition of DeLuce, it is respectfully submitted that this deposition should be limited to questions regarding the facts learned during the interviews, and not questions regarding DeLuce's impressions, opinions, theories, or advice.

IV.   **CONCLUSION**

For the foregoing reasons, the County seeks the following relief in response to the Motion to Compel filed by Plaintiff:

(a)   That the Motion be denied;

(b)   Alternatively, that the Court refer the Motion to a Magistrate Judge for development of the factual record. Referrals to the Magistrate Judge in these circumstances are not unprecedented. *See*, *Peterson v. Wallace*, 984 F.Supp. 821, 40. R. Serv. 3d 225 (D. Vt. 1997).;

(c)   Alternatively, that the Court grant oral argument so that Plaintiff will finally be forced to cut the Gordian Knot and specifically indicate whether she is proceeding on a joint or single employer theory.

(d)   Alternatively, if DeLuce is required to produce anything, that production be limited to statements of fact he acquired from persons interviewed and exclude all of his opinions, impressions and legal advice.

          Respectfully submitted,
          **THOMAS, THOMAS & HAFER, LLP**

By:   s/ Laura A. Gargiulo
      James K. Thomas, II, Esquire
      I.D. No. 15613
      Paul J. Dellasega, Esquire
      I.D. No. 23146
      Laura A. Gargiulo, Esquire
      I.D. No. 86128
      305 North Front Street
      P.O. Box 999
      Harrisburg, PA  17108-0999
      (717) 237-7100

Date:   May 16, 2003
236826v1

## **CERTIFICATE OF SERVICE**

   I, Laura A. Gargiulo, Esquire, Attorney for Thomas, Thomas & Hafer, LLP, hereby certify that a copy of the foregoing document was served upon the following, by enclosing a true and correct copy in an envelope addressed as follows, postage prepaid:

Debra K. Wallet, Esquire
24 North 32nd Street
Camp Hill, PA  17011

A. Taylor Williams, Esquire
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA  19102

David J. MacMain, Esquire
Montgomery, McCracken,
 Walker & Rhoads, LLP
123 South Broad Street
Avenue of the Arts
Philadelphia, PA  19109

Paul J. Adams, Esquire
SWEENEY & SHEEHAN, P.C.
1515 Market Street, 15th Floor
Philadelphia, PA  19102

                **THOMAS, THOMAS & HAFER, LLP**

            By: <u>s/ Laura A. Gargiulo</u>
               Laura A. Gargiulo, Esquire

DATE:  May 16, 2003