IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA E. VARNER,<br>    Plaintiff | :<br>: |
| | :   CIVIL ACTION NO. 1:CV-01-725 |
| v. | : |
| | :   (Judge Kane) |
| COMMONWEALTH OF<br>PENNSYLVANIA, NINTH JUDICIAL<br>DISTRICT, CUMBERLAND<br>COUNTY; CUMBERLAND COUNTY;<br>S. GARETH GRAHAM; and<br>JOSEPH OSENKARSKI,<br>    Defendants | :<br>:<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff's motion to compel the production of documents and to compel the deposition of David W. DeLuce. The motion has been fully briefed and the County has submitted the documents in question to the Court for in camera review. For the reasons discussed below, the motion will be granted.

**I.   Background**

Plaintiff Barbara Varner is an employee of the Cumberland County Probation Department who alleges she was sexually harassed, retaliated against, and otherwise discriminated against on the basis of her sex. Her claims, brought under federal and state laws against discrimination, are against Cumberland County ("County Defendant"); the Commonwealth of Pennsylvania, Ninth Judicial District ("Court Defendant"); Gareth Graham; and Joseph Osenkarski. Plaintiff alleges that both the Court Defendant and the County Defendant are her employers for purposes of this litigation. The individuals are two of Plaintiff's former supervisors and the central figures in the

discrimination claims.

Before initiating this lawsuit, Plaintiff complained informally to her supervisors and employers about Gareth's sexual harassment. The County's human resources director, Daniel Hartnett, initiated a formal investigation of the complaints. David DeLuce, special counsel for the County at the time, was asked by the County Solicitor to lead the investigation. (See Doc. No. 60, ex. A, DeLuce affidavit). DeLuce interviewed various individuals in the probation department and wrote a memorandum to the County Solicitor which includes the factual background to the allegations, a summary of employment discrimination law, and recommendations for remedial action. The parties agree that this investigation and written report constitute the entirety of Defendant's investigation of Plaintiff's complaints.

The County provided the memorandum to the Court Defendant and recommended that the court discharge both Graham and Osenkarski. (Def. Br. at 4). The presiding judges did not investigate the claims further, nor did they discharge the individuals. The judges' deposition testimony confirms that they relied, at least in part, on the investigative report when making the employment decisions. The County Defendant has raised the affirmative defense to Plaintiff's claims that the investigation and recommendation satisfies its legal obligations under Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) to investigate and remedy the alleged sexual harassment. However, the County also argues that it will not rely on the report at trial because it is "fatally flawed."

During discovery, Plaintiff requested the production of DeLuce's investigative report along with "all interview notes or other documents which constitute the investigation of Varner's allegations of sexual harassment and sex discrimination." (Doc. No. 53, ex. A). Both the County

and Court Defendants objected to the document requests on the basis of attorney client privilege and attorney work product. Id. at exs. B & C. After deposing Judge Sheely and Judge Hoffer, presiding judges with decision making authority at times relevant to Plaintiff's complaint, Plaintiff learned that neither judge considered DeLuce to be his attorney, that no other investigations of Varner's complaints occurred, and that the judges' personnel decisions were based at least in part on the DeLuce report. However, defense counsel objected to any specific questions about the report and instructed the judges not to answer. Subsequently, Plaintiff filed the present motion to compel, seeking production of the investigative report, interview notes, and deposition of DeLuce. After briefing on the motion, this Court ordered the County Defendant to produce the investigative report for in camera review, which it promptly did.

  The twenty-five page memorandum is dated April 30, 1997, and on the first page contains a header that reads "confidential attorney impressions; not for discovery." The report is divided into four sections: (1) background, (2) employment law summary, (3) statement of facts, and (4) recommendations. The County has indicated in a letter to the Court that, while still asserting the privilege, it does not object to the production of sections one, two, and three, with one redaction in section three. (See June 11, 2003 letter). Along with the report disclosed to the Court are 56 pages of interview notes taken by DeLuce as he completed the investigation. Counsel for the County also alerted the Court to the existence of a letter from Solicitor Johnson to Hartnett, dated June 26, 1997 which is potentially relevant to this motion. Counsel characterizes the letter as summarizing the conclusions of DeLuce's report and making more specific recommendations for action in anticipation of a lawsuit. As the letter is not the subject of the motion presently before the Court, it will not be addressed herein.

