# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA E. VARNER, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | NO. 1:CV 01-0725 |
| v. | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | JURY TRIAL DEMANDED |
| NINTH JUDICIAL DISTRICT, CUMBERLAND | : | |
| COUNTY; S. GARETH GRAHAM, individually; | : | JUDGE YVETTE KANE |
| and JOSEPH OSENKARSKI, individually, | : | |


**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**FILED ON BEHALF OF THE**

**COMMONWEALTH OF PENNSYLVANIA,**

**NINTH JUDICIAL DISTRICT**

# TABLE OF CONTENT

**Page #**

**I.    INTRODUCTION**

    A.    STATEMENT OF FACTS OBTAINED IN DISCOVERY ................................. 1

**III.    STATEMENT OF ISSUES**

    A.    Whether Summary judgment is appropriate because no material facts exist and Court Defendant is entitled to judgment as a matter of law.................................. 6

        1.    Whether Plaintiff can establish a prima facie case of sexual harassment under Title VII ....................................................................... 6

            a.    Whether Plaintiff can meet her burden of showing that her workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.................................................................................... 6

            b.    Whether Respondeat superior liability is negated by prompt remedial action; the Court Defendant is insulated from liability by the affirmative defense enunciated in the Supreme Court's decisions in Ellerth and Faragher. .................................................. 6

                i.    Whether Plaintiff suffered tangible employment action ..... 6

                ii.    Whether the Court Defendant acted promptly and reasonably to remedy the alleged harassment and avoid future incidents once the Court Defendant became aware of Plaintiff's Complaint. .............................. 6

                iii.    Whether Plaintiff unreasonably failed to follow appropriate measures to protect herself from alleged harm. .................. 6

        2.    Whether Plaintiff can establish a prima facie case of retaliation under Title VII. ......................................................................................... 7

**II.    ARGUMENT**

    A.    SUMMARY JUDGMENT SHOULD BE GRANTED UNDER THE APPLICABLE STANDARD................................................................................ 7

1.    Plaintiff cannot establish a prima facie case of sexual
      harassment under Title VII ........................................................ 7

      a.    Plaintiff cannot meet her burden of showing that her workplace
            was permeated with discriminatory intimidation, ridicule, and
            insult, that was sufficiently severe or pervasive to alter the
            conditions of her employment and create an abusive working
            environment............................................................................... 8

      b.    Respondeat superior liability is negated by prompt remedial action;
            the Court Defendant is insulated from liability by the affirmative
            defense enunciated in the Supreme Court's decisions in <u>Ellerth</u>
            and <u>Faragher.</u> ............................................................................ 12

            i.    Plaintiff suffered no tangible employment action............. 12

            ii.   The Court Defendant acted promptly and reasonably
                  to remedy the alleged harassment and avoid future
                  incidents once the Court Defendant became aware of
                  Plaintiff's Complaint. ...................................................... 15

            iii.  Plaintiff unreasonably failed to follow appropriate
                  measures to protect herself from alleged harm. ................ 16

2.    Plaintiff cannot establish a prima facie case of retaliation because she
      cannot show that she was subjected to any adverse employment action
      as a result of her protected conduct, nor is there a causal link between
      plaintiff's protected activity and the alleged retaliation.. .......................... 18

      a.    Judge Sheely's alleged comments to plaintiff.. .............................. 19

      b.    Plaintiff's allegation that President Judge George Hoffer
            restricted her from going into the probation offices in the
            third floor east wing third floor east wing of the Courthouse,
            a location where she needed to be to do her job.. ......................... 20

      c.    The CASA Position.................................................................... 21

      d.    Plaintiff's allegations related to a bomb scare.............................. 24

IV.   CONCLUSION ........................................................................................ 25

CERTIFICATE OF SERVICE

STATEMENT OF FACTS

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abramson v. William Paterson College of NJ*, 260 F.3d 265, 280 (3d Cir. 1999) ............10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................7

*Bauder v. Wackenhut Corp.*, 2000 U.S. Dist. LEXIS 4044 (E.D.Pa. Mar. 23, 2000) ...........................................................................................11

*Bonora v. UGI Utilities, Inc.*, 2000 U.S. Dist. LEXIS 15172 (E.D. Pa. Oct. 18, 2000) ...........................................................................................11

*Bowman v. Shawnee State University*, 220 F.3d 456 (6th Cir.2000)................................10

*Burlington Ind. v. Ellerth*, 524 U.S. 742 (1998) ....................................12, 13, 19

*Callahan v. Philadelphia*, 207 F.3d 668 (3d Cir. 2000) ......................................15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................7

*Delli Santi v. CNA Insurance Co.*, 88 F.3d 192 (3d Cir.1996) ........................................25

*Faragher v. City of Boca Raton*, 524 U.S. 775, (1998) ........................................10, 11, 12

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271 (3d Cir. 2000).....................................18

*Guess v. Bethlehem Steel Corp.*, 913 F.2d 463 (7th Cir. 1990) .........................................11

*Harris v. Forklift System, Inc.*, 510 U.S. 17 (1993) ..............................................8

*J. F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524 (3d Cir. 1990) ..........................7

*Jalil v. Avdel Corp.*, 873 F.2d 701 (3d Cir.1989) ...............................................25

*Jones v. School District of Philadelphia*, 198 F.3d 403 (3d Cir. 1999).......................18, 19

*Knabe v. Boury Corp.*, 114 F.3d 407 (3d Cir. 1997) .............................................8

*Krouse v. American Sterilizer Co.*, 126 F.3d 494 (3d Cir. 1997) ....................................19

*Lynch v. New Deal Delivery Serv. Inc.*, 974 F. Supp. 411, (D.N.J. 1997).........................9

*Matavia v. Bald Head Island Management*, 259 F.3d 261 (4th Cir. 2001) ....................17

*Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999) ...............................................20

*Meritor Savings Bank v. Vinson*, 477 U.S. 57, (1986) ..........................................................8

*Miller v. Cohen*, 52 F. Supp. 2d 389 (M.D.Pa. 1998) ..........................................................19

*Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997) ....................................19, 25

*Saidu-Kamara v. Parkway Corp.*, 155 F. Supp. 2d 436 (E.D. Pa. 2001) ..........................11

