## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA VARNER, | : | Civil Action No. 1:01-CV-725 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA , NINTH JUDICIAL | : | |
| DISTRICT, CUMBERLAND COUNTY, | : | |
| CUMBERLAND COUNTY, | : | |
| S. GARETH GRAHAM, individually, | : | |
| and JOSEPH OSENKARSKI, | : | |
| individually, | : | |
| | : | |
| Defendants. | : | |

# DEFENDANT S. GARETH GRAHAM'S
# MEMORANDUM OF LAW IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... i-iii

I.    INTRODUCTION AND STATEMENT OF FACTS ...................................... 1

    A.    Parties........................................................................................................ 2

        1.    Plaintiff Barbara Varner........................................................... 2

        2.    Defendant S. Gareth Graham .................................................. 3

    B.    Plaintiff's Relationship With Graham Until 1996 ................................. 4

    C.    Alleged Acts of Harassment ................................................................... 5

II.   SUMMARY OF ARGUMENT AND ISSUES PRESENTED ....................... 13

III.  STANDARD OF REVIEW ............................................................................ 14

IV.   ARGUMENT ................................................................................................ 15

    A.    Plaintiff Has Failed To Present Any Evidence That Defendant Graham Aided And Abetted In Any Discriminatory Behavior In Violation Of The PHRA.......................................................................................................... 15

        1.    Plaintiff Has Failed To Present Evidence Of A Hostile Work Environment Because The Testimony Is Undisputed That Graham Was A Difficult Supervisor Who Was Abusive Toward At All Employees ................................................................................... 16

            a.    Plaintiff Has Failed To Produce Evidence That Graham Discriminated Against Plaintiff Because Of Her Sex Because The Overwhelming Testimony Is That Graham Was Allegedly Hostile To Some Employees, Regardless Of Sex.................................................................................... 17

            b.    Plaintiff Has Failed To Produce Evidence That Graham's Alleged Harassment, Even If Found To Be Discrimination On The Basis Of Sex, Was Pervasive Or Severe. ....................... 23

            c.    Plaintiff Has Failed To Produce Evidence That The Alleged Behavior Would Have Detrimentally Affected A Reasonable Person Of The Same Sex In Her Position ............... 26

            d.    Conclusion .................................................................... 27

    B.    Plaintiff's Claim Against Graham Must Be Dismissed For Her Failure To Exhaust Her Administrative Remedies With Regard To Defendant Graham.......................................................................................................... 27

V.    CONCLUSION .............................................................................................. 30

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)..............................................................14

*Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074 (3d Cir. 1996)..................................17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).......................................................14

*Anderson v. Deluxe Homes of Pa., Inc.*, 131 F. Supp. 2d 637 (M.D. Pa. 2001))..............................................................................................................................22

*Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990) ......................................18

*Bacone v. Philadelphia Housing Authority*, No. 01-419, 2003 U.S. Dist. LEXIS 8818, at *12..........................................................................................................................26

*Baskerville v. Culligan International Co.*, 50 F.3d 428 (7th Cir. 1995)...........................24

*Bolden v. PRC., Inc.*, 43 F.3d 545 (10th Cir. 1994)..........................................................21

*Burlington Indust. v. Ellerth*, 118 S. Ct. 2257 (1998 .......................................................16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................14

*Cronin v. Martindale Andres & Co.*, 159 F. Supp. 2d 1, 9 (E.D. Pa. 2001).....................30

*Dici v. Commonwealth*, 91 F.3d 542 (3d Cir. 1996)...................................................14, 16

*Diep v. Soutwark Metal*, No. 00-6136, 2001 U.S. Dist. LEXIS 2953 (E.D. Pa., Mar.19, 2001)...........................................................................................................29

*EEOC v. R&R Ventures*, 244 F.3d 334 (4th Cir. 2001) .....................................................25

*Endres v. Techneglas, Inc.*, 139 F. Supp. 2d 624, 630 (M.D. Pa. 2001)..........21, 23, 25, 26

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) .................................................23, 25

*Frey v. Pennsylvania Airlines*, 859 F. Supp. 137 (M.D. Pa. 1992) ..................................22

*Gagliardi v. Universal Outdoor Holdings*, 137 F. Supp. 2d 374 (S.D.N.Y. 2001)...........30

*Glickstein v. Neshaminy Sch. Dist.*, No. 96-6236, U.S. Dist. LEXIS 16317 (E.D. Pa., Oct. 15, 1997).........................................................................................30

*Glus v. G.C. Murphy Co.*, 629 F.2d 248 (3d Cir. 1980) ....................................................28

*Gokay v. Pennridge Sch. District*, No. 02-8482, 2003 U.S. Dist. LEXIS 3201

i

(E.D. Pa. Feb. 28, 2003)..................................................................................29

*Harrington v. Hudson Sheraton Corp.*, 2 F. Supp. 2d 475, 478 (S.D.N.Y. 1998) ..........................................................................................................30

*Harris v. Forklift Sys., Inc.*, 114 S. Ct. 367 (1993).............................................28

*Herman v. City of Philadelphia*, No. 95-4030, 1995 U.S. Dist. LEXIS 19212 (E.D. Pa., Dec. 21, 1995) ......................................................................28

*Kunin v. Sears Roebuck and Co.*, 175 F.3d 289 (3d Cir. 1999), cert. denied 120 S. Ct. 398 (1999)..............................................................................17

*Lulis v. Barnhart*, 252 F. Supp. 2d 172, 176 (E.D. Pa. 2003).............................24

*McDonnell Douglas Corp. v. Green*, 93 S. Ct. 1817 (1973) ...............................16

*McGraw v. Wyeth-Ayerst Lab.*, No. 96-5780, 1997 U.S. Dist. LEXIS 20813 (E.D. Pa., Dec. 30, 1997) ......................................................................25

*McLaughlin v. Rose Tree Media Sch. Dist.*, 52 F. Supp. 2d 484, 492 (E.D. Pa. 1999) ..........................................................................................29

*Moore v. Grove North Amer.*, 927 F. Supp. 824 (M.D. Pa. 1996)......................22

*Ocheltree v. Scollon Product, Inc.*, 335 F.3d 325 (4th Cir. 2002)......................21

*Ogden v. Keystone Residence*, 226 F.Supp. 2d 588, 598-99 (M.D. Pa. 2002) ............25, 27

*Oncale v. Sundowner Offshore Service, Inc.*, 523 U.S. 75 (1998)................17, 18

*Saidu-Kamara v. Parkway Corp.*, 155 F. Supp. 2d 436, 438 (E.D. Pa. 2001) ............25, 27

*Schafer v. Board Of Public Ed.*, 903 F.2d 243 (3d Cir. 1990)...........................28

*Schwartz v. D/FD Operating Service*, 205 F.R.D. 166 (D. Del. 2002) ..............30

*Sherif v. Astrazeneca*, No. 00-CV-3285, 2002 U.S. Dist. LEXIS 11408 (E.D. Pa., Jan. 29, 2002) .......................................................................27

*Smith v. Pathmark Stores, Inc.*, No. 97-1561, 1998 U.S. Dist. LEXIS 8631 (E.D. Pa., June 11, 1998) ......................................................................23

*Spain v. Gellegos*, 26 F.3d 439 (3d Cir. 1994) ......................................17, 22, 27

*Staples v. Hill*, No. 3:97-580, 1999 U.S. Dist. LEXIS 21659 (M.D. Pa., Aug. 20, 1999) ..........................................................................................19, 21

*Suders v. Easton*, 325 F.3d 432 (3d Cir. 2003)...........................................17, 19

ii

*Tarr v. Credit Suisse Asset Manuf.*, No. 95-CV-1857, 1997 U.S. Dist. LEXIS 5000 (E.D. N.Y., Mar. 21, 1997) ............................................................30

*Weston v. Commonwealth of Penn.*, No. 98-3899, 2001 U.S. Dist. LEXIS 19185 (E.D. Pa., Nov. 20, 2001)...............................................................21

*Zelinski v. Pennsylvania State Police*, 282 F. Supp. 2d 251, 268-69 (M.D. Pa. 2003) .......................................................................................23, 26

