**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BARBARA E. VARNER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA | : | **JURY TRIAL DEMANDED** |
| NINTH JUDICIAL DISTRICT, | : | |
| CUMBERLAND COUNTY; CUMBERLAND | : | |
| COUNTY; S. GARETH GRAHAM, | : | |
| individually; JOSEPH OSENKARSKI, | : | |
| individually | : | NO.  1:01-CV-725 |

**STATEMENT OF CONCURRENCE/NONCONCURRENCE**

Plaintiff, Barbara Varner, does not concur in the Motion for Summary Judgment filed on behalf of the Ninth Judicial District.  Defendants Gary Graham and the Commonwealth of Pennsylvania Ninth Judicial District concur in the Motion.

**SWEENEY & SHEEHAN**

By:/s/ Paul Lancaster Adams
  Identification No. 72222
  1515 Market Street, 19th Floor
  Philadelphia, PA 19102
  (215) 563-9811

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA E. VARNER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA | : | **JURY TRIAL DEMANDED** |
| NINTH JUDICIAL DISTRICT, | : | |
| CUMBERLAND COUNTY; CUMBERLAND | : | |
| COUNTY; S. GARETH GRAHAM, | : | |
| individually; JOSEPH OSENKARSKI, | : | |
| individually | : | NO.  1:01-CV-725 |

O R D E R

**AND NOW**, this                    day of                    , 2004, upon Motion for Summary Judgment filed on behalf of Defendant, Joseph Osenkarski and the Response of Plaintiff thereto, it is hereby **ORDERED**

That the Motion of said Defendant is **GRANTED** and judgment is entered against the Plaintiff and in favor of Joseph Osenkarski as to all claims asserted against said Defendant.

**BY THE COURT**:


_____

Honorable Yvette Kane, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BARBARA E. VARNER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA | : | **JURY TRIAL DEMANDED** |
| NINTH JUDICIAL DISTRICT, | : | |
| CUMBERLAND COUNTY; CUMBERLAND | : | |
| COUNTY; S. GARETH GRAHAM, | : | |
| individually; JOSEPH OSENKARSKI, | : | |
| individually | : | NO.  1:01-CV-725 |

**DEFENDANT JOSEPH OSENKARSKI'S MOTION
FOR SUMMARY JUDGMENT**

1.     Plaintiff, Barber E. Varner (hereinafter "Varner") initiated this action by filing a Complaint in Civil Action on or about April 26, 2001.  (See a true and correct copy of Plaintiff's Complaint attached hereto as Exhibit "A").

2.     Plaintiff's claims arise from her employment as a Probation Officer with the Juvenile Probation Department of the Cumberland County Probation Office, Cumberland Pennsylvania.

3.    Plaintiff's Complaint alleges claims violative of Title VII against Defendants, Commonwealth of Pennsylvania, Ninth Judicial District, Cumberland County (hereinafter "Court") and Cumberland County (hereinafter "County") and hostile work environment as to the actions of Defendants S.Gareth Graham (hereinafter "Graham") and Joseph Osenkarski (hereinafter "Osenkarski"), as well as claims violative of Section 955(e) of the Pennsylvania Human Relations Act (hereinafter "PHRA") against same.

4.    Moving Defendant, Osenkarski is the Chief of the Juvenile Department of the Cumberland County Probation Office and was not the immediate supervisor of Varner. Varner's immediate supervisor during the time of the alleged discriminatory acts was Defendant, Graham.

5.    The facts as alleged by Plaintiff, shown by depositions, Interrogatories and documents produced in discovery fail to state a claim for any of the causes of action against Osenkarski even when examined in a light most favorable to Plaintiff as summary judgment must be entered in favor of Osenkarski on all claims.

6.    Specifically, Plaintiff's claims must fail as she cannot show that because of the actions by Osenkarski she suffered intentional discrimination on account of her gender.

7.    Even if you believe that intentional discrimination by the acts of Osenkarski such discrimination was not pervasive and regular.

