IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA E. VARNER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA | : | **JURY TRIAL DEMANDED** |
| NINTH JUDICIAL DISTRICT, | : | |
| CUMBERLAND COUNTY; CUMBERLAND | : | |
| COUNTY; S. GARETH GRAHAM, | : | |
| individually; JOSEPH OSENKARSKI, | : | |
| individually | : | NO. 1:01-CV-725 |

**STATEMENT OF UNDISPUTED MATERIAL FACTS SUBMITTED
BY DEFENDANT, JOSEPH OSENKARSKI**

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 and 1991, as amended, Title 42 U.S.C. § 2000e, et seq., the Civil Rights Act of 1991, 42 U.S.C. § 1981 and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq., pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).  Plaintiff claims more pertinently that moving Defendant, Joseph Osenkarski, (hereinafter "Osenkarski") violated her rights pursuant to 43 P.S. § 955(e).  For the purposes of the foregoing Motion for Summary

Judgment, the following facts must be accepted as true.

Plaintiff began working with the Cumberland County Probation Office on or about February 7, 1995 as a Probation Officer, after first being employed by the County as a Caseworker in the Department of Family and Youth Services. Osenkarski initially told Varner of the vacant probation officer position in the Department suggesting that it would be an appropriate position for her as she was a female with social work background. (Varner at p.87). Importantly, it is singarly President Judge who has authority to hire and terminate the employment of probation officers. (Judge Sheely at 10). Plaintiff's hiring by the Probation Department came after the recommendations of Osenkarski and S. Gareth Graham (hereinafter "Graham") and Plaintiff admits to actually seeking the probation officer position largely because she was attracted to the idea of working in an environment, under Osenkarski, which was "hands off" and "not micromanaging" and allowed you to "do your own thing". (Varner at 85-86 and 91). Plaintiff admits that Osenkarski was instrumental in having her hired and was complementary of her work. (Varner at 233). Plaintiff also acknowledged that Osenkarski approved her promotion to senior probation officer. (Id. at 237).

The Juvenile Probation Department is, and always has been, a "very unnatural atmosphere" in that everyone is constantly surrounded by a criminal, delinquent and often

mentally sick element. (Osenkarski at 18). What appears to be natural in a regular office situation is not natural in juvenile probation. Id. The clients are considered troubled people and in such environment conversations of off-color, vulgarity and sometimes humor are mixed and used to "keep your sanity". Id. Foul language was simply common by both men and women. (Darby Christlieb at 15-16). Even before Osenkarski became Chief of the Juvenile Probation Department and it was headed by Kenneth Bolze, which is discussed more fully below, men in the office would gather and talk and joke about their past sexual experiences and women to comment and make off-color jokes with sexuality often the punch-line. (Kerry Houser at 79) .[1]

Plaintiff sought the position even after hearing of the reputation of Graham being a "hot head" supervisor and both Graham and Osenkarski being less tolerable of unfavorable

---

[1]  Female Juvenile Probation Officer Kerry Houser additionally testified about Graham being offended by an additional off-color sexual joke he heard her make at a office Christmas party. She later, calculatingly, added that her comment was made prior to joining the probation department, nevertheless the testimony is pertinent to this case and is as follows:

> Q. She said that Gary said that about you?
> A. Yeah. Oh, that he was offended with a joke that I told a Christmas party.

See Exhibit G at p. 33, lns.3-5.

> Q. Okay. What joke did you tell during a Christmas party that you had mentioned earlier this morning?
> A. That was before I worked in Probation, and I'm trying to remember after Barb told me about it. It was something about Santa Claus and - I don't remember all the things leading up to, but the brunt, the joke of thing was Santa Claus saying, part of the joke was ho ho ho, gotta go gotta go, and at the end the joke was hey hey hey, gotta stay, gotta stay, can't get up the chimney with my penis this way is what the end was.

See Exhibit G at p. 56, lns. 1-10.

subordinates. (Varner at 90). Graham was an equal opportunity yeller as he was known to yell, and be belligerent, toward any and all persons whom he did not like. (Christlieb at 15 and 18). When Plaintiff sought the position, she understood that in all likelihood Graham would be the person responsible for training her. (Varner at 92). Plaintiff also understood that President Judge Sheely was the person ultimately in charge. She described probation officers as "officers of the court." (Varner at 92-93). Plaintiff further understood that chief of the Juvenile Probation Department reported to the President Judge and that it was only the President Judge who had authority to hire and fire probation officers. (Varner at 93).

In the early stages of her employment with the probation office, Plaintiff considered herself in "good favor" with Graham. In fact, fellow employees within the probation office felt the Graham showed obvious favoritism toward Plaintiff. (Christlieb at 7). On or about October 1996, the Cumberland County Probation office split into two separate departments, adult and juvenile. As a result, Osenkarski became Chief of the new Juvenile Department after former Chief Kenneth Bolze retired. Graham retained supervisory duties over Varner and more responsibility within the office, as the two, and Osenkarski, left behind all duties associated with adult probationary activity. (Even in light of the split, the Court's President Judge has, and always had, ultimate authority over all the probations

departments, including its chiefs.). (Varner at 93).

