IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA E. VARNER,<br>        Plaintiff | :<br>:<br>: |
| v. | : CIVIL ACTION NO. 1:CV-01-725<br>: |
| COMMONWEALTH OF PENNSYLVANIA,<br>NINTH JUDICIAL DISTRICT,<br>CUMBERLAND COUNTY, et al.,<br>        Defendants | : (JUDGE KANE)<br>:<br>:<br>: |

### AFFIDAVIT OF JOHN WARD

1. I was the Interim Chief Clerk for Cumberland County between July 1995 and January 1996.

2. In January 1996, I became the Chief Clerk.

3. As Chief Clerk I was the highest ranking, non-elected official in Cumberland County and reported directly to the County Commissioners. Cumberland County department heads reported directly to me.

4. By law Cumberland County was required to, and did, provide the funding for the Cumberland County Court of Common Pleas Probation Department. Other than providing funding for the Probation Department Cumberland County did not exercise any type of authority over the Probation Department. Whenever as Chief Clerk I received a complaint about any aspect of the operation of the Probation Department, I would simply forward that complaint to the President Judge of the Court of Common Pleas who could dispose of the complaint in any way he wanted.

5. I am aware of the fact that Barbara Varner initially brought her complaints regarding Gary Graham, Joesph Osenkarski and sexual harassment to the attention of the County rather than to the President Judge. I believe this occurred because historically Cumberland County's HR Department dealt with issues rising within the courthouse concerning personnel matters and those matters would only go to the President Judge when they could not be resolved by HR.

6. I do not recall the exact day I learned about Barbara Varner's sexual harassment complaint. My recollection is that Dan Hartnett, the County's HR Director, brought the complaint to my attention within minutes after receiving the complaint. I instructed Hartnett to investigate the complaint. Hartnett and I discussed the complaint and agreed to seek the assistance of David DeLuce. Mr. DeLuce is an attorney for the firm where Horace Johnson is a partner. At the time the Varner complaint was made known to us, Horace Johnson was the County Solicitor.

7. To my recollection we engaged Mr. DeLuce as an outside independent investigator because Varner worked for the court system. It was my impression that the court did not closely manage its own employees. I knew that in any case involving a court employee who got involved in some type of sexual harassment situation the chances of negative stories appearing in the press were multiplied as compared to an employee in any other county department. The court simply has a high profile within the community.

8. My recollection is that DeLuce orally presented to me a report, following his investigation, that said essentially that Osenkarski and Graham were both guilty of sexual harassment and that Graham was completely running the Probation Department. DeLuce recommended that both Graham and Osenkarski should be fired.

9. Hartnett and I ultimately concurred in DeLuce's recommendation. There were two reasons why we concurred in the recommendation. First, we were concerned about DeLuce's conclusion that actual sexual harassment had occurred. Second, we were equally concerned with DeLuce's conclusion that the Juvenile Probation Department was being managed in an extremely poor manner. The evidence brought to our attention by DeLuce showed that Osenkarski was aware of the problems DeLuce identified with Graham's management or mismanagement of the department and did nothing to rectify any of these problems.

10. Later I met with DeLuce's boss, County Solicitor Horace Johnson. Mr. Johnson and I went to President Judge Sheely and discussed with him the conclusions that had been derived from

DeLuce's inquiries. Judge Sheely was already aware at that time that DeLuce had been making inquiries into the Varner complaint.

11. There was a second meeting with Judge Sheely – I do not recall the date – where DeLuce and Hartnett were present with me. The unanimous recommendation that was made to Judge Sheely at that time was as follows:

    (1) Both Graham and Osenkarski should be fired.

    (2) Judge Sheely should not be given a copy of DeLuce's investigation report. Judge Sheely, however, insisted upon receiving a copy of the report DeLuce had prepared and was therefore given a copy.

12. When we left Judge Sheely's office both Hartnett and I were certain that Sheely was going to act on our recommendation and fire both Graham and Osenkarski.

13. However, before Judge Sheely took any action, Gary Graham apparently confessed to Judge Sheely his long term consensual affair with Barbara Varner. Judge Sheely told me personally that Graham had confessed to the consensual affair. Judge Sheely indicated that he had therefore decided to simply give Graham a three day suspension rather than firing him. Osenkarski was not to my recollection mentioned but I am aware that Osenkarski ultimately received no discipline at all.

14. My recollection is that Judge Sheely had first said that Graham would receive a five day suspension and Osenkarski a three day suspension and that it was later that the figures were reduced to three from Graham and zero for Osenkarski.

15. It was very clear to me from Judge Sheely's statements that it was the acknowledgement of the affair to Judge Sheely by Graham that softened his previously expressed intent to discharge both Graham and Osenkarski.

16. At some point shortly after President Judge Sheely retired Hartnett advised me that he had received yet another complaint from Varner about sexual harassment. I do not recall exactly what conduct Varner was complaining of on this occasion but do recall that Hartnett and I took her complaint to Judge Hoffer. President Judge Hoffer indicated that he did not have much familiarity with the Varner

3

situation and was going to discuss the situation with Judge Sheely. Hoffer also had the opportunity to read the report that had been prepared by DeLuce.

17. Because the County was completely without any power to intervene in the supervision and discipline of court employees, we had no alternative but to accept the decisions of President Judges Sheely and Hoffer. Had the County had any decision making authority in this regard, both Graham and Osenkarski would have been terminated. While Graham's subsequent revelations about his sexual escapades with Varner may have left us uncertain as to Varner's veracity, the management issues described to DeLuce by the other probation officers during his inquires left us no doubt that from a managerial standpoint alone the department would be better off without Osenkarski and Graham.


Date:_____                               _____
                                                   John Ward




Sworn To and Subscribed
before me this _____
day of _____ 2003.


_____
Notary Public
My commission expires: _____

## VERIFICATION

I hereby verify that the statements contained in this Affidavit are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Date: 12-23-03

John Ward