1:CV 01-0725

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARBARA E. VARNER,
    Plaintiff

v.

COMMONWEALTH OF PENNSYLVANIA,
NINTH JUDICIAL DISTRICT,
CUMBERLAND COUNTY,

and

CUMBERLAND COUNTY

And

S. GARETH GRAHAM, individually

And

JOSEPH OSENKARSKI, individually
    Defendants

CIVIL ACTION
NO:

FILED
APR 2 6 2001
PER _____
HARRISBURG, PA.   DEPUTY CL__

JURY TRIAL DEMANDED

## COMPLAINT

1. Plaintiff Barbara E. Varner [hereinafter Varner] is an adult female individual residing at 5 Maple Drive, Etters, York County, Pennsylvania, 17319.

2. Defendant Commonwealth of Pennsylvania, Ninth Judicial District, Cumberland County [hereinafter Court] is a district of the judicial branch of the Commonwealth of Pennsylvania with a primary business address of One Courthouse Square, Carlisle, Cumberland County, Pennsylvania 17013.

3. Defendant Cumberland County [hereinafter County] is a political subdivision within the Commonwealth of Pennsylvania with a primary business address of One Courthouse Square, Carlisle, Cumberland County, Pennsylvania 17013.

4. Defendant S. Gareth Graham is an adult male individual with a business address of the Cumberland County Probation Department, One Courthouse Square, Carlisle, Cumberland County, Pennsylvania 17013.

5. Defendant Joseph Osenkarski is an adult male individual with a business address of the Cumberland County Probation Department, One Courthouse Square, Carlisle, Cumberland County, Pennsylvania 17013.

6. At all times relevant to this complaint the County has continuously had, and does now have, at least fifteen employees.

7. At all times relevant to this Complaint, the County has continuously had, and does now have, more than 500 employees.

8. At all times relevant to this complaint the Court has continuously had, and does now have, at least fifteen employees.

9. At all times relevant to this Complaint, the Court has continuously had, and does now have, fewer than 100 employees.

10. Varner is an employee of the County to the extent that the County sets her salary and compensation, she is subject to the County's personnel policies, she has been issued a County identification badge, and she has been referred to the County's personnel office to make her complaints of discrimination.

11. Varner is an employee of the Court to the extent that the Court has the statutory authority to hire, discharge, and supervise her.

12. This Honorable Court has jurisdiction over this matter brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*; the Civil Rights Act of 1991, 42 U.S.C. §1981a; and the Pennsylvania Human Relations Act, 43 P.S. §951 *et seq.*, pursuant to 28 U.S.C. §1331 and 42 U.S.C. §2000e-5(f)(3). Plaintiff also asserts state law claims arising out of the common nucleus of facts which properly may be joined in this action under the Court's pendent jurisdiction.

13. At all times relevant to this complaint and for purposes of Title VII and the Pennsylvania Human Relations Act, Varner was an employee of both the County and of the Court.

14. Varner was first hired by the County on December 4, 1989 as a Caseworker.

15. On February 7, 1995, Varner was transferred as a Probation Officer I to the Cumberland County Probation Department.

16. On or about November 20, 1996 until March, 1998, Varner was sexually harassed by S. Gareth Graham, her immediate supervisor. Specifically,

a. On or about November 20, 1996, Varner gave Graham a social history of a female juvenile with suicidal tendencies related to premenstrual problems. Graham responded:

3

"Jesus Christ, do I need to get a peter meter in my office?" This was said to Varner in front of a male co-worker.

b. Graham indicated a sexual interest in Varner by giving her an inappropriate and personal birthday card, by inappropriate touching, and by appearing uninvited at her home.

c. Graham knocked on Varner's hotel room door requesting entrance and called her room repeatedly during their work-related attendance at a training session at Penn State University.

d. When Varner showed a lack of interest in Graham's sexual overtures, Graham's attitude toward Varner became hostile and abusive.

e. On several occasions, Graham told Varner explicit stories regarding his "sexual problems" with his wife, who works as a stenographer for the Cumberland County Courts. For example, while traveling on a business trip with Varner, Graham discussed his wife's masturbation habits and her refusal to have sex with him. Graham told Varner that he would keep a calendar of these events and threatened to "get even" with his wife. When Varner suggested counseling for him and his wife, Graham immediately denied any need for counseling, started screaming about it, and began to drive the vehicle at a very high rate of speed which frightened Varner.

f. Graham would brag to Varner about smashing his wife's figurine collection against their fireplace and destroying her birthday cake in front of his young daughters to "punish her." Varner interpreted these statements as threats that he would retaliate against Varner.

g. Graham told Varner not to talk to another female probation officer who had previously complained of sexual harassment.

