# Exhibit N

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

| | |
|---|---|
| PE| **FILING CHARGE** |
| | Varner, Barbara E |

| THIS PERSON (check one) |
|---|
| [X] CLAIMS TO BE AGGRIEVED |
| [ ] IS FILING ON BEHALF OF ANOTHER |

┌─────────────────────────────────┐
│ Mr. George E Hoffer             │
│ President/Judge                 │
│ Common Pleas Ct Of Cumberland Cty. │
│ One Courthouse Square           │
│ Carlisle, PA 17013              │
└─────────────────────────────────┘

| DATE OF ALLEGED VIOLATION | |
|---|---|
| *Earliest* | *Most Recent* |
| 11/20/1996 | 05/26/1998 |

| PLACE OF ALLEGED VIOLATION |
|---|
| Carlisle, PA |

| CHARGE NUMBER |
|---|
| 170990490 |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See EEOC "Rules and Regulations" before completing this Form)*

You are hereby notified that a charge of employment discrimination has been filed against your organization under:

[X] TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

[X] THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967

[ ] THE AMERICANS WITH DISABILITIES ACT

[ ] THE EQUAL PAY ACT (29 U.S.C., SECT. 206(d)) investigation will be conducted concurrently with our investigation of this charge.

The boxes checked below apply to your organization:

1. [X] No action is required on your part at this time.

2. [ ] Please submit by _____ a statement of your position with respect to the allegation(s) contained in this charge, with copies of any supporting documentation. This material will be made a part of the file and will be considered at the time that we investigate this charge. Your prompt response to this request will make it easier to conduct and conclude our investigation of this charge.

3. [ ] Please respond fully by _____ to the attached request for information which pertains to the allegations contained in this charge. Such information will be made a part of the file and will be considered by the Commission during the course of its investigation of the charge.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

Philadelphia District Office

| | |
|---|---|
| 21 S. Fifth Street | Joan D. Gmitter, Supervisor |
| Philadelphia, PA  19106-2515 | *(Commission Representative)* |
| | (215) 451-5803 |
| | *(Telephone Number)* |

[ ] Enclosure: Copy of Charge

| BASIS OF DISCRIMINATION |
|---|
| [ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NAT. ORIGIN  [X] AGE  [ ] DISABILITY  [X] RETALIATION  [ ] OTHER |

CIRCUMSTANCES OF ALLEGED VIOLATION

| DATE | TYPED NAME/TITLE OF AUTHORIZED EEOC OFFICIAL | SIGNATURE |
|---|---|---|
| 01/13/1999 | Marie M. Tomasso | |

**Chairperson**
ROBERT JOHNSON SMITH
**Vice-Chairperson**
RAQUEL OTERO de YIENGST
**Secretary**
GREGORY J. CELIA, JR.
**Executive Director**
HOMER C. FLOYD



**COMMONWEALTH OF PENNSYLVANIA**
**PENNSYLVANIA HUMAN RELATIONS COMMISSION**
101 South Second Street, Suite 300
P.O. Box 3145
Harrisburg, Pennsylvania 17105-3145
(717) 787-4410 (Voice)
(717) 787-4087 (TT)

**COMMISSIONERS**
JOSEPH J. BORGIA
W.D. CHRISNER III
CARL E. DENSON
ALVIN E. ECHOLS, JR.
RUSSELL S. HOWELL
ELIZABETH C. UMSTATTD
SYLVIA A. WATERS
DANIEL D. YUN

**Reply to:**

P.O. Box 3145
Harrisburg, PA 17105-3145

November 20, 1998

RECEIVED

NOV 23 1998

Cumberland County
One Courthouse Square
Carlisle, PA   17013

RE:    Barbara E Varner v. Cumberland County
       Docket No. L 03742

Dear Sir/Madam:

Enclosed is a copy of the above-referenced case which was filed against you. The Pennsylvania Human Relations Commission (PHRC) administers and enforces the Pennsylvania Human Relations Act (PHRAct), which is the State's anti-discrimination law.

This complaint was originally filed with the Equal Employment Opportunity Commission (EEOC) and was dual filed with PHRC. The PHRC will hold its investigation in abeyance, pending the completion of action by EEOC. PHRC will review EEOC's dismissal and make a determination based on State Law as to whether the case should be closed or further investigated.

Although the case is held in abeyance, the PHRAct requires that the respondent file a written, verified answer to the complaint within thirty days of service of the complaint. PHRC will accept a copy of your entire response provided to EEOC as your answer. This requirement is more fully explained in the enclosed Notice to Defend. The PHRAct also requires that you send a copy of the answer to the complainant. If you have agreed to enter into the Alternative Dispute Resolution process, at EEOC please contact me before filing your answer with PHRC.

