IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA E. VARNER,<br>    Plaintiff | :<br>:<br>: |
| v. | : CIVIL ACTION<br>: NO: 1:CV 01-0725 |
| COMMONWEALTH OF<br>PENNSYLVANIA, NINTH JUDICIAL<br>DISTRICT, CUMBERLAND<br>COUNTY; CUMBERLAND<br>COUNTY; S. GARETH GRAHAM,<br>individually; and JOSEPH<br>OSENKARSKI, individually,<br>    Defendants | :<br>:<br>: JURY TRIAL DEMANDED<br>:<br>: Judge Yvette Kane<br>: Electronically Filed<br>:<br>: |

**VARNER RESPONSE
TO STATEMENT OF UNDISPUTED MATERIAL FACTS SUBMITTED
BY DEFENDANT, S. GARETH GRAHAM**

Plaintiff Barbara Varner, through her counsel Debra K. Wallet, Esquire, responds to the Statement as follows. Varner makes these responses only for purposes of the pending motion for summary judgment and may challenge any of these statements at trial. By admitting any statement, Varner does not concede

that such statement is a material fact for purposes of deciding the motion. Most of these facts are believed not to be material to the legal issues raised by the motion.

    1. - 12.    Admitted.

    13.    Admitted. By way of further response, this "policy" imposed by Graham applied only to Varner and Green, the only female probation officers on the juvenile side. (Varner Depos. 102)[1]. Male Probation Officers testified at deposition that there was no such policy of starting trips at 8 a.m. applicable to them. (Brandt Depos. 77-78; Christlieb Depos. 51-52; Miller Depos. 73-74).

    14.    – 29.    Admitted.

    30.    It is admitted that these facts are accurate based on the pages given. However, this incident was just one of those cited by Varner in support of her belief that Graham had a sexual interest in her. (Varner Depos. 145).

    31.    Denied. The split was much earlier and Graham became her supervisor much earlier. To the contrary, Bolze retired in July, 1996 (V-VII[2] - Osenkarski Depos. Exh. 12, Bates No. 210291) or August, 1996 (Varner Depos.

---

[1] References are to the pages of the various deposition transcripts reproduced in their entirety by the County and Court Defendants. They have not been duplicated by Varner.
[2] References "V__" denote those documents reproduced by Varner in opposition to the various motions for summary judgment.

100).  Osenkarski had assumed responsibilities over the Juvenile Probation Department by at least September 9, 1996 when he made his new seniority policy effective. (V-III - Osenkarski Depos. Exh. 13, Bates No. 210280).

32. Admitted.

33. Varner admitted that it was not "offensive" to her, but she was fearful of Graham because of these statements about violence toward his wife.  It was a reminder of how Graham could punish people.  (Varner Depos. 151-152).

34. Admitted.

35. Varner has spelled out how Graham retaliated against her.  She does not know whether or not this had anything to do with talking to Houser or whether it was related exclusively to Varner's rebuffing his sexual overtures or her complaining about his sexual harassment.

36. Admitted.

37. Admitted that Graham never specifically asked for sex.  Varner gave examples of why she believed that he wanted sex from her.  (Varner Depos. 145).

38. – 43. Admitted.

44. Denied.  This is a misleading statement of Varner's deposition testimony.  On this occasion Graham was screaming about her performance.  He

screamed about things she had done in the same way previously without incident, but now his attitude toward her had changed. (See Varner Depos. 167-170).

45. – 47. Admitted.

48. – 49. Varner alleges that she has received more difficult assignments in response to her rebuffing Graham and documentary evidence of April, 1997 does support that she had the second highest number of cases. (V-IV - Hartnett Depos. Exh. 6: Varner total 27, only Henry J. Thielemann had higher total at 28). In addition, the April 30, 1997 DeLuce Report quotes statistics of 4/29/97 showing Varner with the most cases. (V-I - DeLuce Depos. Exh. 2, p. 17).

50. – 51. Admitted.

52. – 53. Admitted. By way of further answer, at least one probation officer, William Brandt, said that the probation office believed that Graham "was suspended with pay." (Brandt Depos. 33).

54. Denied. EEOC documents establish that "Original Correspondence received by EEOC on 6/18/97 to establish timely receipt for EEOC to process." (V-XII - Notice of Charge of Discrimination).

55. It is denied that the transfer of Graham eliminated any contact with Graham. It eliminated daily contact with Graham. Varner still has some contact with Graham. (Varner Depos. 200).

