IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA E. VARNER, : | |
|     Plaintiff : | |
| : | |
| v. : | CIVIL ACTION |
| : | NO: 1:CV 01-0725 |
| COMMONWEALTH OF : | |
| PENNSYLVANIA, NINTH JUDICIAL : | |
| DISTRICT, CUMBERLAND : | JURY TRIAL DEMANDED |
| COUNTY; CUMBERLAND : | |
| COUNTY; S. GARETH GRAHAM, : | Judge Yvette Kane |
| individually; and JOSEPH : | Electronically Filed |
| OSENKARSKI, individually, : | |
|     Defendants : | |

**VARNER RESPONSE
TO AMENDED STATEMENT OF UNDISPUTED MATERIAL FACTS
SUBMITTED BY DEFENDANT, JOSEPH OSENKARSKI**

Plaintiff Barbara Varner, through her counsel Debra K. Wallet, Esquire, responds to the Amended Statement as follows. Varner makes these responses only for purposes of the pending motion for summary judgment and may challenge any of these statements at trial. By admitting any statement, Varner

does not concede that such statement is a material fact for purposes of deciding the motion. Most of these facts are believed not to be material to the legal issues raised by the motion.

1. - 5.    Admitted.

6. Varner does not understand what a "very unnatural atmosphere" means. It is admitted that Osenkarski used this term. Christlieb thought there was "very little difference" between a probation office and a business office. (Christlieb Depos. 16).[1] Varner believes that the atmosphere is typical for a juvenile probation office. (Varner Depos. 399-400). This is not material to any issue to be decided here.

7. Varner does not understand what a "natural" atmosphere means. It is admitted that Osenkarski thinks juvenile probation is "not natural." Christlieb thought there was "very little difference" between a probation office and a business office. (Christlieb Depos. 16). Varner believes that the atmosphere is typical for a juvenile probation office. (Varner Depos. 399-400). This is not material to any issue to be decided here.

8. It is admitted that juvenile probation clients are sometimes "troubled people" but it is denied that juvenile probation officers need to use off-color or

---

[1] References are to the pages of the various deposition transcripts reproduced in their entirety by the County and Court Defendants. They have not been duplicated by Varner.

vulgar references to "keep your sanity." This is not material to any issue to be decided here. Varner believes that the atmosphere is typical for a juvenile probation office and that juvenile probation officers should be expected to act appropriately and professionally in the office. She did not allow her juvenile clients to use profanity around her. (Varner Depos. 399-400).

9. It is denied that "foul language was simply common by both men and women." Probation Officer Christlieb did not think so. (Christlieb Depos. 16, 50).

10. – 15. Admitted.

16. Denied that the Department split occurred in October, 1996. To the contrary, Bolze retired in July, 1996 (V10[2] - Osenkarski Depos. Exh. 12, Bates No. 210291) or August, 1996 (Varner Depos. 100). Osenkarski had assumed responsibilities over the Juvenile Probation Department by at least September 9, 1996 when he made his new seniority policy effective. (V11 - Osenkarski Depos. Exh. 13, Bates No. 210280).

17. It is denied that Brandt testified that "many in the office strongly suspected a consensual sexual affair." To the contrary, the pages cited establish that Brandt questioned in his own mind whether the relationship was

---

[2] References "V__" denote those documents reproduced by Varner in opposition to the various motions for summary judgment.

"extracurricular" and that "it was just general suspicions and the rumor mill of an exceptionally small office." Brandt conceded that "no one knew anything firsthand." (Brandt Depos. 33-34).

18.  It is denied that Brandt testified that "in February or March 1997, suddenly and abruptly their relationship became strained." To the contrary, the pages cited do not establish this. Brandt stated he saw an overnight change but he did not know a date. (Brandt Depos. 28). Graham testified that the relationship changed in 1996 when he claims to have broken off his sexual relationship with Varner. (Graham Depos. 136).

19.  Admitted that Varner told Osenkarski that he had to get Graham under control. However, Osenkarski told Varner that Graham was now "in charge." (Varner Depos. 97).

