IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARBARA E. VARNER,              :
                Plaintiff       :
                                :
        v.                      :    CIVIL ACTION
                                :    NO: 1:CV 01-0725
COMMONWEALTH OF                 :
PENNSYLVANIA, NINTH JUDICIAL    :
DISTRICT, CUMBERLAND            :    JURY TRIAL DEMANDED
COUNTY; CUMBERLAND              :
COUNTY; S. GARETH GRAHAM,       :    Judge Yvette Kane
individually; and JOSEPH        :    Electronically Filed
OSENKARSKI, individually,       :
                Defendants      :

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT
CUMBERLAND COUNTY'S
MOTION FOR SUMMARY JUDGMENT**

---

Debra K. Wallet, Esq.
24 N. 32nd Street
Camp Hill, PA 17011
(717) 737-1300 (phone)
(717) 761-5319 (fax)
walletdeb@aol.com (email)
I.D. #PA23989
Attorney for Barbara E. Varner

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS ………………………………………… iii

COUNTER STATEMENT OF THE FACTS ………………………… 1

COUNTER STATEMENT OF QUESTIONS INVOLVED ………… 3

ARGUMENT

    I.    CUMBERLAND COUNTY IS VARNER'S
        EMPLOYER FOR PURPOSES OF TITLE VII AND
        PHRA LIABILITY ………………………………………… 3

    II.   GRAVES V. LOWERY IS STILL GOOD PRECEDENT
        AND HAS NOT BEEN OVERRULED BY FARAGHER
        AND ELLERTH ………………………………………… 14

CONCLUSION ………………………………………………… 18

## TABLE OF CITATIONS

**Cases:**                                                          **Page**

Allegheny County v. Wilcox, 76 Pa. Cmwlth. Ct. 584, 593, 465
    A.2d 47, 52 (Pa. Commonwealth, 1983), *appeal dismissed*,
    507 Pa. 66, 488 A.2d 277 (Pa. 1985) ............................    13

Burlington Industries, Inc. v. Ellerth, 524 US 742 (1998) ........ 14, 16, 17

Faragher v. City of Boca Raton, 424 US 775 (1998) .............. 14, 16, 17

Graves v. Lowery, 117 F.3d 723 (3d Cir. 1997) ........................  7-16

Jakomas v. McFalls and the County of Allegheny,
    229 F. Supp. 2d 412 (W.D. Pa. 2002)............................    12

**Statutes and Rules:**

42 U.S.C. §2000e-2 ...........................................................    8

43 Pa. Stat. Ann. §954(b) ....................................................    13

43 Pa. Stat. Ann. §955(e) ....................................................    3

## COUNTER STATEMENT OF THE FACTS

Probation Officer Barbara Varner [hereinafter Varner] sues supervisory individuals S. Gareth Graham [hereinafter Graham] and Joseph Osenkarski [hereinafter Osenkarski] as well as her employers, Cumberland County [hereinafter County Defendant] and the Ninth Judicial District, Cumberland County [hereinafter Court Defendant] for sexual harassment, sex discrimination, and retaliation.

After she rebuffed his sexual interest, Varner became the victim of sexual harassment by Graham, her immediate supervisor.  Graham's immediate supervisor, Osenkarski, refused to take action to stop the harassment and deferred supervision of the juvenile probation office to Graham.  Osenkarski himself engaged in inappropriate sexual behavior and comments.  Repeated complaints to the County Human Resources Department eventually resulted in an investigation by the County Solicitor recommending termination of Graham and discipline or retirement for Osenkarski.  The Court Defendant refused to implement these recommendations.

As a result of her gender and her complaints of sexual harassment, Varner has been given less desirable assignments and works under less favorable terms

and conditions of employment.  She was demoted on the seniority list when Osenkarski changed a long-standing seniority policy.  She was the only probation officer negatively affected by this new definition of seniority.  She has been the victim of a hostile work environment created by both Graham and Osenkarski.

In addition, after taking her complaints to the County's Director of Human Resources, Varner became the victim of retaliation.  Specifically, she was restricted from areas of the Cumberland County Courthouse where she needed to go to do her job, and denied the full-time position of Program Director of the Cumberland County Appointed Special Advocate (CASA) program unless she agreed to withdraw her charges of discrimination.

