V-B



Cumberland County's Grants Administration & Intermediate Punishment (IP) Programs

Date:      March 13, 2000

To:        The Honorable Edward E. Guido

From:      Laura A. Patterson

Subject:   Final CASA Submission

Margie and I monitored the Federal Express site like it was our own EKG. The proposal arrived at its final destination well before the close of business last Friday. The Commissioners will hopefully ratify the submission of the CASA proposal at their 2:00 p.m. meeting today. I have filed the request for application forms with the Finance Department and they have been approved. So we are simply waiting, with fingers crossed, for NCASAA's thumbs-up.

We might want to consider a course of action in the event this proposal is not funded. This is a national funding stream and it is highly competitive. Let me know your thoughts.

I want to thank you and Carl for all your efforts to make this worthwhile project a real possibility. I have forward letters of appreciation to both Georgene Thompson and Wanda Noll.



GUIDO
DEPOSITION
EXHIBIT
# 2
4/8/03  EC

# 2000 New Program Development Grant Applicant Information Sheet

1.  Amount of grant funds requested $38,184

2.  Organizational Information:

Name (or proposed name) of CASA/GAL Program: Cumberland County's CASA Program

Contact Person/Title: Laura Patterson. Grants Administration & IP Programs Coordinator

Address: Human Services Building Suite 302

Address: 16 West High Street

City: Carlisle State: PA Zip: 17013

County: Cumberland  Phone Number: (717) 240-6560

FAX: (717) 240-6488  e-mail: lpatterson@ccpa.net

3.  General population of the area currently (or to be) served by the CASA program 201,108

4.  How is/will the program administered?
    - Public Entity (Court, County, State) Cumberland County. PA
    - Private Non-Profit 501(c)(3); Federal Employer Identification #: _ _ _ _ _
    - Private Non-Profit 501(c)(3) status applied for; date of application: _ _ _ _ _
    - Administered by another organization: (Name of organization); Fed. ID #: _ _ _ _ _

5.  Current Staff Positions (complete if applicable):
    List each current paid staff position (do not give names) in your program and indicate the amount of time that position is filled (note: Full time position =1; ¾ time = .75; ½ time = .5; ¼ time = .25; etc.)

    Position Title: _ _ _ _ _ _Amount of Time: _ _ _ _ _

    Position Title: _ _ _ _ _ _ Amount of Time: _ _ _ _ _

    Position Title: _ _ _ _ _ _Amount of Time: _ _ _ _ _

6.  Has your organization received a previous grant from National CASA?
    No ☒    Yes ☐ Year? _ _ _ _ _

7.  Type of grant:
    Planning ☐   Start-Up/Implementation ☒

8.  Provide a brief description (in 50 words or less) of the previous grant project outcomes:

_ _ _ _ _

220009

9. **Program Statistics**

- Month/year program was incorporated/established: _ _ _ _ _

10. **Child Service Statistics** (if your program is assigning volunteers to cases)

- ❑ Total number of children served by your program from 1/1/99 to 12/31/99 (Do not report cases): _ _ _ _ _ _
- ❑ Total number of children <u>not</u> being served, but in need, from 1/1/99 to 12/31/99 (Do not report cases): _ _ _ _
- ❑ Total number of children before the court from 1/1/99 to 12/31/99 (Do not report cases): _ _ _ _ _
- ❑ What is your average cost per child served (Program budget <u>divided by</u> number of children served)? _ _ _ _ _
- ❑ Provide the ethnic breakdown of the children served by your program from 1/1/99 to 12/31/99:

  _ _ _ _ _ Caucasian     _ _ _ _ _ African American     _ _ _ _ _ Latino     _ _ _ _ _ Asian

  _ _ _ _ _ Native American     _ _ _ _ _ Multi-racial     _ _ _ _ _ Other     _ _ _ _ _ Do not know

11. **Volunteer Statistics** (if your program is assigning volunteers to cases)

- ❑ Month/Year CASA program began assigning volunteers: _ _ _ _ _
- ❑ Total number of CASA/GAL volunteers appointed to cases from 1/1/99 to 12/31/99: _ _ _ _ _
- ❑ What is your average cost per volunteer (Program budget <u>divided by</u> number of volunteers)? _ _ _ _ _
- ❑ Provide the ethnic breakdown of the volunteers appointed to a case from 1/1/99 to 12/31/99:

  _ _ _ _ _ Caucasian     _ _ _ _ _ African American     _ _ _ _ _ Latino     _ _ _ _ _ Asian

  _ _ _ _ _ Native American     _ _ _ _ _ Multi-racial     _ _ _ _ _ Other     _ _ _ _ _ Do not know

12. **Court/Judicial Statistics**

- ❑ How many court jurisdictions does your program serve? _ _ _ _ _
- ❑ Number of judges who hear abuse and neglect matters in your court jurisdiction/s: <u>1</u>
- ❑ Number of judges who assign CASA/GAL volunteers in your court jurisdiction/s: _ _ _ _ _
- ❑ Do you have a written agreement with the Court?                                    Yes ☐ No ☒
- ❑ Do you have a written agreement with the local social service agency?   Yes ☐ No ☒

13. **Financial Information** (Please check the appropriate answer)

- Have you developed organizational internal control procedures?        Yes ☐ No ☒

  *If you answered yes to this question, please include a copy of your internal control procedures.*

- Does the program have cash receipts and/or a bank account?        Yes ☐ No ☒

  *If you answered no to this question, you don't need to answer any of the remaining Financial Information questions.*

220010

**General**

- Is the Board of Directors responsible for authorizing all bank accounts and check signers?

  Yes ☐  No ☐

- Are restricted funds maintained by separate accounts in the chart of accounts, if required by the funding source?  Yes ☐  No ☐

- Are financial institutions where CASA accounts are maintained notified on an annual basis of any changes in check signers, following the transition of officers, or changes in staff with check signing responsibilities?  Yes ☐  No ☐

- Are dual signatures required for all checks?  Yes ☐  No ☐

- Which of the following have check signing authority? (Please check appropriate)

  *President:* ☐    *Vice-President:* ☐    *Secretary:* ☐    *Treasure:* ☐    *Executive Director:* ☐

- Are financial reports presented to the CASA Board for review on a monthly basis? Yes ☐  No ☐

- Is an annual financial review or audit conducted by a qualified outside auditor?  Yes ☐  No ☐

- Are other applicable financial and administrative guidelines relating to specific grants followed?

