IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Barbara E. Varner,** : | NO.: 1:CV-01-0725 |
| **Plaintiff** : | |
| : | |
| v. : | **JURY TRIAL DEMANDED** |
| : | |
| **Commonwealth of Pennsylvania,** : | |
| **Ninth Judicial District, Cumberland** : | **JUDGE YVETTE KANE** |
| **County, and Cumberland County** : | |
| **and S. Gareth Graham, Individually,** : | |
| **and Joseph Osenkarski, Individually,** : | **ELECTRONICALLY FILED** |
| **Defendants** : | |

**CUMBERLAND COUNTY'S BRIEF IN REPLY TO
PLAINTIFF'S BRIEF OPPOSING SUMMARY JUDGMENT**

**I.  SUPPLEMENTAL PROCEDURAL HISTORY**

On January 21, 2004, Plaintiff Varner filed her Brief in Opposition to Cumberland County's Motion for Summary Judgment. The County's Brief in Reply was due February 9, 2004.

**II.  REPLY ARGUMENTS**

**A.  The fact that the Court employees may have been covered by the County's Sexual Harassment Policy does not make them joint employees of the County.**

Varner makes much of the fact that President Judges Sheely and Hoffer each stated that the sexual harassment policy applicable to their employees would have been contained in the County manual. For purposes of summary judgment, the County does not argue with this proposition. However, Plaintiff's point is without any substance. Plaintiff does not dispute that the President Judge has the sole authority to hire, fire or discipline his employees. The County

could well conclude and, indeed did conclude in the DeLuce investigation that the sexual harassment policy had been violated and that disciplinary action was appropriate.

Since both President Judge Sheely and President Judge Hoffer declined to follow the County's strong recommendations about the need for disciplinary action there is not much content in the statement that these Court employees are covered by the County's sexual harassment policy. A policy that the County cannot enforce and that the Court can arbitrarily ignore is for all practical intents and purposes, no policy at all.

In her brief Varner chides the County at some point for exalting form over substance. However, in this instance Varner is guilty of the same crime. In form, the Court employees may in deed be subject to the County's sexual harassment policy. In substance, they are subject to the whim or wisdom of their President Judge who has absolutely no restrictions imposed upon his abilities to discipline or excuse his employees for violations of the County's policy.

In another attempt to exalt form over substance Varner argues: "Hartnett was asked whether he ever told Varner 'that she should go directly to Judge Sheely' as opposed to dealing with him about her complaints." Hartnett replied "I don't think I did, no." Plaintiff's brief at 5. This would suggest that Hartnett had some control over the disposition of Varner's complaints. However, Varner completely ignores the fact that Hartnett and other leading County officials such as the solicitor and chief clerk went to the President Judges more than once with requests that Varner's complaints be acknowledged. In each case these requests were denied. Had Hartnett any control over his own sexual harassment policy he would not had needed to go hand and knee to the President Judge to seek its enforcement over Court employees.

Varner points to the fact that Osenkarski was reprimanded by the Chief Clerk in 2002 for the fact that Varner was left in her office during a bomb scare. The Court can reprimand

Osenkarski. Defense counsel can reprimand Osenkarski. The Chief Clerk can reprimand Osenkarski. All of those reprimands mean the same thing, i.e., nothing. No one other than the President Judge can discipline Osenkarski and Osenkarski realized that by saying that it was given "by someone other than a Judge who I did not work for." See Plaintiff's Brief at 6.

**B.     Plaintiff's argument that the County is a joint employer because it might have to pay any judgment against the Court represents the worst legal reasoning since Plessy v. Ferguson.**

At page four of her brief Varner argues that because Varner, Graham and Osenkarsi are paid by the County, the Court Defendant:

> "has no ability to pay its probation officers, promote those officers, or otherwise expend funds. It also has no money to remedy any violation of Title VII or the PHRA.
>
> The County's Salary Board would vote to approve the hiring or promotion of probation office employees [citation omitted]. Varner's Complaint requests compensatory damages and injunctive relief against both the County and the Court Defendants. The reason is quite simple: The County may be required to pay any judgment against the Court Defendant. If the Court Defendant has no source of funds except through Cumberland County, then relief against the County may be absolutely necessary to remedy Varner's claim under Title VII or under the PHRA for that matter." (Emphasis supplied).

