IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA E. VARNER | : CIVIL ACTION |
| v. | : |
| COMMONWEALTH OF PENNSYLVANIA NINTH JUDICIAL DISTRICT, CUMBERLAND COUNTY; CUMBERLAND COUNTY; S. GARETH GRAHAM, individually; JOSEPH OSENKARSKI, individually | : **JURY TRIAL DEMANDED**<br>:<br>:<br>:<br>: NO. 1:01-CV-725 |

### DEFENDANT JOSEPH OSENKARSKI'S REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO SUMMARY JUDGMENT

A. <u>Response to Plaintiff's Argument that Osenkarski Failed to Take Action To Prevent Discrimination by Graham.</u>

Alarmingly, Plaintiff's contention that she gave Osenkarski notice of discriminatory behavior by Graham is entirely untrue. Plaintiff argues, on page 6 of her Brief In Opposition to Defendant Osenkarski's Motion for Summary Judgment (hereinafter "Plaintiff's Brief"), that she complained by following the chain of command and "initially went to Osenkarski...to complain about Graham's use of the F word" which placed Osenkarski on notice of Discrimination, and cites to pages 97, 167 and 169 of her deposition. (Varner at 97, 167 and 169). Rather such cited pages of Plaintiff's deposition, to include the page 168 which she conveniently failed to include, clearly articulate and reiterate the fact that the first and only time Plaintiff complained to Osenkarski about Graham regarded work performance issues and had nothing to do with discriminatory behavior, as indicated in Plaintiff's deposition:

> Q.  Why was he screaming at you?
>
> A.  He just was unhappy with the way I handled the cases, I presume, the pattern I had done a hundred of times before. No a hundred times, 50 times before.

Q. So the basis for him screaming at you had to do with his assessment of your performance?

A. Yes.

Q. And he was unhappy with your performance, he told you - screamed at you and told you to get out of his office?

A. Threw me out of his office.

Q. Did he give you any instructions in terms of how he wanted you to do it differently?

A. No.

Q. So just threw you out of the office over a performance issue. You then went to Mr. Osenkarski in February Marsh of 1997 about Graham's behavior?

A. He had been back in the office to begin with when I had started discussing this case with Mr. Graham. And I had looked to Mr. Osenkarski, I said is this not the way we always proceed, the same thing we've always done. And he said, yes, but Mr. Graham's in charge, He verified that that, indeed, was the way, you know, when we turned cases in to Mr. Osenkarski that he was fine with it, but Mr. Graham was in charge.

Q. So if I understood correctly, there was an issue about the manner in which you were doing some paperwork, I guess?

A. Right.

(Varner at 168-169). These facts are undoubtedly undisputed. Plaintiff is utterly misleading in her emphasis that she told Osenkarski, in March 1997, "to do something about Graham" as such the comment solely regarded the issue of Graham's behavior toward related to case files and nothing discriminatory. (Varner at 167-170). Without Osenkarski being on notice, Plaintiff cannot show that he failed to take action of alleged discriminatory acts by Graham. (See Dici v. Commonwealth of Pa, 91 F.3d 542, 553 holding that a supervisor can only be found to be aiding and abetting if apprized of discriminatory conduct.) Moreover, she clearly contradicts herself and admits that "By June 1997 Osenkarski should

-2-

have been on notice" of her complaint of sexual harassment against Graham when he "was copied on the Memorandum from President Judge Sheely to John Ward...dated July 11, 1997." (Plaintiff's Brief at 7). Plaintiff filed a formal complaint with the U.S Equal Employment Opportunity Commission on July 21, 1997. (Varner at 199).

Plaintiff further attempts to mislead and confuse this Honorable Court, by arguing that even after the July 11, 1997 Memorandum Osenkarski failed to take action to "monitor the relationship between Plaintiff and Graham." Id. Rather, it is undisputed that Osenkarski's lack of action during this time period was due to Plaintiff's reporting of sexual harassment against Graham and himself and his decision to not interfere in the County's and EEOC's investigation. (Osenkarski at 84). Additionally, as submitted to this Honorable Court previously, it is the President Judge who is the head, and decision maker with regard to discipline within the entire Probation Department. (Varner at 155). Knowing this, Plaintiff admits within her Brief, that President Judge Hoffer, the only person with authority to remove an alleged sexual harasser in the Juvenile Probation Department, made the decision to transfer Graham to another assignment away from Plaintiff. (Plaintiff's Brief at 7). Osenkarski did not have authority to make such a decision. Further Plaintiff admits that Osenkarski's "corrective plan", which "referenced sexual harassment" was done after Plaintiff reported alleged Discrimination, not to Osenkarski, but to the Cumberland County's Human Resource Office and after President Judge Sheely instructed him to "come up with a plan." (Plaintiff's Brief at 9). As such there is no evidence which could allow a reasonable fact finder to conclude that Osenkarski failed to take action against discriminatory behavior since there was no notification of the acts.

