**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**


BARBARA E. VARNER,                     :
                     *Plaintiff*     :     CIVIL ACTION
                                       :     NO. 1:CV 01-0725
        v.                     :
                                       :
COMMONWEALTH OF PENNSYLVANIA,          :     JURY TRIAL DEMANDED
NINTHE JUDICIAL DISTRICT, CUMBERLAND   :
COUNTY; S. GARETH GRAHAM, individually; :     JUDGE YVETTE KANE
and JOSEPH OSENKARSKI, individually,    :


**REPLY BRIEF OF COURT DEFENDANT, COMMONWEALTH OF
PENNSYLVANIA, NINTH JUDICIAL DISTRICT TO PLAINTIFF'S
RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

On summary judgment, Plaintiff is required to come forward with enough evidence to

meet a *prima facie* burden of harassment and retaliation.  Where the movant has produced

evidence in support of its motion for summary judgment, the nonmovant cannot rest on the

allegations of pleadings and must do more than create some metaphysical doubt.  Petruzzi's IGA

Supermarkets, Inc. v. Darling-Delaware Co., 98 F.2d 1224, 1230 (3d Cir.), cert. denied, 510

U.S. 993 (1993).

After months of discovery, Plaintiff presents no material facts to support her allegations.

Plaintiff must show a tangible employment action to preclude Court Defendant from prevailing

on affirmative defense.  She has failed to do so. Instead, Plaintiff wholly ignores the Court

Defendant's legal arguments and cites no specific caselaw to counter on-point decisions cited by

Court Defendant.  Moreover, Plaintiff fully misapprehends Court Defendant's argument

regarding the Ellerth defense, and makes no counter to the argument actually presented.

Indeed, even accepting, for argument's sake, that the facts as set forth by Plaintiff are true, she can state no *prima facie* case for harassment or retaliation, nor can she preclude Court Defendant from prevailing on Ellerth's affirmative defense, under the law.

## II.    ARGUMENT

### A.    ON THE RECORD AT THE CLOSE OF DISCOVERY, PLAINTIFF CANNOT SET FORTH A PRIMA FACIE CASE BECAUSE SHE CANNOT SHOW THAT ANY HARASSMENT SHE SUFFERED WAS "SEVERE & PERVASIVE."

Court Defendant's Brief sets forth the alleged "harassment"—isolated incidents spread out over considerable time.  Plaintiff, however, lumps the alleged incidents together without addressing the time of the alleged incidents, even though an examination of the time line of the allegations is necessary for any proof of "pervasive."

Plaintiff concedes that "many" "suffered from Graham's yelling and vindictiveness," (Plaintiff's Response at 8) however, those actions were not based on sex, and are wholly irrelevant to Varner sexual harassment claim--except to show that Graham did not act on the basis of sex in "yelling" and being "vindictive" in the workplace.

Osenkarski's comment about the "cunt club" an isolated incident which took place in 1993--a year and two months prior to Plaintiff even being employed by the Court. (Houser Dep. p. 8).  Houser, who brought that complaint, admitted that she had never even heard the phrase used, but was told by Bill Brandt that the term had been used.  Houser also admits that the matter was quickly resolved to her satisfaction--by an apology.  (Id, at p. 9.)

### B.    COURT DEFENDANT IS ENTITLED TO THE AFFIRMATIVE DEFENSE ESTABLISHED IN ELLERTH AND FARAGHER

#### 1.    Plaintiff cannot show a tangible employment action.

"[A] tangible employment action constitutes a significant change in employment status."

None of the actions Plaintiff alleges to be "a tangible employment action" are significant. Indeed, the individual acts the Plaintiff complains about have been held by courts not to constitute adverse employment actions. Each of Plaintiff's asserted "tangible employment actions" are rebutted below.

a.  **Docking of one hour's overtime pay:**  Plaintiff asserts she suffered an adverse employment action when she was disallowed one hour of overtime pay on December 16, 1996, because Gary Graham, then her supervisor, did not believe that a commitment trip should have taken as long as Plaintiff claimed it did.  (See Green Deposition Exhibit #1, attached hereto as <u>Reply Exhibit A</u>).  He did not believe the Plaintiff's explanation that she was detoured because of an "icy" area,[1] and thus, was entitled to substantial overtime. He did grant her overtime, but denied her one overtime hour.  (Varner dep. 101, 102)  Plaintiff cannot demonstrate that this *de minimis* loss of one-hour's overtime pay rose to the level of an adverse employment action.  See <u>Walker v. Thompson</u>, 214 F.3d 615, 629 (5th Cir. 2000) (deduction of one-hour overtime pay *de minimis*, not rising to level of adverse employment action).

b.  ***Plaintiff's "belief" that she was assigned the most <u>and the most difficult cases</u>***: Plaintiff does nothing more than repeat the allegations of her Complaint. Plaintiff admits that Darby Christlieb had more cases than she did.  (Response at 12) Additionally, Plaintiff has no offered no evidence that her cases were more difficult.  She has not demanded or presented an audit of her cases, nor offered any testimony to confirm that she was handling cases of significantly greater difficulty than the other probation officers. Thus, at the

---

[1]    Green claims an accident caused the delay, (See Green dep. Exhibit 1, attached hereto. Perhaps this difference in reasons between Plaintiff and Green was the reason Graham did not believe their excuses.

close of discovery, Plaintiff can point to no more that her "belief" that she was assigned the most difficult cases.

