UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA VARNER, | : | Civil Action No. 1:01-CV-725 |
| Plaintiff, | : | |
| v. | : | JURY TRIAL DEMANDED |
| COMMONWEALTH OF PENNSYLVANIA, NINTH JUDICIAL DISTRICT, CUMBERLAND COUNTY, CUMBERLAND COUNTY, S. GARETH GRAHAM, individually, and JOSEPH OSENKARSKI, individually, | : | |
| Defendants. | : | |

**DEFENDANT S. GARETH GRAHAM'S REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO S. GARETH GRAHAM'S MOTION FOR SUMMARY JUDGMENT**

Defendant S. Gareth Graham ("Graham") replies to Plaintiff's Brief in Opposition to S. Gareth Graham's Motion for Summary Judgment. In support of his reply, Graham incorporates his Motion for Summary Judgment and brief in support of same, filed with the Court on December 19, 2003.

**I.  GARY GRAHAM CANNOT BE HELD INDIVIDUALLY LIABLE UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT FOR ACTIONS THAT OCCURRED OUTSIDE THE TIME PERIOD DURING WHICH HE WAS PLAINTIFF'S SUPERVISOR.**

Graham is individually subject to a single claim in this case: aiding and abetting under the Pennsylvania Human Relations Act ("PHRA"). (See Complaint).

In her brief, Plaintiff supports her argument against summary judgment for Graham by describing two incidents that occurred outside the time period during which Graham was her supervisor. Under the PHRA, however, Graham cannot be individually liable for any alleged act

1000329v1

-2-

of discrimination if he was not Plaintiff's supervisor at the time of the incident. Moreover, Graham was not responsible for either alleged incident.

### A. Graham Was Not Plaintiff's Supervisor At The Time That Plaintiff Purportedly Was Denied A Pay Increase.

First, Plaintiff alleges that the County made a change in the seniority system that allegedly had a negative impact upon her. (Pl. Br.[1] at 10-12). Plaintiff actually alleges that the entire Juvenile Department changed its seniority policy solely for the purpose of harming just her. (Id.)

Defendant Joseph Osenkarski, the Department Chief, testified that he made the change in October, 1996, "with consultation of other managers, supervisors," and that he "thinks" that Graham may have been one of those individuals. (N.T. Osenkarski[2] at 136). This change, which altered how seniority was calculated, apparently caused Plaintiff to drop below one other individual in the department in seniority. (Pl. Facts at ¶¶V-G-13, V-G-24 – V-G-25; Pl. Br. at 10-12).

Nevertheless, it is undisputed that any alleged harm to Plaintiff resulting from the policy change did not take place until April, 1998, **nineteen (19) months** after the change by Osenkarski and nearly **one year** after Graham was removed from his position of authority and responsibility over Plaintiff. (Pl. Facts[3] at ¶¶51, V-G-26 – V-G-29; Pl. Br. at 10-12). Furthermore, Plaintiff was promoted on the same day as the individual listed ahead of her on the

---

[1] "Pl. Br." refers to pages from Plaintiff's Brief in Opposition to Defendant S. Gareth Graham's Motion for Summary Judgment, which was filed with this Court on January 21, 2004.

[2] "N.T. Osenkarski" refers to pages from the deposition of Joseph Osenkarski taken on January 27 and February 11, 2003, a copy of which was filed as Exhibit "C" with Graham's Motion for Summary Judgment on December 19, 2003.

[3] "Pl. Facts" refers to paragraphs from Varner['s] Response to Statement of Undisputed Material Facts Submitted by Defendants, S. Gareth Graham, which was filed with this Court on January 21, 2004.

seniority list.  (N.T. Brandt[4] at 40-41).  Moreover, the individual listed as "more senior" than Plaintiff testified that in fact, being "most senior" carries no benefit of any type.[5]  (Id. at 41).

### B. Plaintiff Was Not Employed In The Probation Department And Graham Was Not Plaintiff's Supervisor When Defendant Osenkarski Uttered An Offensive Word In The Workplace.