**II.     Discussion**

Plaintiff argues that the investigation documents are discoverable because they do not fall within the attorney-client privilege and even if they do, any privilege retained by the County Defendant has been waived by raising the fact of the investigation as an affirmative defense and by sharing the report with non-clients. Plaintiff further argues that the work product doctrine is not applicable or has been waived, and that she is entitled to depose DeLuce. County Defendant opposes the production of the investigative documents, arguing that the attorney-client privilege or work product doctrine prevent its disclosure and that the County has not waived these privileges.

**A.     Attorney Client Privilege**

The test for the applicability of the attorney-client privilege is well settled. The privilege applies only if:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

In re Grand Jury Investigation, 599 F.2d 1224, 1233 (3d Cir. 1979). The party asserting the privilege bears burden of proving that it applies. In re Bevil, Bresler & Schulman, Inc., 805 F.3d 120, 126 (3d Cir. 1986). Moreover, "because the privilege obstructs the search of the truth . . . it must be strictly confined within the narrowest possible limits consistent with the logic of its principle." In re Grand Jury Investigation, 599 F.3d at 1245. In the corporate context, the

privilege applies; however, courts should decide the applicability on a case-by-case basis. Upjohn Co. v. United States, 449 U.S. 383, 396-97 (1981).

The privilege only covers confidential communications. See In re Grand Jury Investigation, 599 F.3d at 1233. The communications at issue here are those of County employees which formed the basis of the investigative report. As employees of the County, they were clients of DeLuce insofar as he represented the County, satisfying the first element of the test. Upjohn, 499 U.S. at 395. DeLuce is a member of the bar, but for the second element of the test to be met, this Court is required to find that he was acting as the County's lawyer in connection with these communications. Plaintiff argues that this element cannot be satisfied because DeLuce was not acting as a lawyer, but as a fact-finder or investigator. Therefore, Plaintiff argues, the County Defendant cannot assert the privilege to protect the investigative documents. Defendant contends that DeLuce was acting as a lawyer because he was asked to prepare the report in order to provide guidance on sexual harassment law and legal advice regarding Plaintiff's specific claims. (Def. Br. at 2; see also DeLuce affidavit ¶ 4).

At least with respect to sections one (background) and three (statement of facts), it is clear that DeLuce was acting as an investigator in gathering facts from individuals in the probation department and using those facts to evaluate Plaintiff's claims in the report. Section two, "employment law summary," as indicated by its title, could have been created in DeLuce's capacity as a lawyer. However, it does not rely on any confidential communications; rather, it is a summary of relevant law, and is therefore not included within the purview of the attorney-client privilege. See In re Grand Jury Investigation, 599 F.3d at 1233. The fourth section, "recommendations," is the portion of the report that the County Defendant most vehemently

5

objects to disclosing.

Upon review of the documents at issue, this Court concludes that DeLuce was acting as an investigator and not as a lawyer in his preparation of the report. The last paragraph of the memorandum, which evaluates the County's position with respect to potential claims if minimal action is taken, is the only portion which suggests that the County was specifically relying on DeLuce to provide legal advice. Other than this paragraph, DeLuce's objective in preparing the report was not to provide legal advice to the County, but to comply with the County's obligation to investigate and remedy a sexual harassment complaint. See Payton v. New Jersey Turnpike Authority, 691 A.2d 321, 327 (N.J. 1997) (finding materials relating to employer's internal investigation of alleged sexual harassment were generally discoverable and not subject to evidentiary privilege if the purpose was "to enforce defendant's anti-harassment policy or to comply with its legal duty to investigate and to remedy the allegations"). The background section of DeLuce's report begins by noting that "I have been asked by the county to investigate a complaint of sexual harassment/sexual discrimination filed by Barbara E. Varner, Juvenile Probation Officer, against both S. Gareth Graham, Supervisor of Juvenile Probation and Joseph Osenkarski, Chief Probation Officer, Juvenile Probation Department." It notably does not mention a purpose of preparing for litigation or providing legal advice and Defendant provides no other basis for such a finding other than conclusory assertions of that purpose. However, assuming, arguendo, that the entire recommendations portion is protected by the attorney-client privilege, the Court must consider whether the County Defendant has waived that privilege.