*Seldomridge v. Uni-Marts, Inc.*, 2001 U.S. Dist. LEXIS 9491 (D. Del. July 10, 2001) ...............................................................................................................................11

*Sicalides v. Pathmark Stores, Inc.*, , 2000 U.S. Dist. LEXIS 8051, 2000 WL. 760439 (E.D. Pa. June 12, 2000) ..................................................................................19

*Suders v. Easton*, 325 F.3d 432 (3rd Cir. 2003), cert granted, 72 U.S.L.W. 3370 (December 1, 2003) ....................................................................8, 12, 13, 18, 25

*Todd v. Ortho Biotech, Inc.*, 138 F.3d 733 (8th Cir. 1998) ..............................................11

*Williams v. Borough of West Chester*, 891 F.2d 458 (3d Cir. 1989) ...................................7

*Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 n.2 (3d Cir. 1997) ................................18

## STATE CASES

*County of Allegheny v. Commonwealth of Pennsylvania*, 517 Pa. 65 (1987)....................15

*Court of Common Pleas of Erie County Juvenile Probation Department v. Pennsylvania Human Relations Commission*, 546 Pa. 4 (1996).................................15

*Ellenbogen v. County of Allegheny, 438*, 388 A.2d 730 (1978) ........................................15

## FEDERAL STATUTES

F.R.C.P., Rule 56 .................................................................................................................1

Fed.R.Civ.P. 56(c) ..............................................................................................................6

Fed. Rule Civ. Proc. 8(c) ...................................................................................................12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BARBARA E. VARNER, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | NO. 1:CV 01-0725 |
| v. | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | JURY TRIAL DEMANDED |
| NINTH JUDICIAL DISTRICT, CUMBERLAND | : | |
| COUNTY; S. GARETH GRAHAM, individually; | : | JUDGE YVETTE KANE |
| and JOSEPH OSENKARSKI, individually, | : | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF**
**OF THE COMMONWEALTH OF PENNSYLVANIA, NINTH JUDICIAL DISTRICT**

## I.    INTRODUCTION

### A.    STATEMENT OF FACTS OBTAINED IN DISCOVERY.

The cited facts are contained in the "Statement of Facts To Which Court Defendant

Contends There is No Material Issue to be Tried," filed simultaneously with the instant Motion.

Citations to the record are contained therein, and not in this Motion, to facilitate ease of reading.

Plaintiff, Barbara Varner (hereinafter, "Plaintiff"), a Probation Officer employed by Court

Defendant, brought the instant suit against Defendants Cumberland County ("County

Defendant"), and the Ninth Judicial District ("Court Defendant"), claiming she was sexually

harassed and retaliated against in violation of Title VII. She has also sued two individual

supervisors under the PHRA against whom she alleges harassment, Joseph Osenkarski

("Osenkarski"), the Chief Probation Officer, and S. Gareth Graham ("Graham"), who briefly

served as Plaintiff's immediate supervisor, from January 1, 1996, until June 13, 1997.  Graham

was ultimately demoted and transferred on March 13, 1998 as a result of Plaintiff's allegations.

The President Judge of the Courts of Common Pleas are in charge of the Probation Department by Pennsylvania law. Under Pennsylvania law, the judiciary has the sole right to hire, fire, supervise and discipline Court employees, including probation officers. Judge Harold Sheely was President Judge from the time Plaintiff made her initial allegations (in April, 1997,) until December 1997, when Judge Sheely retired. From January 1998 until the present, the President Judge has been the Honorable George Hoffer. Pennsylvania counties serve as the funding agent for the court of common pleas situated in the county. As such, Cumberland County is responsible for providing benefits and salaries for Defendant Court employees, including Plaintiff.

Cumberland County had a sexual harassment policy in place, which was distributed to all Probation Office employees. Both Judge Sheely and Judge Hoffer testified that, rather than promulgate a separate policy, they used the County policy because, as Judge Sheely testified, he found the County policy well-thought-out. Plaintiff admits that she received a copy of the policy.

The policy provided a two-step process, by which an employee who believed he/she was being discriminated against or harassed in the workplace was to go to his/or her supervisor. If the supervisor was the alleged harasser, or if the employee felt more comfortable doing so, he or she was to go to the next step supervisor. Plaintiff admits she knew that Osenkarski reported directly to the President Judge and that the President Judge was the supervisor at the next level, who made all final decisions related to her employment. Therefore, Plaintiff's responsibility under the policy was to complain to the President Judge. Nonetheless, Plaintiff complained to the County personnel department.

Plaintiff's complaints were investigated through David DeLuce, (DeLuce) a partner of the County Solicitor, at the County Solicitor's request. DeLuce interviewed Plaintiff, the alleged harassers and all of the persons that Plaintiff named as witness. During the course of DeLuce's investigation, he prepared two documents. The initial document, a draft prepared as the investigation was on-going, evidenced DeLuce's early inclination to find that sexual harassment had occurred. That document was never divulged to the Court Defendant. Thereafter, as his investigation continued, DeLuce found that problems surfacing were related to poor management within the juvenile probation office. This second and final DeLuce document can be described as milder in its conclusions as to harassment than those contained in the earlier draft report, which the Court Defendant did not know about until the County produced it in discovery. The second, final Report was the only one seen President Judges Sheely and Hoffer. The second DeLuce report, and the only report known to Court Defendant, made no recommendations as to Graham and Osenkarski. During the investigation, on June 13, 1997, Plaintiff was put under the supervision of Sam Miller.

Investigator DeLuce interviewed alleged harasser Graham on twice. Both times, Graham denied Plaintiff's allegations but never told Investigator DeLuce of his contention that he and Plaintiff had had a consensual affair. Thereafter, when DeLuce shared the report of his investigation with President Judge Sheely, Judge Sheely, based on the DeLuce conclusions, planned to transfer Graham out of the Juvenile Probation Department. Judge Sheely felt that termination, which Plaintiff requested, was too severe a punishment.