### STATE CASES

*Hoy v. Angelone*, 456 Pa. Super. 596, 691 A.2d 476 (1997) ...............................................28

### DOCKETED CASES

*Frye v. Robinson Alarm Co.*, No. 97-0603, 1998 WL 57519 (E.D. Pa., Feb. 11, 1998) ................................................................................................15

### FEDERAL STATUTES

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, <u>et</u> <u>seq</u> ............................1, 16

### STATE STATUTES

43 Pa. Cons. Stat. Ann. § 955(e)..........................................................................................15

988966v4

**UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BARBARA VARNER,** | : | **Civil Action No. 1:01-CV-725** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA , NINTH JUDICIAL** | : | |
| **DISTRICT, CUMBERLAND COUNTY,** | : | |
| **CUMBERLAND COUNTY,** | : | |
| **S. GARETH GRAHAM, individually,** | : | |
| **and JOSEPH OSENKARSKI,** | : | |
| **individually,** | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANT S. GARETH GRAHAM'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

I.    **INTRODUCTION AND STATEMENT OF FACTS**[1]

This is an employment discrimination case.  Plaintiff initiated this action against

Defendants Commonwealth of Pennsylvania Ninth Judicial District ("Court"), Cumberland

County ("County"), alleging that she was subject to discrimination, retaliation, and a hostile

work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et

seq. ("Title VII").  Plaintiff further alleges that individual Defendants S. Gareth Graham

("Graham") and Joseph Osenkarski ("Osenkarski") aided and abetted the County in

discriminating against Plaintiff, in violation of the Pennsylvania Human Rights Act, 43 P.S. §

951, et seq. (PHRA).

---

[1] Graham incorporates by reference his Statement of Undisputed Material Facts.  All facts alleged by Plaintiff are
provided for purposes of this Brief in Support of S. Gareth Graham's Motion for Summary Judgment only.  Graham
reserves the right to challenge any or all of the facts set forth herein if this case proceeds to trial.

After nearly 3 years of discovery, including 20 depositions, 3 of which were given by state court judges, and extensive written discovery, Plaintiff cannot meet her prima facie burden to support her claim that Defendant Graham aided and abetted in any discrimination against Plaintiff.

Discovery shows:

1.     Graham did not single out Plaintiff but instead was alleged to be verbally abusive toward a number of employees, male and female;

2.     Graham did not aid or abet his employer in failing to prevent a hostile work environment; and

3.     Plaintiff failed to exhaust her administrative remedies regarding her claims against Graham.

In light of these facts, Plaintiff has failed to produce sufficient evidence to create an issue of fact that would necessitate a trial on her claim.  Accordingly, Defendant Graham is entitled to summary judgment as a matter of law.

**A.     Parties**

**1.     Plaintiff Barbara Varner**

Plaintiff Barbara Varner ("Plaintiff") was hired by the County on December 4, 1990, as a caseworker for Children and Youth Services.  (Complaint ¶ 14).  As a caseworker, she worked with Defendant Graham, a Probation Officer, on joint cases, and Graham assisted Plaintiff with her work.  (Pl. dep.[2] at 77).

On February 7, 1995, Plaintiff was hired by, and transferred to, the Probation Department.  (Id. at 84, 93-94).  Graham was a proponent of Plaintiff's hire by the Department.

---

[2] "Pl. dep." refers to pages from the deposition of Plaintiff Barbara Varner, taken on January 27 and 28, 2003, a copy of which is electronically submitted as Exhibit "A."

923083v1

(Id. at 86-7, 90, 112-13). In that position, Plaintiff was trained by Graham and supervised by Defendant Osenkarski and Ken Bolze.[3] (Id. at 91-92) Plaintiff has been a Senior Probation Officer since approximately 1998.[4] (Id. at 188).

### 2.    Defendant S. Gareth Graham

Graham was hired by Defendant Court in September, 1977. (Graham dep.[5] at 4). Other than Plaintiff's complaint, there have been no complaints of sexual harassment or discrimination, formal or informal, filed against Graham by any employee of the County or Court during Graham's 26 years of employment. (Osenkarski[6] dep. at 20-21, 194).

Graham became Plaintiff's supervisor on January 1, 1997. (Graham dep. at 53-54, 64). On April 25, 1997, Plaintiff complained to Osenkarski about Graham's behavior. (Pl. dep. at 191). On June 13, 1997, Graham was removed from his supervisory duties. (Osenkarski dep. at 84). As a result of Plaintiff's complaint against Graham, several individuals in the Probation Office were interviewed, including Graham and Osenkarski. Based upon his finding that (1) Graham used foul language in the office; and (2) no longer had the judge's confidence as a manager, the Honorable Harold E. Sheely suspended Graham for three days. Graham was later demoted and transferred by the Honorable George Hoffer to a position in which he had no

---

[3] Bolze retired in 1996. (Id. at 98).

[4] The County and Court dispute who employed Plaintiff during all times relevant to this matter and both claim that Plaintiff is employed by the other. For purposes of this motion, it is immaterial who employed Plaintiff.

[5] "Graham dep." refers to pages from the deposition of Defendant S. Gareth Graham, taken on January 29 and February 14, 2003, a copy of which is submitted as Exhibit "B."

[6] "Osenkarski dep." refers to pages from the deposition of Joseph Osenkarski, taken on January 27 and February 11, 2003, a copy of which is submitted as Exhibit "C."

contact with any of the employees in the Probation Office, including Plaintiff. (Sheely dep.[7] at 17-19).

**B.    Plaintiff's Relationship With Graham Until 1996**

Plaintiff admits that when she was a caseworker in CYS, she and Graham interacted by telephone or in person "a couple times" per week and she did not have an opinion of Graham other than that he was helpful when she needed his help.[8] (Pl. dep. at 77-80). Her relationship with Graham at that point was "cordial" and she had no problems with Graham through 1996. (Id. at 83, 125). Indeed, until August, 1996, Plaintiff had a "comfortable business" relationship with Graham. (Id. at 98, 99-100, 106).

Prior to her transfer to the Probation Department, Plaintiff admits that she heard rumors that Graham was a "hot head, that he really would get angry quickly. And I . . . knew that [with] Mr. Osenkarski and Mr. Graham, either you were in good favor with them or you were basically being punished." (Id. at 90).

Once in the Probation Department in 1995 and supervised by Graham in 1997, Plaintiff did not agree with the manner in which Graham performed his job. (Id. at 95-6). She did not question Graham's style, however, because she "was aware that either you're in favor or you're punished, and I really did not want to fall into the punishment mode." (Id. at 96). Prior to the time that her relationship with Graham allegedly changed, in or around 1996, Plaintiff alleges that Graham lost his temper with other individuals in the office, but not Plaintiff. (Id. at 99).

---

[7] "Sheely dep." refers to pages from the deposition of The Honorable Harold E. Sheely, taken on February 26, 2003, a copy of which is submitted as Exhibit "D."

[8] Graham contends that from 1991 until approximately 1996, he and Plaintiff engaged in an extramarital affair, consisting of numerous covert meetings in which they engaged in sexual relations. (Pl. dep. at 266-69). The affair was part of the Honorable George E. Hoffer's reason for transferring Graham out of the Probation Office in 1998. (See Graham's Statement of Undisputed Facts at ¶183). Plaintiff denies the existence of any affair with Graham. (Id. at 269). For purposes of Graham's motion for summary judgment, it is immaterial whether Graham and Plaintiff engaged in a consensual affair or maintained merely a professional relationship.

-4-

### C.    Alleged Acts of Harassment

On January 1, 1997, the Probation Office split into two divisions, the Adult Probation and the Juvenile Probation departments. (Graham dep at 53-54; Osenkarski dep. at 135). As a result of the split, the workload on some employees increased. (Christlieb dep.[9] at 31). Also as a result of the split, Graham became Plaintiff's supervisor. Graham and Plaintiff's joint secretary testified that Graham and Plaintiff had a "very good" working relationship prior to the split in departments. (Boyles dep.[10] at 10). However, Plaintiff alleges that in or around late 1996 and after the split in 1997, Graham began to harass Plaintiff based upon her sex.[11] Specifically, Plaintiff alleges the following acts of harassment by Graham, all of which Graham denies:

- After Plaintiff started working in the Probation Office in February, 1995, Graham allegedly told Plaintiff not to talk to a female employee who filed a discrimination complaint against Defendant Osenkarski on the basis that the employee was an "angry woman . . . divorced . . . all divorced women are angry." (Pl. dep. at 153; Complaint at ¶ 16.g.).