8.    Plaintiff's claims must fail as she cannot show that Osenkarski aided and

abetted violation of the PHRA by directly discriminating against her.

9.      Additionally, Plaintiff's Complaint must fail as Plaintiff cannot show that Osenkarski aided and abetted violation of the PHRA by conspiring with the County and Court in acts against her.

10.     Lastly, Plaintiff's Complaint must fail as Plaintiff cannot show that Osenkarski aided and abetted violation of the PHRA by failing to act to prevent unlawful sex discrimination and harassment.

**WHEREFORE**, for all the reasons outlined in this motion and the accompanying Memorandum of Law in support, it is respectfully requested that this Honorable Court enter an Order in the form attached and dismiss all claims against Moving Defendant, Jospeh Osenkarski.

**SWEENEY & SHEEHAN**

By: /s/ Paul Lancaster Adams
        Identification No.  72222
        1515 Market Street, 19th Floor
        Philadelphia, PA 19102
        (215) 563-9811

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BARBARA E. VARNER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA | : | **JURY TRIAL DEMANDED** |
| NINTH JUDICIAL DISTRICT, | : | |
| CUMBERLAND COUNTY; CUMBERLAND | : | |
| COUNTY; S. GARETH GRAHAM, | : | |
| individually; JOSEPH OSENKARSKI, | : | |
| individually | : | NO.  1:01-CV-725 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR SUMMARY JUDGMENT OF DEFENDANT,**
**JOSEPH OSENKARSKI**

The Motion for Summary Judgment and Memorandum of Law in Support on behalf of Moving Defendant Osenkarski.  For all the reasons outlined in the following that address the allegations against him, it is respectfully requested that this Honorable Court grant summary judgment and dismiss with prejudice Count II of Plaintiff's Complaint against Defendant Joseph Osenkarski.

## II.    LEGAL ARGUMENT

### A.    Summary Judgment Standard

Under the Federal Rules of Civil Procedure, a Motion for Summary Judgment must be granted when the "pleadings, depositions, answers to interrogatories and admissions in the file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56. The court must accept the non-movant's version of facts as true and resolve any conflicts in the non-movant's favor. Big Apple B.M.W., Inc. v. B.M.W. of N. Amer., Inc., 974 F. 2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). Once the movant has done so, however, the non-moving party may not merely rest on its pleadings. See Fed. R. Civ. P. Rule 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to the case, based upon affidavits or admissions in the file." Harter v. G.A.F. Corp., 967 F.2d 846, 852 (3d. Cir. 1992); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary Judgment is appropriate where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Etkin v. Merk, 2001

U.S. Dist. LEXIS 17692, 5 (E.D.Pa. 2001). It is the burden of the moving party to "inform the district court of the basis for its motion." Id. When the moving party does not bear the burden of persuasion at trial, the moving party's burden "may be discharged by showing - that is pointing out to the district court- that there is an absence of evidence to support the non-moving party's case." Id.

Once the moving party has filed a properly supported motion, the burden shifts to the non-moving party to set forth specific facts that demonstrate that there is a genuine issue for trial. Id. at 5-6. The non-moving party may not "rest upon the mere allegations or denials" of their pleading. Id. at 6.

Thus, at the summary judgment stage, the Court is responsible for the "threshold inquiry of determining whether there is a need for a trial, that is whether the evidence presents a sufficient disagreement . . . or whether it is so one-sided that one party must prevail as a matter of law." Id. at 7.

B.    Plaintiff's Claims Of Violation Of Title VII and PHRA
            Fail As a Matter Of Law[1]

Title VII forbids actions taken on the basis of sex that discriminates against any individual with respect to his compensation, terms, conditions or privileges of employment. 42 U.S.C. § 2000e-2(a)(1). Sexual harassment is actionable under Title VII only if it is "severe or pervasive" as to "alter the conditions of [the victim's] employment and create an abusive working environment. Faragher v. Boca Raton, 524 U.S. 775, 768 (1998) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). The United States Supreme Court has concluded that a plaintiff may establish a Title VII violation if she can show that gender-based discrimination created a hostile or abusive working environment. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In order to fall within the purview of Title VII's prohibition against hostile work environment harassment, conduct in question must be "severe and pervasive" enough to create an objectively hostile or abusive work environment, such that a reasonable person would find hostile and that the victim-employee subjectively perceive as abusive or