After the transition and during the first year and a half of the existence of the new Juvenile Probation Department, the relationship between Graham and Plaintiff was so distinguishingly favorable that many in the office strongly suspected a consensual sexual affair. (William A. Brandt at 33-34). In February or March 1997, suddenly and abruptly their relationship became strained. Id.

Significantly, the first and only time Plaintiff ever complained to Osenkarski about Graham, related to any matter whatsoever, was during a February or March 1997 time period. At such time, according to Plaintiff, and an eye witness, Graham didn't like her decision making with regard to some case files handled within the office. He was not pleased with her work performance. He screamed at her, threw her out of his office and she went to Osenkarski telling him that he needed to "get the guy [Graham] under control." (Varner 97-98 and 168 and Christlieb at 20 and Joseph Osenkarski at 6).

It was known, in the office that Osenkarski had an open door for issues of concern by employees and during her five (5) minute visit to Osenkarski, at which time she was sitting down, Plaintiff did not complain about anything with regard to Graham except of the particulars of decisions made about case files. (Varner 97-97; Osenkarski at 7 and 12-14; Christlieb at 26- 28 and Brandt at 56). At the close of said meeting, Osenkarski told

Plaintiff if the problem could not be resolved to come back to him and he would intervene. (Osenkarski at 15). At no time did Plaintiff ever complain to Osenkarski about anything related to sexual harrassment. (Id. At 15).

The first time Plaintiff ever complained about alleged sexual discrimination and harassment by Graham or Osenkarski was on April 8, 1997 to Dan Hartnet, in the Personnel Department of the County of Cumberland. (Varner at 190). President Judge Harold Sheely, who had the ultimate authority to hire, fire and discipline Graham, if warranted, was disappointed that Plaintiff did not come to him with her problems. It was the President Judge's understanding that if an alleged victim of sexual harassment had an issue that person was supposed to go to their immediate supervisor and if that did not work then to him. Plaintiff never followed that procedure. (Sheely at 36-39). Plaintiff now alleges, by way of this litigated matter, that she has been discriminated against pursuant to Title VII by the Court and County defendants. (Plaintiff's Complaint at ¶¶ 40-41). Additionally, she alleges claims violative of Section 955(e) of the PHRA, against Graham and Osenkarski contending that they discriminated, conspired and aided and abetted therefore violating said act. (Id. at ¶¶ 54-55).

Although there are disputed claims against him, which will be addressed more fully within his Memorandum in Support of Motion for Summary Judgement, Plaintiff admits

that Osenkarski, personally, has always been polite to her. (Varner at 238). Plaintiff additionally admits that of the alleged sexually harassing comments by Osenkarski, within a five (5) year period, she personally was only witness to one where he commented to another person in the office, and she overheard, a statement about a female's breast. All the other events were shared by person's in the office or just via the rumor mill. (Varner at 175-79).

Plaintiff has also alleged blanketed accusations with regard to receiving less desirable assignments and the negative effects of the seniority system which will be discussed more fully below. (Complaint at ¶¶ 20 (a),(d) and(e)).

Plaintiff contends, without naming a particular party defendant, that she was discriminated against by being adversely effected by the seniority system which changed upon the splitting of the Probation Office into, Juvenile and Adult. (Complaint at ¶ 20(d)). The seniority issue in the office was whether probation officers, in terms of seniority, received credit for all time while employed in any branch of county government, or whether the only time that applies is the probation Department. (Varner at 187-88). Initially, in 1996 everyone in the newly formed Juvenile Probation Office felt that changing the old system, which could unconscionably give more seniority to someone who had absolutely no probation experience seniority over another with a vast amount, was only fair

to all. (Osenkarski at 44-45). The example used by many of the probation officers was articulated during the deposition of Juvenile Probation Officer William Brandt:

> Q. Prior to the split, what was your understanding of how seniority was calculated in the combined Adult and Juvenile Probation Department?
>
> A. My understanding from day one was years of service with the county.
>
> Q. Inside and outside of probation?
>
> A. Correct. So if a maintenance man came to the Department not possessing even the prerequisites for our position, he would be more senior on the list than someone who had his doctorate.

(Brandt at 37). As a result, Osenkarski ask a supervisor in the office to conduct a study which addressed the issue to include surveying the consensus of the probation officers exhaustively for input. (Osenkarski at 44-45). Importantly, Plaintiff at the time agreed that changing the seniority system was the most fair and equitable way to apply seniority within the Juvenile Probation Department. (See Memorandum authored by Thomas A. Boyer attached as Exhibit " "). Only when Plaintiff discovered that one person in the office moved just above her in seniority did she indicate her displeasure. (Varner 188-90). Significantly, the change in the system has not adversely effected Plaintiff as she was even

promoted at the same time as the person moved just above her in seniority due to her self serving complaints.  Id.

                                      Respectfully submitted,

                                      **SWEENEY & SHEEHAN**


                                      By:/s/ Paul Lancaster Adams
                                            Identification No: 72222
                                            1515 Market Street, Suite 1900
                                            Philadelphia, PA 19102
                                            (215) 563-9811
                                            Attorney for Joseph Osenkarski