4

h. Graham told Varner that her seniority and promotional possibilities are not based on seniority alone, but on the need to "satisfy" all parties involved. This was said with a suggestive smile and while he was making other sexual innuendoes.

i. Graham would continually call attention to Varner's gender and make inappropriate comments about other females. For example, Graham made comments to Varner about how dark he believes a young female's "bush" is.

j. When Varner told Graham that she did not want to hear his sexual comments and that she found the "f" word offensive, he told Varner that if she couldn't take it she could go back to doing social work (her former job).

17. After Varner rebuffed Graham's overtures, he retaliated against her, including retaliation in the following manner:

a. Graham screamed at Varner on numerous times and embarrassed her in front of co-workers.

b. Graham physically moved toward her in an aggressive manner, threw wadded paper at her, and pointed in her face.

c. Graham told her directly that he and his immediate supervisor, Joseph Osenkarski, "punish" people who do not comply with what they demand or who fall out of favor with them.

d. Graham humiliated Varner in front of the entire office, with members of the public present, stating loudly that she has no "f------ sense, no f------- training, and no f------ ability."

e. Graham told Varner, a divorced female, that all divorced females are angry at men.

18. When Varner followed the chain of command and complained to Osenkarski, Graham's supervisor, about Graham's treatment, Osenkarski told Varner that he did not want to get involved. Osenkarski told Varner that he had put his "F------ 35 years in and now Mr. Graham is in charge."

19. On or about November 20, 1996 until the present, Varner has been harassed and sexually harassed by Joseph Osenkarski, Chief, more particularly as follows:

a. Osenkarski calls attention to her gender and makes inappropriate comments about other females.

b. On or about April 7, 1997, Osenkarski made a comment in front of Varner about a young female intern's breasts: that she had a nice set of "jahoobee's."

c. On or about July, 2000, Osenkarski informed a new female Probation Officer that hysterectomies "ruin" women. Osenkarski was aware that Varner has had a hysterectomy.

d. On or about September 12, 2000, Osenkarski informed two new female Probation Officers that they would have to "dance on the tables" at their first staff meeting.

e. On or about September, 2000, Osenkarski made a statement in front of several females referring to his girlfriend's genital area.

20. Varner has been treated differently than other employees because of her sex, female, and she has been subjected to a hostile work environment. Specifically,

a. Varner is given less desirable assignments than the male officers. She is the only female Probation Officer in her department who is assigned supervision cases. Many of these cases involve large males with histories of assault or are more complicated.

b. Other probation officers continually remind Varner that she is in physical danger of retaliation by Graham.

c. On or about November 4, 2000, a fellow Probation Officer informed Varner that her current supervisor hates her and will do anything to get rid of her.

d. Prior to September 9, 1996, seniority lists used total number of years employed by the county. Varner was hired while this was the policy and she was told that she would receive the benefit of this provision. New hires got seniority only for time in the Probation Department. Varner is the only person who has not been given the benefit of county seniority.

e. A male employee, Bill Brandt, was moved ahead of Varner on the seniority list although she had more county seniority time than he. Varner was told by her supervisors that Brandt is male and "would eventually have a family" so he would need the money more.

f. Male Probation Officers such as Lyle Herr, Mike Peiper, and Graham have been given the benefit of the county-wide seniority, but Varner has not.

g. Under Graham's supervision, male Probation Officers were permitted to leave on juvenile commitment trips at any time throughout the day. Graham enforced an 8:00 a.m. leaving time for Varner and the other female Probation Officers.

h. Varner and other female Probation Officers are not subject to the same rules as the male Probation Officers. For example, females have been docked pay in situations where the males have not.

21. On April 8, 1997, Varner complained about harassment and sexual harassment by Graham and Osenkarski to Dan Hartnett, County Personnel and Human Resources Director.

7

22. On April 25, 1997, Varner wrote and submitted an extensive memorandum entitled "Harassment/Discrimination in Cumberland County Probation Department."

23. Representatives of the County conducted an internal investigation into Varner's allegations.

24. During and after the investigation, Graham threatened to retaliate against persons who were interviewed during the investigation.

25. The investigation resulted in recommendations made by the investigator which were not implemented by the County or the Court.

26. The County and the Court have refused and continue to refuse to remedy the harassment, retaliation, hostile work environment and sex discrimination to which Varner has been subjected.

27. The County and the Court have acted with malicious and reckless disregard of Varner's right to be free of harassment, retaliation, a hostile work environment, and sex discrimination.