If a settlement agreement is reached with the complainant. This would enable PHRC to close it's file.

Sincerely,

*Peggy J. Raynock*

Peggy J. Raynock
Assistant to the
Director of Compliance

PJR:cb

COMMONWEALTH OF PENNSYLVANIA

PENNSYLVANIA HUMAN RELATIONS COMMISSION

COMPLAINANT(S):
Barbara E Varner

        v.

RESPONDENT(S)
Cumberland County

        :
        :
        :
        :     DOCKET NO. L 03742
        :
        :
        :

## NOTICE TO DEFEND

A complaint has been filed against you before the Pennsylvania Human Relations Commission. If you wish to defend against the claims set forth in the complaint attached hereto, you must take action within thirty (30) days of the service of the complaint by filing with the Commission a written, verified answer. **A verified answer consists of a sworn oath or affirmation or an unsworn statement by the signer to the effect that the answer is made subject to the penalties of 18 Pa. C.S. § 4904 (relating to unsworn falsification to authorities).** Your answer must be so drawn as to fully and completely advise the other parties and the Commission as to the nature of all defenses and objections, must admit or deny specifically each averment of fact in the complaint (unless you state that after reasonable investigation you are without knowledge or information sufficient to form a belief as to the truth of an averment), and must state clearly and concisely the facts and matters of law relied upon.

At the same time you file your answer with the Commission, you must serve a copy of the answer on each named complainant and on the complainant's attorney of record, if there is one.

You are warned that if you fail to file an answer, the case may proceed without you and the Commission may enter a decision against you without further notice. You may lose rights which are important to you. If you were unable to an file answer within the time period set forth above, you may file with the Commission a written motion requesting an extension of time. For good cause shown, the Commission may grant you an extension of not more than thirty (30) days in which to file your answer.

Although you are not required to retain an attorney, you should, if representation you should, you may go to or phone the office set forth below for further information.

Ms. Peggy Raynock
101 S. 2nd St., Suite 300
P.O. Box 3145
Harrisburg, PA  17105-3145

**Normal Business Hours:** 8:30 am to 4:30 pm EST
**Direct Dial:** 717-783-8172

# COMMONWEALTH OF PENNSYLVANIA

## GOVERNOR'S OFFICE

### PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

Barbara E Varner,

      COMPLAINANT(s)

      vs.

      :  DOCKET NO(s): L 03742

Cumberland County,

      RESPONDENT(s)

1. The Complainant(s) herein is/are:

    Name:    Barbara E Varner

    Address:    5 Maple Drive    Etters, PA  17319

    Name:

    Address:

2. The Respondent(s)s herein is/are:

    Address:    One Courthouse Square    Carlisle, PA   17013

    Name:

    Address:

    Name:

    Address:

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

|  | AGENCY | CHARGE NUMBER |
|---|---|---|
| | ☐ FEPA | 170981689 |
| ────── Pennsylvania Human Relations Commission ────── | ☒ EEOC | |
| _State or local Agency, if any_ | and EEOC | |

NAME (Indicate Mr., Ms., Mrs.)
Ms. Barbara E. Varner

| STREET ADDRESS                     CITY, STATE AND ZIP CODE | HOME TELEPHONE (Include Area Code) |
|---|---|
| .5 Maple Drive, Etters, PA   17319 | (717) 938-9858 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

DATE OF BIRTH
01/18/49

NAME
Cumberland County

| NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|
| Cat D (501+) | (717) 240-6265 |

| STREET ADDRESS                   CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| .One Courthouse Square, Carlisle, PA   17013 | 041 |

NAME

| STREET ADDRESS                   CITY, STATE AND ZIP CODE | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | COUNTY |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE    ☐ COLOR    ☒ SEX    ☐ RELIGION    ☐ NATIONAL ORIGIN
☒ RETALIATION    ☒ AGE    ☐ DISABILITY    ☐ OTHER (Specify)

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| 11/20/96 | / / |
| ☒ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

See attached sheets.