56.  –61.  Admitted.

62.  Denied.  This is a misstatement.  Houser said Graham would treat men and women equally poorly, but "with some women he's not as overtly mean to."  According to Green, "he [Graham] was belligerent and rude to people, but I don't think I would use the word lose control of his temper in the same way that he did with Barb."  (Green Depos. 114)[3].

63.  – 65.  Admitted.

66.  Admitted.  But Houser was not in Juvenile Probation after the split in June, 1996.  (Houser Depos. 15).

67.  – 74.  Admitted.

75.  It is denied that "foul language was common by both men and women."  Probation Officer Christlieb did not think so.  (Christlieb Depos. 16, 50).

76.  – 78.  Admitted.

79.  It is denied that "foul language was common by both men and women."  Probation Officer Christlieb did not think so.  (Christlieb Depos. 16, 50).

80.  – 96.  Admitted.

---

[3] The complete transcripts of Debra Green's deposition have been reproduced as part of Varner's Exhibits in Opposition to the Court Defendant's Motion for Summary Judgment.

97. Denied. Christlieb also said different things about foul language. (Christlieb Depos. 50).

98. –100. Admitted.

## VARNER'S STATEMENT OF FACTS MATERIAL TO GRAHAM'S MOTION FOR SUMMARY JUDGMENT

V-G-1. Varner spells out at least one instance where she and another female worker were docked pay by Graham for having left on a commitment trip prior to 8:00 a.m. (Varner Depos. 102-103). These facts were confirmed by Green. (Green Depos. 85-86).

V-G-2. Male Probation Officers testified at deposition that there was no such policy applicable to them. (Brandt Depos. 77-78; Christlieb Depos. 51-52; Miller Depos. 73-74).

V-G-3. Varner and Green were the only female probation officers on the juvenile side. (Varner Depos. 102).

V-G-4. Varner alleges that she has received more difficult assignments in response to her rebuffing Graham and documentary evidence of April, 1997 does support that she had the second highest number of cases. (V-IV - Hartnett

Depos. Exh. 6: Varner total 27, only Henry J. Thielemann had higher total at 28). The April 30, 1997 DeLuce Report quotes statistics of 4/29/97 showing Varner with the most cases. (V-I - DeLuce Depos. Exh. 2, p. 17).

    V-G-5.    According to DeLuce, "Osenkarski also admitted that Graham assigns all cases and approves all recommendations, that he pretty much leaves it up to him." (DeLuce Depos. Exh. 3, p. 22).

    V-G-6.    Christlieb testified that after the split between adult and juvenile probation, Graham took over such day-to-day operations as case assignments and case reviews. (Christlieb Depos. 46).

    V-G-7.    Varner testified that even if she does not have the most cases, she believes that she is given the more difficult cases or the ones in which she was required to supervise large male juveniles. (Varner Depos. 180-182).

    V-G-8.    Brandt testified that after he confirmed to prior chief Bolze that Osenkarski had used the term "Cunt Club" that it was Brandt's perception that his relationship with Osenkarski changed, that he was treated unfairly by Osenkarski and particularly "in the nature of the types of cases that I was being assigned . . . ." (Brandt Depos. 60-64, 45).

    V-G-9.    On October 5, 1995, Ken Bolze, Chief of the Cumberland County Juvenile-Adult Probation Department sent a memorandum to all staff

stating that the County's seniority policy "has been (since '84) and still is our Office's seniority policy.  <u>If</u> we adopt any modifications, they will <u>not</u> be retroactive.  Also, not all things are or will be determined by seniority alone."  (V-VII - Osenkarski Depos. Exh. 12, Bates No. 210295, emphasis in original).

V-G-10.    The County policy provided that "seniority is defined as the length of continuous service an employee has with the County from his last recent date of hire."  (V-VII - Osenkarski Depos. Exh. 12, Bates No. 210295).

V-G-11.    Ken Bolze confirmed that this policy was still the seniority policy of the office by memorandum to probation officers entitled "Seniority" issued February 12, 1996.  (V-VII - Osenkarski Depos. Exh. 12, Bates No. 210293-94).

V-G-12.    Based upon that policy, Barbara Varner had more seniority than Bill Brandt.  (V-VII - Osenkarski Depos. Exh. 12, Bates No. 210293-94).