20.  Admitted.

21.  Denied. Osenkarski told Varner that Graham was now in charge. (Varner Depos. 97).

22.  It is denied that Varner never complained to Osenkarski about sexual harassment. To the contrary, Varner took her complaint first to Osenkarski and when he did nothing but tell her that "Mr. Graham was in charge" she went to Dan Hartnett in April, 1997. (Varner Depos. 167-169).

23. It is denied that Varner never complained to Osenkarski about sexual harassment. To the contrary, Varner took her complaint first to Osenkarski and when he did nothing but tell her that "Mr. Graham was in charge" she went to Dan Hartnett in April, 1997. (Varner Depos. 167-169).

24. It is admitted that Judge Sheely was disappointed that she had not come to him and that the Judge understood the policy as he stated. It is denied that Varner never followed the procedure. The "Complaint Procedure" provides for discussion with the immediate supervisor, a written appeal to the department head, and then "a written appeal to the Commissioners or their designee." The Manual also states that "Complaint Forms may be obtained in the Personnel Office." (Exhibit to Court Defendant's Statement of Material Facts). Varner made her written complaint to Daniel Hartnett, the County's Human Resources Director/Director of Personnel Office. (V3 - Hartnett Depos. Exh. 1).

25. – 27. Admitted.

28. Denied. For example, Varner also testified to an incident in which Osenkarski took a lighter which when flicked was in the shape of a penis to a conference on juvenile sexual offenders in Penn State. He flicked it at the female presenter at the conference and at Varner. (Varner Depos. 179-180).

Osenkarski admitted to having this lighter and "may have" used it at a conference. (Osenkarski Depos. 188).

29. –31. Admitted.

32. Denied. Osenkarski may have thought so, based upon his testimony at deposition. Varner never thought excluding her prior experience in Children and Youth was "fair to all." Miller testified that he recalls discussing the policy with Varner who was critical of the new policy. (Miller Depos. 19-20). Varner wrote a memo complaining about the change in policy because she was the only person in the Juvenile Probation Department with prior county service and the only one to lose seniority status. (V15 - Hartnett Depos. Exh. 11). It is denied that "everyone" thought it was fair to all. No one ever asked Brandt if he agreed with the change in policy. (Brandt Depos. 39).

33. It is admitted that this is an accurate quote from Brandt's deposition and that "years of service with the county" was the policy "from day one." Not everyone thought this policy was unfair or improper. To be hired, a probation officer was still required to meet all the qualifications for the job.

34. Admitted, except Varner does not know what motivated Osenkarski to do this.

35. It is denied that the change in seniority had no adverse effect on Varner. To the contrary, Varner continues to be lower in seniority than Bill Brandt. Varner is adversely affected with respect to any action based upon seniority. (Varner Depos. 188). Varner never got the pay she should have received between April 6, 1998, when Brandt's promotion was "held up" and June 7, 1998, the effective date of the promotion of both she and Brandt. In effect, Varner lost more than eight weeks pay at the higher rate. (See V-O-1 through V-O-18 below).

### VARNER'S STATEMENT OF FACTS MATERIAL TO OSENKARSKI MOTION FOR SUMMARY JUDGMENT

V-O-1. On October 5, 1995, Ken Bolze, Chief of the Cumberland County Juvenile-Adult Probation Department sent a memorandum to all staff stating that the County's seniority policy "has been (since '84) and still is our Office's seniority policy. If we adopt any modifications, they will not be retroactive. Also, not all things are or will be determined by seniority alone." (V10 - Osenkarski Depos. Exh. 12, Bates No. 210295).

V-O-2.   The County policy provided that "seniority is defined as the length of continuous service an employee has with the County from his last recent date of hire." (V10 - Osenkarski Depos. Exh. 12, Bates No. 210295).

V-O-3.   Ken Bolze confirmed that this policy was still the seniority policy of the office by memorandum to probation officers entitled "Seniority" issued February 12, 1996. (V10 - Osenkarski Depos. Exh. 12, Bates No. 210293-94).

V-O-4.   Based upon that policy, Barbara Varner had more seniority than Bill Brandt. (V10 - Osenkarski Depos. Exh. 12, Bates No. 210293-94).