Varner relies upon her responses to the Statement of Undisputed Material Facts containing specific facts material to the County Defendant's Motion for Summary Judgment.  However, Varner believes that very few of the 323 paragraphs submitted by the County Defendant have anything to do with the issues raised by the County in this motion.  The only relevant facts are those relating to the authority of the County and the Court over juvenile probation officers and the actions by the County and the Court which relate to employment status.  Varner adds some important facts that do relate to employment status.  To a large degree, the County Defendant raises purely legal issues.

## COUNTER STATEMENT OF QUESTIONS INVOLVED

I.    Is Cumberland County Varner's employer for purposes of Title VII and PHRA liability?

II.   Is Graves v. Lowery still good precedent or has it been overruled by Faragher and Ellerth?

## ARGUMENT

I.    CUMBERLAND COUNTY IS VARNER'S EMPLOYER FOR PURPOSES OF TITLE VII AND PHRA LIABILITY.

Plaintiff filed her complaint on April 26, 2001 containing two counts: Count I – an action against Cumberland County [hereinafter County] and the Commonwealth of Pennsylvania, Ninth Judicial District, Cumberland County [hereinafter Court Defendant] under Title VII of the Civil Rights Act of 1964; and Count II – against individuals Graham and Osenkarski as well as the County under the Pennsylvania Human Relations Act [hereinafter PHRA], 43 Pa. Stat. Ann. §955(e).   Varner has pleaded that both the Court Defendant and the County Defendant are employers for purposes of Title VII and the PHRA. (Complaint, ¶¶ 10, 11, 13).

Discovery has shown that both these entities have certain statutory and *de facto* authority as an employer over Varner.  Generally speaking, the Court Defendant has the statutory authority to hire and fire probation officers.  In all respects the County not the Court Defendant controls the purse.  The County does not dispute that Varner, Graham, and Osenkarski are paid by the county in which the court sits.  Without the funds from the County, the Court Defendant has no ability to pay its probation officers, promote those officers, or otherwise expend funds.  It also has no money to remedy any violation of Title VII or the PHRA.

The County Salary Board would vote to approve the hiring or promotion of Probation Office employees. (Hartnett Depos. 19)[1].   Varner's complaint requests compensatory damages and injunctive relief against both the County and the Court Defendants.  The reason is quite simple:  the County may be required to pay any judgment against the Court Defendant.  If the Court Defendant has no source of funds except through Cumberland County, then relief against the County may be absolutely necessary to remedy Varner's claims under Title VII or under the PHRA for that matter.

---

[1] References are to the pages of the various deposition transcripts reproduced in their entirety by the County and Court Defendants.  They have not been duplicated by Varner.

Varner does not rely on the funding issue alone. Also critical to the analysis here is the fact that the county personnel manual includes the sexual harassment policy which Varner utilized to make her complaints to Hartnett, the County Director of Human Resources. President Judge Sheely did not have a separate sexual harassment policy in place prior to July of 1997, when he was addressing Varner's complaint. He felt that a separate policy wasn't necessary because "the policy of the county would apply to all the employees, including the people in the Probation office" and that this policy was "thought out much better than what I could think up of on my own." (Sheely Depos. 38).

Judge Hoffer stated that the sexual harassment policy in place when he became President Judge in January, 1998 "would have been contained in the county manual." (Hoffer Depos. 27). Judge Hoffer believed that probation officers were bound by the sexual harassment policy contained in the county manual. (Hoffer Depos. 27). Judge Hoffer at no time told Varner that she had failed to follow the sexual harassment policy that was in place. (Hoffer Depos. 28).

Hartnett was asked whether he ever told Varner "that she should go directly to Judge Sheely" as opposed to dealing with him about her complaints, Hartnett replied "I don't think I did, no." (Hartnett Depos. 24-25).

Moreover, the record here contains evidence of actions by the County with respect to promotions and reprimands of probation officers. The Chief Clerk of the County had the ability to "hold up" the promotion of Probation Officer Brandt in April, 1998. (Osenkarski Depos. 147-148, V-E[2] - Osenkarski Depos. Exh. 10). On at least one occasion, County Human Resources Director Hartnett met with a Probation Officer and instructed him with respect to proper conduct. According to Probation Officer Sam Miller, Hartnett met with him and instructed him how important it was that he act professionally and exhibit no retaliatory behavior or vindictiveness towards Varner. (Miller Depos. 42).