  Yes ☐  No ☐

**Cash Receipts**

- Do employees handling cash have the necessary knowledge and skills to perform the job and are they carefully supervised?  Yes ☐  No ☐

- Are incoming checks restrictively endorsed "for deposit only" when received?  Yes ☐  No ☐

- Are cash receipts immediately deposited?  Yes ☐  No ☐

- Is incoming cash counted and are receipts/bank deposits slips completed by two or more persons authorized to perform these functions?  Yes ☐  No ☐

- Are records of cash received totaled and initialed by authorized employees? Yes ☐  No ☐

- Are cash collection documentation totals compared and reconciled to bank deposit receipts on a regular basis?  Yes ☐  No ☐

- Are bank deposit receipts compared and attached to the original bank deposit slips? Yes ☐  No☐

- Are adequate physical controls maintained over cash receipts from the time of receipt to deposit in the bank?  Yes ☐  No ☐

**Cash Disbursements**

- Does the Director provide prior approval for all cash disbursements?  Yes ☐  No ☐

- Are all disbursements, including payroll, made by check?  Yes ☐  No ☐

- Are signature stamps used to sign checks?  Yes ☐  No ☐

- Does supporting documentation accompany checks when presented for signature? Yes ☐  No☐

- Are payments, invoices or other supporting documentation canceled at the time checks are signed through a notation by the authorized staff check-signer of check number, date and his/her initials?

  Yes ☐  No ☐

- Are checks made payable to specific payees, based upon appropriate supporting documentation, and never to cash or bearer?  Yes ☐  No☐

- Are pre-numbered checks used and always in sequence?  Yes ☐  No ☐

220011

- Are checks prepared from vendor invoices only and not from a vendor statement? Yes ☐ No☐
- Are all check numbers accounted for?                                          Yes ☐ No☐
- Are voided/spoiled checks marked "VOID", mutilated with the signature portion removed, and retained in a secure place?                                          Yes ☐ No ☐
- Do only persons authorized to prepare checks have access to blank checks?  Yes ☐ No ☐
- Are disbursements that require special approval of funding sources or the governing board properly documented?                                          Yes ☐ No ☐
- Do employees maintain and submit a detailed expense record, with supporting documentation, in order to be reimbursed for expenses?                                          Yes ☐ No ☐
- Are expense records reviewed and initialed for approval by the authorized individual prior to payment?                                          Yes ☐ No ☐
- Is signing of blank checks strictly prohibited?                                          Yes ☐ No ☐

**Reconciliation**
- Are bank accounts reconciled by the person responsible on a monthly basis, and reviewed by the Director?                                          Yes ☐ No ☐
- Does the Director receive the bank statements (with canceled checks, etc.) unopened from the bank?                                          Yes ☐ No ☐
- Are checks outstanding over 90 days periodically investigated, with payment stopped and an entry made restoring such items to cash if appropriate?                                          Yes ☐ No ☐

New Program Development Grant Application Project Narrative

1. PROJECT HISTORY AND NEED

A. Description of Cumberland County and the Children We Serve

Cumberland County is a fourth-class county with 64% of its residents living in urbanized areas and 36% residing in rural settings. The 1990 Census of Population and Housing Summary indicates that 201,108 persons reside in the 547 square miles of Cumberland County. Of that total, twenty-three percent (23%) or 46,520 are between the ages of 0-18 years old. Judge Edward Guido hears all dependency cases petitioned to Cumberland County's Family Court. According to Administrative Office of Pennsylvania Courts, the judge handles an average of 116 dependency petitions a year.

Cumberland County's Children and Youth Services (CYS) investigates, on average, 243 reported cases of abuse or neglect[i]. Twenty-three percent of the County's reported cases are substantiated. This percentage was consistent with the statewide averages reported by the Department of Public Welfare (DPW). During 1998, 23.9% of the Commonwealth's reported cases of abuse were substantiated.

The Department of Public Welfare also reports the percentage of children who were *re-victimized*, despite their presence in the child welfare system. The Child Line and Abuse Registry maintains a database of all founded and suspected child abuse reports. This statewide central register reports that thirteen-percent (13%) of Cumberland County's children, victims in substantiated cases of abuse, were *re-victimized* in subsequent incidents of child abuse. If the system's goal is to protect children, then some children are clearly falling through the cracks.

B. Needs Assessment and Findings

Interest in pursuing a CASA program was initiated over two years ago by Judge Guido who first introduced the model to the County's Policy Team. For the past ten years, the Policy Team's role has been to plan, prioritize needs, and problem-solve. Members of the Policy Team include the President Judge, the County Commissioners, the agency directors, and elected officials in area of juvenile justice, criminal justice, and human services. The Policy Team approved a motion to convene a planning committee to assess the need and to study the issue further.

An informal planning committee distributed a needs assessment[ii] to child welfare caseworkers, attorneys, and service providers involved in dependency proceedings.[iii] The responses highlighted several areas that would benefit from a CASA program. Most needs were directed at the new or expanded role and responsibilities for juvenile courts in abuse, neglect, and dependency cases. The Federal Adoption Assistance and Child Welfare Act (Public Law 96-272) has defined a more active role for Family Court judges. Specifically, the goal of the proceedings shifts to identifying a safe, nurturing, and permanent home for children. Meeting this goal requires all parties to work on both reunification and a concurrent plan for permanency. As such, the procedural and oversight expectations have generally increased. Additional court resources required to meet these mandates did not.

Another concern cited by respondents to the needs assessment was the Court's role in monitoring the delivery of services to dependent children and families. Both CYS caseworkers

220013

and court-appointed attorneys mentioned caseload pressures that limit time to provide consistent and reliable case updates to the judge.

Caseloads of Child Welfare Workers[iv]

| CYS Caseloads Relative to Recommended Standards | Intake investigators of abuse allegations | Providers of in-home protective services | Monitors of out of home services or family placements |
|---|---|---|---|
| Cumberland County's Children & Youth Services | 18-22 active families | 22-25 families | 10-12 placements |
| Recommended by Child Welfare League of America | 12 active cases | 15-17 families | 12-15 children |

Cumberland exceeds recommended caseload standards. These caseload pressures detract from the time and quality of service children receive from the agencies designed to protect their interests. The caseloads speak to the need for a CASA volunteer program. A volunteer who is committed to work with a single child or sibling group would provide the child with continuity throughout the time it takes to find a safe and appropriate home.

Other needs identified by respondents pointed to expanding the issues addressed at the preliminary protective hearing to consider kinship placements and interim services to parents and children. On the average, there are 94.6 placements per year. The foster care placement options are limited. Staff limitations preclude an immediate home study of kinship-based alternative placements or other safe alternatives. In the absence of an independent child advocate to gather information and research viable options, administratively safe decisions stand. These decisions may serve to keep children in foster or sheltered care longer than necessary and to tap finite resources.

A goal, shared by all respondents, is to schedule permanency hearings within 12 months from the time a child enters foster care. On average, only forty-three percent (43%) or 27 of the 63 children placed in foster care are returning home within the recommended timelines. The ASFA requirements to adopt permanency plans earlier than the average 47% of permanent plans established by 15 months points to a need for additional staff resources in all areas of placement and adoption services.

Respondents stated a need to expand the number of adoptive families available to provide permanent and loving homes to the twenty children typically who have adoption a their goal. Cumberland County averages about eight final adoptions each year. Unfortunately, many the children living in foster homes or in kinship care are in line to be adopted. Delays associated with termination of parental rights (TPR) proceedings defer efforts to arrive at a swift and appropriate disposition.