The record is completely devoid of any evidence that the Court has no assets. Indeed, the Court under the unified court system is an integral part of the Supreme Court of Pennsylvania which obviously has assets which could be levied upon in the unlikely event Varner prevails in this case.

Moreover, the Court system in Pennsylvania is such that while counties may be required, contrary to decisional law, to pay the salaries of Court staff members, the salaries of the Judges are not paid by counties but are paid for by the Court. To suggest that the Court is therefore

3

without assets sufficient to satisfy judgment against it and that this reason requires the County to defend a case not involving its own employees where it was not able to make effective recommendations concerning discharge or discipline is unreasonable.

Graves v. Lowery, so extensively analyzed in Plaintiff's brief, in fact contains language that completely undermines Plaintiff's argument that the County must remain in this case to pay any judgment against the Court. In Graves footnote 7 states:

> "The Pennsylvania Supreme Court settled with the clerks prior to the entry of the district court's order dismissing the clerks' complaint against Dauphin County."

Clearly, when the Court wants it has the power and the assets to resolve claims made against it. To assert the County should have to defend against allegations of fact it had no control over and which did not deal with any of its employees solely on the basis that the County might have to pay the Court's judgment is plain error.

### C. **Plaintiff's analysis of Faragher and Ellerth is flawed insofar as it applies to the continued vitality of Graves v. Lowery.**

The central thesis of Plaintiff's analysis of Faragher and Ellerth is that those two Supreme Court decisions create affirmative defenses which, instead of overruling or distinguishing Graves, supra, instead are irrelevant to Graves. Plaintiff supposes that because Defendants Osenkarski and Graham are supervisors their conduct, if it results in a tangible employment action to Varner, invokes a rule of strict liability and the affirmative defenses would not be available to the County in any event. Therefore, the fact that they were not available in this case, i.e., the County recommended discipline of Osenkarski and Graham that would have satisfied Varner, the Court vetoed that discipline – means they are not relevant to the continued vitality of Graves.

4

Varner's analysis begs the question of course of whether Varner ever suffered a tangible employment action – a matter addressed ably in the briefs of the Co-Defendants.

For purposes of the County's argument, however, one has to look at the logic the Supreme Court uses in holding employers vicariously liable for the conduct of its supervisors in certain sexual harassment cases. If that logic does not apply to the facts presented in this case, the argument that <u>Faragher</u> and <u>Ellerth</u> have made <u>Graves</u> distinguishable from this case becomes stronger.

The thrust of the Court's discussion in <u>Faragher</u> primarily deals with the issue of employer liability for supervisory conduct. The creation of the affirmative defenses occupies only a very small portion at the end of the Court's decision.

In <u>Faragher</u> the Supreme Court stated that Section 219(2)(d) of the Restatement of the Law of Agency 2d "provides an appropriate starting point for determining" when an employer will be vicariously liable for the conduct of its supervisors. Section 219(2)(d) provides, "a master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless…the servant purported to act or to speak on behave of the principal and there was reliance upon the apparent authority, or he was aided in accomplishing the tort by the existence of the agency relationship." The Court then noted that "there is a sense in which a harassing supervisor is always assisted in his misconduct by the supervisory relationship." The opportunity for the victim to avoid the harassing conduct is much reduced when the harasser is a supervisor designated by the employer. Regardless of whether the supervisor is acting within or outside the scope of his employment, the supervisor's power and dominance over the victim is clearly aided by the fact that the employer has created the supervisor as its agent.