    B.    <u>Response to Plaintiff's Argument that Osenkarski Engaged In Retaliation Against Varner.</u>

Plaintiff's three (3) reasons that support her claim of retaliation by Osenkarski are mischaracterized and without merit. (Plaintiff's Brief at 11). First, it is undisputed that the request for Plaintiff to not access an area in the courthouse was solely at the bequeath of President Judge Hoffer and for the safety of Plaintiff and Graham's wife due to hostile confrontations between the two. (Judge Hoffer at 38-40). As previously mentioned, in Osenkarksi's Memorandum of Law in Support of Summary Judgment, news of an affair between Plaintiff and Graham, infuriated Mrs. Graham, also an employee of the courthouse. Judge Hoffer in an attempt lesson the probability of contact between Plaintiff and Mrs. Graham singularly made the decision to ask Plaintiff to stay from the area where Mrs. Graham worked until Mrs. Graham could be permanently relocated so the two could not have contact. Id. Plaintiff's mischaracterization of Judge Hoffer's deposition testimony is, again, misleading as she attempts to infer that the decision to have Plaintiff stay away from an area in the courthouse came from either Osenkarski or Judge Hoffer. The record is clear from Judge Hoffer's deposition testimony that it was his decision:

> Q.    Well, let me ask you this, Judge Hoffer. Did she agree as a result of this meeting to what you had asked her to do?
>
> A.    My impression was that she did not.
>
> Q.    Did you give her and order?
>
> A.    What order?
>
> Q.    An order not to go to the office where Barbara Graham was?
>
> A.    Absolutely not, ma'am.
>
> Q.    So you asked her to do something, she didn't agree, and that's—

> A. I said I had the impression that she did not agree. She never gave me a definitive answer.
>
> Q. Did you believe as a result of this meeting that she would stay out of the stenographer's section?
>
> A. I didn't know, ma'am. That remained to be seen whether she would voluntarily agree to do that or not.

(Judge Hoffer at 45-46). All the parties in this litigation know fully that Judge Hoffer simply instructed Osenkarski to relay the request to Plaintiff. Any interpretation to the contrary, would be a misleading and deliberate attempt to confuse the facts of this case, in order to improperly overcome summary judgment.

Plaintiff's second accusation, that Osenkarski retaliated against her when the seniority system in the Juvenile Probation Department, is meritless as it is not sequentially possible. Significantly, the change to the seniority system was already in place upon the splitting of the Probation Department to Adult and Juvenile independently. Such an event occurred before Plaintiff complained of Discrimination against Graham and Osenkarski. The split and forming of the Juvenile Probation Department occurred upon the retirement of former Chief Ken Bolze in August 1996. (Varner at 20 and 98). Plaintiff filed her complaint of Discrimination against Graham and Osenkarski with the Cumberland County Human Resources Office on April 25, 1997, eight months later. Additionally, Plaintiff filed her complaint of Discrimination with the U.S. Equal Employment Opportunity Commission on July 21, 1997, an entire year later. (Varner at 199).

Moreover, Plaintiff admitted during her deposition, that the change to the seniority system took place before the split and prior to her even joining the Juvenile Probation Department. (Varner at 187). Since the changes to the seniority system occurred not only before her claims of discrimination, but before she even joined the Juvenile Probation Department, Plaintiff's claim of retaliation by Osenkarski fails as

no complaints existed preceding the departmental action.

Lastly, Plaintiff's third instance of retaliation, that Osenkarski acquiesced in Graham's docking of her pay therefore "violating a rule" is also sequentially impossible. Plaintiff admits that the incident occurred in December 1996. (Plaintiff's Brief at 15-16). Again, since Plaintiff didn't file her complaint of discrimination against Graham and Osenkarski with the Cumberland County Human Resources Office until April 25, 1997 and formal complaint with the U.S. Equal Employment Opportunity Commission on July 21, 1997, it would be impossible to find that Osenkarski retaliated against her. (Varner at 199).

Moreover, Plaintiff's allegations also completely contradict her previous argument, and previous testimony, that Osenkarski "took no action" when it came to office issues and "did not want to get involved…now that Graham is in charge." (Plaintiff's Brief at 6-7). Taking what Plaintiff has stressed is an unrelenting and unchanging manner of managing an office, there would not be any nexus to relate Graham's act of docking her pay to an intelligle or intentional act of retaliation by Osenkarski. There exist no evidence that Osenkarski had anything to do with the docketing of her pay. Plaintiff, herself, has stressed that Osenkarski "has a hands off approach" to running the Juvenile Probation as he rarely was around and therefore delegates authority and relies heavily on his supervisory staff. (Varner at 180-181 and 239).

Plaintiff's deliberate attempt to mislead this Honorable Court with regard to the facts of this case in order to overcome summary judgment is improper and should warrant summary judgment.