However, even if Plaintiff could prove that she had more cases or more difficult cases, she has not suffered a tangible employment action thereby. Assignment of more difficult work does not constitute a tangible employment action because it does not cause any "direct economic harm" to plaintiff; <u>Koschoff v.Henderson</u>, 1999 U.S. Dist. LEXIS 16184 (E.D.PA 1999), citing <u>DeCesare v. National Railroad Passenger Corp.</u>, 1999 U.S. Dist. LEXIS 7560, (E.D. PA 1999). See also <u>Policastro v. Northwest Airlines</u>, 297 F. 3d at 535 (6th Cir. 2002) (holding that a sales representative who was reassigned to cover territory 80 to 100 miles from her home could not make out an adverse employment action); <u>Kocsis vs. Multi-care Mgt., Inc.</u>, 97 F.3d at 876 (6th Cir. 1996) (holding that a nurse's reassignment to a more physically demanding job was not an adverse employment action).

        **c.**    ***Change in seniority policy:***  Plaintiff conveniently ignores proof submitted that illustrates clearly that Graham was not a motivating force in the change in seniority policy by baldly asserting that Graham "orchestrated" this change, with absolutely no rebuttal of the clear facts as set forth in the Court Defendant's brief. Graham's recommendation brought Plaintiff to the Department for hire). Nonetheless, the change in seniority does not constitute a tangible employment action because the change has not affected Plaintiff in any way.

        **d.**    ***"The loss of 8 weeks pay at a promotional rate:"***  Plaintiff alleges that she lost pay because of the change in the seniority policy in her department. Neither she nor Bill Brandt (who moved ahead of Plaintiff on the seniority list) were promoted on April

8.[2]  They were both promoted thereafter on the same day.  Plaintiff did not suffer a tangible

adverse employment action by the delay in the promotion.  See Logan v. Henderson, 2002 U.S.

Dist. LEXIS 15679 (U.S.D.C. S.D. Ohio 2002).  (Delay in an allegedly promised promotion did

not constitute a tangible employment action, citing Brown v. Brody, 199 F.3d 446 (D.C. Cir.

1999)).

### 2.    Court Defendant promptly remedied the alleged harassment

Plaintiff rails against the County's argument that it is not a co-employer, yet claims that

the Court Defendant should have investigated separately from the County (Response, pp. 16-17).

Plaintiff misstates Hartnett's testimony, because Hartnett "assumed" but did not "believe"

that he did not know whether Judge Sheely ever saw a copy of Horace Johnson's letter (Hartnett

Dep. p. 73), but whether or not Judge Sheely saw the letter is not material.

Plaintiff is unhappy that Judge Sheely believed Graham despite Plaintiff's denial of the

alleged affair, but Judge Sheely's belief was reasonable, as set forth Court Defendant's Brief.

After reviewing the results of the investigation, and with new information that Plaintiff had had a

long-term affair with Graham—starting even before her employment in the Probation

Department, Judge Sheely credited Graham's testimony over Plaintiff Varner's denial.  The

County investigators did not have this additional information, nor was the County the ultimate

decision-maker.

Nonetheless, Judge Sheely put Sam Miller directly in charge of Plaintiff's supervision,

and even though Graham remained second in command of the department until demoted by

Judge Hoffer, Miller testified that Graham never interfered with his supervision of Varner, and

---

[2]    Indeed, no man was treated more favorably than Plaintiff, because Mr. Brandt's promotion was also
delayed.  Therefore, Plaintiff cannot show a connection between her sex and the delayed promotion.

Varner was not further harassed. Title VII does not require that an employer use the most serious sanction available to punish an offender . . . ." Landgraf v. USI Film Products, 968 F.2d 427, 430 (5th Cir. 1992); See also Ryczek v. Guest Services, Inc., 877 F. Supp. 754 (D.C. Cir. 1995) (holding that "even if the investigation was not handled perfectly, the plaintiff has presented no evidence to suggest that Defendant did anything that would have allowed any harassment to continue.")