In support of her brief, Plaintiff describes a second incident that occurred outside the time period during which Graham was her supervisor.  Specifically, Plaintiff discusses an offensive utterance by Osenkarski that was made in 1993, nearly **four (4) years** before Graham became Plaintiff's supervisor.  (Pl. Br. at 8-9, 10; N.T. Brandt at 59-60).  To "bolster" her argument, Plaintiff argues that a witness who reported to the then-Department Chief that Osenkarski used the term felt that Osenkarski retaliated against the witness by treating him "unfairly" with regard to case assignments.  (Pl. Br. at 10).

There is no evidence in the case, nor does Plaintiff argue, that Graham was involved in any way with this incident.  Moreover, it is undisputed that Plaintiff was not even employed by the Probation Department until 1995, **two (2) years** after the incident.  (N.T. Pl.[6] at 84, 93-94).  Graham was not Plaintiff's supervisor at the time of the incident.  In short, it is unclear how this incident is at all related to Plaintiff's case against Graham, and clearly it is being used merely to create the illusion of an accumulation of "evidence."

---

[4] "N.T. Brandt" refers to pages from the deposition of William Brandt, taken on April 4, 2003, a copy of which is attached hereto as Exhibit "O."

[5] Plaintiff argues that she was harmed because she was denied a pay increase for eight (8) weeks.  (See Plaintiff's Brief in Opposition to Defendant Commonwealth of Pennsylvania, Ninth Judicial District's Motion for Summary Judgment).  This contention is disputed by Defendant Commonwealth.

[6] "N.T. Pl." refers to pages from the deposition of Plaintiff Barbara Varner, taken on January 27 and 28, 2003, a copy of which was attached as Exhibit "A" to Graham's Motion for Summary Judgment, which was filed on December 19, 2003.

### C. Under The PHRA, Graham Cannot Be Individually Liable For Acts That Occurred When He Was Merely A Co-Worker And Not A Supervisor.

Pennsylvania case law is clear that an individual can be held individually liable under the PHRA for acts of discrimination <u>only</u> if he or she is a supervisor. <u>Dici v. Commonwealth of Pennsylvania</u>, 91 F.3d 542, 553 (3d Cir. 1996). The only allegation against Graham in the instant matter is that he is individually liable under the PHRA for aiding and abetting in discrimination against Plaintiff. (<u>See</u> Complaint).

As explained in Graham's Motion for Summary Judgment, Graham did not become Plaintiff's supervisor until January 1, 1997. (N.T. Graham[7] at 53-54, 64; N.T. Osenkarski at 135). Accordingly, Graham cannot be held individually liable for any actions alleged to have taken place prior to January 1, 1997. Likewise, he cannot be held liable for any actions that took place subsequent to June 13, 1997, when he was removed from supervisory responsibility over Plaintiff. <u>See</u> <u>Dici</u>, 91 F.3d at 553. As a result, only those actions alleged to have occurred in 1997 between January 1 and June 13 can be considered by this Court for purposes of assessing Graham's individual liability.

Furthermore, it stretches logic and credulity to argue that an event that occurred two years prior to her employment in the Probation Department, and that involved individuals other than Graham or Plaintiff, or that an event that occurred nearly one year after Graham ceased supervising Plaintiff, somehow supports Plaintiff's claim against Graham for his actions as her supervisor between January 1, 1997, and June 13, 1997. <u>See</u>, e.g., <u>Velez v. QVC, Inc.</u>, 227 F. Supp. 2d 384, 412 (E.D. Pa. 2002) (writing that an inference of discrimination involving another alleged victim may be appropriate where (1) the discriminating acts were undertaken by the same

---

[7] "N.T. Graham" refers to pages from the deposition of Defendant Gary Graham, taken on January 29 and February 14, 2003, a copy of which was attached as Exhibit "B" to Graham's Motion for Summary Judgment, which was filed on December 19, 2003.

decision-maker; (2) the acts against the plaintiff and the other alleged victim occurred in close temporal proximity; and (3) the type of discrimination is similar in nature or kind); <u>Lawler v. Norristown State Hosp.</u>, No. 02-7116, 2003 U.S. Dist. LEXIS 13913, at *20-21 (E.D. Pa., Aug. 4, 2003) (finding no inference of discrimination where alleged offensive acts by the same actor occurred in a different time period and different building from those of the actor against the plaintiff).