Insofar as Mr. DeLuce was acting as the County's attorney in preparing portions of the investigative report, the document will be protected from discovery if "the privilege has been (a)

claimed and (b) not waived by the client." In re Grand Jury Investigation, 599 F.3d at 1233.  A party may impliedly waive the attorney-client privilege by asserting "claims or defenses that put his or her attorney's advice in issue in the litigation." Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994).  A party waives the privilege only when he or she "has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue." Id.; see also Livingstone v. North Belle Vernon Borough, 91 F.3d 515, 537 (3d Cir. 1996) (assertion of defense directly implicating advice of counsel waives attorney-client privilege as to that issue).

    Plaintiff argues that any privilege asserted has been waived on two bases.  First, that by sharing the report with the judges, who are not DeLuce's clients, the County expressly waived the privilege.  According to Defendant, this assertion contradicts Plaintiff's position that the County and Court Defendants are joint employers.[1]  Second, Plaintiff argues that by relying on the investigation as a defense to Plaintiff's claims, the County impliedly waived the privilege.  Defendant states that although it will argue at trial that the report's recommendation to discharge Graham and Osenkarski satisfied its legal obligations under Faragher and Ellerth, it will not rely on the contents of the report, so the attorney-client privilege has not been waived. See Faragher v. City of Boca Raton, 524 U.S. 775 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).

    County Defendant argues in the pleadings that it bears no responsibility for any discrimination of Plaintiff because it investigated her complaints fully and while it had no power to actually effect the terminations, it recommended that the alleged bad actors be terminated.  Now

---

[1]The Court need not reach this issue as the motion will be decided on other grounds.

the County argues that it is the Court Defendant's responsibility to address the adequacy of the investigative report and that the report was fatally flawed such that the Court Defendant and now the County has rejected it. However, the County cannot utilize the existence of the investigative report and still avoid disclosing its contents. The issues in this case include the appropriateness of Defendants' responses to Plaintiff's complaints and whether Plaintiff was retaliated against for filing a formal complaint. Accordingly, the contents of the documents in question are highly relevant to the issues that Defendant itself has brought into this litigation. Plaintiff is entitled to discover the scope, reasonableness, and efficacy of Defendant's investigative measures, as well as the reasonableness of Defendants' reliance on the report. See Glenmede Trust Co. v. Thompson, 56 F.3d 476, 486 (3d Cir. 1995).

The Court of Appeals for the Third Circuit has not specifically addressed whether placing an attorney's investigation of a sexual harassment complaint waives the attorney-client privilege, but other district courts that have confronted this issue have concluded that it does. See, e.g., Harding v. Dana Transport, Inc., 914 F. Supp. 1084 (D.N.J. 1996); Brownell v. Roadway Package Sys., Inc., 185 F.R.D. 19 (N.D.N.Y. 1999); Pray v. New York City Ballet Co., 1997 WL 266980 (S.D.N.Y. May 19, 1997); Peterson v. Wallace Computer Servs., Inc., 984 F. Supp. 821 (D. Vt. 1997). Furthermore, in a comparable circumstance, the Third Circuit held the following:

> There is an inherent risk in permitting the party asserting a defense of its reliance on advice of counsel to define the parameters of the waiver of the attorney-client privilege as to that advice. That party should not be permitted to define selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of the waiver of the attorney-client privilege and therefore the scope of discovery. To do so would undermine the very purpose behind the exception to the attorney-client privilege at issue here-- fairness.
>
> The party opposing the defense of reliance on advice of counsel must be able to

8

> test what information had been conveyed by the client to counsel and vice-versa regarding that advice-- whether counsel was provided with all material facts in rendering their advice, whether counsel gave a well-informed opinion and whether that advice was heeded by the client.

Glenmede Trust Co., 56 F.3d at 486. This analysis applies with equal force to the present case. As was the case in Harding, a case that relied on this analysis, "[i]t would be fundamentally unfair for [plaintiff] to be required to meet an element of [her] prima facie case without sufficient information regarding the factual substance of that element." Id. at 1099.