Shortly thereafter, Graham asked to speak to Judge Sheely. Graham, in an emotional meeting, confessed to Judge Sheely that he and Plaintiff had carried on a long-time consensual sexual affair--including sexual encounters while traveling on job assignments. He told Judge

Sheely that the allegations of sexual harassment were filed only after Graham broke off the affair

with Plaintiff.  Simultaneously, Graham confessed the affair to his wife, Barbara Graham.  Judge

Sheely testified to the reason he believed Graham's assertions as credible.

> For a man to bring his wife in to the president judge and
> admit to having a sexual relationship with one of his co-employees
> [during the time the alleged affair took place, Plaintiff and Graham
> were co-workers, not supervisor and supervisee] in front of his
> wife, that--I don't think men would do that unless what they're
> saying was true.  (Sheely dep. P. 25, 26.)

Judge Sheely further testified to his belief that Graham was finally telling the true story,

because the Judge knew that Graham and Plaintiff "had always had a good relationship."

> In fact, it was Mr. Graham that I remember was really anxious to
> have [Plaintiff] hired, and they had always had a good relationship,
> and I couldn't believe that all of a sudden they were at each other
> or he was at her or making comments or something in the office
> unless there would be some reason for it. *Id.*

Probation Department employees deposed confirmed that, while they were not privy to

actual knowledge of whether an affair had taken place, Plaintiff and Graham did have a long and

friendly relationship that changed abruptly prior to Plaintiff bringing her allegations of

harassment.  All testimony further supports Judge Sheely's assertion that Graham had strongly

pushed for Plaintiff's hiring in the Probation Department.  Plaintiff, who was represented by

counsel at the time, never requested a meeting with Judge Sheely regarding her complaint, or any

other matter--before or after the Judge made his decision.  This is true even though Plaintiff

testified that she knew that Judge Sheely was the decision-maker on all matters related to her

employment.

Acting on his determination that the affair likely occurred and because Graham's

confession of adultery came after the DeLuce investigation, Judge Sheely decided, rather than to

transfer Graham as he had initially advised County H.R. Director Hartnett he would do, to

instead, suspend Graham for three days for the bad language Plaintiff accused him of using. Plaintiff continued under the supervision of Sam Miller and had no further problems during Judge Sheely's tenure, save an allegation that Graham's wife, Barbara Graham, a court reporter, was staring at her. Although Graham was still in a supervisory position, he did not directly supervise Plaintiff, and Miller testified that Graham did not interfere with his supervision of Plaintiff.

Judge Sheely verbally reprimanded Osenkarski. Osenkarski developed a "Corrective Action Plan," which included sexual harassment training. As a result, Osenkarski and the entire department received such training.

Graham testified that Plaintiff brought the allegations against him to punish him for ending the affair, assuming that he would not confess the affair because of his wife and family. It is not necessary for this Court to further dwell on the affair and whether or not the affair actually happened. This Court need only conclude that Judge Sheely's belief that Graham was telling the truth was reasonable, as a matter of law, and that therefore, his actions were appropriate. Indeed, as the harassment Plaintiff initially alleged had stopped, the judge's actions were effective whether or not an affair occurred.

A few months thereafter, in December 1997, Judge Sheely retired and Judge Hoffer became the President Judge as of January 1998. On March 5, 1998, Plaintiff complained of a bumping incident and harassment by Barbara Graham. Shortly thereafter, on March 10, 1998 Barbara Graham complained to Judge Hoffer that Judge Hoffer was unfairly taking Plaintiff's side. Plaintiff also alleged that Graham was attempting to "indirectly supervise her." Concerned with Plaintiff's new complaint as well as the DeLuce conclusions regarding poor management of the Juvenile Probation Department, Judge Hoffer interviewed a series of employees regarding

Graham, and the management of the Department. Shortly thereafter, on March 13, 1998, based

on Plaintiff's complaints and the information received in his own investigation, Judge Hoffer

removed and demoted Graham from his supervisory position, severely cut his pay, and

transferred him to an isolated location at the prison, out of the Probation Office, where he works

alone. By Judge Hoffer's action, Graham has been physically out of the Department, working

alone in a facility separate from Plaintiff since March 13, 1998 until the present.

    Plaintiff continues to work in the Probation Department. She has received positive

performance evaluations and was promoted to Senior Probation Officer in 1998.

## II.    STATEMENT OF ISSUES

    A.    Whether Summary judgment is appropriate because no material facts exist and
Court Defendant is entitled to judgment as a matter of law

        1.    Whether Plaintiff can establish a prima facie case of sexual
harassment under Title VII

            a.    Whether Plaintiff can meet her burden of showing that her
workplace was permeated with discriminatory intimidation,
ridicule, and insult that was sufficiently severe or pervasive to alter
the conditions of her employment and create an abusive working
environment.

            b.    Whether Respondeat superior liability is negated by prompt
remedial action; the Court Defendant is insulated from liability by
the affirmative defense enunciated in the Supreme Court's
decisions in Ellerth and Faragher.

                i.    Whether Plaintiff suffered tangible employment action.

                ii.    Whether the Court Defendant acted promptly and
reasonably to remedy the alleged harassment and avoid
future incidents once the Court Defendant became aware of
Plaintiff's Complaint.

                iii.    Whether Plaintiff unreasonably failed to follow appropriate
measures to protect herself from alleged harm.

> 2.     Whether Plaintiff can establish a *prima facie* case of retaliation under Title VII.

## III.    ARGUMENT

### A.    SUMMARY JUDGMENT SHOULD BE GRANTED UNDER THE APPLICABLE STANDARD.

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The court's responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 247-49 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Anderson, 477 U.S. at 249). Rather, summary judgment will be granted unless "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party, here, Plaintiff, and all reasonable inferences must be drawn in her favor. *Id.* at 256. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case and cannot rely merely on unsubstantiated allegations. J. F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990) (*citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323(1986)).

### 1.    Plaintiff cannot establish a prima facie case of sexual harassment under Title VII:

The Third Circuit has set forth five elements that a plaintiff must establish to assert a successful hostile work environment claim against his or her employer: (1) the employee suffered intentional discrimination because of his or her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) respondeat superior liability existed.  Knabe v. Boury Corp., 114 F.3d 407, 410 (3d Cir. 1997).  Suders v. Easton, 325 F. 3d 432 (3rd Cir. 2003), cert granted, 72 U.S.L.W. 3370 (December 1, 2003).