- Despite testifying that she had no problems with Graham until 1996, Plaintiff alleges that on one occasion in approximately the Spring of 1995, Graham patted her "behind" in front of a female co-worker. (Pl. dep. at 83, 125, 141). There has been no evidence presented that Plaintiff ever complained about this alleged incident.

---

[9] "Christlieb dep." refers to pages from the deposition of the Darby Christlieb, taken on April 28, 2003, a copy of which is attached as Exhibit "E." Christlieb has worked in the Juvenile Probation Department since 1989. (Christlieb dep. at 4)

[10] "Boyles dep." refers to pages from the deposition of Rhona Boyles, taken on March 3, 2003, a copy of which is attached hereto as Exhibit "F." Boyles worked as a secretary for both Plaintiff and Graham for several years. (Boyles dep. at 5-7). Boyles was fired from the Probation Department in or around 1997 or 1999 and admits to being "very disappointed" about that. (Id. at 5, 42). She admits to having socialized with Plaintiff and being "good friends" with her. (Id. at 41, 44-46).

[11] As discussed in the Argument section, infra, only those acts allegedly occurring between January 1, 1997, and June 13, 1997, may be considered for purposes of this brief. For the sake of completeness, however, all of Plaintiff's allegations are set forth.

923083v1

- Plaintiff alleges that around January, 1996, Graham gave her a birthday card. (Id. at 124-27, 386). The card allegedly said something about remembering good times and looking forward to more. (Id. at 124). Plaintiff claims that she was offended by the card but admits that she failed to complain about the card. (Id. at 126).

- Plaintiff alleges that Graham appeared at her home uninvited on one occasion in May, 1996. (Id. at 142). Plaintiff cannot identify any neighbor who saw Graham do this, and admits that (1) she does not know why Graham was at her home; (2) Graham did not enter her home; and (3) she never reported this alleged incident to anyone at work. (Id. at 144-45).

- Plaintiff alleges that at some point after August, 1996, in discussing a "balanced approach" to probation work that involved satisfying the victim, the juvenile, and the community, Graham pointed at himself and smiled. (Id. at 156-57; Complaint at ¶ 16.h.). Plaintiff *assumed* that Graham's action implied that she had to satisfy him sexually. (Pl. dep. at 156-7). She admits that Graham never solicited her for sex in any form. (Id. at 157).

- Plaintiff alleges that while attending an out-of-town, work-related conference in October, 1996, Graham knocked on her hotel door and, when she failed to answer, called her on the telephone. (Id. at 113-14). She admits that Graham wanted nothing more than to "stop in." (Id.) She also admits that after they spoke on the phone, Graham made no further effort to contact her.[12] (Id.)

- Plaintiff alleges that on November 20, 1996, Graham used the term "peter meter" and the words "Jesus Christ" in a conversation about a female client of the Probation Department. (Id. at 120-21).

---

[12] This is contrary to her allegation in the Complaint that Graham called her repeatedly. (Complaint at ¶ 16.c.).

923083v1

- Plaintiff alleges that on one occasion in late 1996 or early 1997, she threatened to report Graham to Defendant Osenkarski for using foul language and yelling at her. (Id. at 160). She alleges that when she threatened to report his behavior, Graham threatened to have the judge reprimand her. (Id. at 160).

- She alleges that Graham complained a great deal about others in the office, as well as about his wife. (Id. at 134-35). She admits that his anger in those situations was not directed toward Plaintiff. (Id. at 135).

- Plaintiff alleges that between 1996 and 1997 Graham talked to her about sexual problems he allegedly had with his wife. (Id. at 128). She alleges that on one occasion in 1997, Graham described an incident in which he awoke in the middle of the night and discovered his wife masturbating, and that he maintained a calendar as to how frequently he and his wife engaged in sexual activity. (Id. at 135-36). In response to this, Plaintiff told Graham that he needed counseling. (Id. at 136, 387-88). Plaintiff further claims that she offered Graham the names of family counselors. (Id. at 137). Plaintiff also told Graham that she did not want to hear him speak of such things again. (Id. at 137-38) She admits that this was the only occasion on which Graham discussed his sexual problems with his wife. (Id. at 136-38). She further admits that at the time, she failed to report this incident through the grievance policy promulgated by the Court or County. (Id. at 138).

- Plaintiff alleges that in 1996 or 1997, she was given less desirable assignments and more assignments, overall, approximately 25 to 35 cases at a time. (Id. at 180-82). However, a chart produced in discovery listing the caseload of each officer in the Adult Probation Department for 1997 shows that Plaintiff's caseload was average and, in fact, at

-7-

least one male officer handled a larger caseload. (See caseload chart, a copy of which is submitted as Exhibit "G").

- Plaintiff alleges that in 1997, Graham talked about smashing his wife's figurine collection to "punish" his wife and that he stated that he would "do anything . . . to get even with her." (Id. at 129, 148, 150; Complaint at ¶ 16.f.). Plaintiff further alleges that in or around 1997, Graham told her that he destroyed a birthday cake to punish his wife. (Pl. dep. at 148-49; Complaint at ¶ 16.f.). Plaintiff admits that these incidents were not offensive to her. (Pl. dep. at 151-52).

- Graham allegedly remarked on one occasion about how dark a young female's "bush" was. (Id. at 157-58, 159; Complaint at ¶ 16.i.). Moreover, Graham allegedly complimented Plaintiff on several occasions regarding how "nice" she looked. (Pl. dep. at 158). He also allegedly commented to Plaintiff, after she and other probation officers were fitted for bulletproof vests in or around 1997, that Plaintiff's breasts were not as large as another probation officer. (Id. at 158). Plaintiff admits that Graham never commented on any other part of her body and never again commented on her breasts. (Id. at 159).

- At one point in 1997, Graham "screamed" at Plaintiff because of some work that she had done. (Id. at 97). He also started finding fault with her work when he previously had not, and, on one occasion, criticized the time of day that she and another female probation officer left for a placement trip. (Id. at 100-01). Plaintiff alleges that Graham screamed at her and the other officer, Debra Green ("Green"), and used foul language. (Id. at 103, 163). Plaintiff also alleges that Graham docked her and Green one hour of overtime pay for the trip. (Id. at 101, 103) Plaintiff alleges that Graham did not reprimand male officers for the time that they left for commitment trips. (Id. at 102). Plaintiff's co-worker and "friend,"

Green testified that she and Plaintiff were told only on one occasion that they had to leave at a specific time for a commitment trip. (Green dep.[13] at 13, 24-25). Green conceded that she has no information as to whether male employees also were restricted in this manner. (Id. at 24). Plaintiff's former supervisor, Thomas Boyer, testified that at or around the time of the alleged docking of pay, the department began restricting the overtime permitted for commitment trips and encouraging employees to complete trips within normal work hours. (Boyer dep.[14] at 126-28). Plaintiff's co-worker, Nicole Galbraith, testified that when she went on commitment trips with Graham, they left "as early as we could," probably around 7:30 a.m. (Galbraith dep.[15] at 71).

- Plaintiff alleges that on two occasions, Graham directed the "f" word toward her, although she admits that she was not present on one of the two alleged incidents. (Pl. dep. at 163-64). Moreover, Plaintiff alleges that even if Graham had not used the "f" word, she would have found the statements to be offensive.[16]

- Plaintiff alleges that although Graham had no previous problems with her work, in or around 1997, he suddenly he started berating her for her work. (Id. at 168-69). Nevertheless,

---

[13] "Green dep." refers to pages from the deposition of Debra Green, taken on April 8, 2003, a copy of which is submitted as Exhibit "H."