---

[1]    Courts have uniformly interpreted the PHRA consistent with Title VII. See Clark v. Commonwealth of Pennsylvania, 885 F. Supp. 694, 714 (E.D.Pa.1995); Brennan v. National Tel. Directory Corp., 881 F.Supp. 986, 994 n. 5 (E.D.Pa. 1995); Doe v. Kohn, Nast & Graf, P.C., 862 F.Supp. 1310, 1323 (E.D.Pa. 1994). Plaintiff, in the instant matter alleges hostile work environment sexual harassment and retaliation under both statutes. See 42 U.S.C. §2000e-2(1)(1), §2000e-3(a); Thus, Plaintiff's claims fall within the framework of Title VII, and the court's conclusions may apply equally to her PHRA claims.

hostile.  Faragher at 783.  Whether an environment is hostile or abusive is determined on the totality of the circumstances, including the frequency and severity of the discriminatory conduct, its nature as physically threatening or humiliating as opposed to a mere offensive utterance, and whether it interferes with an employees work performance. Id.

The Third Circuit  has set forth a five part test for the district courts to apply in a hostile work environment case.  Accordingly, a female Title VII plaintiff can successfully bring a gender-based discrimination claim against her employer only if she shows that (1) she suffered intentional discrimination on account of her gender;  (2) the discrimination was pervasive and regular; (3) was detrimentally affected by the discrimination; (4) the discrimination would detrimentally affect a reasonable woman in the plaintiff's position; and (5) the existence of respondeat superior liability.  Weston v. Pennsylvania, 251 F.3d 420 (3d Cir. 2001) quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir.1990).

In the instant case, the ordinary everyday language and behavior within the Juvenile Probation Department was one of foul language and offhand jokes and comments by both male and female probation officers.  Plaintiff's co-workers were all subjected to the same office environment and by the sole nature of their job, are continuously exposed to juvenile delinquent and criminal client behavior. (Osenkarski at 18).   Plaintiff alleges that

Osenkarski sexually harassed her by committing the following acts:

1.  On or about April 7, 1997 Plaintiff overheard a comment, by Osenkarski made to another colleague about a female intern's breast that "she had a nice set of jahoobees". (Varner at 176). Plaintiff admitted that Osenkarski never made any inappropriate comments to her personally. (Id.)

2.  Over three years later, on or about July, 2000 Osenkarski was alleged to have commented to a new female probation officer that hysterectomies ruin women. Plaintiff claims she took offense to this statement even though she was not present because she was possibly the only women in the office who had had a hysterectomy. (Id. at 177-78)

3.  Plaintiff alleged that on or about September 12, 2000 Osenkarski informed two female probation officers that they would have to dance on the tables at their first staff meeting. Again, Plaintiff admitted that she did not hear this comment herself. (Id. at 177). Plaintiff is not actually aware of any females ever dancing on a table at any probation department meeting. (Id. at 179)

4.  On or about September, 2000 Osenkarski, outside of Plaintiff's presence, discussed with a co-worker what had occurred when after canning hot peppers his fingers got hot and he had learned his lesson about inserting them in his girlfriends genital area because it burned her.

Importantly, Plaintiff was only actually present for one the comments above - Osenkarski's comments to another individual about the female intern's breast. (Id.). Because Plaintiff admits that the comment was not directed to her she has not and cannot show that Osenkarski's comment lead her to suffer intentional discrimination on account

of her gender. Osenkarski could not have the requisite intent to discriminate since it is undisputed that he never directed the comment to Plaintiff, or about Plaintiff, and she only received it by overhearing a private conversation.  The other comments Plaintiff became aware of through rumormill and amount to, at best, mere offensive utterances which don't equate to hostile work environment under Meritor and its progeny.  Further, Plaintiff never complained to the President Judge, who both she and Osenkarski reported to, the one person with authority to to discipline any offensive behavior.  (Sheely at 36-39).