28. Varner continues to be treated differently because of her sex, female, and is in constant fear of reprisal and physical harm. Specifically,

a. On October 27, 1997, during a training session on Sexual Harassment in the Workplace, Graham positioned himself in a manner that allowed him to glare and stare at Varner with narrowed eyes.

b. On November 3, 1997, Varner was walking toward the Courthouse when she was physically threatened by Graham's wife, who had exited her car and walked toward Varner,

8

stopping in the street. She stood at the curb glaring at Varner with narrowed eyes and clenched teeth and remained until Varner was directly in front of her.

    c. On December 4, 1997, Varner was waiting outside the courtroom when Graham's wife walked toward Varner narrowing her eyes and clenching her teeth.

    d. On several occasions, Graham has walked directly at Varner, only moving aside when he was a few steps away.

    e. On March 3, 1998, Varner was walking from the parking lot to the Courthouse when she was confronted by Graham and his wife. When Varner attempted to walk around the Grahams, Mrs. Graham forcefully bumped into her.

    f. On May 22, 1998, Varner and Mrs. Graham were parking their cars. Mrs. Graham walked up to within two or three steps behind Varner and stayed in that position for the entire walk into the building.

    29. Varner complained to the Personnel and Human Relations Director for the County in writing and verbally about continued threatening actions by the Grahams and continued sex discrimination within the Probation Department.

    30. In March, 1998, Graham was moved to the Adult Probation Department and Thomas Boyer became the new supervisor of the Juvenile Probation Department, joined later by Henry Thielmann as a second supervisor.

    31. Varner continues to be treated differently from other male Probation Officers with respect to the nature and number of assignments given to her.

    32. After making the complaints of sex discrimination and harassment, the County and the Court have retaliated against Varner. Specifically,

a. President Judge Harold Sheely asked Varner in December, 1997 why she went to the Personnel Director with her complaints and told her that she would just have to "put up with it."

b. President Judge George Hoffer restricted Varner from going into the probation offices in the third floor east wing of the Courthouse, a location where she needed to be to do her job. She remains subject to this restriction.

c. In the summer of 2000, Varner sought a position as Program Director of the Cumberland County Court Appointed Special Advocate (CASA) program.

d. Varner sought this position to escape the continuing discrimination and harassment which she experienced in the Probation Department.

e. In June, 2000, the County, through its County Commissioners, submitted a grant application to the National Court Appointed Special Advocate Association identifying the salary of the Program Director as $40,382, the same salary paid at that time to Varner.

f. Varner participated in the preparation of the grant application and signed the grant application as the tentative Program Director.

g. Varner was introduced at a meeting as the tentative Program Director.

h. In September, 2000, the County offered to transfer Varner to the position of CASA Program Director, but only if she agreed to rescind her charges of discrimination.

i. Varner was the best qualified applicant for the position and she was told by the Judge assigned to administer the CASA program, Judge Edward E. Guido, that she was his choice for Program Director.

10

j. When Varner refused to rescind or withdraw her charges of discrimination, the County lowered the salary for the CASA Program Director to approximately $29,000 so that Varner would no longer be interested in the position.

33. At all times relevant to this complaint, Varner performed her duties as a Probation Officer in a competent and professional manner.

34. As a direct result of the actions of the Defendants, Varner has suffered physical symptoms of stress which have caused her to seek medical treatment and counseling.

35. As a direct and proximate result of the actions of the Defendants, Varner has suffered and continues to suffer serious mental anguish, embarrassment, public humiliation, damage to her reputation, inconvenience, loss of enjoyment of life, future pecuniary losses, and psychological and emotional distress, some or all of which may be permanent.

36. Varner has filed charges of employment discrimination with the Pennsylvania Human Relations Commission and with the Equal Employment Opportunity Commission.

37. Varner has exhausted her administrative remedies.

## COUNT I - TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## AGAINST THE COUNTY AND THE COURT

38. The County and the Court are "employers" within the meaning of 42 U.S.C. §2000e (a) and (b).

39. Varner has been the victim of acts of unlawful discrimination by the County and the Court based upon her sex, female, in that she has been treated differently than male

individuals, has been subjected to sexual harassment which has been repeated, pervasive, and severe enough to constitute a hostile work environment, and she has been the victim of retaliation for making her complaints of discrimination.

40. The County and the Court are responsible for the acts of discrimination of its supervisory employees and took no immediate or successful corrective actions to prevent continuing violations of Title VII.

41. The County and the Court have retaliated against Varner because she has made claims of sex discrimination and has opposed discriminatory practices prohibited by Title VII.