---

☒ I want this charge filed with both the EEOC and the State or Local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Notarial Seal
Jennifer L. Garner, Notary Public
Camp Hill Boro, Cumberland County
My Commission Expires Aug. 27 2001

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

_Barbara E. Varner_

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)

Charging Party (Signature)

C FORM 5 (Rev. 06/92)

EEOC CHARGE NO. 170981689

The Particulars Are:

I.      On December 4, 1989 I was hired by Cumberland County as a Caseworker.  On February 7, 1995, I was transferred as a Probation Officer I to the Cumberland County Probation Department.  On or about November 20, 1996 to the present, I have been harassed and sexually harassed by S. Gareth Graham, Supervisor, and Joseph Osenkarski, Chief, more particularly as follows:

a.  On or about November 20, 1996, I gave my supervisor, Mr. Graham, a social history of a female juvenile with suicidal tendencies related to premenstrual problems.  Mr. Graham responded:  "Jesus Christ, do I need to get a peter meter in my office?"  This was said to me in front of a male co-worker.  The comment was degrading and humiliating to me as a female.

b.  In January, 1996, Mr. Graham indicated an interest in me sexually by giving me an inappropriate and personal birthday card and by inappropriate touching.  On May 1, 1996, Mr. Graham appeared uninvited at night at my home.  Mr. Graham knocked on my hotel room door requesting entrance and called my room repeatedly during a training session at Penn State October 21-23, 1996.  When I showed a lack of interest in his sexual overtures, his attitude toward me became more hostile.

c.  On several occasions, Mr. Graham has told me explicit stories regarding his "sexual problems" with his wife who works as a stenographer for Cumberland County Courts.  For example, while traveling on a business trip with me on December 11, 1996, he discussed his wife's masturbation habits and her refusal to have sex with him.  He told me he would keep a calendar of these events and threatened to "get even" with her.  I suggested counseling for him and his wife.  He immediately denied any need for counseling, started screaming about _____ _____ _____ would brag about smashing his wife's figurine collection against their fireplace and destroying her birthday cake in front of his young daughters to "punish her."  I felt this was a message to me that he would retaliate against me.

d.  Mr. Graham has told me not to talk to another female probation officer, Kerry (Vohs) Houser, who had previously brought sexual harassment charges against Mr. Osenkarski.

e. Mr. Graham told me that my seniority and promotional possibilities are not based on seniority alone, but on the need to "satisfy" all parties involved. He said this with a suggestive smile and while he was making other sexual innuendoes.

f. Both Mr. Graham and Mr. Osenkarski continually call attention to my gender and make inappropriate comments about other females. For example, Mr. Graham has made comments to me about how dark he believes a young female's "bush" is. On or about April 7, 1997, Mr. Osenkarski made a comment in front of me about a young female intern's breasts: that she had a nice set of "jahoobee's".

g. When I have told Mr. Graham that I do not want to hear his sexual comments and that I find the "f" word offensive, he told me that if I can't take it I can go back to doing social work (my former job).

h. When I followed the chain of command and went to Mr. Osenkarski, Mr. Graham's supervisor, to complain about the treatment, I was told by Mr. Osenkarski that he does not want to get involved. He told me that he has put his "F------ 35 years in and now Mr. Graham is in charge."

i. After I rebuffed Mr. Graham's overtures, he retaliated against me in the following manner:

1. Mr. Graham has screamed at me numerous times, most notably on occasions from December 1996 through May, 1997 and embarrassed me in front of co-workers. He physically moves toward me in an aggressive manner. On April 16, 1997, he threw wadded paper at me. He frequently points in my face, most notably in an incident February 2, 1997. He told me directly that he and Mr. Osenkarski "punish" people who do not comply with what they demand or who fall out of favor with them.

2. On April 4, 1997

f------ ability." On most occasions when he screams at me, he uses the "f" word in direct address to me.

3. Prior to September 9, 1996, seniority lists used total number of years employed by the county. Because I was hired while this was the policy, I was told that I would receive the benefit of this provision. New hires would get seniority only for time in

2

EEOC CHARGE NO. 170981689

the Probation Department. I am the only person who has not been given the benefit of county seniority. Bill Brandt (male, aged late-20's) was moved ahead of me on the seniority list although I had more county seniority time than he. In March, 1998, Mr. Brandt was promoted ahead of me. After I complained, Mr. Brandt's promotion was taken down and we both got promoted in June, 1998. I was told that Mr. Brandt is male and "would eventually have a family" so he would need the money more than me. Although other male Probation Officers (e.g. Lyle Herr, Mike Peiper, and Gary Graham) have been given the benefit of the county-wide seniority, I have not. On the posted seniority list, Mr. Brandt is still ahead of me. If another promotion becomes available, Brandt will have more seniority than me.

4. I have been accused of having lied about a delay in returning from a business trip with another female probation officer because we had to drive through fog. Although the other female confirmed the facts, we were both docked pay and subjected to restrictions not placed on the other male probation officers.