V-G-13.    On October 29, 1996, Osenkarski, then Chief of the Juvenile Probation Office, issued a memorandum stating that the "Cumberland County Juvenile Probation Department's seniority list is determined upon the following criterion:  1. Initial dated of full-time employment with the Cumberland County Probation Department as a Probation Officer, and, 2. The continuous full-time employment with the department."  Based on this changed policy "effective

September 9, 1996," Bill Brandt was moved ahead of Barbara Varner on the seniority list. (V-VIII - Osenkarski Depos. Exh. 13, Bates No. 210280).

    V-G-14.    Bill Brandt continues to have more seniority than Barbara Varner. (Brandt Depos. 41).

    V-G-15.    Record evidence documents this through at least May 14, 2002. (V-VIII - Osenkarski Depos. Exh. 13).

    V-G-16.    Barbara Varner was the only individual negatively affected when the definition of seniority was changed to exclude prior County service. (Osenkarski Depos. 154).

    V-G-17.    Osenkarski described the changes:

> Q. Now, the complaint that Ms. Varner had was about the promotion of Mr. Brandt, correct?
> A. Well, essentially, yes. He --
> Q. Why do you say essentially?
> A. He moved up above Barbara Varner.
> Q. So as a result of the action that you implemented, and that action being that county service no longer was used for seniority purposes but only service within the Probation Department, Mr. Brandt jumped ahead of Mr. [sic] Varner on the seniority list, correct?
> A. Yes, because of his number of years in Juvenile Probation.
> Q. Was there anyone else who as a result of the implementation of your policy lost status on the seniority list?
> A. No.

> Q. So your policy affected only two people: Mr. Brandt and Ms. Varner?
> A. Yes.
> MR. ADAMS: Objection. Do you know?
> MS. WALLET: I believe he answered. I thought he said yes.
> THE WITNESS: In reality, Mr. Brandt moved up a slot above Barbara Varner.

(Osenkarski Depos. 149-150).

V-G-18. The separate Adult Probation Department, under John Roller, had the same opportunity to apply this "new" policy. John Roller did not implement the same seniority policy change. (Osenkarski Depos. 157).

V-G-19. According to Osenkarski, seniority plays a role in three benefits: on-call, vacations, and "to some degree in promotions." (Osenkarski Depos. 134).

V-G-20. Several probation officers confirmed at deposition that they were not aware of any prior promotions that had not been made based upon seniority. (Brandt Depos. 41-42; Houser Depos. 67).

V-G-21. Brandt testified: "The unfortunate part within this county, not only department-wide but maybe county-wide, is that the next senior person has always been the next to get promoted. Maybe that person's not so deserving, but that's just the chain of events." (Brandt Depos. 41).

V-G-22.   Brandt went even further:

> Q. "Do you know of anybody in either Probation Department who was promoted over a more senior employee?
> A. Only because a more senior employee turned it down."

(Brandt Depos. 42).

V-G-23.   Even President Judge Hoffer did not "remember" anyone promoted who was not the most senior individual. (Hoffer Depos. 78-79).

V-G-24.   Osenkarski admitted at deposition that the decision to change the seniority policy was made by him as Chief of the Juvenile staff "with consultation of other managers, supervisors." (Osenkarski Depos. 156).

V-G-25.   Osenkarski identified Graham as one of those individuals. (Osenkarski Depos. 136-137).

V-G-26.   When Varner learned that Bill Brandt was going to be promoted to Senior PO as a result of the policy change, she complained by memorandum dated March 31, 1998. (V-V - Hartnett Depos. 11).

V-G-27.   The resulting promotion was then "held up" until Varner and Brandt were both promoted on June 7, 1998. (V-IX - Personnel Action Form dated May 27, 1998).

V-G-28. Had Varner not been "demoted" below Brandt on the seniority list, she (and not Brandt) would have been next in line on the seniority list for the one promotion to Senior Probation Officer slated to go before the Salary Board on April 6, 1998. (V-VI - Hartnett Depos. Exh. 13).

V-G-29. Varner lost the increase in salary from April 6, 1998 (the date she should have been promoted instead of Brandt based upon county seniority) through June 7, 1998, the effective date on which both Brandt and Varner were promoted. (V-VI - Hartnett Depos. Exh. 13; V-IX - Personnel Action Form dated May 27, 1998).

    Respectfully submitted,

s/ Debra K. Wallet
Debra K. Wallet, Esquire
24 N. 32nd Street
Camp Hill, PA  17011
I.D. #PA23989
(717) 737-1300 (phone)
(717) 761-5319 (fax)
walletdeb@aol.com (email)
Attorney for Barbara E. Varner