V-O-5.   On October 29, 1996, Osenkarski, then Chief of the Juvenile Probation Office, issued a memorandum stating that the "Cumberland County Juvenile Probation Department's seniority list is determined upon the following criterion: 1. Initial dated of full-time employment with the Cumberland County Probation Department as a Probation Officer, and, 2. The continuous full-time employment with the department." Based on this changed policy "effective September 9, 1996," Bill Brandt was moved ahead of Barbara Varner on the seniority list. (V11 - Osenkarski Depos. Exh. 13, Bates No. 210280).

V-O-6.   Bill Brandt continues to have more seniority than Barbara Varner. (Brandt Depos. 41).

V-O-7. Record evidence documents this through at least May 14, 2002. (V11- Osenkarski Depos. Exh. 13).

V-O-8. Barbara Varner was the only individual negatively affected when the definition of seniority was changed to exclude prior County service. (Osenkarski Depos. 154).

V-O-9. Osenkarski described the changes:

> Q. Now, the complaint that Ms. Varner had was about the promotion of Mr. Brandt, correct?
> A. Well, essentially, yes. He --
> Q. Why do you say essentially?
> A. He moved up above Barbara Varner.
> Q. So as a result of the action that you implemented, and that action being that county service no longer was used for seniority purposes but only service within the Probation Department, Mr. Brandt jumped ahead of Mr. [sic] Varner on the seniority list, correct?
> A. Yes, because of his number of years in Juvenile Probation.
> Q. Was there anyone else who as a result of the implementation of your policy lost status on the seniority list?
> A. No.
> Q. So your policy affected only two people: Mr. Brandt and Ms. Varner?
> A. Yes.
> MR. ADAMS: Objection. Do you know?
> MS. WALLET: I believe he answered. I thought he said yes.

> THE WITNESS: In reality, Mr. Brandt moved up a slot above Barbara Varner.

(Osenkarski Depos. 149-150).

V-O-10. The separate Adult Probation Department, under John Roller, had the same opportunity to apply this "new" policy. John Roller did not implement the same seniority policy change. (Osenkarski Depos. 157).

V-O-11. According to Osenkarski, seniority plays a role in three benefits: on-call, vacations, and "to some degree in promotions." (Osenkarski Depos. 134).

V-O-12. Several probation officers confirmed at deposition that they were not aware of any prior promotions that had not been made based upon seniority. (Brandt Depos. 41-42; Houser Depos. 67).

V-O-13. Brandt testified: "The unfortunate part within this county, not only department-wide but maybe county-wide, is that the next senior person has always been the next to get promoted. Maybe that person's not so deserving, but that's just the chain of events." (Brandt Depos. 41).

V-O-14.   Brandt went even further:

> Q. "Do you know of anybody in either Probation Department who was promoted over a more senior employee?

    A. Only because a more senior employee turned it down."

(Brandt Depos. 42).

 V-O-15. Even President Judge Hoffer did not "remember" anyone promoted who was not the most senior individual. (Hoffer Depos. 78-79).

 V-O-16. Osenkarski admitted at deposition that the decision to change the seniority policy was made by him as Chief of the Juvenile staff "with consultation of other managers, supervisors." (Osenkarski Depos. 156).

 V-O-17. Osenkarski identified Graham as one of those individuals. (Osenkarski Depos. 136-137).

 V-O-18. When Varner learned that Bill Brandt was going to be promoted to Senior PO as a result of the policy change, she complained by memorandum dated March 31, 1998. (V15 - Hartnett Depos. 11).

 V-O-19. The resulting promotion was then "held up" until Varner and Brandt were both promoted on June 7, 1998. (V14 - Personnel Action Form dated May 27, 1998).

 V-O-20. Had Varner not been "demoted" below Brandt on the seniority list, she (and not Brandt) would have been next in line on the seniority list for the one promotion to Senior Probation Officer slated to go before the Salary Board on April 6, 1998. (V7 - Hartnett Depos. Exh. 13).

V-O-21.  Varner lost the increase in salary from April 6, 1998 (the date she should have been promoted instead of Brandt based upon county seniority) through June 7, 1998, the effective date on which both Brandt and Varner were promoted. (V7 - Hartnett Depos. Exh. 13; V14 - Personnel Action Form dated May 27, 1998).