Osenkarski himself testified that he believed that he had been reprimanded in 2002 by the County with respect to the bomb scare. The chief clerk of the County at the time, John Connelly, reprimanded Osenkarski. Osenkarski called it a "memo of reprimand" and said it was for failing to follow "county procedure" in an evacuation for a bomb threat. Osenkarski felt that it was given "by someone other than a judge who I did not work for." (Osenkarski Depos. 61-62, 67-68, 182). After receiving the reprimand, Osenkarski went to the President Judge, but the Judge said "I'm not going to do any intervention for you." (Osenkarski Depos. 67).

---

[2] References "V__" denote those documents reproduced by Varner in opposition to the various motions for summary judgment.

Probation employees received a county handbook; there was no separate handbook for employees of the Probation Department.  (Hartnett Depos. 15). Probation Department employees were invited to the county's orientation meetings at which "the salient factors of the personnel policy manual" and benefits would be covered. (Hartnett Depos. 17-18).

Probation employees were evaluated using the county forms. (Hartnett Depos. 16-17).   Hartnett testified:  "The court system in county government whether—any county government, have a great deal of autonomy from, separate and apart from the county commissioners, you know.  But by and large it's my opinion that, you know, the court system to a great extent followed the provisions of the personnel manual. (Hartnett Depos. 15-16).

The County asserts that the Title VII case of Graves v. Lowery, 117 F.3d 723 (3d Cir. 1997), which addresses the precise issue of the employment status of judicial employees is somehow distinguishable or should be deemed "overruled."  In that case, the Third Circuit addressed the unique relationship between Pennsylvania counties and the Pennsylvania unified court system.  It is understandable that the County does not like the pronouncement in Graves, but it is presently the law of this circuit.

The facts in Graves are the same in all material respects for purposes of the summary judgment motion as the facts of the instant case. In Graves, clerks who worked under District Justice Horace A. Lowery notified their office manager, pursuant to the sexual harassment policy contained in the Dauphin County Personnel Manual, that District Justice Lowery had been sexually harassing them. In response to the complaint, Dauphin County convened a panel to investigate and made counseling services available to the clerks. In response, Lowery simply terminated the clerks and sought to fill their vacant positions with new hires. When the county refused to effectuate the terminations, or to fund his new hires, Lowery filed suit in the Commonwealth Court of Pennsylvania.

The state court held that Lowery had the authority to discharge the clerks without approval from the County, and that he had the right to fill the positions thus vacated. Moreover, the Commonwealth Court found that the County was required by state law to provide the funding to fill the positions. Dauphin County then removed the clerks from the payroll.

The clerks brought a sex discrimination suit against Lowery, Dauphin County, and others in the Middle District of Pennsylvania, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2. The district court dismissed the clerks' complaint

against Dauphin County on the grounds that, as a matter of law, Dauphin County could not be considered either the clerks' employer or co-employer.

The issue before the Third Circuit in Graves was whether the clerks, who were employees of the judicial branch of the Commonwealth of Pennsylvania, were precluded as a matter of Pennsylvania law, from pursuing a federal employment discrimination claim against Dauphin County, Pennsylvania. The Third Circuit reversed the district court and held that even though the courts may be the employers of judicial personnel, the county may be a joint or co-employer with the courts for purposes of Title VII.

In Graves, the Third Circuit found that the county was integrally involved in the clerks' employment activities because they were covered under the county's sexual harassment policy. In addition, the Third Circuit found that the fact that the clerks believed that they were covered by the policy and expected that the county had the authority to intervene was relevant to its determination. Indeed, the Third Circuit found that the County's own actions indicated that the County itself was unsure about its legal responsibilities.

The Third Circuit reviewed the history of the "Pennsylvania Unified Judicial System," noting that while it was created by a 1968 amendment to Pennsylvania

Constitution, the concept has never been fully implemented because county courts continue to be funded by the individual counties in which those counties sit.

This system was struck down as unconstitutional by the Pennsylvania Supreme Court which then stayed its order, directing the state legislature to enact a new funding system that would truly "unify" the Pennsylvania judiciary and presumably separate the county courts from their relationship to the counties.  The Third Circuit noted that to date, the state legislature has failed to enact a constitutional funding scheme, thus creating confusion and a myriad of funding-related problems.  Varner's case, like that of the clerks in Graves, is just one of those legal problems.