C. Current Practice: Representation of Children in Dependency Proceedings

Attorneys are appointed by the judge to represent the interests of the children. Seven attorneys provide legal representation for dependent children. However, these attorneys are not acting in the capacity of a guardian ad litem. State statute 23 Pa.C.S.A. § 6382 requires that a guardian ad litem is an attorney, but describes the role differently from that of assigned legal counsel. In no instance was a guardian ad litem appointed for a juvenile dependency case in Cumberland County last year. The rate at which these attorneys are compensated and time constraints precludes this scope of work. The total cost of counsel appointed for juvenile dependency cases in Cumberland County for 1999 was $24,000.

220014

D.  How CASA Would Improve Quality Representation

Child victims of abuse or neglect are subject to life changing decisions made by a complex and overburdened child welfare and court system.  In Cumberland County, the Children and Youth Services (CYS) caseworkers and attorneys assigned to provide legal representation in dependency cases are dedicated to serving children's interests.  This process requires an information-intensive and child-focused effort.  Fact finding— when so much is at stake— is complicated and stressful for all parties involved.  With average caseloads thirty-five to forty children, both CYS caseworkers and appointed counsel are overwhelmed.  The very system designed to serve and protect children tends to lose sight of them.

There is a pool of seven attorneys that represent children who are the subject of dependency or protection hearings.  Though effective advocates in court, they generally carry caseloads of 35-40 children.  Independent attorneys, social service providers, and CYS caseworkers represent various perspectives.  An attorney representing a child's wishes does not always correspond to representing what is in the best interest of the child.  Judge Edward Guido, Cumberland County's Family Court, must rely on an adversarial process to decide what action to take. Information needed to make a decision is filtered through a prism of advocacy.  Judge Guido recognizes the need to have an individual who investigates all relevant aspects of a child's life and who supports him or her until a safe, permanent plan is achieved.  In pursuit of this goal, the County's Policy Team submits the following proposal to fund a Court Appointed Special Advocates Program (CASA) in Cumberland County.

E.  Judicial and Community Support for Developing a CASA

The Honorable Edward Guido, Family Court Judge presented the need to establish a CASA program to the County's Policy Team and related Management Team.  Judge Guido requested technical assistance with program development from Georgene Thompson, Director of the PA CASA Association, and Wanda Noll, Director of York County CASA.  In line with their recommendations, a Cumberland County CASA Advisory Committee was created and is scheduled for its first meeting on March 1, 2000.

F. Role and Responsibilities for the Advisory Board.

Committee members (see attached list), representing child advocacy organizations, county agencies, the bar association, and the community at large, expressed an interest in setting up this needed program.  The role of the Advisory Committee will be to understand and support the program's mission (see attached roles and responsibilities).  The Advisory Committee will offer the CASA Program Director guidance to ensure the program's integrity and compliance with NCASAA standards.  The Advisory Board will also play a key role with promoting community interest in the program.

G. Cumberland County's CASA Program Mission Statement

The mission of the Cumberland County Court Appointed Special Advocate (CASA) Program is to serve the best interests of abused and neglected children in court.  The program will provide trained volunteer representation for children and seek to provide each child a safe, permanent, and nurturing home.

220015

### H. Working Agreements

The Advisory Board, the Program Director and the Family Court Judge will develop a statement of understanding between the CASA volunteer and the court. The working agreement will delineate duties to be performed and routine policies to be followed as a part of that appointment. The working relationship between the CASA program and Children and Youth Services will also be clarified in a letter of agreement. The agreement will underscore the importance of promoting respectful, cooperative and collaborative relationships between the caseworkers, attorneys, and ancillary agencies with knowledge of the child's circumstances.

## 2. PROJECT APPROACH

### A. Recruitment and Training Volunteers as Court Appointed Special Advocates

The productive use of volunteers in a CASA role requires an organized effort. The Program Director and Advisory Board will plan for effective use of volunteers. We will use constituency-building techniques to proactively attract volunteers. The recruitment plan will incorporate public relations and marketing strategies used by other CASA programs[v] to recognize and promote volunteering.[vi] Those interested in serving as a CASA volunteer must meet the minimum, basic requirements— at least twenty-one years of age, no criminal history, an approved application, a successful interview, CASA-approved training, and orientation to County policies and procedures. The Project Director and the Advisory Board will develop protocols for screening and selecting qualified volunteers.

### B. Role and Responsibilities of the CASA Volunteer

The specific roles for CASA volunteers in Cumberland County's proposed program are not yet delineated. However, Judge Guido, the Advisory Board and the Project Director will establish written policy and procedures to guide the development of NCASAA-approved practices for recruiting, training, supervising, and recognizing CASA volunteers. The recognition of the CASA volunteer as a child advocate will focus on three main responsibilities[vii]:

1. to serve as a fact-finder for the judge by thoroughly researching the background of each assigned case;
2. to speak for the child in the courtroom, representing the child's best interests;
3. to continue to act as a "watchdog" for the child during the life of the case, ensuring that it is brought to a swift and appropriate conclusion.

### C. Volunteers' Role in Court

Judge Guido and the Program Director, with the guidance from York County's CASA will guide the development of case assignment strategies and how CASA information will be presented to the court. Wanda Noll, the Director of York County's Program, spoke at our first Advisory Board meeting. Their program, like the program planned for Cumberland County, represents a court-administered program. The judge and the program director review and prioritize cases. The cases are then, based on availability, assigned to CASA volunteers. All CASA reports and recommendations are closely monitored by the program director before they are presented to the judge. Appropriate copies are distributed to legal counsel for vested parties and agencies.

220016

3. PROJECT DESIGN AND IMPLEMENTATION

A. Goals for the Program, the Volunteers and the Children

The goal of the program will be to target 20 children who come before the court as part of a dependency petition. Priority will be given to younger children (or sibling groups) just entering the system and/or to the most severe cases of abuse and neglect who will benefit greatest from early intervention. Judge Guido will determine which cases would benefit from CASA advocacy. A major goal of the program will be to recruit and train 12-15 CASA volunteers who will work with only one assigned child or sibling group. We expect to meet these targets by the close of the grant period.

B. Cost of Child Advocacy

Hundreds of thousands of dollars are spent annually to help children recover from the long-term and devastating effects of child abuse and neglect. We must also incur the costs associated with the disproportionate representation of child abuse victims in our juvenile and criminal justice systems. The cost of providing safe, nurturing, and permanent homes for children is also high. The estimated cost per child served by the CASA Program in Cumberland County is $3,481. But Cumberland County believes the cost of protecting children and preventing abuse is an investment with a greater return.

C. Project Evaluation

As a county-administered program, the CASA Director will be required to implement the Policy Team's performance-based budgeting and management planning standards. The Program Director will be responsible for ensuring all tasks are performed on time, within budget and with regard for quality. Quarterly status reports will be prepared by the Director and presented to the Advisory Board and Policy Team. Quality assurances structured in the Policy and Management Team meetings promote the timely accomplishment of planned activities, the delivery of services, and workable solutions to problems that are encountered.