Thus the Court held:

> "Recognition of employer liability when discriminatory misuse of supervisory authority alters the terms and conditions of a victim's employment is underscored by the fact that the employer has a greater opportunity to guard against misconduct by supervisors than by common workers; <u>employers have greater opportunity and incentive to screen them, train them, and monitor their performance.</u> (Emphasis supplied)."

Applying these principles to this case, the alleged conduct of Osenkarski and Graham towards the Plaintiff was offensive and frightening to the Plaintiff precisely because these individuals had been created as the President Judge's designated agents in administering the Juvenile Probation Department. Clearly, if Osenkarski and Graham were not the Plaintiff's bosses the interpretation of their alleged conduct of sexual harassment would be vastly altered.

Under the Supreme Court's rationale the employer should be liable for Osenkarski and Graham because the employer has a greater opportunity to guard against misconduct by supervisors in a greater opportunity and incentive to train them and monitor their performance.

When we refer to the "employer" in this sense clearly the reference can only be to the Court of Common Pleas and not to the County. The County has no opportunity to monitor the performance of the Court's supervisors – no one in this case disputes that that is the sole province of the President Judge. The County has no ability to screen or train the Court's supervisors since all matters having to do with the probation department are left to the President Judge. While the County may make a suggestion as to how to monitor, screen or train a Court supervisor regarding sexual harassment matters, that suggestion does not have to be accepted. The County in this case obviously did make suggestions and obviously those suggestions were rejected.

Therefore, the idea that Osenkarski and Graham are employees of the County as well as the Court is simply inconsistent with the analysis set forth in <u>Faragher</u>.

The most that can be said, applying this analysis, is that if <u>Graves</u> requires that Osenkarski and Graham be a "joint employee" of the Court and the County, vicarious liability can be imposed only on the Court and not on the County.

This conclusion then dictates that for purposes of this case <u>Graves</u> has no application: The County simply is not part of the process of supervising, training and monitoring probation department officials as the conduct and decisions of the two President Judges in this case have made perfectly clear.

Therefore, Plaintiff's argument that the vitality of <u>Graves</u> has been left unaffected by the new Supreme Court jurisprudence is without merit.

### III.  CONCLUSION

The County respectfully submits its Summary Judgment Motion should be granted.

Respectfully submitted,

**THOMAS, THOMAS & HAFER, LLP**

*s/Paul J. Dellasega*

By:_____
James K. Thomas, II, Esquire
Atty. ID #:  15613
Paul J. Dellasega, Esquire
Atty. ID #:  23146
305 North Front Street
Sixth Floor, P.O. Box 999
Harrisburg, PA  17108
(717) 255-7602

Attorney for Defendant Cumberland County

DATE:  February 9, 2004
270309.1

7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Barbara E. Varner,** | : | NO.: 1:CV-01-0725 |
| **Plaintiff** | : | |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| **Commonwealth of Pennsylvania,** | : | |
| **Ninth Judicial District, Cumberland** | : | **JUDGE YVETTE KANE** |
| **County, and Cumberland County** | : | |
| **and S. Gareth Graham, Individually,** | : | |
| **and Joseph Osenkarski, Individually,** | : | **ELECTRONICALLY FILED** |
| **Defendants** | : | |

## CERTIFICATE OF SERVICE

I hereby certify that I sent a true and correct copy of the foregoing document to the following counsel of record, by placing a copy of same in the United States, first class mail, postage prepaid, addressed as follows:

Debra K. Wallet, Esquire
24 North 32nd Street
Camp Hill, PA  17011

A. Taylor Williams, Esquire
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA  19102

David J. MacMain, Esquire
Montgomery, McCracken,
 Walker & Rhoads, LLP
123 South Broad Street
Avenue of the Arts
Philadelphia, PA  19109

Paul J. Adams, Esquire
Sweeney & Sheehan, P.C.
1515 Market Street, 15th Floor
Philadelphia, PA  19102

**THOMAS, THOMAS & HAFER, LLP**

*s/Paul J. Dellasega*

By:  _____
Paul J. Dellasega, Esquire

Dated:  February 9, 2004