C.   Response to Plaintiff's Argument that Osenkarski Aided and Abetted by Conspiring with Graham and Judges Hoffer and Sheely

Plaintiff's contention that the evidence supporting conspiracy on the part of Osenkarski is contained in the "discussion and communications between Osenkarski, Graham and the decision making judges in

the case" is meritless and in total contrast to her previously sworn testimony. As argued, in Osenkarski's Memorandum in Support of Summary Judgement, it is undisputed that Plaintiff clearly stated that the only evidence existing proving conspiracy by Osenkarski is based on her not being present during a few meetings between Judge Hoffer and him. Second, the meetings she was not privy to related to her being asked to stay away from an area of the courthouse ("public office") where Graham's wife worked. (Varner at 420-422).

Despite Plaintiff's previously sworn testimony, she now submits that Osenkarski conspired against her because:

(1) The County Solicitor's recommended that Osenkarski retire

(2) A document indicating an agreement to suspend Osenkarski and send him to supervisory skills and sensitivity training.

(3) Deposition testimony by Osenkarski stating that Judge Sheely's secretary, told him that he and Graham may be disciplined.

(4) Deposition testimony by Judge Sheely indicating that he had a meeting with Osenkarski around the time Graham's discipline was reduced.

(5) Deposition testimony indicating that Graham met with Judge Sheely on two occasions, including once with his lawyer.

(Plaintiff's Brief at 18-19). Nothing in these facts show that Osenkarski, in any way, conspired to discriminate against Plaintiff. In fact, they only involve communications surrounding whether, if at all, discipline would be taken against Graham and Osenkarski for alleged behavior. The reasons set forth by Plaintiff for conspiracy are meritless. To argue that "a reasonable conclusion" can be made that conspiracy took place simply because a few communications took place regarding Plaintiff's allegations of discrimination, and possible discipline surrounding them, is unsubstantial. Plaintiff argues that since the county investigator's "recommendations were not implemented" ("that Osenkarski should retire") by

the President Judge there has to be a conspiracy existing. (Plaintiff's Brief at 18). As asserted previously, it is undisputed that it is the President Judge who makes major decisions with regard to probation department personnel, with or without "recommendations" from any source. (Varner at 155). There exist no evidence that Osenkarski conspired to discriminate against Plaintiff to support her claims.

    D.    <u>Response to Plaintiff's Argument that Osenkarski Engaged In Sex Discrimination, Sexual Harassment and Inappropriate Comments</u>

As argued in his Memorandum of Law in Support of Summary Judgment, Plaintiff personally witnessed only one offensive comment, by Osenkarski, in her entire career with the probation department, which spands for five (5) years 1995-2000, and continues today. (Varner at 175-179). Osenkarski, during that singular event, was not even speaking to Plaintiff directly as she overheard a conversation between Osenkarski and fellow male probation officer Mike Varner. The other comments were received from rumormill and byway of third parties. Even the accusation of the Bic lighter, which was possibly used out of town during a conference, did not have any comments or solicitations associated with it, as Plaintiff claims he flicked the Bic lighter momentarily, for amusement during a sexual offenders program. (Varner at 179-180).

    E.    **Conclusion:**

Plaintiff has not adduced any evidence that Osenkarski violated Plaintiff's rights pursuant to Title VII and/or the PHRA by failing to take action to prevent discrimination, directly discriminating, conspiring or retaliation against Plaintiff. Therefore, all such claims in Counts II, and otherwise, against

Osenkarski should be dismissed with prejudice.

**SWEENEY & SHEEHAN**

By: _____
Paul Lancaster Adams
I.D. No. 72222
1515 Market Street, 19th Floor
Philadelphia, PA 19102
(215) 563-9811
Attorney for: Joseph Osenkarski

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA E. VARNER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA | : | **JURY TRIAL DEMANDED** |
| NINTH JUDICIAL DISTRICT, | : | |
| CUMBERLAND COUNTY; CUMBERLAND | : | |
| COUNTY; S. GARETH GRAHAM, | : | |
| individually; JOSEPH OSENKARSKI, | : | |
| individually | : | NO. 1:01-CV-725 |

**CERTIFICATION OF SERVICE**

I hereby certify that I have served a true and correct copy of the foregoing **Reply of Defendant Joseph Osenkarski to Summary Judgment** name of document upon all interested counsel by United States Mail, First Class, on the date set forth below.

SWEENEY & SHEEHAN

By: _____
Paul Lancaster Adams

DATE:   February 9, 2004

**INTERESTED PARTIES**:

Debra K. Wallet, Esquire
24 North 32nd Street
Camp Hill, Pennsylvania 17011

A. Taylor Williams, Esquire
Administrative Offices of
Pennsylvania Courts
1515 Market Street - Suite 1414
Philadelphia, PA 19102

David J. MacMain, Esquire
**Montgomery, McCracken, Walker & Rhoads, LLP**
123 South Broad Street
Avenue of the Arts, 28th Floor
Philadelphia, PA 19109

Paul J. Dellasega, Esquire
**Thomas, Thomas & Hafer, LLP**
305 North Front Street
Sixth Floor
P.O. Box 999
Harrisburg, PA 17108