While Plaintiff may complain that the investigation took over two months to complete, this is indeed "prompt," given the complexity of the process.  Waymire v. Harris County, 86 F.3d 424 (5th Cir. 1996) (The fact that the county's investigation took three months does not cause it to fail the 'promptness' requirement.)  Therefore, Court Defendant is entitled to the affirmative defense.

> **3      The third prong of the affirmative defense is met because Plaintiff failed to come forward early under the law, to prevent harm and harassment to herself**

Oddly enough, Plaintiff fails to respond to the argument made by Court Defendant addressing proves the third prong of the affirmative defense, instead, inventing her own argument (that she properly brought her harassment complaint to the County Personnel Department).  While Judge Sheely expressed disappointment that Plaintiff did not bring her allegations directly to him, Court Defendant's brief did not argue that Plaintiff's bringing the matter to the County personnel office was incorrect or wrong under the policy.

To the contrary, Court Defendant set forth specific caselaw holding that a Plaintiff may not accumulate "harassment" to build a case--then hold the employer liable for not stopping the harassment.  The caselaw cited in Court Defendant's Brief is clear that a Plaintiff has the responsibility to come forward as soon as possible after she is aware that she is being subjected

to harassing conduct in order to prevent harm to herself.  Plaintiff did not do this, preferring

instead to hold onto the information for months.  When she at last filed her complaint, she

alleged she was faced with harassment that had "escalated" in the summer of 1996.  Even so, she

waited until April 1997 to report the "escalation" that began six months prior.  (See Court

Defendant's Brief, and citations contained therein.)  According to Plaintiff's Response, Grahams

"sexual interest" in Varner consists of:

> a.      an "inappropriate greeting card:  The card
> was given to Plaintiff in January, 1996--a year and three months
> before Plaintiff complained in April, 1997.
>
> b.      Graham's conversations with Varner about
> sexual problems with his wife.  Plaintiff testified that this occurred
> "several" times during 1996 and 1997.  Assuming, on summary
> judgment that this is true, Plaintiff did not come forward after the
> first, second or third time, but allowed Graham to tell Plaintiff
> "several" times for more than a year before she filed her complaint
> in April 1997. (Varner Dep. p. 128-129).
>
> c.      One alleged "uninvited" visit to Varner's
> home.  Plaintiff Varner testified that this incident took place in "
> May of '96."  (Varner Dep, Vol 1, p. 142.)  Again, Plaintiff waited
> nearly a year before bringing this incident to the attention of her
> employer in April, 1997.
>
> d.      During attendance at training session at
> Penn State, Graham knocked on Varner's hotel room door and
> called her room. Again, Plaintiff leaves out the particulars:  This
> conference took place in October, 1996 (Varner Dep. p. 114) a full
> seven months before she complained pursuant to the sexual
> harassment policy.

Plaintiff had a responsibility to come forward when the harassment began.  This she did

not do—and therefore, she "failed to prevent harm" to herself under the Ellerth test *as a matter*

*of law.*  Plaintiff does not respond in any way to Court Defendant's cited caselaw on this issue,

instead "countering" an argument that Court Defendant did not make (that Plaintiff did not use the policy).

Summary judgment is appropriate because Court Defendant has met all the burdens required to prove the Ellerth affirmative defense.

### C. PLAINTIFF CANNOT PROVE A *PRIMA FACIE* CASE OF RETALIATION.

Plaintiff charges that she was retaliated against in three ways, as discussed below. However, after full discovery, Plaintiff cannot meet her *prima facie* burden as to any of the alleged instances of retaliation. Retaliatory conduct constitutes an "adverse employment action" under Title VII only if it "alters the employee's 'compensation, terms, conditions, or privileges of employment,' deprives him or her of 'employment opportunities,' or 'adversely affect[s] his [or her] status as an employee.'" Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997). Consequently, "'not everything that makes an employee unhappy' qualifies as retaliation, for 'otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a [retaliation claim].'" *Id.* (Quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)).

### 1. *Restriction on her access to the area of Barbara Graham's office*:

Plaintiff attempts to create an issue of material fact between Judge Hoffer's testimony that he "requested" Plaintiff to stay away from the area where Barbara Graham temporarily worked, claiming that Osenkarski testified that Judge Hoffer "ordered" Plaintiff to stay away from that area. But this difference between Judge Hoffer's and Osenkarski's testimony is not *a material* fact. Accepting, for argument's sake, that Judge Hoffer did "order" Plaintiff to stay away from the area where Barbara Graham worked, Plaintiff has not suffered an adverse or a tangible employment action thereby. Plaintiff cites no caselaw to show that such an action constitutes an

adverse or tangible employment action, necessary to show a prima facie case of retaliation. Moreover, Plaintiff does not effectively counter the clear reasons (to separate Barbara Graham and Barbara Varner because each had complained that the other was harassing her).  Plaintiff admits that she was not prevented from doing her job, but complains that she was "humiliated" at having been directed to stay out of the area of Barbara Graham's office.  This position is not only unreasonable--it is insufficient to state a claim for retaliation.