Clearly, neither alleged incident can be used to impute liability to Graham as both incidents occurred outside the time period during which Graham was Plaintiff's supervisor and, in one case, did not even involve Plaintiff, let alone Graham. As a matter of law, Graham can not be held liable for either action.

## II. PLAINTIFF'S "BELIEFS" OR "INTERPRETATIONS" ARE INSUFFICIENT AS A MATTER OF LAW TO SURVIVE SUMMARY JUDGMENT IN THE ABSENCE OF EVIDENCE TO SUPPORT THEM.

Throughout her brief, Plaintiff writes that she "alleges," "believes" or "believed," "conclud[es]," "claims," "interpret[s]," "testified," and "theor[izes]," that Graham engaged in certain behavior to harass or intimidate her because of her sex. (Pl. Br. at 6, 7, 8, 9, 10, 12, 14, 17, 19). For example, Plaintiff makes the following statements in her brief:

- "[Plaintiff] also <u>alleges</u> that Graham told [her] about satisfying him and looked at her with a suggestive smile. [Plaintiff] <u>claims</u> that he has stated to her that in her 'case management' she has to satisfy the victim and the community with a suggestive smile in her direction. [Plaintiff] <u>interpreted</u> this as a sexual innuendo." (Pl. Br. at 6) (emphasis supplied).

-5-

- "[Plaintiff] believed that [Graham's] appearance indicated his interest in a sexual relationship."  (Id. at 7) (emphasis supplied).

- "[Plaintiff's] complaint itself alleges threats and violent behavior by Graham against [Plaintiff]."  (Id. at 8) (emphasis supplied).

- "[Plaintiff] alleges that she has received more difficult assignments in response to her rebuffing Graham and documentary evidence of April, 1997[,] does support that she had the second highest number of cases."  (Id.) (emphasis supplied)

- "[Plaintiff] testified that even if she does not have the most cases, she believes that she was given the more difficult cases or the ones in which she was required to supervise large[,] male juveniles."  (Id. at 10) (emphasis supplied).

- "[Plaintiff] certainly believed that she had been threatened with 'punishment' just like Graham's wife who would be punished by Graham for refusing to have sex with him."[8]  (Id. at 12) (emphasis supplied).

- "[Plaintiff] stated that she believed that [Graham] would tell her these things about punishing his wife to remind [Plaintiff] of how he could dole out punishment.  [Plaintiff] also believes that Graham told [Plaintiff] this to threaten [Plaintiff] - who had also refused Graham sex."[9]  (Id. at 17) (emphasis supplied).

Although all evidence must be viewed in a light most favorable to the non-moving party, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of her

---

[8] This is a curious assertion in light of Plaintiff's admission that Graham's criticisms of his wife were not directed toward Plaintiff, and that his description of actions toward his wife were neither directed toward, nor offensive to, Plaintiff.  (Pl. Facts at ¶¶27, 33).

[9] This is another curious statement since Plaintiff admits that Graham never asked for or demanded any type or form of sex from her.  (Pl. Facts at ¶37).

pleading, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Plaintiff's beliefs, allegations, conclusions, or interpretations of events are insufficient on their own to survive a motion for summary judgment. Plaintiff bears the burden of setting forth specific facts demonstrating that a genuine issue of material fact exists, and that a reasonable fact finder could rule in her favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). "Speculation and conclusory allegations do not satisfy this duty." Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999). See also, Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985), cert. denied, 474 U.S. 829 (1985) (cited by Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) for proposition that "conclusory allegations of discrimination, absent particulars, [are] insufficient to defeat summary judgment").