Accordingly, this Court will overrule Defendant's objection on the basis of privilege because other than the last paragraph of the memorandum, the documents reviewed by the Court are not subject to the attorney-client privilege, and to the extent that the documents are privileged, Defendant has waived the privilege by placing the investigation at issue in this case.

### B. Attorney Work Product

The work product doctrine provides protection to materials prepared by an attorney or his or her agent in anticipation of litigation or for use in trial. Hickman v. Taylor, 329 U.S. 495 (1947). The purpose of the work product doctrine is to encourage careful and thorough preparation for litigation by a party's attorney. See United States v. Nobles, 422 U.S. 225 (1975). The doctrine has been codified in Federal Rule of Civil Procedure 26(b)(3), which provides that:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the

>required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

The work product privilege gives qualified, not absolute, protection, and may be waived. Nobles, 422 U.S. at 239. The party asserting the protection has the burden of demonstrating that the documents were "prepared in anticipation of litigation." Conoco, Inc. v. United States Dep't of Justice, 687 F.2d 724, 730 (3d Cir. 1982). The burden may not be satisfied by conclusory statements to that effect. See Fed. R. Civ. P. 26(b)(5). "Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." In re Grand Jury Investigation, 599 F.2d 1224, 1229 (3d Cir. 1979) (quoting 8 Wright & Miller, Federal Practice and Procedure § 2024 at 198 (1970)); see also Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1258 (3d Cir. 1993). Litigation must be more than a remote or even likely possibility, and the Third Circuit has indicated that if litigation is not imminent, "the primary motivating purpose behind the creation of the document" must be "to aid in possible future litigation." United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990). "Thus, the mere fact that litigation did in fact occur, that a party has consulted or retained an attorney, that a party has undertaken investigation, or engaged in negotiations over the claim, is not enough to establish a reasonable anticipation of litigation under Rule 26(b)(3)." United States v. Ernstoff, 183 F.R.D. 148, 155 (D.N.J. 1998) (citations omitted).

In the present case, Defendant has failed to meet its burden in showing that the investigative report and accompanying notes were prepared in anticipation of litigation. Even if

Defendant considered it likely that Plaintiff would file a formal suit, she had not yet even begun the administrative process by filing her grievance with an administrative agency. Had Plaintiff been satisfied with the remedial actions taken, it is possible that she would not have initiated this litigation. Thus, this Court concludes that at the time the document was prepared, the possibility of litigation was too remote for the report to have reasonably been written in "anticipation of litigation." See Conoco, Inc., 687 F.2d at 730.

Furthermore, even if these documents were prepared in anticipation of litigation, the doctrine is subject to an implied waiver, and "the standard for waiving the work product doctrine should be no more stringent than the standard for waiving the attorney-client privilege." Westinghouse v. Republic of the Philippines, 951 F.2d 1414, 1428-30 (3d Cir. 1991). Accordingly, for same reasons discussed above, this Court finds that the County has impliedly waived the protection provided by the work product doctrine by placing the investigation of Plaintiff's complaint at issue by asserting the affirmative defense. See Harding, 914 F. Supp. at 1098-99 (discussing principles of fairness and justice served by waiver in favor of disclosure where companies utilize attorneys to investigate discrimination complaints). Therefore, Defendant's objection on the basis of work product will be overruled and Plaintiff's motion to compel will be granted.

**III.    ORDER**

Therefore, for the reasons discussed above, **IT IS HEREBY ORDERED THAT** Plaintiff's motion to compel (Doc. No. 52) is **GRANTED**.  The County Defendant shall produce the report and notes of David DeLuce submitted to the Court, along with any other documents that constitute the investigation of Plaintiff's sexual harassment complaint, within ten (10) days of this order.  **IT IS FURTHER ORDERED THAT** Defendant shall produce DeLuce for deposition as soon as possible, but no later than thirty (30) days from the date of this order.

**IT IS FURTHER ORDERED THAT** the stay issued May 12, 2003 is **LIFTED**.  An amended scheduling order will issue.


    S/ Yvette Kane
    Yvette Kane
    United States District Judge

Date:  September 25, 2003