> **a.    Plaintiff cannot meet her burden of showing that her workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.**

In Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986), the Supreme Court first recognized claims for hostile work environment sexual harassment under Title VII. However, the Court emphasized that "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Id*. at 67.  Rather, "for sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*. The Court elaborated on this standard in Harris v. Forklift Sys., Inc., 510 U.S. 17, (1993). To be actionable under Title VII, the work environment must be both objectively and subjectively offensive. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview.

Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title

VII violation." Id. at 21-22. In determining whether a work environment is objectively hostile, courts are required to examine "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. The conduct at issue "must be <u>extreme</u> to amount to a change in the terms and conditions of employment." <u>Faragher City of Boca Raton</u>, 524 U.S. 775, 788, (1998) [emphasis added]. "In short, what is illegal is a 'hostile work environment,' not an 'annoying work environment'." <u>Lynch v. New Deal Delivery Serv. Inc</u>., 974 F. Supp. 441, 452 (D.N.J.1997).

Allegations of isolated instances like these Plaintiff complains of do not constitute a cognizable hostile work environment claim. The instances of harassment Plaintiff complains of were not only isolated in time, but were also mere offensive utterances. While crude and inappropriate, the remarks cannot be said to be part of a pervasive or regular pattern of a sexually intimidating work atmosphere.

Nor has Plaintiff proffered any evidence to show a demonstrable impact on her ability to work as a result of the alleged conduct. Plaintiff does not contend that her work performance was somehow impaired by emotional distress suffered as a result of the alleged conduct. Indeed, the record reflects that she was duly promoted and continues to receive satisfactory performance evaluations and concomitant increases in salary. She attained her master's degree while working as a Probation Officer, with her coursework paid through her employer and approved by her supervisors, including Mr. Osenkarski. Finally, Plaintiff feels safe in her current position and does not have any concern about retaliation.

Taking all the evidence in a light most favorable to Plaintiff, a reasonable jury could not conclude from the totality of the circumstances that Plaintiff objectively experienced pervasive or severe harassment that unreasonably interfered with her work.  Simple teasing, offhand comments, and [non-serious] isolated incidents" are insufficient to meet this part of the test. *Id.* (citing Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 280 (3d Cir. 1999)(quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

Defendant Osenkarski's alleged comments were not pervasive, severe or regular.  Rather, his alleged comments were isolated incidents, the kind of "offhand comments" both the Supreme Court and the Third Circuit recognize as insufficient to establish this prong of the test.  The alleged comments were made years apart.  Further, Plaintiff admits Mr. Osenkarski never made an inappropriate comment directed at her personally.  In fact, the only alleged comment for which Plaintiff was actually present, was a comment regarding a female intern's breasts, which she alleges, Osenkarski referred to as "jahoobies." Co-workers "informed" Plaintiff of the remaining comments that she asserts were offensive to her.  Plaintiff admits that after she filed her formal complaint in April, 1997, harassment by Osenkarski ceased.

The incidents Plaintiff describes related to Graham cannot reasonably be construed as "severe" or "pervasive." Again, most of the actions Plaintiff complains of were "mere offensive utterances" under Faragher.  Most of the comments made were related to work performance without sexual content but contained the word "fuck".  Even so, Plaintiff admits that the word "fuck" did not offend her. The one incident of alleged offensive touching by Graham, when he allegedly touched Plaintiff's "behind" in 1995, was not so severe so as to alter any term of Plaintiff's employment. See, e.g., Bowman v. Shawnee State Univ., 220 F.3d 456 (6th Cir.2000) (affirming grant of summary judgment; incidents where superior rubbed

employee's shoulders, grabbed employee's buttocks, and placed finger on employee's chest were not sufficiently severe or pervasive to create a hostile work environment); Saidu-Kamara v. Parkway Corp., 155 F. Supp. 2d 436, 438 (E.D. Pa. 2001) (granting summary judgment where defendant asked plaintiff out on dates on several occasions, directed sexual innuendo toward her, and, at least one time, touched her breasts and buttocks); Seldomridge v. Uni-Marts, Inc., 2001 U.S. Dist. LEXIS 9491, (D. Del. July 10, 2001) (granting summary judgment where male supervisor surprised female employee by posing nude in doorway to storage room); Bonora v. UGI Utilities, Inc., 2000 U.S. Dist. LEXIS 15172,  (E.D. Pa. Oct. 18, 2000) (granting summary judgment where supervisor touched plaintiff's waist on one occasion; brushed his buttocks against hers on two to four occasions; and looked at her chest during a meeting on one occasion);  Bauder v. Wackenhut Corp., 2000 U.S. Dist. LEXIS 4044, (E.D.Pa. Mar. 23, 2000) (holding that a one time incident where supervisor grabbed plaintiff employee's behind did not sufficiently support a hostile work environment claim).

The single touching, even if offensive to Plaintiff, and even taken together with Plaintiffs' other allegations of sexual comments or bad language, is not severe enough under the caselaw to allow this Court to find, as a matter of law, that Plaintiff's allegations of harassment, if true, are sufficiently severe to state a sexual harassment claim. [1] Therefore, under the totality of the circumstances, this Honorable Court must conclude that the actions were not so pervasive or severe so as to alter any term of Plaintiff's employment.

---

[1] The single touching, even combined with the annoying utterances, does not rise to the level of those cases finding severity sufficient to state a claim under Title VII.   See, Todd v. Ortho Biotech, Inc., 138 F.3d 733, 736 (8th Cir. 1998) (single attempted rape at national sales meeting held sufficiently severe misconduct to be actionable); Guess v. Bethlehem Steel Corp., 913 F.2d 463, 464 (7th Cir. 1990) (single incident where supervisor picked up plaintiff and forced her face against his crotch impliedly considered to create hostile environment.)