[14] "Boyer dep." refers to pages from the deposition of the Thomas A. Boyer, taken on September 17, 2003, a copy of which is submitted as Exhibit "I." Boyer was Plaintiff's supervisor from approximately August, 1996, until April, 1997, the time period during which Plaintiff complains that most incidents of sexual harassment by Graham occurred. (Boyer dep. at 8-9).

[15] "Galbraith dep." refers to pages from the deposition of the Nicole Galbraith, taken on November 3, 2003, a copy of which is submitted as Exhibit "J." Galbraith worked with Plaintiff and Graham until the division split in 1997. (Galbraith dep. at 5). Since that time, she has worked in the Adult Probation department. (Id.)

[16] Graham allegedly said that Plaintiff had "no fucking sense, no fucking training and no fucking ability." (Pl. dep. at 163). Plaintiff alleges that the occasion on which Graham directed foul language toward her in her presence, his statements pertained to a file, and not to Plaintiff. (Id. at 162).

Plaintiff admits that she never determined what was wrong with her work or that it was *not* deficient.  (Id. at 170).

- Plaintiff alleges that on one occasion in 1997, Graham wadded up a piece of paper and threw it at her when he was not happy with the way in which she did some work.  (Id. at 171, 383).  She also alleges that he "pointed his finger in [her] face and started saying, ["]'you. . . don't know what you're doing . . . you have no fucking idea what's going on here.'"  (Id. at 171).

- Plaintiff alleges that she received numerous crank calls, and believes that at least some of them were made by Graham.  (Id. at 183).  She bases her belief only upon the "knowledge of the potential, what they could do."  (Id. at 184).

- Plaintiff claims to have feared for her safety around Graham because he "punishes" people.  (Id. at 184, 212).  Plaintiff alleges that Graham will punish "anybody" who crosses him.  (Id. at 184)

Despite all of these allegations, Plaintiff admits that she has heard Graham "scream" at another, male employee and "raise his voice" to other, male employees.  (Id. at 173, 174, 408).  Plaintiff further admits that she heard Graham use foul language with other employees.  (Id. at 175, 249-50).  Plaintiff admits that she has not heard Graham raise his voice to other female employees.  (Id. at 174).

The testimony in this matter of the numerous co-worker witnesses was that Graham would occasionally get upset at *male and female* employees for work-related issues.[17]  (Houser

---

[17] Kerry Houser, who was identified by Plaintiff as a witness favorable to her case and who admitted to not liking Graham, identified five male co-workers to whom Graham would not speak because Graham was "punishing" them. (Houser dep. at 19-20, 46).  These individuals included Tom Boyer, Paul Meuron, Mike Dunsmore, Greg Miller and Lyle Herr.  (Id. at 19-20).  Witness Debra Green identified Dirk Madison and Nick Barrelet as two male employees whom Graham did not like.  (Green dep. at 154).

dep.[18] at 15-17, 19-20, 60-61, 63-64, 89; Miller dep.[19] at 8, 68, 69-70; Green dep. at 114, 139, 153; Christlieb dep. at 18, 38-39; Galbraith dep. at 14).  Testimony was undisputed that Plaintiff's co-workers heard Graham occasionally yell at some employees regardless of gender. (Houser dep. at 28, 57-58, 64, 88; Green dep. at 61-62; Boyer dep. at 103, 116; Christlieb dep. at 15; Galbraith dep. at 12, 14, 57).

Witnesses also described Graham as "excitable" and "loud." (Sheely dep. at 58-59, 117; Green dep. at 60; Boyer dep. at 30, 102-03, 135-36; Boyles dep. at 14-15; Brandt dep. at 30). One male witness testified that he witnessed Graham yell at Plaintiff on one occasion but was yelled at himself approximately 12 times. (Christlieb dep. at 68).  Witnesses further testified that Graham occasionally used foul language in the office but that the use of foul language among office employees was common. (Houser dep. at 67; Miller dep. at 23, 56, 57-58; Boyles dep. at 18; Brandt dep. at 35-36, 82-84).

Most witnesses testified that Graham treated male and female employees, including Plaintiff, equally, whether good or bad. (Miller dep. at 15-16, 33-34; Boyer dep. at 30-31; Boyles dep. at 15; Brandt dep.[20] at 13-14, 31, 77; Galbraith dep. at 77-78).  Graham "didn't talk to a lot of people in the office unless he had to." (Houser dep. at 19, 60-61).  One female employee testified that Graham treated male officers with disrespect on multiple occasions. (Green dep. at 154).  A male employee testified that he felt harassed by Graham on several

---

[18] "Houser dep." refers to pages from the deposition of Kerry Houser, taken on March 3, 2003, a copy of which is submitted as Exhibit "K."

[19] "Miller dep." refers to pages from the deposition of Samuel Miller, taken on April 28, 2003, a copy of which is submitted as Exhibit "L."

[20] "Brandt dep." refers to pages from the deposition of William Brandt, taken on April 4, 2003, a copy of which is submitted as Exhibit "M."  Brandt worked as a Probation Officer in the Probation Department with Plaintiff and Graham during all times pertinent to this matter. (Brandt dep. at 8-9). Brandt testified that although he and Graham used to be "friendly," they no longer have any contact and Brandt believes that Graham is "not happy with" him. (Id. at 17-19).

occasions because he and Graham would go "toe to toe" on work issues.  (Christlieb dep. at 16-17).

Significantly, several co-workers testified that during the "favorite" stage, Graham seemed to go out of his way to be nice to Plaintiff or spend time with her, that they seemed to be friends, or that Graham treated the female employees *better than* the male employees.  (Houser dep. at 29-30, 57, 64; Boyer dep. at 17, 18, 131-32; Brandt dep. at 12-14, 26-27; Christlieb dep. at 6-7, 9-10).  Other witnesses testified that Graham played "favorites" in the office and that at one time, Plaintiff was a "favorite."  (Green dep. at 148, 151, 207; Boyles dep. at 15-16; Christlieb dep. at 7; Galbraith dep. at 15).  Indeed, Debra Green testified that when Plaintiff was a "favorite" and was assigned by Graham to take numerous road trips, Plaintiff was put in a position to earn a "lot more" money than people who were not assigned to the road trips.  (Green dep. at 150; see also Christlieb dep. at 68).

One of Plaintiff's co-workers' former supervisors, Thomas Boyer, who supervised Plaintiff during the time that she claims to have been harassed by Graham, testified that, on multiple occasions, Plaintiff "verbalized nothing but complete satisfaction, optimistic about the future, specifically complimenting about [Osenkarski's] management practices, [Graham] being a good guy." (Boyer dep. at 11).  Moreover, although Boyer would have been the individual to whom Plaintiff should have reported any complaints at the time, Boyer testified without contradiction that Plaintiff never complained to him about Graham and, in fact, seemed to spend excess time with Graham on breaks.  (Boyer dep. at 16-19, 49-50).

> . . . [B]ecause it was a new department, because we were putting together a lot of things, I would just informally ask her and all other staff also, how're we doing [sic], meaning, hey, what do you think, where're we going, et cetera.  And she was consistently and always of a positive nature . . . And, of course, Gary Graham was a good guy, good manager, and I had no reason to think that she was to any extent displeased with anything.

-12-

(Boyer dep. at 12-13).

A female employee of the Probation Department, who ended her friendship with Graham because of professional problems her husband had with Graham, testified that in all of her dealings with Graham, including commitment trips with him, Graham never acted inappropriately toward her, nor did she observe Graham act inappropriately toward any female employee. (Galbraith dep. at 37, 41-42, 43, 46, 53).

Plaintiff admits that in the aftermath of complaining about Graham's behavior in April, 1997, and Graham being removed from any supervisory duties over Plaintiff, Graham did not engage in any retaliation against her. (Pl. dep. at 186, 198). Plaintiff now alleges that there was or is a "conspiracy" between Graham, Graham's wife, Defendant Osenkarski, Judge Sheely and the Honorable George E. Hoffer to protect Graham. (Id. at 409-410, 412-13, 420-21).

## II.    SUMMARY OF ARGUMENT AND ISSUES PRESENTED

As more fully set forth herein, Plaintiff's single claim against Graham, violation of the PHRC for allegedly "aiding and abetting" and "conspiring" with County and Court officials, fails, and summary judgment should be entered in favor of Defendant Gary Graham for multiple reasons. Plaintiffs claim fails for multiple **substantive** reasons.