Even if you believe Plaintiff suffered intentional discrimination on account of her gender by the actions of Osenkarski such behavior was not pervasive and regular.  In order for Plaintiff to show that the actions by Osenkarski were pervasive and regular there must exist incidents of harassment either in concert or with regularity.  Suders v. Easton, 325 F.3d 432 (3rd Cir. 2003) quoting Andrews at 1484.  Again, Plaintiff was only personally witnessed to one alleged offensive comment in her entire tenor with the probation department, for five (5) years 1995-2000.  (Varner 175-79).  Plaintiff testified during her deposition that on such singular occasion Osenkarski committed the following act:

Q.    Specifically, what did he say?

A.    He made the comment when I was standing at the door of

our office talking to another probation officer, Mike Varner[2], he walked past — Mr. Varner and I had no relation — were engaged in a conversation, and he just walked past and he said about a female intern's breasts, that she had a nice [set] of jehoobees, and then continued to walk out of the door.

Q.    Did he ever make any inappropriate comments with respect to you personally?

A.    No.

(Varner at 175-79).

The other comments received were completely from rumormill and byway of third parties. The alleged comments were not in concert with others as each was stated in private to different individuals not and directly associated with Plaintiff in anyway except for the fact that they occurred in the probation department. Not only were the comments not directed to Plaintiff but they also were not related to Plaintiff or meant for her reception. The Third Circuit has said "Stray remarks" such as in this case are rarely given weight, particularly if they were made temporally remote from the date of decision. Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992).

Workplace conduct is not measured in isolations; instead whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances,

---

[2]    It has been previously established that Mike Varner is of no family relation to Plaintiff.

including frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or mere offensive utterance; and whether it unreasonably interferes with an employees work performance.  <u>Clark County School District v. Breeden</u>, 532 U.S. 268 (2001).  Our United States Supreme Court emphasizes:

> Hence [a] recurring point in [our] opinions is that simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.

<u>Id</u>.

Under the circumstances in this matter, no reasonable person would believe that one isolated offhand comment by Osenkarski, within five (5) years, directly violated Title VII's standard.  No reasonable person would believe that three isolated offhand comments that Osenkarski has been rumored to have said, according to Plaintiff, directly violated Title VII's standard.  Therefore, all claims against Osenkarski regarding unlawful sex discrimination and harassment plead in Count II of Plaintiff's Complaint should be dismissed with prejudice.

    C.    <u>Plaintiff Cannot Show That Osenkarski Aided and Abetted in Violation Of The PHRA By Directly Discriminating Against Her In Violation Of Section 955(e)</u>

Section 955(e) of the Pennsylvania Human Relations Act forbids:

> any person, employer, employment agency, labor organization

> or employee to aid, abet, incite or coerce the doing of any act
> declared by the section to be an unlawful discrimination practice,
> …or to attempt, directly or indirectly, to commit any act declared
> by this section to be unlawful discriminatory practice

43 PA. CONS.STAT. ANN. § 955(e) (Supp. 1997).  An individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to §955(e) for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision. Dici v. Commonwealth of Pa, 91 F.3d 542, 552 (3d Cir. 1996); Davis v. Levy, Angstreich, Finney, Badlnate, Rubenstein & Cohen, 20 F. Supp. 2d 885, 887 (E.D.Pa.. 1998).  The facts alleged by Plaintiff shown by depositions, Interrogatories and documents produced in discovery fail to state a claim for any of the causes of action against Osenkarski pursuant to the act, even in light most favorable to Plaintiff as discussed herein.

Plaintiff claims that Osenkarski directly discriminated in violation of the PHRA against her by sexually harassing her over a five (5) year time period (1995 to 2000) by making inappropriate comments.  (Varner at 175-79).  Significantly, as argued above, Plaintiff was only directly subjected to alleged inappropriate behavior on one occasion byway of overhearing a private conversation. Id.