42. The United States Department of Justice, Civil Rights Division, issued a right to sue letter dated January 29, 2001, giving Varner a right to bring a private civil action under Title VII.

43. As a direct result of the discriminatory practices described above, the County and the Court caused Varner to suffer future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

44. As a direct result of these discriminatory practices, the County and the Court owe Varner compensatory damages for the costs of her medical and psychological treatment, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

45. As a direct result of these discriminatory practices, the County and the Court owe Varner punitive damages.

46. The foregoing acts of the County and the Court constitute unlawful discrimination against Varner because of her sex, in violation of 42 U.S.C. §2000e-2(a)(1) and (2) and 42 U.S.C. §2000e-3(a).

47. The foregoing acts of the County and the Court constitute unlawful intentional discrimination against Varner because of her sex, female, and entitle her to the additional rights of recovery of compensatory and punitive damages provided by the Civil Rights Act of 1991, 42 U.S.C. §1981a.

WHEREFORE, Plaintiff Barbara E. Varner requests judgment in her favor and against Defendants named in this Count, together with an Order of the following relief:

A. Payment of all back wages, benefits, pension contributions, and other emoluments of employment lost as a result of the unlawful discrimination of Defendants;

B. Payment of actual damages compensating Plaintiff for the losses directly attributable to the actions of the Defendants;

C. Compensatory and punitive damages;

D. All costs of litigation;

E. Reasonable attorney's fees and such other relief to which she may be entitled under 42 U.S.C. §1988, 42 U.S.C. §1981a, and Title VII;

F. A permanent injunction against continuing acts of discrimination and retaliation against Plaintiff for having reported instances of unlawful discrimination;

G. Such other relief as this Court deems necessary and appropriate or as justice shall require.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised in Count I of this Complaint.

## COUNT II - PENNSYLVANIA HUMAN RELATIONS ACT AGAINST THE COUNTY AND INDIVIDUALS GRAHAM AND OSENKARSKI

48.   Defendant County meets the definition of "employer" as defined in Section 4(b) of the Pennsylvania Human Relations Act (hereinafter PHRA), 43 P.S. §954(b).

49.   Defendant County has treated and continues to treat Varner differently because of her sex, female.

50.   Defendant County has retaliated against Varner because she has filed claims of discrimination based upon her sex and has opposed discriminatory practices prohibited by the PHRA.

51.   Defendant County is responsible for the foregoing acts of discrimination and took no immediate or successful corrective actions to prevent continuing violations of PHRA.

52.   The foregoing acts of Defendant County constitute unlawful discrimination against Varner because of her sex, female, in violation of Section 5 of PHRA, 43 P.S. § 955(a) and (d).

53.   As a direct result of Defendant County's willful violation of PHRA, Defendant County owes Varner for compensatory damages.

14

54. Individuals Graham and Osenkarski have aided and abetted violations of the PHRA by directly discriminating against Varner and by conspiring with the County and the Court to engage in acts which violate the PHRA.

55. Osenkarski has aided and abetted violations of the PHRA by failing to act to prevent unlawful sex discrimination and harassment by his subordinates.

56. The foregoing acts of Defendants Graham and Osenkarski constitute violations of Section 5 of PHRA, 43 P.S. § 955(e).

57. As a direct result of Defendants Graham's and Osenkarski's willful violations of PHRA, these Defendants owe Varner for compensatory damages.

WHEREFORE, Plaintiff Barbara E. Varner requests judgment in her favor and against Defendants named in this Count, together with an Order of the following relief:

A. Payment of all back wages, benefits, pension contributions, and other emoluments of employment lost as a result of the unlawful discrimination of Defendants;

B. Payment of actual damages compensating Plaintiff for the losses directly attributable to the actions of the Defendants;

C. Compensatory damages;

D. All costs of litigation;

E. Reasonable attorney's fees and such other monetary relief to which she may be entitled under the Pennsylvania Human Relations Act;

F. A permanent injunction against continuing acts of discrimination and retaliation against Plaintiff for having reported instances of unlawful discrimination;

G. Such other relief as this Court deems necessary and appropriate or as justice shall require.

Respectfully submitted,

_____
Debra K. Wallet, Esq.
24 North 32nd Street
Camp Hill, PA  17011
(717) 737-1300
I.D. # 23989
Attorney for Plaintiff

16

## VERIFICATION

I verify that the statements made in the foregoing document are true and correct to the best of my knowledge, information and belief. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

April 25, 2001
DATE

*Barbara E. Varner*
BARBARA E. VARNER