5. Male Probation Officers may leave on juvenile commitment trips at any time throughout the day. Mr. Graham has enforced an 8:00 a.m. leaving time for myself and the other female probation officers. Female Probation Officer are not subject to the same rules as the male Probation Officers.

6. I was told by Mr. Graham in January, 1997 that all divorced females are angry at men. In April, 1997, Mr. Graham told my coworkers the same thing. I am a divorced female.

II. On April 8, 1997, I complained about Mr. Graham and Mr. Osenkarski to Dan Hartnett, Cumberland County Personnel and Human Resources Director. I made specific reference to harassment and sexual harassment. On April 25, 1997, I wrote an extensive memorandum entitled "Harassment/Discrimination in C~~umberla~~...

~~recommendation~~ that some action be taken against Mr. Graham ~~had been done,~~ the Judge Harold Sheely. I believe that this is because of his past friendships with Mr. Graham. I was told by Judge Sheely that Mr. Graham and Mr. Osenkarski have been "asshole buddies" for years. Judge Sheely accused me of having an affair with Mr. Graham, which is totally untrue. Although Mr. Graham received a short "disciplinary" suspension, I believe that he lost no pay. No one dealt specifically with the issues of harassment or sex discrimination. Mr. Graham has threatened to retaliate against persons who were interviewed during the "investigation."

3

EEOC CHARGE NO. 170981689

a. I continue to be treated differently because of my sex, female, and I am in constant fear of reprisal and physical harm.

b. On October 27, 1997, during a training session on Sexual Harassment in the Workplace, Mr. Graham positioned himself in a manner that allowed him to glare and stare at me with narrowed eyes.

c. On November 3, 1997, I was walking toward the courthouse. Mrs. Graham exited her car and walked toward me, stopping in the street. She stood at the curb glaring at me with narrowed eyes and clenched teeth and remained until I was directly in front of her. I felt physically threatened.

d. On December 4, 1997, I was waiting outside the courtroom when Mrs. Graham walked toward me narrowing her eyes and clenching her teeth.

e. On several occasions, Mr. Graham has walked directly at me, only moving aside when he was a few steps away. I am afraid for my physical safety as long as Mr. Graham is permitted to be near me.

f. On March 3, 1998 I was walking from my parking lot to the Courthouse. As I walked around the corner of a building, I was confronted by Mr. and Mrs. Graham. Mrs. Graham was on the outside of the street. I attempted to walk around her when she forcefully bumped into me.

g. On May 22, 1998, I was exiting my car in the parking lot. Mrs. Graham was parking her car behind mine. She walked up to within two or three steps behind me and stayed in that position for the entire walk into the building.

III.    I have been discriminated against because of my age (Dec. born middle

IV.    I complained on June 4, 1997, December 23, 1997, February 4, 1998, March 3, 1998, March 31, 1998, and June 1, 1998 in writing and numerous times verbally about continued threatening actions by Mr. and Mrs. Graham and continued discrimination to the Personnel and Human Relations Director. After these complaints, I have been retaliated against.

4

EEOC CHARGE NO. 170981689

a. President Judge Sheely asked me in December, 1997 why I went to the Personnel Director with my complaints and suggested that I should not continue to make my complaints to Personnel. He told me that I would just have to "put up with it."

b. After my complaints about Mrs. Graham, on May 26, 1998 I was restricted by now President Judge George Hoffer from going into the probation offices in the third floor east wing of the courthouse, a location where I need to be to do my job. To the best of my knowledge, Mrs. Graham has not been restricted in her movements.

c. In March, 1998, Mr. Graham was moved to the Adult Probation Department and Mr. Thomas Boyer became the new supervisor of the Juvenile Probation Department, joined later by Mr. Henry Thielmann as a second supervisor. I continue to be treated differently from other male probation officers.

V.    I have been suffering physical symptoms of stress which have caused me to seek medical treatment. I have sought counseling in order to try to cope with the constant tension in the workplace. I am embarrassed and humiliated by the way I have been treated by my employer, particularly after making complaints which were confirmed by my co-workers.

5

## Certificate of Service

I hereby certify that I have this day served the foregoing document upon all parties of record in this proceeding in accordance with the requirements of 1 Pa. Code § 33.31 (relating to service by an agency).