V-O-22.  Osenkarski ordered Varner not to conduct business in certain parts of the Courthouse.  Varner confirmed this order in writing a memorandum dated June 1, 1998.  (V8 - Hartnett Depos. Exh. 14).   Osenkarski agreed that Varner's memorandum accurately stated the order that he had relayed to her. (Osenkarski Depos. 170-171).

V-O-23.  Osenkarski testified that he was directed by Judge Hoffer to tell Varner of certain restrictions:

> Q.  Did you have a discussion with Ms. Varner about her access to the third floor east wing of the courthouse?
> A.  Yes.
> Q.  What do you remember about that, sir?
> A.  I was directed by Judge Hoffer to advise Barbara Varner that she should refrain from using that area to conduct any business because of the potential for having some kind of conflict with Barbara Graham, who at that time used that area that was – that was a temporary use by the court stenographers.

(Osenkarski Depos. 167).

> Q. And did Judge Hoffer tell you how you were to relay this to Ms. Varner?
> A. He told me to see her. And I scheduled a brief meeting with her in my office with Barbara Varner, and at that time I told her what Judge Hoffer directed me to do.
> Q. Just the two of you?
> A. Yes.
> Q. And you told her exactly what Judge Hoffer had told you?
> A. Yes.

(Osenkarski Depos. 169).

V-O-24. In his 24 years of supervisory responsibility, Osenkarski had never known of anyone to be restricted like this. (Osenkarski Depos. 175).

V-O-25. According to Osenkarski, there were legitimate business reasons for Varner to be in the restricted area. (Osenkarski Depos. 175).

V-O-26. Judge Hoffer never lifted those restrictions on Varner after May 26, to the best of Osenkarski's knowledge. (Osenkarski Depos. 179).

V-O-27. Judge Hoffer stated that he never gave such an order. (Hoffer Depos. 45-46).

> Q. Did you tell Ms. Varner that either Mr. Osenkarski had gotten it wrong or that she had gotten it wrong about not being able to go to the third floor east wing at all?
> A. I don't remember, ma'am. And that wouldn't have been important in my mind, either way, anyway.

> . . ..
> Q. Well, let me ask you this, Judge Hoffer. Did she agree as a result of this meeting to what you had asked her to do?
> A. My impression was that she did not.
> Q. Did you give her an order?
> A. What order?
> Q. An order not to go to the office where Barbara Graham was.
> A. Absolutely not, ma'am.
> . . ..
> Q. Is it your position, sir, that she was never restricted with regard to where she could go in the courthouse?
> A. Absolutely no restrictions.

(Hoffer Depos. 43-46).

V-O-28. Varner alleges that she has received more difficult assignments in response to her rebuffing Graham and documentary evidence of April, 1997 does support that she had the second highest number of cases. (V5 - Hartnett Depos. Exh. 6: Varner total 27, only Henry J. Thielemann had higher total at 28). The April 30, 1997 DeLuce Report quotes statistics of 4/29/97 showing Varner with the most cases. (V1 - DeLuce Depos. Exh. 2, p. 17).

V-O-29. According to DeLuce, "Osenkarski also admitted that Graham assigns all cases and approves all recommendations, that he pretty much leaves it up to him." (DeLuce Depos. Exh. 3, p. 22).

V-O-30.   Christlieb testified that after the split between adult and juvenile probation, Graham took over such day-to-day operations as case assignments and case reviews.  (Christlieb Depos. 46).

V-O-31.   Varner testified that even if she does not have the most cases, she believes that she is given the more difficult cases or the ones in which she was required to supervise large male juveniles.  (Varner Depos. 180-182).

V-O-32.   Brandt testified that after he confirmed to prior chief Bolze that Osenkarski had used the term "Cunt Club" that it was Brandt's perception that his relationship with Osenkarski changed, that he was treated unfairly by Osenkarski and particularly "in the nature of the types of cases that I was being assigned . . .."   (Brandt Depos. 60-64, 45).

Respectfully submitted,

s/ Debra K. Wallet
Debra K. Wallet, Esquire
24 N. 32nd Street
Camp Hill, PA  17011
I.D. #PA23989
(717) 737-1300 (phone)
(717) 761-5319 (fax)
walletdeb@aol.com (email)
Attorney for Barbara E. Varner