The Third Circuit chastised the district court for referring solely to the not-yet-implemented dictates of Pennsylvania law, thus elevating form over function.  The Court held that state law was only one of many factors that determine employer/employee status under Title VII.  The Third Circuit specifically held that "insulating the County from any liability solely out of deference to state law would undermine the important policies underlying Title VII – that is, to eradicate employment discrimination through federal remedies and to ensure compensation for victims."  Id. at 729.

As in Graves, the County's sexual harassment policy was applicable to Varner. Varner believed that she was subject to the policy, no one ever told her that she was

not, and even President Judges Sheely and Hoffer conceded that in the absence of a

policy enacted by them, the County's policy is applicable to probation officers.   As in

Graves, the County Human Resources Department investigated Varner's complaints

and made recommendations for remediating the sexual harassment.   Here, it was the

county solicitor who made recommendations about Varner's complaints.   The fact that

the Court Defendant was not required to follow the County's recommendations is not

determinative of anything.

Varner, like the individual clerks in Graves, is an employee of the judicial branch

of the Commonwealth of Pennsylvania with respect to who has the ability to hire and

fire her, but that does not preclude her from pursuing a Title VII employment

discrimination claim against the County.   Varner meets the other criteria set forth in

Graves.   She is covered by the County's personnel policies, she made her complaint to

the County Human Resources Director as provided in the written county policy.   The

County investigated Varner's complaints and made some effort to remedy them.

Perhaps if the investigation were to have been done by the Court, entirely

without any input from the County or its solicitor, and the Court Defendant had issued

its own policies applicable exclusively to probation officers and other court employees,

the result might be different.   By investigating, the County virtually conceded that it

had some interest in remedying Varner's complaint—if only to protect itself from potential liability as an employer, based upon the precedent of Graves.

Here, the Court relied entirely upon what the County had done. The Court Defendant initially attempted to prevent Varner from obtaining the DeLuce Report on the basis of attorney/client privilege. In doing so, the Court Defendant admitted that the Court and County were acting together in investigating Varner's complaints.

Varner's complaint requests compensatory damages and injunctive relief against both the County and the Court Defendants. The reason is quite simple: the County may be required to pay any judgment against the Court Defendant. If the Court Defendant has no source of funds except through Cumberland County, then the participation of the County may be absolutely necessary to remedy Varner's claims under Title VII or under the PHRA for that matter. This would require the County to be a party to the Title VII action even if the County had done nothing to investigate Varner's complaint. If the County in all respects controls the purse strings, then this Court could not order any effective relief for Varner under Title VII without the funding which must necessarily come from the County.

The County's reference to Jakomas v. McFalls and the County of Allegheny, 229 F. Supp. 2d 412 (W.D. Pa. 2002), is totally misplaced. Jakomas involved a claim

under the Whistleblower Act and Section 1983; it did not involve a claim under Title VII. The court in Jakomas merely held that the defendant judge was not acting as a policy maker for the county when he fired his staff, and thus the county could not be held liable under Section 1983 for the judge's actions.

With respect to the state law claim, the PHRA applies to "employers," which term is statutorily defined to include "the Commonwealth or any political subdivision or board, department, commission or school district thereof . . .." 43 Pa. Stat. Ann. §954(b). The state courts have held that the court of common pleas is an employer covered by the PHRA. Allegheny County v. Wilcox, 76 Pa. Cmwlth. Ct. 584, 593, 465 A.2d 47, 52 (Pa. Commonwealth, 1983), *appeal dismissed*, 507 Pa. 66, 488 A.2d 277 (Pa. 1985). Similarly, there is no legal bar against holding that Cumberland County, a political subdivision of the Commonwealth, is an employer covered by the PHRA's definition.

This is a case where two entities exercise significant control over probation officers. Based upon the analysis in Graves, the County fits the definition of "employer" for purposes of both Title VII and the PHRA. It cannot be dismissed as a defendant in either Count I or Count II of Plaintiff's Complaint.

II.    GRAVES v. LOWERY IS STILL GOOD PRECEDENT
       AND HAS NOT BEEN OVERRULED BY FARAGHER
       AND ELLERTH.

Through somewhat tortured reasoning, the County argues that two United

States Supreme Court cases which spell out affirmative defenses available to

employers facing sexual harassment cases somehow "overrule" the holding in

Graves.   Quite the contrary, these two cases do nothing to destroy the viability

of Graves.