Feedback forms will be developed to measure performance and outcome measures related to key functions. Performance evaluations of the CASA program staff and volunteers will be requested from agencies represented in the working agreements. The Program Director and Judge Guido will assess whether CASA volunteers:

- provided the judge with timely and carefully researched information;
- helped the court make a sound decision;
- treated each child and home placement as unique;
- improved services for individual children and their families;
- advocated for needed change in the conditions which adversely affect the children served;
- identified gaps in service and work to eliminate them; and
- provided continuity to the child in temporary care until the case was permanently resolved.

D. Activity Plan and Schedule

The following section describes timelines and action steps related to program development, program operations and program implementation and evaluation.

220017

**Community and Judicial Support Goals (Pre-Grant Period)**— To promote interest and demonstrate the need for a CASA Program in Cumberland County.

*Action Steps*
- *An assessment of need for a CASA program was conducted.*
- *The Grants Administrator will draft a NCASAA proposal to fund the program startup.*
- *Requests for assistance will include NCASA resources, the PA CASA Association, and York CASA.*
- *Judge Guido convened an advisory board to guide and to serve as a resource and link to the community.*
- *The Advisory Board will work to complete the nine qualifying steps for provisional NCASAA membership.*

**Program Establishment Goals (First Quarter)**— To establish a Cumberland County CASA Program and to form an active Advisory Board to guide its development and plan for its future.

*Action Steps*
- *The Advisory Board will help to develop job descriptions for the Program Director, the clerical assistant, and volunteers.*
- *The Judge will select or reassign a qualified candidate to serve as the Program Director.*
- *The Program Director will attend the NCASAA grantees and national conferences.*
- *The Advisory Board will assist with constituency-building with community, non-profit, civic and human services organizations.*
- *Establish strong partnerships and support through promotional public relations (e.g., public speaking, media spots, and educational materials).*
- *Plan for program longevity via fund-raising strategies, county budgeting, grants or foundations.*

**Program Development Goals (Second Quarter)** —To establish the CASA Program as a legal entity with clear statements of purpose and accountability.

*Action Steps*
- *The working relationship between the CASA program, the court and the CYS will be clarified and formalized in a letter of agreement.*
- *Lines of authority will be specified in a clear statement of responsibilities (in accordance with applicable federal and state legislation and local court rules) and in an organizational chart.*
- *The charts of accounts and fiscal accounting procedures will be established in compliance with applicable federal grant requirements and State and County Fiscal Accounting Codes.*
- *A volunteer management plan delineating minimum qualifications, the screening process, causes for dismissal (e.g., breach of confidentiality; failure to perform duties, violations of court orders), and communications between the court and social services, etc.*
- *The plan will guide procedures for recruiting volunteers, coordinating case assignments and progress throughout litigation; developing training programs; and building cooperative relationships with key personnel in the courts, CYS, and the community.*
- *Policy and procedures manual will be developed based on the National CASA Association standards.*
- *A Performance-based Management Plan will be adopted per the County Commissioners' requirements.*

**Volunteer Recruitment, Training, Supervision, and Management Goals (Third Quarter)**— To recruit and carefully screen qualified volunteers committed to finding safe, loving and permanent homes for abused and neglected children.

*Action Steps*
- *The CASA Director will produce a volunteer handbook and a manual of policies and operating procedures guiding the management of volunteers and which will include a job description, volunteer application, duties, training requirements, and case management expectations.*

220018

- *The CASA Director will adopt the Comprehensive Training for CASA/GAL curriculum (available through NCASAA) and continuing in-service training program.*
- *The CASA Director will recruit, screen, and train 12 to 17 qualified volunteers who are willing to make a commitment of 18 to 24 months to a child or sibling group and who have demonstrated their suitability to perform their advocacy role on behalf of the child.*
- *A sign-off sheet will acknowledge that trained volunteers have read and understood the NCASAA's program standards, code of ethics, confidentiality regulations, and grievance procedures.*

Case Assignment Goals (Fourth Quarter and the Second Year)— To identify at least 20 children (or sibling groups) most in need of CASA representation and to assign a CASA volunteer to represent the children's best interest in court.

*Action Steps*
- *Target 15 to 20 children or sibling groups most critically in need of CASA representation.*
- *Criteria for assigning CASAs will be crafted by the CASA Director and the Judge.*
- *Children scheduled for dependency hearings will be considered, but an assessment of cases benefiting the most will guide assigning the limited number of volunteers.*
- *Consultations and case reviews of CASA work (e.g., their skills in gathering information, monitoring compliance with court orders and making sound recommendations to the court).*

Grant Reporting Requirement Goals (Fourth Quarter and the Second Year)— To establish case management and fiscal accounting databases designed to report performance-based objective and outcome information.

*Action Steps:*
- *Design databases to meet reporting needs and to demonstrate program accomplishments.*
- *Establish internet access to comply with NCASAA requirements for online reporting.*

4. PROJECT MANAGEMENT

A. Organizational and Administrative Structure

The CASA Program proposed by the County's Policy Team will operate as a court administered program in accordance with the *Federal Adoption Assistance and Child Welfare Act (Public Law 96-272)* and related legislation. The program will be managed as part of Office of Court Administration and will abide by the statutes and court rules that will govern its relationship with the court. CASA Program development will follow the National Court Appointed Special Advocate Association (NCASAA) recommendations enumerated in approved policy and standards of operation.

The County proposes to donate a county funded position to serve as the CASA Program Director. The CASA Program Director position will be administered through the Court Administration Office. Clear lines of accountability and authority will exist for employees, volunteers, and the advisory board members and be formalized in an organizational chart.

The community-based Advisory Board will provide additional checks and balances required to ensure the NCASAA integrity of the program. Working agreements between the Judge, the Court Administration Office, Legal Services, and Children and Youth Services will further clarify the autonomy required to serve in a child advocacy role. The Court Administrator will maintain regular communications with the judge and other entities, as stipulated in working agreements,

220019

to ensure satisfaction with the program and to respond to recommendations to improve the program's effectiveness.

## B. Program and Fiscal Accountability

The CASA Program Director will use an accrual method of accounting and ensure the segregation of grant funds. The Court Administration Office complies with accounting and procurement procedures required by the County Controller's Office and the Finance Department. These procedures require descriptive charts of accounts; prompt and accurate recording of revenues and expenses; receipts and disbursements are reconciled to the general ledger monthly; safeguarding and verification of assets; control over expenditures; and external audits by KPMG. The review and monitoring of the CASA Program's fiscal management is delegated to the County Controller and Finance Offices.

## 5. PROGRAM'S OPERATING BUDGET

The proposed court-based program is seeking startup funding through the NCASAA. Cumberland County is planning to contribute a county-funded, FTE (full-time equivalent) staff position to serve as the CASA Program Director. The County's in-kind contribution is an ongoing commitment to support this program. Judge Guido is interested modeling Cumberland County's CASA Program after the court-administered CASA Program operating in York County, P.A.