        **2.**      ***Being offered the CASA position as a settlement, and when refused, being offered the position at the lower salary:***  Plaintiff's version of the CASA facts may differ from that of Judge Guido, but again, Plaintiff fails to raise any *material facts* that would show any retaliatory motive. For example, Plaintiff offers no statistics to counter Judge Guido's testimony that CASA directors are paid, on average, in the range of $28.000 to $32,000.

       Nonetheless, putting the settlement issue aside, failure to receive a lateral promotion is simply <u>not retaliation under the law</u>, as cited in Court defendant's brief.  In <u>Brown v. Brody</u>, <u>supra</u>, the Sixth Circuit reviewed substantial authority on the issue of lateral transfers and adverse employment action. In particular, that court noted:

> "The clear trend of authority," as we mentioned in <u>Mungin v. Katten Muchin & Zavie</u>, 116 F.3d 1549, 1556-57 (D.C. Cir. 1997), "is to hold that a 'purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action.

       Again, Plaintiff offers this Court no caselaw to counter the Court's cited caselaw, and again, Plaintiff has suffered no tangible or adverse employment action--an element necessary to state a prima facie case of retaliation.

        **3.**      ***The 2002 bomb scare***: Plaintiff does not offer any direct evidence of "motive" related to an April, 2002 bomb scare, when she was not aware that the building was

being evacuated.  Nor can she prove any causal link at all, since the bomb scare is not temporally related to Plaintiff's claims, having taken place more than a year after she filed her federal Complaint.  Moreover, as set forth in Court Defendant's Brief, the situation was remedied with a new, clear policy on evacuation.

Once a Plaintiff complains of harassment, is everything that happens in the workplace "retaliation?"  The courts have clearly disallowed such a conclusion, and Plaintiff again ignores Court Defendant's legal argument otherwise.  Plaintiff again cites no caselaw to support her bald conclusion that motive can be inferred from her prior, time-distanced complaints.

Plaintiff cannot survive summary judgment on her retaliation claim, because the instances of alleged retaliation <u>are simply not retaliatory under the caselaw</u>, as cited.  Plaintiff has not demonstrated that she suffered an adverse employment action that would be cognizable in a cause of action for retaliation under Title VII.

## III.  <u>CONCLUSION</u>

Plaintiff's unsupported denials are insufficient to create a genuine issue of fact.  Court Defendant is entitled to judgment as a matter of law and summary judgment is appropriate.  Court Defendant, the Ninth Judicial District of Pennsylvania, respectfully requests this Honorable Court to grant summary judgment in its favor.

Respectfully submitted,

s/A. Taylor Williams
**A. TAYLOR WILLIAMS, ESQUIRE**
Attorney I.D. No. 33149
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA  19102
(215) 560-6300
***Attorney For Defendant,***
***Commonwealth Of Pennsylvania***
***Ninth Judicial District, Cumberland County***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BARBARA E. VARNER, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| v. | : | NO. 1:CV 01-0725 |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | JURY TRIAL DEMANDED |
| NINTHE JUDICIAL DISTRICT, CUMBERLAND | : | |
| COUNTY; S. GARETH GRAHAM, individually; | : | JUDGE YVETTE KANE |
| and JOSEPH OSENKARSKI, individually, | : | |
| | : | |
| *Defendants.* | : | |

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certify that on February 9, 2004, she served a true and

correct copy of the attached *Reply Brief of Court Defendant, Commonwealth of Pennsylvania,*

*Ninth Judicial District Plaintiff's Response to Motion for Summary Judgment,* by first class U.S.

postage prepaid mail, to:

Debra K. Wallet, Esquire
24 North 32nd Street
Camp Hill, PA 17011
*Attorney for Barbara E. Varner*

Paul Lancaster Adams, Esquire
*Sweeney & Sheehan*
1515 Market Street, 15th Floor
Philadelphia, PA 19102

James K. Thomas, II, Esquire
Paul J. Dellasega, Esquire
*Thomas, Thomas & Hafer, LLP*
305 North Front Street, 6th Floor
Harrisburg, PA 17108

David MacMain, Esquire
*Montgomery McCracken,*
*Walker & Rhoads, LL,*
123 South Broad Street
Philadelphia, PA 19109

s/A. Taylor Williams
**A. TAYLOR WILLIAMS, ESQUIRE**
Attorney I.D. No. 33149
Administrative Office of PA Courts
1515 Market Street
Suite 1414
Philadelphia, PA 19102-1921
215-560-6300