Here, Plaintiff has failed to produce evidence to support her "beliefs" or suppositions. Instead, her brief is riddled with conclusory statements that she "believed" or "interpreted" certain actions to be based upon her sex. Nevertheless, her brief fails to provide any additional facts to support her "evidence."[10] Where, as here, a plaintiff can point only to instances where she felt mistreated, and she chooses to label such treatment as based upon sex, her own conclusory allegations are insufficient to survive summary judgment. As a matter of law, Plaintiff's mere beliefs are insufficient for purposes of establishing a prima facie case. Ridgewood, 172 F.3d at 252. Cf. Billet v. CIGNA Corp., 940 F.2d 812, 816 (3d Cir. 1991)

---

[10] Plaintiff's brief also fails to cite much in the way of case law to support her position. In fact, she cites a single case, Burlington Indust. v. Ellerth, 524 U.S. 742 (1998), for purposes of analogizing facts to support her claim that the alleged acts of harassment should survive summary judgment. In light of Plaintiff's failure to direct the Court to adequate precedent to support her arguments against case law, Plaintiff has failed to sustain her burden of proof to defeat summary judgment.

1000329v1

(writing that plaintiff's unsupported statement that discrimination motivated employment action does not make it so).

### III.     CONCLUSION[11]

For all of the reasons set forth above, Defendant S. Gareth Graham respectfully requests that judgment be granted to Graham and that Plaintiff's Complaint as against him be dismissed with prejudice.

                                              Respectfully submitted,

                                              /s/ David J. MacMain

Date: February 9, 2004                By: _____
                                              David J. MacMain, Esquire
                                              Montgomery, McCracken, Walker & Rhoads, LLP
                                              123 South Broad Street
                                              Philadelphia, PA  19103
                                              (215) 772-7413

                                              Attorney for Defendant,
                                              S. Gareth Graham

---

[11] Plaintiff advances yet another meritless argument that warrants only a footnote because it does not pertain to a material fact for purposes of summary judgment.  In her brief, Plaintiff writes that,

> Curiously, in this case, if Graham's allegations of a consensual sexual relationship are accepted, even Graham's explanation would satisfy the 'because of her sex' requirements. . . . [Plaintiff] establishes circumstances after this alleged 'end of the affair' which establish a hostile working environment.  Therefore, these actions would without question constitute discrimination 'because of her sex.'

(Pl. Br. at 15-16).

      To the contrary, at least two Circuit Courts have held that alleged harassment that follows the end of a failed romantic relationship between co-workers is based upon personal animus rather than sex, particularly when there is no evidence to show that the alleged harasser failed to treat other members of the alleged victim's sex as poorly as he treated the alleged victim. See, e.g., Succar v. Dade County Sch. Bd., 229 F.3d 1343, 1345 (11th Cir. 2000) ("Title VII prohibits discrimination; it is not a shield against harsh treatment at the work place. Personal animosity is not the equivalent of sex discrimination . . . . The plaintiff cannot turn a personal feud into a sex discrimination case") (citation omitted); Galloway v. Gen. Motors Serv. Parts Operations, 78 F.3d 1164, 1168 (7th Cir. 1996) (finding that harasser's use of term "sick bitch" in aftermath of failed romantic relationship constitutes personal animosity rather than sex harassment).

      Nevertheless, and as Graham stated in his Brief in Support of his Motion for Summary Judgment, the issue of whether he and Plaintiff engaged in an extra-marital affair is not material, and thus is not an issue, for purposes of the summary judgment.

1000329v1

# **CERTIFICATE OF SERVICE**

      I hereby certify that I caused a true and correct copy of the foregoing to be served upon each of the following persons:

Debra K. Wallet, Esquire
24 N. 32nd Street
Camp Hill, PA 17011

*Attorney for Plaintiff,*
*Barbara E. Varner*

Paul J. Dellasega, Esquire
Thomas, Thomas & Hafer
305 N. Front Street
P.O. Box 999
Harrisburg PA  17108

*Attorneys for Defendant,*
*Cumberland County*

A. Taylor Williams, Esquire
Legal Counsel to the Court Administrator
of Pennsylvania
Administrative Office of Pennsylvania Courts
1515 Market Street
Philadelphia, PA  19102

*Attorney for Defendant,*
*Commonwealth Court of Pennsylvania, Ninth Judicial District*

Paul Lancaster Adams, Esquire
Sweeney & Sheehan, P.C.
1515 Market Street, 19th Floor
Philadelphia, PA  19102

*Attorney for Defendant,*
*Joseph Osenkarski*

Date:  February 9, 2004         /s/ L. Kristen Blanchard_____
                                             L. Kristen Blanchard

1000329v1