       **b.**    **Respondeat superior liability is negated by prompt remedial action; the Court Defendant is insulated from liability by the affirmative defense enunciated in the Supreme Court's decisions in <u>Ellerth</u> and <u>Faragher</u>.**

In <u>Suders v. Easton</u>, supra, the Third Circuit set forth the holding in <u>Burlington Ind. v. Ellerth</u>, 524 U.S. 742 (1008) and <u>Faragher</u>, supra:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. The affirmative defense is not available, however, when the supervisor's alleged harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

Summary Judgment must be granted to Court Defendant, as the Court Defendant meets these articulated burdens and is entitled to the affirmative defense as a matter of law.

       **i.**    **<u>Plaintiff suffered no tangible employment action</u>**

Because Plaintiff has accused supervisory personnel of harassment, the initial inquiry in determining whether Court Defendant is entitled to assert an affirmative defense under <u>Ellerth</u> and <u>Faragher</u>, is whether Plaintiff's supervisors' alleged actions resulted in a "tangible employment action" against Plaintiff.

The <u>Suders</u> Court, *supra*, at p. 450, defined the attributes of "a tangible employment action:"

> In broad strokes, a tangible employment action "constitutes a significant change in employment status." <u>Ellerth</u>, 524 U.S. at 761. A tangible employment action is also defined by reference to

a non-exclusive list of representative workplace actions, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*. at 761 (emphasis added); see also <u>Faragher</u>, 524 U.S. at 790. In most cases, but not always, "a tangible employment action. . . inflicts direct economic harm." Finally, a tangible employment action implicates, in some meaningful way, the authority of the employer itself: "A tangible employment decision requires an official act of the enterprise, a company act. The decision in most cases is documented in official company records, and may be subject to review by higher level supervisors. . . . The supervisor often must obtain the imprimatur of the enterprise and use its internal processes." <u>Ellerth</u>, 524 U.S. at 762 (emphases added).

If these guidelines are applied to the instant facts, it becomes clear that Plaintiff was never subjected to "a tangible employment action." Plaintiff suffered no economic harm. She was never fired, demoted, denied a promotion or reassigned. No negative documentation related to Plaintiff ever appeared in any of the Court's records. She lost no emoluments of employment. In fact, she was promoted to a senior probation officer position on May 7, 1998.

Nonetheless, in an effort to save her claim, Plaintiff will likely argue that she was subjected to a "tangible employment action" related to a departmental change in seniority policy. By this change, which calculated seniority in the Court's Juvenile Probation Department based on time employed only in Probation, Plaintiff's seniority was recalculated to exclude time she had spent employed by the County in the County's Children and Youth Services Department. The result of this seniority policy change was that Bill Brandt, a Probation Officer with more time as a Probation Officer was placed ahead of Plaintiff.

Plaintiff's seniority argument is a red herring: the change in seniority policy had nothing to do with Plaintiff's sex, did not prevent her promotion, and has not changed her employment status so as to constitute a "tangible employment action" under the law. <u>Suders</u>, supra, at 450. Notwithstanding that Plaintiff has not lost any benefit of employment as a consequence of what

she perceives as a seniority dispute, Plaintiff contends that promotions within the department are made by seniority, Brandt is now ahead of her on the seniority list and ultimately one day Brandt will be promoted ahead of her because of this injustice done to her. This proposed threat has not materialized, and therefore, does not meet the standard for an "adverse employment action." Moreover, Judge Hoffer testified that promotions are based on qualifications, not seniority.

Plaintiff contends that she was the only person affected by the policy change, slipping down one seniority slot. The record shows that other probation officers with prior County service, but not Court Probation service, had elected to work in adult probation at the time the departments split into juvenile and adult. Plaintiff elected to go to juvenile probation.

The policy change did not target Plaintiff. The change was the result of a feeling among the probation officers as far back as 1985--well before Plaintiff's employment--that the policy was not fair. The policy was studied and advocated, not by Osenkarski or Graham, but by others, led by Probation Officer Tom Boyer. The change was a result of a groundswell of concern among the rank and file probation officers in the department. Prior to that change, time in County service was considered in determining seniority, with the result that a janitor or clerk working for the County for 10 years could earn a degree at night, become a probation officer and enter as a new probation officer with more seniority than employees already working as degreed Probation Officers for 10 years. Probation Officer Brant testified that the old policy's unfairness was discussed "ad nauseum."

The seniority issue is a red herring because Plaintiff had time in another agency of the County, not an agency of the Court, and not within the Probation Department. Moreover, under the old system, Plaintiff was given seniority as a probation officer for work done even prior to earning her college degree in 1994. Thus, under the old policy, Plaintiff had been given seniority

14

credit as a probation officer, without even being qualified to be a probation officer, which minimally requires a college degree. The decision to base seniority credit on time employed as a Court probation officer, and not for miscellaneous prior employment with the County, is infinitely reasonable.

Nonetheless, Plaintiff and Brandt were promoted at the same time to Senior Probation Officer. Therefore, Plaintiff has lost no economic or other emolument of employment because of the change of seniority policy. Brandt, who, as a consequence of the change, is now senior to Plaintiff, testified that that his position as senior provides no benefit of any type to him.

Plaintiff has never suffered a "tangible employment action, but continues to receive favorable reviews, was promoted and receives regular salary increases. Therefore, the Court Defendant is entitled to, and does assert the affirmative defense set forth in Ellerth and Faragher.

> **ii.    The Court Defendant acted promptly and reasonably to remedy the alleged harassment and avoid future incidents once the Court Defendant became aware of Plaintiff's Complaint.**

In Court of Common Pleas of Erie County Juvenile Probation Department v. PHRC, 546 Pa. 4 (1996)[2], the Pennsylvania Supreme Court held that probation departments are part of the state's unified judiciary and that probation officers are state, not county, employees, solely under the court's control. However, under Pennsylvania law, while the judiciary has the absolute right to hire, fire and supervise judicial employees, the counties are required to fund the county courts. See Ellenbogen v. County of Allegheny, 388 A.2d 730, 735 (1978).