- Plaintiff has presented no evidence whatsoever to support her sole claim that Graham "aided and abetted" or "conspired" with County or Court officials. Indeed, Graham does not even know who his employer is as both the County or the Court claim that he was employed by the other.

- Plaintiff was not subjected to a hostile work environment or discriminated *because of her sex.* Rather, multiple witnesses, including Plaintiff, have alleged that Graham was excitable and temperamental to a number of employees, female *and male.*

- The handful of alleged instances of harassment, most of which do not involve sex-related conduct, do not, as a matter of law, rise to the requisite level of "pervasive and severe."

- Plaintiff suffered no adverse employment action. She lost no pay or benefits and was not demoted or transferred. Instead, she remained in her position, has received pay increases, and missed no time from work.

Additionally, Plaintiff's claim fails for **procedural** reasons as she failed to exhaust her administrative remedies as to Graham. Specifically, Plaintiff, with the assistance of counsel, filed an administrative complaint with the EEOC in 1999, naming only the Court and the County as respondents. Graham was not named as a party, nor did he have a "commonality of interest" with the named respondents as both the County and the Court disclaim Graham as their employee. Likewise, Graham was specifically refused participation in the agency proceedings to defend against Plaintiff's allegations against him. Rather, the first time that he was able to defend against Plaintiff's allegations was April, 2001, when the present suit was filed, almost four (4) years after the last instance of alleged harassment. Accordingly, Plaintiff's claim against Graham is barred for failure to exhaust administrative remedies.

## III.    STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact,

923083v1

and that the moving party is entitled to judgment as a matter of law." The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The burden on the party moving for summary judgment is not to show the "absence of a genuine issue of material fact," but rather to show "that there is an absence of evidence to support the non-moving party's case." Catrett, 477 U.S. at 325. Although all evidence must be viewed in a light most favorable to the non-moving party, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

## IV.    ARGUMENT

### A.    Plaintiff Has Failed To Present Any Evidence That Defendant Graham Aided And Abetted In Any Discriminatory Behavior In Violation Of The PHRA.

The PHRA forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice . . ." 43 Pa. Cons. Stat. Ann. § 955(e). Thus, unlike Title VII, the PHRA holds individuals liable for "aiding and abetting" in discriminatory practices. Dici v. Commonwealth, 91 F.3d 542 (3d Cir. 1996). "A supervisor's failure to take action to prevent discrimination, even when it is the supervisory employee's own practices at issue, can make him or her liable for aiding and abetting the employer's insufficient remedial measures." Frye v. Robinson Alarm Co., No. 97-0603, 1998 U.S. Dist. LEXIS 1331, at *16 (E.D. Pa., Feb. 11, 1998). Only supervisors can be held individually liable under the PHRA for aiding and

-15-

abetting; non-supervisory employees cannot be held individually liable for the same actions.

Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 553 (3d Cir. 1996).

It is uncontroverted in this matter that Graham did not become Plaintiff's supervisor until

January 1, 1997. (Graham dep at 53-54, 64; Osenkarski dep. at 135). Accordingly, Graham

cannot be held individually liable for any actions alleged to have taken place prior to 1997 or

subsequent to June 13, 1997. See Dici, 91 F.3d at 553. As a result, only those actions alleged to

have occurred in 1997 between January 1 and June 13, can be considered by this Court for

purposes of assessing Graham's individual liability.

In order to establish that Graham aided and abetted in violation of the PHRA, Plaintiff

first must prove that a hostile work environment[21] existed as a result of Graham's actions. She

has failed to do this.

> **1.    Plaintiff Has Failed To Present Evidence Of A Hostile Work Environment Because The Testimony Is Undisputed That Graham Was A Difficult Supervisor Who Was Abusive Toward At All Employees**

Plaintiff alleges a hostile work environment based upon the alleged treatment she

experienced by Graham. As explained supra, the testimony is undisputed that Graham allegedly

could be difficult and verbally abusive toward some employees, male and female, and did not

single out Plaintiff.

Title VII makes it illegal "to . . . discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's . . .

---

[21] Plaintiff alleges in her complaint that she has been subject to harassment, discrimination, retaliation and a hostile work environment. Nevertheless, the prima facie test for a violation of Title VII or the PHRA for purposes of discrimination or retaliation requires that the plaintiff suffer an "adverse employment action." See, e.g., McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Plaintiff admits she has suffered no adverse employment action as a result of any action taken by Graham, although she alleges retaliation on the part of other individuals, after Graham was removed from his supervisory duties. (See Complaint at ¶32). Accordingly, Plaintiff has conceded that she cannot establish discrimination or retaliation against Graham. See Burlington Indust. v. Ellerth, 118 S. Ct. 2257, 2268 (1998) (defining tangible employment action in the context of a hostile work environment).

923083v1

sex." 42 U.S.C. §2000e-2(a)(1) (emphasis added).  To establish the existence of a hostile work environment, Plaintiff must show that

> (1) [she] suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and severe; (3) the discrimination detrimentally affected the plaintiff; [and] (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position.[22]

Suders v. Easton, 325 F.3d 432, 441 (3d Cir. 2003); Kunin v. Sears Roebuck and Co., 175 F.3d 289, 293 (3d Cir. 1999), cert. denied 120 S. Ct. 398 (1999); Spain v. Gellegos, 26 F.3d 439, 447 (3d Cir. 1994).  "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discrimination . . . because of . . . sex.'" Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 81 (1998).

The key issue is whether a plaintiff would have suffered the same behavior had she not been female.  Id. at 80; Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1083 (3d Cir. 1996).

Here, Plaintiff has failed to establish the first, second and fourth prongs of the prima facie case for hostile work environment and accordingly, her claim against Graham must be dismissed as a matter of law.

> **a.      Plaintiff Has Failed To Produce Evidence That Graham Discriminated Against Plaintiff Because Of Her Sex Because The Overwhelming Testimony Is That Graham Was Allegedly Hostile To Some Employees, Regardless Of Sex**

Plaintiff's allegations fail to establish that Graham discriminated against her on the basis of sex for two reasons: (1) she has failed to prove that the substantial majority of the alleged behavior was based upon Plaintiff's sex; and (2) the unrefuted testimony in this matter is that Graham was hostile toward other employees in the Probation Office, regardless of sex.

---

[22] The Court of Appeals has articulated a fifth element, respondeat superior, see Suders, 325 F.3d at 441, that has no relevance to the claim against individual Defendant Graham.

923083v1

> The intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language is implicit, and thus should be recognized as a matter of course. A more fact intensive analysis will be necessary where the actions are not sexual by their very nature.

Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990).

In assessing whether an employee was treated differently because of sex, the primary issue is whether the employee was "exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale, 523 U.S. at 80 (citation omitted). Nevertheless, the Supreme Court wrote that, "we have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations." Id. at 80.

Plaintiff admits that while Graham was her supervisor, he never propositioned her for, or demanded any, sexual activity, never directed any sexual comments toward her, never touched her inappropriately, and that use of the word "fuck" does not shock her. (See Graham's Uncontested Statement of Facts). The only alleged acts that can possibly be construed to be "sexual" in nature include Graham discussing his sexual problems with his wife, Graham's alleged comment on one occasion about how dark a female's "bush" was, and Graham's alleged comment about the size of Plaintiff's breasts when she tried on a bulletproof vest. (See discussion, supra, at 7-10). Plaintiff's remaining complaints involve Graham's use of foul language, her allegation that she carried a larger caseload than other officers, Graham's discussion of punishing his wife by smashing a birthday cake and her figurine collection, and Graham's "screaming" at Plaintiff for taking too long on a commitment trip. (Id.)

-18-

There is evidence that Graham was perceived by some male and female employees as someone who "punished" employees, regardless of sex, by yelling at them, not "favoring" them, embarrassing them, using foul language, or refusing to talk to them. (Id. at 10-13). Moreover, the evidence is undisputed that for a period of time, Graham "favored" Plaintiff and was particularly friendly toward her as compared with other employees. (Id.)