Plaintiff has adduced insufficient evidence that Osenkarski aided and abetted in violation of the PHRA.  Therefore, all such claims against him regarding direct

discrimination against Plaintiff plead in Count II of Plaintiff's Complaint should be dismissed with prejudice.

D.    Plaintiff Cannot Show That Osenkarski Aided and Abetted
      in Violation Of The PHRA By Failing To Prevent
      Unlawful Sex Discrimination And Harassment.

A Defendant supervisor must have notice that discriminatory conduct is taking place in order to be individually liable for failing to take action pursuant to 955(e) of the PHRA. Once apprized of the discriminatory conduct, a supervisor's failure to take action to end the harassment amounts to aiding and abetting an employer's unlawful practices. See Dici, 91 F.3d at 553 (supervisor who knew or should have known of discriminatory conduct and repeatedly refused to end the harassment could be liable under 955(e)). See also Glickstein v. Neshaminy School District, No 96-6236, 1997 WL 660636 @ *12-13 (matter with which Plaintiff reported acts of sexual harassment to her supervisors who subsequently failed to take action regarding improper acts) and Frye v. Robinson Alarm, Co., 1998 WL 57519 (matter where Plaintiff's supervisor repeatedly brushed off complaints of inappropriate advances).

In the instant matter Plaintiff, although having the opportunity, never complained to Osenkarski of sexual discrimination or harassment by her immediate supervisor Graham. To the contrary, and vastly distinguishable from the cases cited above, Plaintiff complained only once about Graham's behavior to Osenkarski when Graham screamed at her about her decision making with regard to case files handled within the office. (Varner at 97-98 and

-17-

168 and Osenkarski 6). The singular moment with which Plaintiff ever complained to

Osenkarski about the treatment of Graham was testified to by Plaintiff at her deposition:

> Q.    Graham started to challenge you, Osenkarski was present.
>       you said to Osenkarski, isn't this the way we always do it?
>
> A.    Um-hum.
>
> Q.    And Osenkarski said, yeah, but Graham's in charge?
>
> A.    And he exited and went to his office.
>
> Q.    Graham then proceeded to scream at you?
>
> A.    Right, and threw me out of his office.
>
> Q.    Over the manner in which you were doing certain paperwork?
>
> A.    Right.
>
> Q.    Threw you out of the office and you went to Osenkarski?
>
> A.    Osenkarski's office.
>
> Q.    And said, you've got to get this guy under control?
>
> A.    Absolutely.
>
> Q.    Was there any solicitation for sex involved?
>
> A.    No.

(Varner at 169). To compound Plaintiff's failure to notify Osenkarski of Graham's

discriminatory behavior is the fact that Osenkarski had an open door policy for employees

to freely come to him with problems they needed to address. (Brandt at 56). During her only complaint to Osenkarski about Graham Plaintiff (1) sat down in Osenkarski's office (2) discussed her issues for five minutes and (3) was told that if the situation was not resolved to her satisfaction to return and for appropriate intervention. (Osenkarski at 12-14). Plaintiff's failure to provide Osenkarski with information regarding alleged sexual harassment by Graham prevented Osenkarski from having the opportunity to take action to end such alleged behavior. Further, prior to this case, Osenkarski never received any complaints about Graham sexually harassing anyone. Since Osenkarski never received any prior complaints of sexual harassment regarding Graham and he was not apprized of any offensive conduct by Plaintiff he cannot be held individually liable for aiding and abetting for failing to prevent unlawful sexual harassment under § 955.[3]

Plaintiff has adduced insufficient evidence that Osenkarski aided and abetted in violation of the PHRA. Therefore, all such claims against him regarding failing to prevent unlawful sex discrimination and harassment within Count II of Plaintiff's Complaint should be dismissed with prejudice.

---

[3]    Additonally, Plaintiff admitted during her deposition that she never went up the chain of command and complained to the President Judge, who was head of the all the Probation Department, about discriminatory treatment by Graham.  (Varner at 155).