Dated at this 20 Th day of November, 1998

Christopher Burns

# QUESTIONS CONCERNING HARASSMENT

## SECTION I
## INFORMATION ON CHARGING PARTY

1.  Submit copies of documents establishing Charging Party's date of hire, job title and department at the time of the earliest alleged incident of harassment and any subsequent changes in job title, department, compensation or job status from that date to the present.

2.  For each incident of alleged harassment, identify Charging Party's immediate and second level supervisor at the time of the incident. Identify these persons by name, job title, and appropriate EEO class. [The phrase "appropriate EEO class" means the person's race, color, sex, religion, national origin, date of birth or disability (if any) as applicable to the charge.]

3.  For each incident of alleged harassment, state whether Charging Party (or Charging Party's representative) or another employee raised a concern orally or in writing about the incident. If a written concern was raised, submit a copy of that writing. If the concern was raised orally, identify who made the complaint and to whom the concern was raised and have that person state what he/she understood the concern to be.

4.  For each occasion a concern was raised, identify the Respondent representative responsible for investigating and evaluating the accuracy and significance of the concern that was raised. Have each such representative prepare a statement setting out what he/she did to investigate the concern, what was learned as a result, what conclusions were reached, and what action was taken to resolve the concern. If no investigation was conducted, explain why not.

5.  Submit a copy of all notes, statements, correspondence, or other material generated by or included in the investigation and in respect to any subsequent discip....

.... ..... and cite the Respondent representative responsible for determining the discipline, if any, to be given to the alleged harasser in response to the complaint(s).

7.  Provide an explanation, with documents as appropriate, to describe any disciplinary actions taken and explain why that discipline was deemed to be appropriate. If no disciplinary action was taken, explain why Respondent deemed that to be the appropriate response.

**In order to make a full response to this request for information, proceed to Section II. Do not submit a response to Section I only.**

## SECTION II
### INFORMATION ON RESPONDENT POLICIES

8.  Submit a copy of all Respondent policies in effect at the time of the earliest alleged incident of harassment or instituted thereafter which addresses the harassment alleged in the charge. State the effective date of the policy(ies.)

9.  Submit a copy of any procedure utilized for any portion of the same period of time for dealing with harassment claims. State the period of time the procedure was in effect. Submit a copy of any guidance used by Respondent representatives to implement the policy referenced in item #8 above or the procedure referenced in this item. Explain how employees like Charging Party would know about the policy and/or procedure.

In order to make a full response to this request for information, proceed to Section III. Do not respond solely to Sections I & II.

## SECTION III
### INFORMATION ON OTHER PERSONS

10.  For each person named as a harasser either in this charge or in an earlier concern raised by or about Charging Party, identify every other occasion on which that person was accused of harassing another employee or a customer.

11.  Submit a copy of all notes, statements, correspondence or other material generated by or included in each investigation of each accusation against each person named as a harasser. Include a copy of any disciplinary actions taken as a result of each investigation.

12.  For each person named as a harasser in this charge or in an earlier concern raised by or about Charging Party where the alleged harasser is a member of management, list the employees reporting to the person at or about the time of the alleged harassment. Identify the employees by name, job title, current employment status and appropriate EEO class. In addition, explain to what extent the alleged harasser had input into employment decisions affecting Charging [...] other [...] [...] or other terms and conditions of employment.)

13.  For each person named as a harasser in this charge or in an earlier concern raised by or about Charging Party where the alleged harasser is not a member of management, identify the alleged harasser's formal job title and department. Explain the alleged harasser's working relationship with Charging Party (including how the two might come into contact with each other in a typical business day and what involvement or input, if any, the alleged harasser had into employment decisions affecting Charging Party.)

14. List the employees in Charging Party's immediate work area or department and shift at or about the time of the alleged harassment and identify each employee by name, job title and appropriate EEO class.

15. If the alleged harasser was a supervisor or other management official at the time of the alleged harassment, provide a statement from him or her in response to the allegations contained in the charge as well as to any internal complaint(s) made to Respondent concerning the alleged harassment.

16. Provide an explanation, in the manner indicated, in response to the harassment allegations and all other allegations contained in the charge.

# EEOC PHILADELPHIA DISTRICT OFFICE

## NOTICE OF SETTLEMENT

Charge Number: 170981689
Case Name:     Barbara Varner v. Cumberland County

The above-referenced charge of employment discrimination has been received by the Equal Employment Opportunity Commission (EEOC) and assigned the above charge number. In most instances, this office initiates its investigation by sending the Respondent a Request for Information (RFI). This Notice of Settlement is being sent as an attachment to the initial RFI for this charge.