In Faragher v. City of Boca Raton, 424 US 775 (1998), and Burlington

Industries, Inc. v. Ellerth, 524 US 742 (1998), the United States Supreme Court

held that employers are subject to vicarious liability under Title VII to a

victimized employee for actionable discrimination or hostile environment caused

or created by a supervisor.  However, the Court also held that an affirmative

defense is available to employers in cases where the plaintiff has not suffered any

tangible employment action such as a discharge, demotion or undesirable

reassignment.  The Court held that in those cases, the employer can raise an

affirmative defense if it can prove by a preponderance of the evidence the

following two necessary elements:  (a) that the employer exercised reasonable

care to prevent and correct promptly any sexually harassing behavior, and (b)

that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or otherwise to avoid the harm. The Court carefully noted, however, that this affirmative defense would not be available if the supervisor's harassment culminated in a tangible employment action.

The creation of certain affirmative defenses is unrelated to the legal issue of whether or not an entity qualifies as an employer for purposes of Title VII. Many defenses may be available or not available to a particular employer depending upon the circumstances. The existence of those defenses does nothing to undermine or diminish the fundamental question of whether the named defendants exercised some "employer-type authority" over Varner.

Sadly for Varner, this is not a simple case where there is only one possible employer. In the private sector the same entity, the "master," hires, fires, pays, and in all respects controls the terms and conditions of its "servants." The situation is more muddled in this case. Nevertheless, both the Court Defendant and the County Defendant exhibit the "requisite control over the daily employment activities," Graves at 728, to be an "employer" for purposes of Title VII.

Counsel for Defendant Cumberland County suggests that the Third Circuit's opinion in Graves v. Lowery, *supra,* is incompatible with Faragher and Ellerth because the County was prevented by the Court from imposing discipline on the harassers. This argument may have some superficial appeal, but upon careful reading of the Supreme Court's opinions in Faragher and Ellerth, it is plain that the Third Circuit's opinion in Graves v. Lowery can co-exist with Faragher and Ellerth.

It must be remembered that Graves v. Lowery arose out of the unique, hybrid employment relationship that exists in Pennsylvania where the court staff is formally considered employees of the court, but the court continues to be funded by the county in which it sits. Depending upon the county in which the court of common pleas is located, certain other interrelationships may exist. The court may defer many employment related activities to the county, such as the orientation of employees or the use of a formal performance evaluation system.

In Graves, the Third Circuit was deciding the issue of *who* could be named as a defendant employer. It resorted to standard analysis of the "nature of the relationship" and the level of control over the "means and manner of an individual's performance." *See* Graves at 728, citing other Title VII cases. In Graves as in the instant case, the County continued to exercise control of the conduct of the court employees through its

sexual harassment policy and procedures, regardless of whether the Court was ultimately required by law to implement the recommendations of the County. The Third Circuit found that the County, through its funding, actions and policies, exercised the requisite control over the daily employment activities of the Clerks to incur liability as a co-employer.

Faragher and Ellerth do not speak to the "who" analysis at all. Only after the "who" has been determined does the court examine ways in which the "who" may escape liability. These are very distinct legal issues. A named defendant employer may have available to it a statute of limitations defense, but the very existence of that defense does not mean that the named defendant is not an "employer." Similarly, whether or not the County can utilize a certain defense is irrelevant.

This Court may certainly determine if Varner suffered a tangible employment action. If she did, the affirmative defenses created in Faragher and Ellerth are totally irrelevant to Varner's case. But the "who is the employer" is decided entirely independent of the defenses. If it is determined that Varner did not suffer a tangible employment action, then the Court must decide whether the County satisfied the two necessary elements of the affirmative defense. Why would the existence of defenses created by the Supreme Court (that may be entirely irrelevant) somehow affect the issue

of the "requisite control to be an employer"?  They are simply two different legal

issues.


## CONCLUSION


For all of the reasons set forth in this brief, the County Defendant's motion to be

dismissed from this action must be denied.


Respectfully submitted,


s/ Debra K. Wallet
Debra K. Wallet, Esq.
24 N. 32nd Street
Camp Hill, PA 17011
(717) 737-1300 (phone)
(717) 761-5319 (fax)
walletdeb@aol.com (email)
I.D. #PA23989
Attorney for Barbara E. Varner


Dated:  January 21, 2004