The attached Excel spreadsheet delineates the NCASAA-requested funds from those the County will provide. The County Policy Team has endorsed the plan to develop and implement the CASA program. The program-related expenditures and plans to expand will be incorporated in the County's Performance-based Budgeting Process. Every department is required to prepare and submit management plans and budget requests to the Board of County Commissioners. All new program development for justice related departments must receive the County's Policy Team endorsement. Policy Team endorsements are contingent upon a department's progress with meeting measurable performance targets. Judge Guido is confident that the program will demonstrate its value in providing for the needs of abused and neglected children.

Endnotes
_____

i  The Children and Youth Services 2000/2001 Needs-based Budget and Plan reports child abuse, neglect and exploitation handled by the agency over the past four years (July 1, 1995 to June 30, 1999).

ii  Adapted from the assessment published in the National CASA Association's Resource Library Publication, CASA: A Guide to Program Development (Seattle, WA: 1992).

iii  Family Court Judge, Masters, CYS Director and Caseworkers, Court-appointed attorneys, Pennsylvania's CASA Director, and the Court Administrator, and other respondents.

iv  Briesemeister, Liz. "Statistics on Child Abuse- Neglect, Foster Care, Adoption and CASA Programs. CASANET: Resource Library

v  National CASA Association (NCASAA). Communications Manual for CASA/GAL Programs.

vi  McCurley. Steve. VM Systems: Volunteer Management – Nuts & Bolts Series. Page 8, 1990.

vii  "What is CASA." NCASAA bulletin.

220020

## 2000 New Program Development Grant Application
## Grant Budget Sheet
### (along with Grant Budget Narrative Sheet, worth 10 points)

Use this form to detail the use of <u>NATIONAL CASA GRANT FUNDS ONLY</u> ($20,000 - $80,000 for the two year period). Round all grant category figures up to the nearest dollar - DO NOT USE CENTS. Refer to Application Instructions for more details & allowable costs.

PROGRAM NAME: <u>Cumberland County's CASA Program</u>  CITY & STATE: <u>Carlisle. PA</u>

| Category | Year 1 | Year 2 | Total |
|---|---|---|---|
| Personnel Salaries | $7.020 | $7.020 | $14.040 |
| Taxes/Benefits | $_ _ _ _ | $_ _ _ _ | $_ _ _ _ |
| Travel | $2.085 | $1.225 | $3.310 |
| Training | $1.025 | $625 | $1.650 |
| Printing | $585 | $225 | $810 |
| Supplies | $600 | $600 | $1.200 |
| Equipment | $5.200 | $_ _ _ _ | $5.200 |
| Rent/Utilities | $3.927 | $3.927 | $7.854 |
| Other | $1.860 | $2.260 | $4.120 |
| Totals: Year One and Year Two | $22.302 | $15.882 | |

| TOTAL GRANT REQUEST | $38.184 |
|---|---|

National CASA approved:_____ Date:_____

220021

## 2000 New Program Development Grant Application
## Grant Budget Narrative Sheet
### (along with Grant Budget Sheet, worth 10 points)

For each of the budget categories, detail the anticipated expenditures and costs. For line items that do not apply to your project, write N/A.

PROGRAM NAME: <u>Cumberland County's CASA Program</u> CITY & STATE: <u>Carlisle, PA</u>

<u>Salaries</u>

$ 14,040 Part-time Clerical Assistance (15 hours per week @ $9 per hr. or $ 7,020 per year).

<u>Taxes/Benefits</u>

<u>Travel:</u>

NATIONAL CASA Grantees Meeting – Seattle in 2000: $ 860 ($500 airfare, $260 for 2 nights lodging; $100 for 2 days per diem and ground transportation, )

NATIONAL CASA National Conferences (2001 & 2002): $1,850 (average of $500 airfare, $ 300 for 2 nights lodging, $125 for per diem and ground transportation for two conferences)

**Volunteer Mileage**

Purpose: To offset the cost of 10 volunteers attending training, conducting home and agency interviews, and appearing at court hearings.

161 miles @ . 31 per mile = $50 per year for a project total of $100.

**Staff Mileage**

Purpose: To offset the cost of the Director's community outreach and program development efforts, and consultations with PA CASA Association and other PA-based CASA Programs,

806 miles @ . 31 per mile = $250 per year for a project total of $500.

<u>Training</u>

220022

NATIONAL CASA Conference registration (2001 & 2002): $450 registration fees (Early registration for 2000 and 2001 conferences is $225 for each registration).

Other (specify): For 2001 & 2002, CASA Library Resources $500, CASA Training Videos $300; 20--Training Manuals (@ $20 per manual) for $400.

Printing $ 810  ($100 - Brochures, $350 Xeroxing, $60 - Business cards, $300 for Letterhead & Envelopes)

Supplies
    Office Supplies: $ 600

    Postage: $ 600

    Other (specify):

Equipment
    Computer & Printer (not to exceed $2,500): $ 2,500

    Other (specify): $ 2,700

Filing Cabinent, Desk and Chair $ 1,600; Mobile Training Unit (Television/VCR/Cart) $750; Microsoft Suite Professional Edition (Word, Excess, Access, PowerPoint)-- software for fiscal and case management and training or community presentations $ 350 .

Rent/Utilities
    Rent: $ 5,496  (Office space @ $229 per month or $2,748 per year)

    Utilities: $ 438 (@ $219 per year)

    Telephone: $ 1,200 (@ $50 per month or $ 600 per year)

    On-Line service: $ 720 (internet service @ $ 30 per month)

    Other (specify):

Other:
    National CASA Membership:  $120  ($60 for provisional membership 2000 and $60 for full membership in 2001)

**Insurance:** $1,500 (liability insurance for volunteers who will be assigned to cases during the last quarter of the first year and all of the second year)