---

[2]    In County of Allegheny v. Commonwealth of Pennsylvania, 517 Pa. 65 (1987), the Pennsylvania Supreme Court declared that Pennsylvania's scheme of funding of the County Courts through the counties was unconstitutional and that it is the responsibility of the Commonwealth to fund the Courts. Nonetheless, Pennsylvania's legislature has refused to directly fund state courts located in the several counties, instead mandating that all court funding be funneled through Pennsylvania's counties. See, i.e. Callahan v. Philadelphia, 207 F.3d 668 (3d Cir. 2000)

The Court Defendant relied on the anti-harassment policy in place through the County of Cumberland. President Judge Sheely testified that the County's policy applied to Court employees and that he did not adopt a separate policy because he felt the policy of the County was well thought out. Under that policy, if an employee alleging harassment could not resolve a complaint at the immediate supervisor's level, he/she was required to bring the complaint to the President Judge, as head of the Probation Department or, as Judge Sheely testified, directly to him initially as the supervisor to whom Osenkarski directly reported.

Plaintiff, bypassing the outlined complaint procedure, complained to the County Human Resources department in April 1997, and a thorough investigation ensued. Judge Sheely learned of Plaintiff's complaint during the investigation through the County, and allowed the investigation to continue, insisting on seeing the Report produced. On June 13, 1997, Graham was removed as Plaintiff's supervisor. On July 11, 1997, Judge Sheely suspended Graham for three days for loud and abusive language.

After Judge Sheely's retirement, and immediately upon a further complaint by Plaintiff, Judge Hoffer physically removed Graham from the Juvenile Probation Department in March 1998--less than a year after Plaintiff's initial complaint was made. Graham now works in an isolated separate building where he has no workplace contact whatsoever with Plaintiff.

Thus the Court, as Plaintiff's employer, took reasonable care to prevent any sexual harassment and once it was alleged, took appropriate remedial measures to correct and did correct the behavior.

**iii.    Plaintiff unreasonably failed to follow appropriate measures to protect herself from alleged harm.**

Plaintiff unreasonably failed to take advantage of the preventative and corrective measures available to her through Court Defendant. Particularly, Plaintiff failed to immediately

16

report early allegations of harassment. Indeed, most of Plaintiff's allegations went back months, if not years. For example, the sole alleged incident of touching occurred in the spring of 1995— a full two years before Plaintiff brought her first complaint in April, 1997. The birthday card Graham gave her that she claims is harassing was given to her in January, 1996--a year and three months before Plaintiff complained in April, 1997. In Matavia v. Bald Head Island Management, 259 F. 3d 261, 273 (4th Cir. 2001), the Fourth Circuit found that an employee who waited three months to report sexual harassment had acted unreasonably. Plaintiff's written memo dated April 25, 1997, by which Plaintiff first delineates her allegations, indicates a continuing course of harassment which "escalated" in the summer of 1996. That memo states that "the most aggressive harassment has occurred within the last 180 days."

Plaintiff waited, however, until April, 1997 to complain. Under the caselaw, Plaintiff was required to come forward earlier, at the very beginning of the course of harassment she alleges she was subjected to, to give her employer an opportunity to protect her from an "escalating" course of harassment. Instead, Plaintiff claims to have endured "aggressive" harassment for 180 days.

Moreover, Plaintiff, knowing that only the President Judge had authority over her employment, was remiss in not coming to Judge Sheely at some point during the investigation and resolution of her harassment complaint. Neither Plaintiff nor her counsel ever asked to speak to Judge Sheely, even after learning that Graham had gone directly to the Judge Sheely with his confession of a consensual affair.

Nonetheless, despite Plaintiff's failure to immediately report the alleged harassment, the harassment was remedied by Graham's removal as Plaintiff's supervisor. When Plaintiff ultimately made additional complaints, Judge Hoffer promptly removed Graham from any

supervisory position and transferred Graham out of the department. No reasonable jury can find

that the Court did not respond reasonably to remediate Plaintiffs complaints, as a matter of law.

> **2.    Plaintiff cannot establish a prima facie case of retaliation because she cannot show that she was subjected to any adverse employment action as a result of her protected conduct, nor is there a causal link between plaintiff's protected activity and the alleged retaliation.**

After full discovery, Plaintiff has failed to establish a prima facie case of retaliation.

Additionally, even if Plaintiff has established a prima facie case, Court Defendant had a

legitimate reason for the actions taken and Plaintiff can establish no causal link between

protected activity and the alleged retaliatory incidents.

To establish a prima facie case of retaliation, a plaintiff must show that: (1) he or she

engaged in a protected employee activity; (2) the employer took an adverse employment action

after or contemporaneous with the protected activity; and (3) a causal link exists between the

protected activity and the adverse action.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279

(3d Cir. 2000). If the plaintiff succeeds in establishing a prima facie case, the burden of

production shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason' for

its actions."  Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997.)

Plaintiff engaged in protected activity when she filed her charge with the EEOC and her

Complaint in federal court, however, she cannot establish the remaining elements of a

retaliation claim. As discussed, supra, before Plaintiff can recover under Title VII, she must

show that he suffered or was subjected to some adverse employment action.  Jones v. School

Dist. of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999).  "An adverse employment action is one

which 'constitutes a significant change in employment status, such as hiring, firing, failure to

promote, reassignment with significantly different responsibilities, or a decision causing

significant changes in benefits.'" <u>Burlington Ind. v. Ellerth</u>, *supra*,.[3]  <u>See, e.g.</u>, <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1300 (3d Cir. 1997)(minor or trivial workplace actions do not equal retaliation under Title VII); <u>Sicalides v. Pathmark Stores, Inc</u>., 2000 U.S. Dist.LEXIS 8051, 2000 WL 760439 (E.D. Pa. June 12, 2000), *supra* at \*28-29 (unsubstantiated oral reprimands and unnecessary derogatory comments following the filing of an EEOC complaint do not equal retaliation); <u>Miller v. Cohen</u>, 52 F.Supp.2d 389, 397-98 (M.D.Pa. 1998)(citing cases and examples).  While Title VII plaintiffs need not allege that they were actually demoted or terminated in order to establish an "adverse employment action," <u>see</u> <u>Jones</u>, *supra* at 411-12, they must nonetheless allege some significant effect on their employment, or some significant effect resulting from the allegedly adverse employment decision.  <u>Burlington Ind. v. Ellerth</u>, *supra*.

Plaintiff's allegations of retaliation fail because she has not suffered any adverse employment action related to her retaliation claims.  Plaintiff's four retaliation allegations will be addressed seriatim.