There has been no evidence whatsoever to suggest that Graham treated Plaintiff, or any other female employee, differently based upon sex. Indeed, it was a female employee who testified that Graham favored Plaintiff for a period of time, (Green dep. at 148, 151, 207), while another female employee testified that Graham never acted inappropriately toward her, nor did she ever see Graham act inappropriately toward any female employee, (Galbraith dep. at 41-42, 43, 46).

Plaintiff's "evidence" of sex-based hostility sharply contrasts with cases in which courts have found hostile behavior to be based upon sex, rather than a non-protected basis. For example, in Suders, supra, the plaintiff's supervisors were "preoccupied" with discussing bestiality with the plaintiff, consistently leered at her, grabbed their crotches and yelled, "suck it," and repeatedly discussed piercing their genitals. Suders, 325 F.3d at 442 (writing that the "most persuasive" evidence of sex-based harassment was the repeated grabbing of the crotch and yelling, "suck it");

On the other hand, in a case similar to the instant matter, the hostility exhibited by the supervisor was found not to be sex-based. In Staples v. Hill, the plaintiff was a corrections officer who alleged a hostile work environment based upon sex. Staples v. Hill, No. 3:97-580, 1999 U.S. Dist. LEXIS 21659, at *17 (M.D. Pa., Aug. 20, 1999). After she complained that her day-shift supervisor altered her performance evaluation, her supervisor repeatedly used foul

language, including calling the plaintiff a "bitch," "fucking petty," a "cunt," and a "fucking liar." Id. at *3. He also told the plaintiff to "fuck herself" and "shut the fuck up." Id. He told other employees that he "hates that bitch" and "the bitch gets nothing from me," repeatedly used the word "fuck" during meetings, and, while female employees were sitting around a table, commented that "a bomb under the that table would solve all my problems." Id. at *3-4.

The plaintiff also complained that she received unfavorable assignments more frequently than other officers and that she was assigned to the more difficult position of the male intake unit more often than others. (Id. at 4). She also claimed that although the supervisor directed foul language to male and female employees, he could not "cure" his use of foul language toward women by also cursing at men. Two other female employees testified that the supervisor disfavored them and that he treated female employees differently based upon stereotypes, to wit, he distinguished in his treatment between "strong women" who spoke their minds and "other" women, who were "docile and deferential." Id. at *19.

Significantly, the plaintiff admitted that none of the male supervisors "made any sexual advances toward her; never propositioned her; never asked her out on a date; never came on to her; and never physically touched her in a sexually suggestive manner." Id. at 11. Moreover, she admitted that the supervisor favored some women and failed to discipline certain women. Id. at *17. The court affirmed the magistrate judge's grant of summary judgment to the defendants and wrote that although the supervisor used sex-based foul language, e.g., "bitch" and "cunt," the supervisor's abuse "did not center on the fact that [the plaintiff] was a female . . ." Id. at *14. The court wrote that the prison is a "caustic environment" in which "vulgar banter, tinged with sexual innuendo, [by] coarse and boorish coworkers" was to be expected. Id. at *16.

-20-

As for the supervisor's distinction between "strong" and "other" women, the court wrote that there was no evidence produced that the supervisor's allegedly stereotypical viewpoint of women impacted any employment decisions he made regarding female employees. Id. at *19-20. In other words, the supervisor's abusive nature was not borne out in his employment decisions and therefore, did not give rise to a hostile work environment.

Here, similar to the facts in Staples, the parties work in a "caustic" environment involving juveniles who engaged in criminal activity and are on probation. The use of foul language and raised voices is common in the office. Also similar to Staples, Plaintiff fails to complain of any sexual advances, propositions or requests for dates, and alleges no physical contact during the time that Graham was her supervisor. In short, there is no evidence that Graham's behavior was based upon Plaintiff's sex. Instead, the testimony is that Graham treated the employees on an equal basis, whether good or bad.

See also, Weston v. Commonwealth of Penn., No. 98-3899, 2001 U.S. Dist. LEXIS 19185, at *24 (E.D. Pa., Nov. 20, 2001) (finding no sex-based hostile work environment where the evidence showed that the alleged harasser directed his "lewd and crude" comments toward male *and* female employees), aff'd in part, rev'd in part, 251 F.3d 420 (3d Cir. 2001); Ocheltree v. Scollon Prod., Inc., 335 F.3d 325 (4th Cir. 2002) (finding no hostile work environment where the staff engaged in almost constant conversation about sex, including foul and profane language, and thus was equally offensive to both sexes); Bolden v. PRC., Inc., 43 F.3d 545 (10th Cir. 1994) (finding no racially hostile work environment where the plaintiff alleged 20 racial incidents over an 18-month period, but where the workplace generally was "derisive, "crude and rude"); Endres v. Techneglas, Inc., 139 F. Supp. 2d 624, 630 (M.D. Pa. 2001) (granting judgment against the plaintiff on her claims against an individual defendant who used foul

language around her, drove his forklift truck at her, and said, "It's only a matter of time before she goes"); Moore v. Grove North Amer., 927 F. Supp. 824, 830 (M.D. Pa. 1996) (finding no sex-based discrimination where supervisor cursed at both men and women. "The simple fact that [the plaintiff's supervisor] disliked [the] plaintiff or treated her differently does not, without more, establish a hostile work environment).

Compare Anderson v. Deluxe Homes of Pa., Inc., 131 F. Supp. 2d 637 (M.D. Pa. 2001) (finding discrimination on the basis of sex where the plaintiff's supervisor put his hands around the plaintiff's waist, touched her leg, wagged his tongue at her, grabbed her breast, told the plaintiff she could "make his jeans bongo anytime," compared the size of his genitals to the plaintiff's boyfriend's, told the plaintiff he would catch her and not let go, and complimented her appearance several times); Spain, 26 F.3d at 447-48 (finding sex-based discrimination where office rumors of a sexual relationship between the plaintiff and a male supervisor resulted in the plaintiff's ostracization from her co-workers, negative evaluations from other supervisors, the denial of a promotion and the male supervisor's perpetuation of the relationship rumors after the plaintiff asked him to stop. The court found that a male employee would not have been thought to have been having an affair with the male supervisor and therefore would not have suffered the same consequences); Frey v. Pennsylvania Airlines, 859 F. Supp. 137 (M.D. Pa. 1992) (finding sex-based hostile work environment where supervisor used sexually derogatory language and regularly commented on women's bodies).

In short, there is no evidence in this case to suggest that any behavior that Graham directed toward Plaintiff was based upon her sex. Instead, it is alleged (including by Plaintiff) that Graham was a difficult and hostile supervisor who directed verbal abuse toward both male and female employees. This is insufficient to establish that, even if Graham was "hostile"

-22-

toward Plaintiff, the hostility was based upon sex. Simple put, there is no right to have a

pleasant, even-tempered supervisor. Accordingly, Plaintiff cannot establish the first prong of her

claim for a hostile work environment.

> **b.    Plaintiff Has Failed To Produce Evidence That Graham's Alleged Harassment, Even If Found To Be Discrimination On The Basis Of Sex, Was Pervasive Or Severe.**

Even if Graham's actions were found to be based upon Plaintiff's sex, Plaintiff has failed

to produce evidence that his actions were "severe or pervasive," or "pervasive and regular."[23]

Sexual harassment that is "so severe or pervasive as to alter the conditions of the victim's

employment and create an abusive working environment violates Title VII." Faragher v. City of

Boca Raton, 524 U.S. 775, 786 (1998) (citation omitted). "Conduct that is not severe or

pervasive enough to create an objectively hostile or abusive working environment – an

environment that a reasonable person would find hostile or abusive – is beyond Title VII's

purview." Id. at 787.

To assess whether the harassment alleged by Graham was pervasive or severe, the court

must consider (1) the frequency of the alleged conduct; (2) the severity of the alleged conduct;

(3) whether the alleged conduct was physically threatening or a "mere offensive utterance;" and

(4) whether the alleged conduct unreasonably interfered with the employee's work performance.

Id. at 787-88; Zelinski v. Pennsylvania State Police, 282 F. Supp. 2d 251, 268-69 (M.D. Pa.