E.    Plaintiff Cannot Show That Osenkarski Aided and Abetted in Violation
       Of The PHRA  By Conspiring With The County and Court Defendants
       In Violation Of Section 955(e).

At her deposition Plaintiff admitted that she has no shred of evidence whatsoever to

substantiate the claim that Osenkarski conspired with the Court and County defendants

violating her rights other than what she suspected was discussed between Osenkarski and

Judge George Hoffer.  Plaintiff testified as follows:

> Q.    Ms. Varner, do you have any correspondence, notes memos
>        or any documents or piece of evidence at all supporting your
>        claim that Mr. Osenkarski conspired against you in violation
>        of [the] PHRA?
>
> A.    I don't have paperwork.  I've just heard that he's had
>        conversations with Judge Hoffer.
>
> Q.    Who did you hear that from?
>
> A.    At this time I can't recall names. It's just been information,
>        word of mouth in the office.
>
> Q.    Okay.  So would you agree at this time you can't identify
>        any witness person at all to support your claim that can
>        testify and support your claim that Mr. Osenkarski has
>        conspired against you in violation of the PHRA?  Is that
>        correct?
>
> Ms. Wallet (counsel for Plaintiff): I, sorry, did you say witness?
>
> Witness or person who can testify in support of her
> claim  of  a  violation  by  Mr.  Osenkarski.

-20-

A.    I think the fact that I was kept out of that office for four years, and that was a discussion between Mr. Osenkarski and Judge Hoffer, I think whatever that discussion was, Mr. Osenkarski I'm sure and Judge Hoffer was aware that it was a public office. I'm sure there was discussion, and to me, that was a retaliation.

Q.    But did you hear that discussion?  Did you hear any remnants of that discussion yourself?

A.    From Mr. Osenkarski, yes.

Q.    You heard from Mr. Osenkarski that he was going to conspire against you?

A.    Well no.  That he met with Judge Hoffer and that he had been given this direction to keep me out of there.  To me, even those two talking about it is something that is illegal to keep me out of a public office.

Q.    But you don't know, yourself from anything you heard, that Mr. Osenkarski conspired against you in violation of the PHRA;  Is that correct?  Yes or No.

A.    I'm just trying to think?  I did not personally witness that.

Q.    And you can't identify any person at all who witnessed or heard any type of conversation by Mr. Osenkarski or Judge Hoffer that would be in violation of the PHRA based on conspiracy?

A.    I think those two would be the ones to be able to testify because it would have been private information, private conversations.

Q.    Would you agree that's strictly related to conversations between Judge Hoffer and Mr. Osenkarski, so only one of the two of them or both can testify to that ?

A.    That's correct.

(Varner at 420-22).

The only item that Judge Hoffer discussed with Osenkarski, in relation to Plaintiff, was the requested volunteering of Plaintiff to temporarily stay out of an area which was occupied by the wife of Graham ("Barbara Graham"), who had been recently told of Plaintiff's allegations of sexual harassment against her husband and that the two had been having a consensual adulterous affair. (Graham at 153-54).   News of the affair had infuriated Mrs. Graham and there had been antipathy between her and Plaintiff.  Judge Hoffer wanted to try and lessen the probability of contact between the two and as head of the Probation Department came up with the idea of asking Plaintiff to stay away from the area where Mrs. Graham worked until Mrs. Graham could be permanently relocated where the two didn't have to interact. ( Judge George Hoffer at 38-40).  Said efforts were actually recorded in Judge Hoffer's personal notes translated during his deposition:

Q.    Okay.  Beginning at page 2, would you read that please?

A.    Dash, "explained that I wanted to eliminate as much contact with Barbara Graham as possible, dash, "I'd move Barbara Graham if possible but can't." Dash, "asked Barbara Varner to voluntarily stay out of Barbara Graham's office and have officers she needs to talk to come to her office." Dash, "she agreed with me that regardless of anything else, Barbara Graham is an innocent victim." Dash, "explained to Barbara Varner that I am not ordering her where or where not to go."