In addition, this office attempts to negotiate a settlement for each charge. For such settlements, the EEOC representative attempts to facilitate settlement discussions between the two parties in the hopes of obtaining an agreement mutually satisfactory to the parties and to EEOC. If such a settlement is negotiated, the Commission will prepare a Settlement Agreement to be signed by all parties, including EEOC.

Negotiated Settlement Agreements typically include the following:
a)  a description of the relief to be provided to the Charging Party as a result of the Agreement;
b)  means of monitoring to insure that the terms of relief are met;
c)  a statement which expressly indicates that the Respondent is not acknowledging any violation of the statute(s) under which the charge was filed;
d)  a clause prohibiting retaliation; and
e)  a waiver by the Charging Party of his/her private suit rights under the applicable statutes administered by EEOC.

In addition, a Settlement Agreement concludes EEOC's investigation of the subject charge. Such EEOC closure would eliminate the need thereafter for Respondent to prepare statements, to respond to RFIs, to make witnesses available ... ... charge.

Although Respondent will be contacted by an EEOC representative to discuss the possibility of settlement, this office's increasing inventory has resulted in some delay before such settlement efforts can be initiated. However, if Respondent at this time is interested in pursuing settlement, the Respondent representative is invited to contact this office directly as a means of insuring expedited settlement discussions. If that is Respondent's intent, please contact the EEOC representative identified in the Notice of Charge of Discrimination (EEOC Form 131).

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Philadelphia District Office

The Bourse, Suite 400
21 S. Fifth Street
Philadelphia, PA 19106-2515
PH: (215) 451-5800
TDD: (215) 451-5814
FAX: (215) 451-5804/5767

## REQUEST FOR INFORMATION

Your organization is hereby requested to submit information and records relevant to the subject charge of discrimination. The Equal Employment Opportunity Commission (EEOC) is authorized by law to investigate charges filed with it and this request constitutes a part of the investigation. This request does not necessarily represent the entire body of evidence which we will need to obtain from your organization in order that a proper determination as to the merits of the charge can be made.

Provide the name, position, address and telephone number of the person who prepares the response to this request for information.

Please note as well that the Commission requests statements below from persons involved in the decisionmaking process that affected the Charging Party. <u>In addition to these statements from the decisionmakers,</u> please submit a formal position statement setting out your response(s) to the allegations or any other contentions or other information in addition to that requested by the Commission which you consider relevant to the disposition of this charge.

Failure to follow the instructions contained herein, or providing an evasive or incomplete answer will constitute a failure to respond and shall subject the Respondent to the service of a Subpoena for the requested documents and information.

Please submit any additional evidence, along with the requested information, on or before the date specified on the enclosed EEOC Form 131, "Notice of Charge of Discrimination". The information should be addressed to the EEOC Representative identified on the EEOC Form 131. If there are any questions concerning the Request for Information, you should contact the EEOC Representative at the phone number which is also indicated on the EEOC Form 131.

Notice of Settlement". That Notice provides information related to possibility of settlement of the charge as an alternative to a full Commission investigation of the allegations.

Thank you for your anticipated cooperation in this matter.

## POSITION STATEMENT INSTRUCTIONS

1.  Submit a written position statement for each of the allegations contained in the charge, accompanied by documentary evidence, affidavits, and other written statements, where appropriate, including any additional information and explanation you deem relevant to the charge.

2.  Identify each and every individual by name and job title whose statements were referred to or relied upon to provide the answer to #1 above. In addition, include in this response the reason(s) why each named individual's input was solicited as being relevant to the charge.

3.  For each individual named in response to #2 above, reduce his/her statement to a signed, notarized document.

4.  Identify, with sufficient particularity to distinguish one document from another, each and every document that was referred to or relied upon to answer #1 above.

5.  Provide a copy of each and every document identified in response to #4 above.

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

FEPA    170981689

EEOC

—————— Pennsylvania Human Relations Commission —————— and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Barbara E. Varner | (717) 938-9858 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 5 Maple Drive, Etters, PA 17319 | | 01/18/49 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Cumberland County | Cat D (501+) | (717) 240-6265 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| One Courthouse Square, Carlisle, PA 17013 | | 041 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

[ ] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN
[X] RETALIATION   [X] AGE   [ ] DISABILITY   [ ] OTHER *(Specify)*

DATE DISCRIMINATION TOOK PLACE
EARLIEST      LATEST
11/20/96    / /
[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

     See attached sheets.