**Other (specify):** $ 2,500 (Legal Consultation Fees)

**TOTAL:** $ 38.184

National CASA approved _____Date:_____

220024

Cumberland County's CASA Proposed Budget

| CASA Program-Related Expenses | 2000/2001 NCASAA Funding | 2001/2002 NCASAA Funding | Total Project |
|---|---|---|---|
| I. PERSONNEL: | | | |
| Program Director Salary | 40,382 | 41,593 | 81,975 |
| Clerical Asst. (15 hrs/wk @ $9/hr) | 7,020 | 7,020 | 14,040 |
| Toal Personnel | 47,402 | 48,613 | 96,015 |
| II. BENEFITS: | | | |
| Fringe Benefits | 9,097 | 9,097 | 18,194 |
| III. TRAVEL | | | |
| Travel NCASAA Grant Mgt (Seattle) | 860 | | 860 |
| Travel (NCASA Conferences) | 925 | 925 | 1,850 |
| Mileage (Director) | 250 | 250 | 500 |
| Mileage (Volunteers) | 50 | 50 | 100 |
| Total Travel | 2,085 | 1,225 | 3,310 |
| IV. TRAINING | | | |
| NCASA Conference Registration | 225 | 225 | 450 |
| CASA Library Resources | 250 | 250 | 500 |
| Video CASA Training Tapes | 150 | 150 | 300 |
| Training Manuals– 20 @ $20 | 400 | | 400 |
| Total Training | 1,025 | 625 | 1,650 |
| V. PRINTING & COPYING | | | |
| CASA Brochures ($10 per 100/pkg.) | 50 | 50 | 100 |
| Xeroxing (court records) | 175 | 175 | 350 |
| Business Cards - Director | 60 | | 60 |
| Letterhead & envelopes | 300 | | 300 |
| Total Printing & Copying | 585 | 225 | 810 |
| VI. SUPPLIES | | | |
| Postage (Shipping & Handling) | 300 | 300 | 600 |
| Miscellaneous Office Supplies | 300 | 300 | 600 |
| Total Supplies | 600 | 600 | 1,200 |
| VII. EQUIPMENT | | | |
| File cabinet, desk, chair | 1,600 | | 1,600 |
| Computer and Printer | 2,500 | | 2,500 |
| Microsoft Office (Professional Ed) | 350 | | 350 |
| Televison/VCR/Cart | 750 | | 750 |
| Total Equipment | 5,200 | - | 5,200 |
| VIII. RENT & UTILITIES: | | | |
| Office Space (@ $229 per month) | 2,748 | 2,748 | 5,496 |
| Training Space ($50/day 40 hrs) | 450 | 450 | 900 |
| Utilities (@ $219 per year) | 219 | 219 | 438 |
| Phone ($50 a month) | 600 | 600 | 1,200 |
| Internet On-line ($30 a month) | 360 | 360 | 720 |
| Total Rent & Utilities | 4,377 | 4,377 | 8,754 |
| IX. OTHER ADM. COSTS: | | | |
| Professional Fees (NCASA): | 60 | 60 | 120 |
| Liability Insurance (volunteers) | 300 | 1,200 | 1,500 |
| Legal Consultation(@ $45 an hour) | 1,500 | 1,000 | 2,500 |
| Total Other Admin. Costs | 1,860 | 2,260 | 4,120 |
| TOTALS | $ 72,231 | $ 67,022 | $ 139,253 |
| Revenue | | | |
| County Contribution | 49,929 | 51,140 | 101,069 |
| Total Revenue | 49,929 | 51,140 | 101,069 |
| NCASAA Funds Requested | $ 22,302 | $ 15,882 | $ 38,184 |

220025.

# 2000 New Program Development Grant Application
## Activity Schedule (5 points)

List the proposed activities that will be implemented to accomplish the project goals described in the narrative section and check the time period(s) during which they are projected to occur.

PROGRAM NAME: Cumberland County CASA Program    CITY & STATE Carlisle, PA

*Please use additional pages if necessary.*

| ACTIVITY DESCRIPTION | 1st quarter | 2nd quarter | 3rd quarter | 4th quarter | 5th quarter | 6th quarter | 7th quarter | 8th quarter | Title of person who will perform task |
|---|---|---|---|---|---|---|---|---|---|
| Establish an Advisory Council | X | | | | | | | | Family Court Judge |
| Complete qualifying steps for the provisional NCASAA membership | X | | | | | | | | Advisory Board |
| Select CASA Program Director | X | | | | | | | | Family Court Judge |
| Develop working agreements with CASA program, courts & CYS | X | X | X | | | | | | Family Court Judge, CASA Director and Children and Youth Services |
| Set up Fiscal Accounts | X | X | X | | | | | | CASA Director and Court Administrator |
| Develop CASA Training Program | X | X | X | | | | | | Family Court Judge, Advisory Board and CASA Director |
| Create CASA Volunteer Management Plan | X | X | X | | | | | | Advisory Board & CASA Director |
| Recruit and Screen Volunteers | | | X | X | X | X | X | X | Family Court Judge, Advisory Board and CASA Director |

National CASA approved: _____    Date: _____

220026

# 2000 New Program Development Grant Application
## Activity Schedule (5 points)

List the proposed activities that will be implemented to accomplish the project goals described in the narrative section and check the time period(s) during which they are projected to occur.

PROGRAM NAME: Cumberland County CASA Program    CITY & STATE Carlisle, PA

*Please use additional pages if necessary.*

| ACTIVITY DESCRIPTION | 1st quarter | 2nd quarter | 3rd quarter | 4th quarter | 5th quarter | 6th quarter | 7th quarter | 8th quarter | Title of person who will perform task |
|---|---|---|---|---|---|---|---|---|---|
| Comprehensive Training of CASA Volunteers | | | | X | X | X | X | X | CASA Director & Service Agencies |
| Identify and assign CASA Case Assignments | | | | | X | X | X | X | Family Court Judge & CASA Director |
| Setup Case and Volunteer Databases | | | | | X | | | | Clerical Assistant |
| Monitor and Evaluate Performance | | | | X | X | X | X | X | CASA Director and Family Court Judge |
| Plan fund-raising strategies | | | X | | | X | | | Advisory Board and CASA Director |
| Grant Reporting Procedures | | X | | X | | X | | X | CASA Director |
| On-line Reporting Internet Access | X | X | X | X | X | X | X | X | CASA Director and Clerical Assistant |

National CASA approved: _____    Date: _____

220027

## 2000 New Program Development Grant Application
## Program's Operating Budget Sheet (2000 Fiscal Year Report)
(along with Project Narrative Question on Program's Operating Budget, worth 10 points)

PROGRAM NAME: Cumberland County's CASA Program   CITY & STATE Carlisle PA

FISCAL YEAR BEGINS: July 1, 2000   FISCAL YEAR ENDS: June 30, 2001

### CUMBERLAND COUNTY'S CASA PROGRAM-BUDGET
### CARLISLE, PA

#### FISCAL YEAR 2000-2001

**EXPENDITURES:**

#### PERSONNEL

| | |
|---|---|
| Program Director (effective 7/01/2000) | 40,382 |
| Fringe Benefits Package | 9,097 |
| Total Personnel | 49,479 |

#### RENT & UTILITIES

| | |
|---|---|
| Training Space ($50/day for 9 days) | 450 |
| Total Rent & Utilities | 450 |

TOTAL COUNTY IN-KIND CONTRIBUTION        $49,929

National CASA approved: _____   Date: _____

220028

> # Recommendation of the Court
> # For a
> # NCASAA New Program Development Grant

I, _____Edward Guido_____ , Presiding Judge in civil child abuse and

neglected cases in _____Carlisle_____ __PA___ _____Cumberland_____ , recommend
                                City            State           County

the proposal of ___Cumberland County's CASA Program_____which is requesting funding to develop
                                 Name of Organization

a volunteer CASA or Guardian ad Item program, I understand that the purpose of a CASA program is to

recruit, train, and supervise volunteers to assist the court in protecting the best interests of abused and

neglected children. I am aware that the support of the court and a good working relationship are critical to the

success of the program. I agree to work with the planning committee to establish a memorandum of

understanding between the court and the program which will specify the role and legal standing of the

volunteer and set forth procedures for appointment of volunteers to cases.