### a.    Judge Sheely's alleged comments to Plaintiff

Plaintiff testified that Judge Sheely asked her on 12/29/1997 why she went to County personnel about Graham and his wife Barbara staring at her following Gary Graham's confession to Judge Sheely about the affair Graham alleges.  Plaintiff further testified that Judge Sheely told her she is "a nice lady who will probably always have to put up with the stares. He can't do anything about it."

---

[3]    <u>See</u>, <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 500 (3d Cir. 1997)(adverse employment action required for Title VII Retaliation claim); <u>Jones</u>, 198 F.3d at 411 (adverse action required in discrimination context).

Plaintiff has suffered no adverse employment action related to Judge Sheely's alleged comments, nor has she suffered any adverse employment action regarding the alleged stares. Being stared at in the workplace does not rise to the level of harassment. Staring at someone is not generally sufficient to create a hostile work environment. See Mendoza v. Borden, Inc., 195 F.3d 1238 (11th Cir. 1999).

Moreover, the only reasonable explanation for Judge Sheely's alleged comment is that, following Plaintiff's original complaint, which Plaintiff knew was referred to Judge Sheely for decision, Judge Sheely's words simply inquired why she did not inform him, as is required by the sexual harassment policy and the law. Plaintiff knew that President Judge Sheely was the person in charge of her employment. She described probation officers as "officers of the Court." Judge Sheely testified that he was disappointed that Plaintiff never came to him with her problems rather than to the Personnel Director for the County H.R., or ever asked him for a meeting. Despite her clear knowledge, Plaintiff still went back to the County, instead of to Judge Sheely to report her concerns. His alleged comment reflects nothing more than his intention to let Plaintiff know that she should make him aware of her concerns.

> **b.** **Plaintiff's allegation that President Judge George Hoffer restricted her from going into the probation offices in the third floor east wing of the Courthouse, a location where she needed to be to do her job.**

Plaintiff further alleges in her Complaint that "President Judge George Hoffer restricted Varner from going into the probation offices in the third floor east wing of the Courthouse, a location where she needed to be to do her job."

Plaintiff complained about Gary Graham's wife, Barbara, staring at her. Barbara Graham is a court reporter. The office of all court reporters was temporarily relocated in the third floor east wing of the Courthouse while those offices underwent renovations. This had the unfortunate

effect of putting Plaintiff and Barbara Graham on the same floor of the Courthouse. Simultaneously, Barbara Graham complained that Plaintiff was unnecessarily coming into the area to upset Barbara Graham, who--whether or not a sexual affair occurred between Plaintiff and her husband--had been told by her husband that such an affair had occurred.   Therefore, Judge Hoffer testified that he asked Plaintiff voluntarily to stay out of that area and to have anyone located there that Plaintiff needed to see to come to her office.   Plaintiff further testified that Judge Hoffer told her that if she couldn't do her job without going into Barbara Graham's area, that he would "move everybody you have business with down" to Plaintiff's location. Plaintiff claims Judge Hoffer gave her a directive and not, as Judge Hoffer testified, a voluntary request.   This difference as to whether the request was voluntary or not is not material because, again, Plaintiff suffered absolutely no adverse employment action as that term is defined in the caselaw.   Moreover, any restriction was reasonable because both Plaintiff and Barbara Graham had each complained about the other's behavior, and Judge Hoffer had an obvious obligation to separate them.

While Plaintiff labels Judge Hoffer's action "retaliatory," the only reasonable explanation under the circumstances is that Judge Hoffer acted to protect Plaintiff by keeping her away from Barbara Graham.   The President Judge acted reasonably to prevent harm, especially as Barbara Graham never came into the probation area where Plaintiff was located.   All of the alleged staring problems Plaintiff raised occurred when Plaintiff entered the area where Barbara Graham's office was located.   Therefore, Judge Hoffer acted reasonably under the law.

### c.    The CASA Position

Plaintiff's third instance of alleged retaliation is that, although she was identified and offered a position coordinating a volunteer program as Director of the Court Appointed Special

Advocate Program at her present salary as a Probation Officer, the offer at her present, higher

salary was made contingent on her settlement of her harassment claims.

Judge Edward Guido, who hears dependency matters for Court Defendant, sought to

initiate a Court Appointed Special Advocate (CASA) program associated with the National

Court Appointed Special Advocate Association. The program coordinates and trains volunteer

citizen advocates.  Judge Guido identified Plaintiff as his chosen candidate for the CASA

directorship, which he initially believed would be a part-time position--part-time, because he did

not expect a large number of volunteers in the early years of the program.  Judge Guido

anticipated that Plaintiff could divide her time as necessary between the CASA job and continue

to work as a Probation Officer at a reduced caseload.

An unexpected funding grant, however, enabled the program to immediately expand to a

full program with a full-time director.  At that time, Plaintiff was making $40,000.  A survey of

CASA programs across the nation, however, indicated that CASA directors were paid in the

$28,000. to $32, 000. range.  Moreover, Judge Guido realized that the duties of the position

(coordinating and training volunteers) were commensurate with a lower salary.  Therefore, the

salary was set by the Salary Board within the national range, at $29,689.

Simultaneously, the Defendants sought to settle the instant litigation while it was before

the EEOC, and offered Plaintiff a sum of money plus the CASA directorship at her present salary

to settle the claims which ultimately led to this litigation.  When Plaintiff refused to accept the

proposed settlement, Judge Guido offered Plaintiff the position at the established $29,689. salary.

Plaintiff refused the CASA position and another candidate was hired as director at the

$29,689.00 salary. Plaintiff and her counsel took the position that Plaintiff should have the

position without settling the claims.  Thereafter, Plaintiff continued in the Probation Department at her higher salary.

Plaintiff was not subjected to a tangible employment action in being offered the CASA position in settlement of her claims and, upon her refusal to settle, being again offered the position, as the best qualified candidate selected by Judge Guido, at the established salary. Plaintiff preferred to keep her position at the higher salary in the probation office and continue to press her harassment claim. That was Plaintiff's choice.  Nonetheless, Plaintiff simply suffered no harm--economic or otherwise, and no "adverse employment action" as defined by the law. Moreover, while Plaintiff and her counsel have taken the legal position that the offer of the CASA job at Plaintiff's higher salary, plus a monetary amount was not a *bona fide* settlement offer, but is, instead, "retaliation," this difference in perspective is <u>not a material fact</u> because Plaintiff admits the CASA job was merely a "lateral"[4] move and in no way affected the emoluments of her employment.