2003) (Vanaski, C.J.) (quoting Harris v. Forklift Sys., Inc., 114 S. Ct. 367 (1993)). "Conduct

that is merely offensive, or which has the effect of making an employee's life at work merely

unpleasant or uncomfortable, is, without more, not actionable." Smith v. Pathmark Stores, Inc.,

---

[23] The Supreme Court's standard is "pervasive and severe," while the Third Circuit Court of Appeals' standard is "pervasive and regular." The Court of Appeals has not resolved this apparent discrepancy. See Ogden v. Keystone Residence, 226 F.Supp. 2d 588, 598-99 (M.D. Pa. 2002). This is of no moment as Plaintiff has failed to produce evidence to meet either standard.

No. 97-1561, 1998 U.S. Dist. LEXIS 8631, at * (E.D. Pa., June 11, 1998) (citing Harris v.

Forklift Sys., Inc., 510 U.S. 17, 21-22) (1993)).

As to frequency, Plaintiff alleges that, over the course of approximately 6 months,

Graham made two comments that possibly could be construed as inappropriate and directed to

Plaintiff. She further alleges that on one occasion, Graham graphically described sexual

problems that he had with his wife; Plaintiff admits that she instructed Graham not to say such

things again, and he did not. (See discussion, supra, at 7). Moreover, she alleges that Graham

discussed smashing his wife's birthday cake and figurine collection, though she admits these

actions were not offensive to her. (Id. at 7-8). She further alleges multiple uses of the word

"fuck," but admits that that word does not shock her, and that she would have found the

statements, which were critical of her performance abilities, to be offensive even in the absence

of foul language. (Id. at 8, 9). Finally, Plaintiff alleges that she and a female co-worker were

"screamed" at by Graham and docked one hour of pay for allegedly misrepresenting the amount

of time they took on a trip. (Id. at 8).

Plaintiff's allegations, which involve alleged actions over the course of nearly six

months, do not meet the frequency requirement. See, e.g., Lulis v. Barnhart, 252 F. Supp. 2d

172, 176 (E.D. Pa. 2003) (finding behavior not "frequent" where the plaintiff alleged, over the

course of 17 months, four instances of "brushing" or "touching," three instances of staring or

suggestive looking, four instances of sitting too closely, three incidents in which he felt he was

being inappropriately sexually propositioned, one incident in which he was shown "personal

pictures," one incident of an "off-color joke," and multiple instances of engaging the plaintiff in

non-work related conversations); Baskerville v. Culligan Int'l Co., 50 F.3d 428 (7th Cir. 1995)

(reversing jury verdict for the plaintiff where she alleged 9 incidents over 7 months, including

simulated masturbation and sexual innuendo). <u>Compare</u> <u>Endres</u>, 139 F. Supp. 2d at 631 (finding

severe and pervasive behavior where the supervisors made sex-based harassing comments and

gestures on a *daily* basis); <u>EEOC v. R&R Ventures</u>, 244 F.3d 334 (4th Cir. 2001) (finding

"frequent" behavior where the manager made sexual comments, jokes and advances to two

female employees, one aged 15, *every time* they worked together).

Moreover, even if the alleged incidents were found to be "frequent," they certainly were

not "severe" or physically threatening. Plaintiff does not allege that Graham propositioned her,

touched her on any occasion when he was a supervisor and generally did not make comments

directly about Plaintiff or directed toward her in her presence. <u>See</u> <u>Ogden</u>, 226 F. Supp. 2d at

599 (finding inappropriate comments not to be "severe" because the supervisor's comments

pertained to himself or others, rather than the plaintiff, and did not "belittle" the plaintiff because

of her race or sex); <u>Saidu-Kamara v. Parkway Corp.</u>, 155 F. Supp. 2d 436, 438 (E.D. Pa. 2001)

(granting judgment to the defendant where supervisor repeatedly asked the plaintiff on dates,

directed sexual innuendo toward her and, on at least one occasion, touched her breasts and

buttocks). <u>Compare</u> <u>McGraw v. Wyeth-Ayerst Lab.</u>, No. 96-5780, 1997 U.S. Dist. LEXIS 20813

(E.D. Pa., Dec. 30, 1997) (finding alleged actions "severe" where supervisor repeatedly asked for

a date, took disciplinary action against the plaintiff when she rebuffed sexual advances, held her

face in his hands on one occasion and forcibly kissed her on another).

The third factor to consider when assessing whether behavior was so severe and

pervasive as to constitute a hostile work environment is whether the alleged conduct was

physically threatening or "mere offensive utterance." <u>Faragher</u>, 524 U.S. at 787-88. Here

Plaintiff's only allegation of "physically threatening" behavior is that on one occasion, Graham

wadded up a piece of paper, threw it in her direction and pointed his finger in her face while

telling Plaintiff, "you don't know what you're doing…and you have no fucking idea what's

going on here." (Pl. dep. at 171). For the reasons set forth <u>supra</u>, at 25, this lone incident hardly

suffices as "physically threatening" behavior sufficient to establish severe and pervasive

behavior.

The fourth factor is whether the alleged conduct unreasonably interfered with the

employee's work performance. Here, Plaintiff has failed to allege that her work performance

suffered in any way as a result of Graham's alleged behavior. She failed to produce evidence

that she missed any days of work or that her performance was impaired. To the contrary,

Plaintiff continued to receive good evaluations from her supervisors and has, in fact, advanced

since the dates of the alleged harassment. Accordingly, Plaintiff has failed to establish that

Graham's behavior detrimentally affected her. <u>See</u> <u>Zelinski</u>, 282 F. Supp. 2d at 269; <u>Bacone v.</u>

<u>Phila. Housing Auth.</u>, No. 01-419, 2003 U.S. Dist. LEXIS 8818, at *12 (finding no detrimental

impact where the plaintiff alleged that he was emotionally harmed but presented no evidence as

to how the harm impacted his job performance). <u>Compare</u> <u>Endres</u>, 139 F. Supp. 2d at 631

(finding that the plaintiff was detrimentally affected by harassment where she became physically

ill, took a two-month leave of absence, then a second, longer leave of absence).

Accordingly, Plaintiff has failed to establish that Graham's alleged behavior was severe

and pervasive, or pervasive and regular.

      c.      **Plaintiff Has Failed To Produce Evidence That The Alleged
Behavior Would Have Detrimentally Affected A Reasonable
Person Of The Same Sex In Her Position**

When assessing a hostile work environment claim, the Third Circuit Court of Appeals

wrote that "the subjective factor is crucial because it demonstrates that the alleged conduct

injured this particular plaintiff . . .*The objective fact, however, is the more critical* for it is here

that the finder of fact must actually determine whether the work environment is sexually hostile."
Spain, 26 F.3d at 447 (citation omitted) (emphasis supplied).

Here, a common sense view, as set forth supra, of the events alleged by Plaintiff makes clear that an objective woman would not have viewed Graham's behavior as directed to her because of her sex. See Ogden, 226 F. Supp. 2d at 600 (finding the objective element of the hostile work environment prima facie case not met where "there is no indication that [the supervisor] was belittling [the plaintiff] for being a woman . . .").

### d.    Conclusion

For all of the reasons set forth at length above, Plaintiff was not subject to a hostile work environment. Accordingly, she cannot establish that Graham "aided and abetted" the County or Court in failing to prevent a hostile work environment. Compare Sherif v. Astrazeneca, No. 00-CV-3285, 2002 U.S. Dist. LEXIS 11408, at *17-18, (E.D. Pa., Jan. 29, 2002) (finding possible individual liability under the PHRA on part of one supervisor who "actively participated" in the plaintiff's termination and another who failed to prevent the plaintiff's "discriminatory demotion and termination"); Kamara v. Parkway Corp., 155 F. Supp. 2d 436, 441 (E.D. Pa., Aug. 13, 2001) (finding no individual liability under the PHRA where there was no evidence presented that the defendant played any role in the discipline or termination of the plaintiff).

### B.    Plaintiff's Claim Against Graham Must Be Dismissed For Her Failure To Exhaust Her Administrative Remedies With Regard To Defendant Graham.