> Dash, wanted Barbara Varner to volunteer to do it to ease
> tensions. Barbara Varner still questions why." "My position
> to Barbara Varner, "colon, "I'm not ordering her to do
> anything but if she still insists, I will move any officer
> Barbara Varner has to see out of that office, " where Barbara
> Graham was, "until Barbara Graham is relocated," period.

(Id. at 43-44).

Importantly, as discussed above, Plaintiff has indicated that all evidence of plead conspiracy by Osenkarski and the Court and County defendants is shown by the communications between Osenkarski and Judge Hoffer. There exist no evidence of record suggesting that Osenkarski and Judge Hoffer conspired against Plaintiff in violation of her rights. To the contrary Judge Hoffer's communications with Osenkarski requesting that Plaintiff voluntarily stay away from Mrs. Graham's work area was a personnel decision designed solely to protect both Plaintiff and Mrs. Graham, and lesson the chance of additional antipathetic behavior. Courts do not "sit as a super-personnel department that re-examines an entity's business decisions." Wein v. Sun Company, Inc., 1997 WL 772810 citing Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986) and Mechaniq v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988). Such inquiries must be limited to whether an employer gave an honest explanation of its behavior. Id. In the instant case Judge Hoffer, as President Judge and head of the Probation Department, made an honest business decision he felt best for the courthouse under the circumstances

and said decision should not be re-examined, much less be used as a merit less theory of conspiracy by Plaintiff.

In summary, Plaintiff has adduced insufficient evidence that Osenkarski and the Court and County defendants conspired against her in violation of the PHRA. Therefore, all such claims plead in Count II of Plaintiff's Complaint should be dismissed with

prejudice.[4]

---

[4]       Additionally, Plaintiff contends, without naming a particular party Defendant, that she was discriminated against by being given less desirable assignments. (Complaint at ¶ 20). Notwithstanding the fact that Plaintiff throughout this litigation, has stressed that Osenkarski has a hands off approach to running the Juvenile Probation Department as he rarely was around and therefore delegates authority and relies heavily on his supervisory staff for such things, Plaintiff has admitted that a fellow employee, not a party to this litigation, was the individual responsible for assigning work. (Varner at 180-181 and 239). In fact, Plaintiff additionally admitted to finally talking with "Mr. Theilman" who assigns the work about her concerns. There is no supported allegation that Osenkarski discriminated against Plaintiff with regard to receiving less desirable assignments. An assertion unsupported by any factual evidence in the record is insufficient and cannot survive summary judgement pursuant to Celotex Corp. V. Catrett, 477 U.S. 317, 322 106 S.Ct. 2548, 2552 (1986), Fed.R.Civ.P. 56(c). Celotex, "mandates the entry of summary judgment" in circumstances such as in this case as "mere statements unsupported by any evidence do not meet the Celotex standard. Additionally, Plaintiff has not and cannot show any evidence to support an assertion that Osenkarski aided and abetted to intentionally discriminate against her.

Plaintiff also contends, without naming a particular party Defendant, that she was discriminated against with regard to seniority list in the office. (Complaint at ¶¶ 20c-d). For over two decades an issue in the Juvenile Probation Department existed involving whether probation officers received credit for all time while employed in any branch of county government, or whether the only time that applied, for seniority purposes, was that earned in the probation department (Boyer at 37-40 and Varner at 187-88). Initially everyone, including Plaintiff, felt changing the existing system, which gave credit county wide, was fair to all. (Boyer at 43-45 and Boyer Memorandum). In fact, Plaintiff support and agreed with the changes to the seniority system prior to her employment with the Juvenile Probation Department as described in Boyer's testimony:

Q.                    When you sat down and talked with Ms. Varner, what was her reaction to this?

A.                    When I brought this topic up with Barb, she responded that she understood it, didn't have any problems with it, sounded very fair to her.

(Boyer at 45).