Notarial Seal
Jennifer L. Garner, Notary Public
Camp Hill Boro, Cumberland County
My Commission Expires Aug. 27 2001

[X] I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

NOTARY - *(When necessary for State and Local Requirements)*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

*Barbara E. Varner*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(Day, month, and year)*

August 20, 1998

Date      Charging Party *(Signature)*

EEOC FORM 5 (Rev. 06/92)

EEOC CHARGE NO. 170981689

The Particulars Are:

I.      On December 4, 1989 I was hired by Cumberland County as a Caseworker.  On February 7, 1995, I was transferred as a Probation Officer I to the Cumberland County Probation Department.  On or about November 20, 1996 to the present, I have been harassed and sexually harassed by S. Gareth Graham, Supervisor, and Joseph Osenkarski, Chief, more particularly as follows:

     a.  On or about November 20, 1996, I gave my supervisor, Mr. Graham, a social history of a female juvenile with suicidal tendencies related to premenstrual problems.  Mr. Graham responded:  "Jesus Christ, do I need to get a peter meter in my office?"  This was said to me in front of a male co-worker.  The comment was degrading and humiliating to me as a female.

     b.  In January, 1996, Mr. Graham indicated an interest in me sexually by giving me an inappropriate and personal birthday card and by inappropriate touching.  On May 1, 1996, Mr. Graham appeared uninvited at night at my home.  Mr. Graham knocked on my hotel room door requesting entrance and called my room repeatedly during a training session at Penn State October 21-23, 1996.  When I showed a lack of interest in his sexual overtures, his attitude toward me became more hostile.

     c.  On several occasions, Mr. Graham has told me explicit stories regarding his "sexual problems" with his wife who works as a stenographer for Cumberland County Courts.  For example, while traveling on a business trip with me on December 11, 1996, he discussed his wife's masturbation habits and her refusal to have sex with him.  He told me he would keep a calendar of these events and threatened to "get even" with her.  I suggested counseling for him and his wife.  He immediately denied any need for counseling, started screaming about it, and began to drive the vehicle at a very high rate of
[illegible line]
collection against their fireplace and destroying her birthday cake in front of his young daughters to "punish her."  I felt this was a message to me that he would retaliate against me.

     d.  Mr. Graham has told me not to talk to another female probation officer, Kerry (Vohs) Houser, who had previously brought sexual harassment charges against Mr. Osenkarski.

EEOC CHARGE NO. 170981689

e. Mr. Graham told me that my seniority and promotional possibilities are not based on seniority alone, but on the need to "satisfy" all parties involved. He said this with a suggestive smile and while he was making other sexual innuendoes.

f. Both Mr. Graham and Mr. Osenkarski continually call attention to my gender and make inappropriate comments about other females. For example, Mr. Graham has made comments to me about how dark he believes a young female's "bush" is. On or about April 7, 1997, Mr. Osenkarski made a comment in front of me about a young female intern's breasts: that she had a nice set of "jahoobee's".

g. When I have told Mr. Graham that I do not want to hear his sexual comments and that I find the "f" word offensive, he told me that if I can't take it I can go back to doing social work (my former job).

h. When I followed the chain of command and went to Mr. Osenkarski, Mr. Graham's supervisor, to complain about the treatment, I was told by Mr. Osenkarski that he does not want to get involved. He told me that he has put his "F------ 35 years in and now Mr. Graham is in charge."

i. After I rebuffed Mr. Graham's overtures, he retaliated against me in the following manner:

1. Mr. Graham has screamed at me numerous times, most notably on occasions from December 1996 through May, 1997 and embarrassed me in front of co-workers. He physically moves toward me in an aggressive manner. On April 16, 1997, he threw wadded paper at me. He frequently points in my face, most notably in an incident February 2, 1997. He told me directly that he and Mr. Osenkarski "punish" people who do not comply with what they demand or who fall out of favor with them.

2. On April 4, 1997, in front of the entire office, with members of the public present, Mr. Graham stated loudly that I have no "f------ sense, no f------- training, and no f------ ability." On most occasions when he screams at me, he uses the "f" word in direct address to me.

3. Prior to September 9, 1996, seniority lists used total number of years employed by the county. Because I was hired while this was the policy, I was told that I would receive the benefit of this provision. New hires would get seniority only for time in

2

the Probation Department. I am the only person who has not been given the benefit of county seniority. Bill Brandt (male, aged late-20's) was moved ahead of me on the seniority list although I had more county seniority time than he. In March, 1998, Mr. Brandt was promoted ahead of me. After I complained, Mr. Brandt's promotion was taken down and we both got promoted in June, 1998. I was told that Mr. Brandt is male and "would eventually have a family" so he would need the money more than me. Although other male Probation Officers (e.g. Lyle Herr, Mike Peiper, and Gary Graham) have been given the benefit of the county-wide seniority, I have not. On the posted seniority list, Mr. Brandt is still ahead of me. If another promotion becomes available, Brandt will have more seniority than me.