I am also aware that the staff and administrative officials of the program have an obligation to communicate

Regularly with the court to evaluate the performance of volunteers and obtain suggestions for the growth and

Future development of the program.

Comments: <u>As the Judge who decides all dependency issues I can state unequivocally that there is a strong need
for a CASA program here in Cumberland County. Because of the adversarial nature of the proceedings. I am
not always given a true picture of what is in the child's best interest. A CASA volunteer will be able to
provide me with the detailed information that is not distorted by the prism of the adversarial process. I am
particularly impressed by the fact that each CASA volunteer will deal with only one child or one sibling group.
This will allow me to be provided with the kind of in depth information I cannot always get from overworked
caseworkers and attorneys. I am confident that the program will be of great benefit to our community.</u>

Signed: _____    Date:_____ March 8, 2000

220029



COMMONWEALTH OF PENNSYLVANIA
NINTH JUDICIAL DISTRICT
CUMBERLAND COUNTY

EDWARD E. GUIDO
JUDGE

COURTHOUSE
ONE COURTHOUSE SQUARE
CARLISLE, PA 17013-3387
(717) 240-6290
FAX (717) 240-6462

March 8, 2000

National CASA Association
100 West Harrison Street
North Tower, Suite 500
Seattle, Washington  98119

Dear CASA Association:

As the Judge who decides all dependency issues I can state unequivocally that there is a strong need for a CASA program here in Cumberland County. Because of the adversarial nature of the proceedings, I am not always given a true picture of what is in the child's best interest. A CASA volunteer will be able to provide me with the detailed information that is not distorted by the prism of the adversarial process.

I am particularly impressed by the fact that each CASA volunteer will deal with only one child or one sibling group. This will allow me to be provided with the kind of in depth information I cannot always get from overworked caseworkers and attorneys.

I am confident that the program will be of great benefit to our community.

Very truly yours,

Edward E. Guido

EEG/sld

## State Organization Recommendation
## New Program Development Grant Application

This form is to be completed by the director or board president of the state office or state organization and submitted with the proposal. Return the completed form to the applicant. <u>Do not send it directly to National CASA. Doing so will eliminate the applicant from consideration!</u>

*Note:* National CASA requires applicants for New Program Development grants to have had communication with the national office and with their state's CASA organization where one exists. The intent of this requirement is to assure that the individuals and organizations applying for grant funds have had the opportunity to gain knowledge and understanding of the CASA concept as well as the skills and experience necessary to build a successful program. As a partner to National CASA in helping communities establish strong local programs, your observations and opinions of the applicant organization are important in helping reviewers to make appropriate funding recommendations. It is understandable that you would want every applicant from your state to be funded. However, if your assistance is to be meaningful to the developing program, your feedback must be honest and open.

Name of Applicant Program/Organization:     Cumberland County CASA Program

City, State, County

Carlisle, Pennsylvania, Cumberland County

Name of State Organization:     Pennsylvania CASA Association

Person Completing Form:     S. Georgene Thompson

Title:     Executive Director

1. How many contacts have you (or a representative of the state organization) had with the applicant group?
   *None* ☐    *Up to five* ☐    *Between 5-10* ☐    *More than 10* ☒    *Do not know* ☐

2. Over what period of time has contact occurred?
   *6 mo. to 1 yr.* ☐    *Less than 6 mo.* ☐    *Other (Specify)* ☒    *Do not know* ☐
   Meetings have been held over a period of two years leading to formation of the committee.

3. Have you (or other representative of the state organization) made onsite visits to this community?
   *Yes* ☒    *No* ☐    *How many times?*
   I have made 6 visits to the community, personally, and program directors have made others

4. Have you met with the presiding judge?    *Yes* ☒    *No* ☐

5. How would you rate the judge's support for the program?
   *Very supportive* ☒    *Moderately Supportive* ☐    *Not Supportive* ☐    *Do not know* ☐

6. How would you rate the degree to which the planning committee members understand the CASA program and how it operates within the court and child welfare system?
   *Excellent understanding* ☒    *Some understanding* ☐    *Need more information* ☐

7. Of the following skills critical to program development, please check the ones that the current applicant group possesses.
   *Organizational development* ☒    *Fundraising* ☒    *Public relations* ☒    *Human resources* ☐
   *Financial management* ☒

8. How would you rate the applicant's chances for establishing a successful program?
   *Excellent* ☒    *Moderate* ☐    *Not good* ☐

8. Overall comments:
   See attached

220031

# Pennsylvania Court Appointed Special Advocate Association



A powerful voice
in a child's life ™

2331 Market Street, Camp Hill, PA 17011
Call (717) 737-7344 • Fax (717) 737-7330
email: pacasa@epix.net

March 6, 2000

TO:         National CASA Association Grant Proposal Review Committee

From:       S. Georgene Thompson
            Executive Director, PA CASA Association

RE:         Grant Proposal for Cumberland County CASA Program

I strongly support your consideration of the grant proposal offered by the Cumberland County CASA Program for New Program Development. Over a period of two years, the leadership of the Pennsylvania CASA Association has watched this group grow in understanding about the mission and role of CASA and has witnessed directly the support for the program shown by key stakeholders in the child welfare and court system.

Judge Edward Guido presides at dependency hearings for the county. Since assuming this position he has been the driving force behind the formation of a Cumberland County CASA Program. The Judge conducted a meeting of the Advisory Committee just one week ago, that included the Director and Assistant Director of Children and Youth Services, the Solicitor for Children and Youth Services, attorneys that represent parents and children in dependency court, service providers, the clergy, the medical community, representatives from community organizations that have an interest in children, and an abuse survivor. The degree of participation at that meeting demonstrated broad-based support for a CASA program. At that meeting I heard both Gary Shuey, the Director of Children and Youth Services, and the Judge tell the group in plain words that they want a CASA program in the county and believe it to be a necessary part of serving the child's best interests.

Judge Guido has also made contacts to insure the support of the county leadership for CASA. The county has committed to providing a high level of in-kind donations to get the program started. It is also clearly in the plan that the county expects bring the program under the court system's funding by the end of the grant period.

It appears all the pieces are in place to make this program a success now and into the future.

# Cumberland County Children & Youth Services

March 2, 2000



*Protecting Children.*
*Preserving Families.*

**Agency Administrator**
Gary L. Shuey, LSW

**County Commissioners**
Nancy A. Besch
Earl R. Keller
Marcia L. Myers

Mr. Michael Piraino, CEO
National CASA Association,
100 W Harrison St., North Tower, Suite 500
Seattle, WA  98119

Dear Mr. Piraino:

I am pleased to send this letter of endorsement for the CASA Program. We have worked with Judge Guido and his staff from the very inception of the CASA proposal. We have been involved in every step of the process.

We are excited about the concept and what it will bring to our community. We are not approaching our system as "broken or needing fixing". Instead, we see CASA as a welcome addition to the other individuals interested in the welfare of our children and youth. The CASA volunteer would be an integral part of our "community team" working to help ensure the well being of the children and youth of Cumberland County.