Plaintiff's allegation of retaliation is not a reasonable position under all the circumstances, and is controverted by the deposition testimony of Judge Guido, who was not involved with the instant litigation. Judge Guido specifically asked not to be informed about the litigation.  He testified that his only concern was to get the CASA program up and running.  Judge Guido was disappointed in Plaintiff's decision not to take the position, but found another candidate who performs the position successfully at the fairly established salary.

While Plaintiff testified that the idea to settle the litigation came up at the "eleventh hour," Judge Guido's testimony establishes that Plaintiff's assertion is simply incorrect. However, <u>even if</u> the settlement condition had come up at the "eleventh hour," as Plaintiff

---

[4]    Plaintiff, with a master's degree, was arguably overqualified for the CASA position.

claims, the timing of the settlement condition is <u>not a material fact</u> because Plaintiff is still unable to meet her burden to show that she was adversely affected.

### d.    Plaintiff's allegations related to a bomb scare

At deposition, Plaintiff claimed that she was not evacuated in a bomb scare in retaliation for filing her EEOC and her instant Complaint.  Plaintiff admits that no bomb was exploded or found.  At the time the evacuation was announced, Plaintiff was in her office with her door closed.  With the air purifier running, Plaintiff apparently did not hear the evacuation announcement.  Plaintiff's friends and co-workers in the office did not come for her or tell anyone in authority that she was still in the office.  On April 5, 2002, shortly after the bomb scare incident, and in reaction to Plaintiff's Complaint, new County procedures as to emergency evacuations were promulgated and distributed. Moreover, the County, immediately, and prior to April 5, put a glass window in the door of Plaintiff's office so that she could see out with the door closed to prevent anything similar from happening again.

This incident is not retaliatory because there is no causal link between the bomb scare incident and Plaintiff's protected activity; moreover, the matter was remedied by the promulgation of new evacuation procedures immediately after Plaintiff brought the incident to the attention of the Court and County Defendants.  Plaintiff's EEOC charge against the Court Defendant was initially received by the EEOC on 1/07/1999 and transmitted to Defendant Court on 2/26/99.  The bomb scare took place more than two years after the filing of the EEOC charge.  Plaintiff filed the instant federal court complaint on April 24, 2001.  The bomb scare took place 11 months later, on March 21, 2002.  The timing of the alleged retaliation defeats any claim Plaintiff can make that the filing of her EEOC charge or her present Complaint to this Court is causally linked to the bomb scare incident.

In <u>Robinson</u>, *supra.* the Third Circuit clarified when the timing of an alleged retaliatory action can, by itself, support an inference of causation. *Id*., comparing <u>Jalil v. Avdel Corp.</u>, 873 F.2d 701, 708 (3d Cir.1989) (plaintiff "demonstrated the causal link . . . by the circumstance that the discharge followed rapidly, only two days later, upon Avdel's receipt of notice of [his] EEOC claim") with <u>Delli Santi v. CNA Ins. Co</u>., 88 F.3d 192, 199 n.10 (3d Cir.1996) ("timing alone will not suffice to prove retaliatory motive"). The Robinson Court held that timing alone could not be used to establish causation where the adverse employment action did not immediately follow receipt of plaintiff's complaint. 120 F.3d at 1302.

This Court must find, as a matter of law, that none of the alleged retaliatory incidents changed the terms or conditions of Plaintiff's employment, and that Plaintiff can establish no causal link between her protected activity and the bomb scare incident. Therefore, Plaintiff cannot establish a prima facie case of retaliation.

## III.    CONCLUSION

For the foregoing reasons, Court Defendant, The Commonwealth of Pennsylvania, Ninth Judicial District, respectfully requests this Honorable Court to grant judgment in its favor.

Respectfully submitted,

**s/A. Taylor Williams**
A. TAYLOR WILLIAMS, ESQUIRE
Attorney I.D. No. PA33149
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6300, Fax: (215) 560-5486
***Attorney For Court Defendant***
***Cmwlth. of Pennsylvania, Ninth Judicial District,***
***Cumberland County Court Of Common Pleas***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| BARBARA E. VARNER, | : | | |
| *Plaintiff* | : | CIVIL ACTION | |
| v. | : | NO. 1:CV 01-0725 | |
| | : | | |
| COMMONWEALTH OF PENNSYLVANIA, | : | JURY TRIAL DEMANDED | |
| NINTH JUDICIAL DISTRICT, CUMBERLAND | : | | |
| COUNTY; S. GARETH GRAHAM, individually; | : | JUDGE YVETTE KANE | |
| and JOSEPH OSENKARSKI, individually, | : | | |

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on December 19, 2003, she personally

caused to be served upon the following a true and correct copy of the foregoing *Statement of*

*Concurrence/Nonconcurrence, Motion for Summary Judgment, Brief in Support thereof, and*

*proposed Order,* filed on behalf of Commonwealth of Pennsylvania, Ninth Judicial District,

Cumberland County Court of Common Pleas, by electronic service to:

Debra K. Wallet, Esq.
24 North 32nd Street
Camp Hill, PA 17011
*Counsel for Plaintiff*
walletdeb@aol.com

Paul J. Dellasega
Thomas, Thomas & Hafer, LLP
305 N. Front St., P.O. Box 999
Harrisburg, PA 17108
pdellasega@tthlaw.com

David J. Macmain, Esquire
L. Kristen Blanchard, Esquire
Montgomery, McCracken
123 South Broad Street
Philadelphia, PA 19109
kblanchard@mmwr.com

Paul Lancaster Adams, Esquire
Sweeney & Sheehan, P.C.
1515 Market Street, 15th Floor
Philadelphia, PA 19102
paul.adams@sweeneyfirm.com

s/A. Taylor Williams
A. TAYLOR WILLIAMS, ESQUIRE
Attorney I.D. No. PA33149
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6300, Fax: (215) 560-5486