Plaintiff filed her EEOC complaint in July, 1997. (Pl. dep. at 199). She admits that she had legal counsel at that time. (Id. at 395). Although Graham was identified in the *body* of the complaint, Graham was not named in the *caption* of the complaint. (See EEOC complaint, submitted as Exhibit "N"). Accordingly, Graham was never served with a copy of the complaint, was not contacted by the EEOC, was not invited to participate in the fact-finding conference,

-27-

was denied access to the EEOC investigator by telephone, and was turned away from the EEOC

when he took time off from work to drive to Philadelphia from Harrisburg and attempted to talk

to the investigator to offer information relevant to Plaintiff's complaint. (Graham dep. at 16-21).

Indeed, when Graham attempted to provide information to the EEOC, he was told that because

he was not a "named defendant," he *had no rights to defend against the claim*. (Id. at 20).  More

importantly, the exception permitting an individual not identified in the administrative claim to

be named in the subsequent court complaint is not available to Plaintiff in this case.

Generally, a plaintiff may not assert a PHRA complaint of discrimination against a party

not identified in the underlying administrative complaint. Schafer v. Bd. Of Public Ed., 903 F.2d

243, 251 (3d Cir. 1990) (discussing exhaustion for purposes of Title VII).[24]  An exception exists

where (1) the unnamed party received notice; and (2) there is a "commonality of interest"

between the named and unnamed parties. (Id. at 253).  Another Court of Appeals case identified

two additional factors to consider: (1) whether the absence of the unnamed party in the

administrative proceedings resulted in actual prejudice to the party's interests; and (2) whether

the unnamed party has in some way represented to the complainant that his relationship with the

complainant is to be through the named party. Glus v. G.C. Murphy Co., 629 F.2d 248, 251 (3d

Cir. 1980).

Here, Graham was not invited to participate in the EEOC conference that took place in

this matter.  Indeed, Graham was *not even contacted* by the EEOC as part of its investigation,

despite being identified in the body of the complaint.  Graham traveled to the Philadelphia EEOC

---

[24] In discussing the failure to identify an individual in an administrative complaint, "courts have uniformly held that the PHRA should be interpreted consistent with Title VII." Herman v. City of Philadelphia, No. 95-4030, 1995 U.S. Dist. LEXIS 19212, at *8-9 (E.D. Pa., Dec. 21, 1995).  Likewise, for purposes of any discussion of the PHRA, a court may look for guidance to decisions interpreting Title VII. Hoy v. Angelone, 456 Pa. Super. 596, 605, 691 A.2d 476, 480 (1997).

office to speak with the investigator in order to present his side of the story, but he was denied

access; the EEOC refused to take any statements from Graham or to interview him. The failure

to involve Graham in the administrative process denied him the opportunity to preserve evidence

that has since become unavailable owing to the length of time between the alleged onset of the

discrimination and the time that the federal complaint was filed.[25]

The parties named in the caption, the County and Court, did not have a "commonality of

interest" with Graham in defending against the EEOC complaint. Indeed, both parties disclaim

any responsibility for Graham and argue that the other is Graham's employer. (See Answers to

Complaint). Cases in which a "commonality of interest" has been found occurred where the

unnamed party not only had notice of the complaint, but was involved in the administrative

proceedings. See, e.g., Gokay v. Pennridge Sch. Dist., No. 02-8482, 2003 U.S. Dist. LEXIS

3201, at *14-15 (E.D. Pa. Feb. 28, 2003) (finding that unnamed party was interviewed and

investigated); Diep v. Soutwark Metal, No. 00-6136, 2001 U.S. Dist. LEXIS 2953, at *14 (E.D.

Pa., Mar.19, 2001) (finding that the unnamed party attended and participated in the

administrative fact-finding conference). Indeed, the very purpose of identifying an individual in

the caption of the complaint "is to give the defendant notice of the allegations against it such that

the party has an opportunity to resolve the situation without resort to further litigation."

McLaughlin v. Rose Tree Media Sch. Dist., 52 F. Supp. 2d 484, 492 (E.D. Pa. 1999) (dismissing

personal capacity claim against individual defendant, but refusing to dismiss official capacity

claim because identification of employer in caption was equivalent to identifying individual

---

[25] For example, Graham contends that in 1993, while he and Plaintiff engaged in their extra-marital affair, they checked into a hotel and paid using Plaintiff's credit card. (Graham dep. at 94-97). Counsel for Graham has been informed by the hotel that because of the passage of time, the hotel has destroyed its records and the receipt is no longer in existence.

defendant for purposes of official-capacity liability). Here, Graham, who has been sued in his personal capacity, was denied that opportunity.

More significantly however, courts have held that the "commonality of interest" exception to a plaintiff's failure to identify an individual in the caption of the complaint applies only where the plaintiff was pro se at the administrative stage. Cronin v. Martindale Andres & Co., 159 F. Supp. 2d 1, 9 (E.D. Pa. 2001); Schwartz v. D/FD Operating Serv., 205 F.R.D. 166, 168 (D. Del. 2002); Gagliardi v. Universal Outdoor Holdings, Inc., 137 F. Supp. 2d 374, 379 (S.D.N.Y. 2001); Harrington v. Hudson Sheraton Corp., 2 F. Supp. 2d 475, 478 (S.D.N.Y. 1998); Tarr v. Credit Suisse Asset Manuf., No. 95-CV-1857, 1997 U.S. Dist. LEXIS 5000, at *20-21 (E.D. N.Y., Mar. 21, 1997).[26]

Here, there is no dispute that Plaintiff was represented by counsel when she filed her administrative complaint. (Pl. dep. at 395). Her failure to identify Graham in the caption of the claim is fatal to her claim against him, which must be dismissed as a matter of law because she failed to exhaust her administrative remedies against Graham.

## V.     CONCLUSION

In sum, Plaintiff has failed to establish that Graham aided and abetted in failing to prevent a hostile work environment because no such environment existed when Graham was a supervisor. Moreover, Plaintiff failed to exhaust her administrative remedies. For all of the reasons set forth above, Defendant S. Gareth Graham respectfully requests that judgment be granted to Graham and that Plaintiff's Complaint as against him be dismissed with prejudice.

---

[26] Although the McLaughlin Court wrote that several members of the Eastern District Court have found that identifying an individual in the body of the complaint is equivalent to identifying the individual in the caption, the Glickstein case to which the court cites contains a specific warning that in pro se cases, the standard for the completeness of administrative complaints is more lenient. See Glickstein v. Neshaminy Sch. Dist., No. 96-6236, U.S. Dist. LEXIS 16317, at *27, (E.D. Pa., Oct. 15, 1997). Moreover, the court was deciding a motion to dismiss, rather than a motion for summary judgment.

923083v1

Respectfully submitted,

Date: _12/19/03_                    By: _David J. MacMain (kb)_
                                        David J. MacMain, Esquire
                                        Montgomery, McCracken, Walker & Rhoads, LLP
                                        123 South Broad Street
                                        Philadelphia, PA  19103
                                        (215) 772-7413

                                        Attorney for Defendant,
                                        S. Gareth Graham

923083v1

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing to be served, via first-class mail, postage prepaid, upon each of the following persons:

Debra K. Wallet, Esquire
24 N. 32nd Street
Camp Hill, PA 17011

*Attorney for Plaintiff,*
*Barbara E. Varner*

Paul J. Dellasega, Esquire
Thomas, Thomas & Hafer
305 N. Front Street
P.O. Box 999
Harrisburg PA  17108

*Attorneys for Defendant,*
*Cumberland County*

A. Taylor Williams, Esquire
Legal Counsel to the Court Administrator
of Pennsylvania
Administrative Office of Pennsylvania Courts
1515 Market Street
Philadelphia, PA  19102

*Attorney for Defendant,*
*Commonwealth Court of Pennsylvania, Ninth Judicial District*

Paul Lancaster Adams, Esquire
Sweeney & Sheehan, P.C.
1515 Market Street, 19th Floor
Philadelphia, PA  19102

*Attorney for Defendant,*
*Joseph Osenkarski*

Dated:  December 19, 2003

L. Kristen Blanchard

989265v1