Not until Plaintiff realized that she would lose seniority, one notch, to a male co-worker, did she express aversion to the change. Significantly, the new system was already in place before Plaintiff officially joined the Juvenile Probation Department.. (Varner at 187). Also significantly, the change in the system has not adversely effected Plaintiff as she was even promoted, after her self-serving complaints, at the same time as the male moved just a notch above her. Pertinently, the only action by Osenkarski regarding this issue was when he requesting that Senior Probation Officer Thomas Boyer, who had been addressing the issue as far back as the 1980s many years prior to Plaintiff's employment in the department, conduct a study and census on the acceptability of the change. (Boyer at 37-39 and Osenkarski at 44-45). It is undisputed that it was Boyer who sought, independently, the commissioners and management about

## III.   CONCLUSION

Based upon the foregoing, Defendants respectfully request this Honorable Court to

---

changing the old system to the new.  (Boyer at 40).  It is undisputed that it was Boyer, independent of anyone else, who initiated changing the old seniority system which was supposed to benefit all.  It is Boyer, and not Osenkarski, who lead the efforts to change which was preferred by all.  (Boyer 37-40).

Again, notwithstanding the fact that Plaintiff throughout this litigation, has stressed Osenkarski's non-involvement in the Juvenile Probation Department, undisputed evidence has been presented that Boyer, not Osenkarski, lead the efforts to change the seniority system which was preferred by all.  Plaintiff complained much after the fact.  Plaintiff has not and cannot show how Osenkarski was responsible for her assertions and therefore such allegations should not be considered and dismissed.  Like as argued above, Celotex, "mandates the entry of summary judgment" in circumstances such as in this case as "mere statements unsupported by any evidence do not meet the Celotex standard. Celotex at 317-322. Plaintiff has not and cannot show a nexus between Boyer's actions, which spanned over twenty (20) years, and any by Osenkarski to hold him accountable for her assertions.  Therefore any assertions as to Osenkarski discriminating against Plaintiff with regard to the seniority system in the form of aiding and abetting must fail.

Lastly, Plaintiff's assertions that she was retaliated against during an bomb scare admittedly are not directed to Osenkarski as she candidly testified to in her deposition:

| | |
|---|---|
| Q. | And Mr. Osenkarski, of course, has remained in the Department throughout, correct? |
| A. | Yes, he has. |
| Q. | Has he retaliated against you in any fashion whatsoever? |
| A. | Not directly, no. |

(Varner at 185-86).

grant this Motion for Summary Judgment by entering an Order in the form attached hereto.

Respectfully Submitted,

**SWEENEY & SHEEHAN**


By: /s/ Paul Lancaster Adams
      Identification No.  72222
      1515 Market Street,
      Ste. 1900
      Philadelphia, PA 19102
      (215) 563-9811

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA E. VARNER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA | : | **JURY TRIAL DEMANDED** |
| NINTH JUDICIAL DISTRICT, | : | |
| CUMBERLAND COUNTY; CUMBERLAND | : | |
| COUNTY; S. GARETH GRAHAM, | : | |
| individually; JOSEPH OSENKARSKI, | : | |
| individually | : | NO.  1:01-CV-725 |

## CERTIFICATION OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing Defendant's, Joseph Osenkarski, Motion for Summary Judgment, upon all interested counsel by United States Mail, First Class, on December 19, 2003.

Debra K. Wallet, Esquire
24 North 32nd Street
Camp Hill, Pennsylvania 17011

A. Taylor Williams, Esquire
Administrative Offices  of
Pennsylvania Courts
1515 Market Street - Suite 1414
Philadelphia, PA 19102

David J. MacMain, Esquire
**Montgomery, McCracken, Walker
& Rhoads, LLP**
123 South Broad Street
Avenue of the Arts, 28th Floor
Philadelphia, PA 19109

Paul J. Dellasega, Esquire
**Thomas, Thomas & Hafer, LLP**
305 North Front Street
Sixth Floor
P.O. Box 999
Harrisburg, PA 17108

**SWEENEY & SHEEHAN**

BY:/s/ Paul Lancaster Adams