4. I have been accused of having lied about a delay in returning from a business trip with another female probation officer because we had to drive through fog. Although the other female confirmed the facts, we were both docked pay and subjected to restrictions not placed on the other male probation officers.

5. Male Probation Officers may leave on juvenile commitment trips at any time throughout the day. Mr. Graham has enforced an 8:00 a.m. leaving time for myself and the other female probation officers. Female Probation Officer are not subject to the same rules as the male Probation Officers.

6. I was told by Mr. Graham in January, 1997 that all divorced females are angry at men. In April, 1997, Mr. Graham told my coworkers the same thing. I am a divorced female.

II.     On April 8, 1997, I complained about Mr. Graham and Mr. Osenkarski to Dan Hartnett, Cumberland County Personnel and Human Resources Director. I made specific reference to harassment and sexual harassment. On April 25, 1997, I wrote an extensive

Department." Although I was told that an internal investigation had been done, the recommendation that some action be taken against Mr. Graham was rejected by President Judge Harold Sheely. I believe that this is because of his past friendships with Mr. Graham. I was told by Judge Sheely that Mr. Graham and Mr. Osenkarski have been "asshole buddies" for years. Judge Sheely accused me of having an affair with Mr. Graham, which is totally untrue. Although Mr. Graham received a short "disciplinary" suspension, I believe that he lost no pay. No one dealt specifically with the issues of harassment or sex discrimination. Mr. Graham has threatened to retaliate against persons who were interviewed during the "investigation."

.3

EEOC CHARGE NO. 170981689

a. I continue to be treated differently because of my sex, female, and I am in constant fear of reprisal and physical harm.

b. On October 27, 1997, during a training session on Sexual Harassment in the Workplace, Mr. Graham positioned himself in a manner that allowed him to glare and stare at me with narrowed eyes.

c. On November 3, 1997, I was walking toward the courthouse. Mrs. Graham exited her car and walked toward me, stopping in the street. She stood at the curb glaring at me with narrowed eyes and clenched teeth and remained until I was directly in front of her. I felt physically threatened.

d. On December 4, 1997, I was waiting outside the courtroom when Mrs. Graham walked toward me narrowing her eyes and clenching her teeth.

e. On several occasions, Mr. Graham has walked directly at me, only moving aside when he was a few steps away. I am afraid for my physical safety as long as Mr. Graham is permitted to be near me.

f. On March 3, 1998 I was walking from my parking lot to the Courthouse. As I walked around the corner of a building, I was confronted by Mr. and Mrs. Graham. Mrs. Graham was on the outside of the street. I attempted to walk around her when she forcefully bumped into me.

g. On May 22, 1998, I was exiting my car in the parking lot. Mrs. Graham was parking her car behind mine. She walked up to within two or three steps behind me and stayed in that position for the entire walk into the building.

1949) in that Mr. Graham informed me that he had no plans to hire any more "middle aged females."

IV.    I complained on June 4, 1997, December 23, 1997, February 4, 1998, March 3, 1998, March 31, 1998, and June 1, 1998 in writing and numerous times verbally about continued threatening actions by Mr. and Mrs. Graham and continued discrimination to the Personnel and Human Relations Director. After these complaints, I have been retaliated against.

4

EEOC CHARGE NO. 170981689

a. President Judge Sheely asked me in December, 1997 why I went to the Personnel Director with my complaints and suggested that I should not continue to make my complaints to Personnel. He told me that I would just have to "put up with it."

b. After my complaints about Mrs. Graham, on May 26, 1998 I was restricted by now President Judge George Hoffer from going into the probation offices in the third floor east wing of the courthouse, a location where I need to be to do my job. To the best of my knowledge, Mrs. Graham has not been restricted in her movements.

c. In March, 1998, Mr. Graham was moved to the Adult Probation Department and Mr. Thomas Boyer became the new supervisor of the Juvenile Probation Department, joined later by Mr. Henry Thielmann as a second supervisor. I continue to be treated differently from other male probation officers.

V.     I have been suffering physical symptoms of stress which have caused me to seek medical treatment. I have sought counseling in order to try to cope with the constant tension in the workplace. I am embarrassed and humiliated by the way I have been treated by my employer, particularly after making complaints which were confirmed by my co-workers.