We pledge our support and cooperation towards this effort. If you have any questions or, need any additional assistance, please call. Thank you for your efforts on behalf of CASA.

Sincerely,

Gary L. Shuey, MSW, LSW
Administrator

Suite 200
Human Services Building
16 West High Street
Carlisle, PA 17013-2961
(717) 240-6120
(717) 697-0371, Ext. 6120
(717) 532-7286, Ext. 6120

220033

March 2, 2000

# Cumberland County
# Children & Youth
# Services



*Protecting Children.*
*Preserving Families.*

Agency
Administrator
Gary I. Shuey, LSW

County
Commissioners
Nancy A. Besch
Earl R. Keller
Marcie L. Myers

Suite 200
Human Services Building
16 West High Street
Carlisle, PA 17013-2961
(717) 240-6120
(717) 697-0371, Ext. 6120
(717) 532-7286, Ext. 6120

Ms. Laura Patterson
Cumberland County
Criminal Justice Policy Team
1 Courthouse Square
Carlisle, Pa. 17013

Dear Ms. Patterson:

As Chairperson of the Cumberland County Children and Youth Services Citizen Advisory Committee, I wish to join with the Agency in endorsing the Court Appointed Special Advocate CASA proposal. The Committee had the opportunity to meet last night with Judge Guido and his staff. The Judge explained the need for the program and outlined a plan to make it a reality.

Many of us sit on the Agency Multi Disciplinary Team reviewing cases of abuse and neglect. As a citizenry, we are shocked to learn that such abusive and neglectful situations exist here in our communities. We are in awe of the enormous responsibilities placed upon the Child Welfare and Judicial Systems.

It appears to make perfect sense that these systems need all the help they can muster from our community. The CASA volunteer is a person who can provide some of that help. This CASA person stands to assist the Court in gathering information and helping arrive at better decisions for children and their families. The CASA volunteer will assist the children and families as they work with the many agencies designed to help them. The CASA volunteer will be part of the social service, legal, family team dedicated to providing the best possible solution to the situations facing the children and families coming before the Court.

We are truly excited about the prospect of such an organization as CASA in our community. We encourage you to apply for the grant and, please, keep us informed as to what we might do to assist you in this important community effort.

Sincerely,

*Jayne Abrams*

Jayne Abrams, Chairperson
CCC&YS Citizen
Advisory Committee

220034

CASA Introductory Meeting
March 1, 2000

Carlisle Country Club

Attendees:

| | | |
|---|---|---|
| Mrs. Carol Case<br>Citizen | 2314 Walnut Street<br>Camp Hill, PA  17011 | 761-5572 |
| James K. Jones<br>Attorney | 7 Irvine Row<br>Carlisle, PA  17013 | 240-0296<br>jkjonesv@aol.com |
| Ed Guido<br>Judge | 1 Courthouse Square<br>Carlisle, PA  17013 | 240-6290 |
| Laura Patterson<br>Grants Administration | 16 W. High Street<br>Carlisle, PA  17013 | 240-6560<br>lpatterson@ccpa.net |
| Georgene Thompson<br>PA CASA Association | 2331 Market Street<br>Camp Hill, PA  17011 | 737-7344<br>pacasa@epix.net |
| Cindy Snescak<br>Good Hope Psychotherapists | 1035 Mumma Road<br>Wormleysburg, PA | 975-5525 |
| Wanda Noll<br>CASA Director | York County CASA<br>York County Courthouse<br>York, PA 17401 | 771-9754 |
| Carl Conellellan<br>Cumberland County Courts | 1 Courthouse Square<br>Carlisle, PA  17013 | 240-6290 |
| John Lemmon<br>Professor | 6162 Moorgate Circle<br>Mechanicsburg, PA  17055 | 795-8892 |
| Francis K. Delluca<br>Attorney | 10 W. High Street<br>Carlisle, PA  17013 | 249-1323 |
| Gary Shuey<br>Director | Cumberland County Children & Youth<br>16 West High Street, Suite 300<br>Carlisle, PA  17013 | 240-6144 |
| Robert P. Kline, Esq. | 331 Bridge Street, Suite 350<br>New Cumberland, PA  17070 | 770-2540 |
| Ruby Weeks<br>Attorney | Cumberland County Children & Youth<br>16 West High Street, Suite 300<br>Carlisle, PA  17013 | 243-1294 |

| | | |
|---|---|---|
| Darlene Orr<br>Assistant Director | Cumberland County Children & Youth<br>16 West High Street, Suite 300<br>Carlisle, PA 17013 | 240-6422 |
| Rev. Wanda Veldman | 30 North Pitt Street<br>Carlisle, PA 17013 | 243-2512<br>wveldman!planetcable.net |
| Jacqueline M. Verney, Esq. | 44 South Hanover Street<br>Carlisle, PA 17013 | 243-9190<br>jmverney@aol.com |
| Lindsay Baird, Esq. | 37 South Hanover Street<br>Carlisle, PA 17013 | 243-5732<br>bairdlaw@pa.net |
| John F. Wain<br>Exchange Club | 801 Wellington Dr.<br>Carlisle, PA 17013 | 249-6007<br>jfw@pa.net |
| Joan Carey<br>Attorney | 8 Irvine Row<br>Carlisle, PA 17013 | 243-9400<br>lsicarl@innernet.net |
| James D. Flowers, Esq. | 11 East High Street<br>Carlisle, PA 17013 | 243-5513 |
| Ron Turo<br>Attorney | 32 S. Bedford Street<br>Carlisle, PA 17013 | 245-9688 |
| Lisa M. Greason<br>Attorney | 32 S. Bedford Street<br>Carlisle, PA 17013 | 245-9688 |
| Barbara Varner<br>Probation Officer | Juvenile Probation<br>1 Courthouse Square<br>Carlisle, PA 17013 | 240-6524 |

220036

# CUMBERLAND COUNTY
## COURT APPOINTED SPECIAL ADVOCATE PROGRAM
### *ADVISORY BOARD/COMMITTEE*

## Roles and Responsibilities

**RESPONSIBILITIES:**

Understand and support the mission of the Cumberland County CASA Program

Attend all board meetings, review materials as needed, and respond to inquiries between meetings

Initiate and/or participate in discussions about program related issues

Attend community orientations and/or swearing in ceremonies

**ROLES:**

Provide counsel to the Cumberland County CASA Program rather than serving as a governing body.

Gather information to aid the in establishment of the program

Impact the decision making process by representing the community's viewpoint

Serve as the conduit for input from the community to assist in the development and management of the program

Provide advice on such issues as volunteer training, services provided by the program, and conflicts or concerns that may arise

Review program adherence to CASA standards established by the Commonwealth of Pennsylvania and the National CASA Association

Identify funding and other resources within the community to support the program

Interpret the program to the public and represent CASA as ambassadors in the community
- Identify groups for CASA program outreach
- Speak, as needed, to churches, service groups, community organizations, and others
- Assist with public relations activities

Assist in volunteer recruitment